IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-132 (JJF) |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, | ) | |
| INC., SIEMENS MEDICAL SOLUTIONS | ) | |
| HEALTH SERVICES CORP., SIEMENS | ) | |
| CORPORATION and SIEMENS AG, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff Syed Iqbal Raza, M.D. ("Plaintiff"), by and through his attorneys, hereby

demands a jury trial as to all claims that may be tried to a jury, and alleges for his Amended

Complaint against defendants Siemens Medical Solutions USA, Inc., Siemens Medical

Solutions Health Services Corp., Siemens Corporation, and Siemens AG (collectively,

"Siemens" or "Defendants") as follows:

## THE PARTIES

1.     Plaintiff Syed Iqbal Raza, M.D. is the Director of Children's Hospital

Islamabad.  He is a Pakistani national residing at Farm No. 12 (Maimoona Farm), P&V

Scheme, No. 1, Lehtarar Road Tarali, Islamabad, Pakistan.

2.     Defendant Siemens Medical Solutions USA, Inc. is organized and existing

under the laws of the State of Delaware, with its principal place of business at 51 Valley

Stream Parkway, Malvern, Pennsylvania 19355.  Upon information and belief, Siemens

Medical Solutions USA, Inc. is a wholly owned subsidiary of defendant Siemens Corporation.

3.      Defendant Siemens Medical Solutions Health Services Corp. is organized and existing under the laws of the State of Delaware, with its principal place of business at 51 Valley Stream Parkway, Malvern, Pennsylvania 19355.   Upon information and belief, Siemens Medical Solutions Health Services Corp. is a wholly owned subsidiary of defendant Siemens AG.

4.      Defendant Siemens Corporation is organized and existing under the laws of the State of Delaware, with its principal place of business at 153 East 53rd Street, New York, New York.  Upon information and belief, Siemens Corporation is a wholly owned subsidiary of Siemens AG, and is the parent corporation of Siemens Medical Solutions USA, Inc.

5.       Defendant Siemens AG is organized and existing under the laws of Germany, with its principal place of business in Munich, Germany, and includes a medical technology business unit, Siemens Medical Solutions (Germany).

## JURISDICTION AND VENUE

6.      This Court can properly exercise subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists among the parties and the amount in controversy exceeds the sum of $75,000.

7.      This Court can properly exercise personal jurisdiction over defendants Siemens Medical Solutions Health Services Corp., Siemens Medical Solutions USA, Inc., and its parent, Siemens Corporation, by virtue of the fact that each is incorporated in the

DB02:5160093.3                                                                                      064935.1001

State of Delaware, thereby availing itself of the laws of the State of Delaware and deriving the protections and benefits thereof.

8.    This Court can properly exercise personal jurisdiction over defendant Siemens AG by virtue of the fact that it is affiliated with and/or wholly owns defendants Siemens Corporation, Siemens Medical Solutions Health Services Corp. and Siemens Medical Solutions USA, Inc., each of which is incorporated in the State of Delaware, and as such does business through its agents  (*i.e.*, Siemens Corporation, Siemens Medical Solutions Health Services Corp. and Siemens Medical Solutions USA, Inc.), thereby availing itself of the laws of the State of Delaware and deriving the protections and benefits thereof.

9.    This Court can properly exercise personal jurisdiction over all defendants by virtue of the fact that, upon information and belief, they have offered for sale and/or sold SOARIAN software products containing Dr. Raza's proprietary trade secrets in Delaware, thereby further availing themselves of the laws of the State of Delaware and deriving the protections and benefits thereof.

10.    Venue for the present action properly lies in this district pursuant to 28 U.S.C. §§ 1391 (a), (c) and (d).

## BACKGROUND

11.    In 1997, Dr. Raza set out to develop detailed methods for tracking and evaluating the performance of medical professionals with the ultimate purpose of creating new and novel software to make the processes for managing hospitals and hospital personnel more efficient.  He did so by collecting various types of data from 104 medical professionals through a research study referred to as "Dr-SIR-104."   By 2000, Dr. Raza had used the

3

research data collected through Dr-SIR-104 to develop his concept of "Dr-SIR," a hospital management software product embodying his methods.

      12.    That same year, Dr. Raza was invited by officials at Strengthening of Health Services Academy in Pakistan ("SHAIP"), a project sponsored by GTZ Islamabad, to present to them his concepts for Dr-SIR, and he did so in September 2000. After Dr. Raza's presentation, the SHAIP officials requested that Dr. Raza provide them with written materials detailing the underlying concepts for Dr-SIR so that they could evaluate the potential software. Dr. Raza granted their request, providing them with approximately 160 pages of descriptive analyses and spreadsheets documenting his proprietary concepts. The SHAIP officials approved of Dr. Raza's work, and on October 9, 2000, SHAIP's Chief Technical Officer forwarded (with Dr. Raza's permission) the concept papers with a letter to the Counselor, Head Economic and Commercial Section of the German Embassy in Islamabad. The Chief Technical Officer inquired in the letter as to whether a German company would be interested in collaborating with Dr. Raza to develop a complete software product implementing his concepts for Dr-SIR.

      13.    In November 2000, Dr. Raza briefed the Counselor Head Economic and Commercial Section of the German Embassy at Islamabad on the concepts for Dr-SIR, whereupon the Counselor told Dr. Raza that he believed that Siemens would likely be interested in entering into a partnership with Dr. Raza to develop a complete software product. Dr. Raza then permitted the Counselor to forward his concept papers to Siemens for the limited purpose of determining whether Siemens would be interested in engaging in a joint venture to develop such a product.

4

14.     In January 2001, Dr. Raza received from Farrukh Latif of Siemens Pakistan Engineering Company, Ltd. a letter stating that Dr. Raza's papers constituted "a very good effort," that the Pakistani entity was not sufficiently related to the "Hospital Management side" of Siemens to benefit from the software, that Siemens did "intend to recommend to [their] various clients to contact [Dr. Raza] for further details," and that it "appreciate[ed] Dr. Raza's efforts in developing the software [Dr-SIR]."

15.     Siemens did not return, and has never returned, to Dr. Raza the 160 pages of Dr-SIR concept papers, nor has Siemens ever explained what became of the papers (or at least it has not in its multiple correspondence to Dr. Raza concerning this dispute).

16.     After receiving the January 2001 letter from Siemens, Dr. Raza continued to develop his concepts, winning first prize for software development at the 2002 National Software Competition sponsored by the National University in Islamabad and registering Dr-SIR with, among others, the World Health Organization in September 2001 and the United States Foreign Commerce Liaison Office in February 2003.

17.     Unbeknownst to Dr. Raza in Pakistan, Siemens, upon information and belief, launched its SOARIAN hospital management software product in the United States in October 2001, almost one year after receiving, reviewing and retaining Dr. Raza's propietary Dr-SIR concept papers.

18.     In April 2003, Dr. Raza met with Zia Chishty, past Chief Executive Officer of Align Technology (a NASDAQ-listed company) and then Chief Executive Officer of TRG, a venture capital firm. During the meeting, Mr. Chishty informed Dr. Raza that Siemens had developed, and was marketing in the United States, a software product that was very similar

5

to Dr-SIR. Dr. Raza thereafter reviewed Siemens' public papers, press releases, patents and patent applications relating to the SOARIAN product and concluded that the product most likely incorporates a number of the proprietary concepts he had disclosed to Siemens in November 2000, including, but not limited to, Dr. Raza's concepts relating to patient-centric management, embedded analytics and work flow technologies.

19.     Upon information and belief, Siemens misappropriated, and is now unlawfully using for commercial gain, Dr. Raza's proprietary concepts in connection with its SOARIAN software products.

## COUNT 1 – TRADE SECRET MISAPPROPRIATION

20.     Dr. Raza repeats and realleges the allegations of paragraphs 1 through 19 as though set forth fully herein.

21.     Dr. Raza's concepts relating to the Dr-SIR software product derive independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

22.     Dr. Raza has at all times made reasonable efforts under the circumstances to maintain the secrecy of his concepts relating to the Dr-SIR software product.

23.     Upon information and belief, Siemens has improperly used Dr. Raza's proprietary trade secrets for commercial gain.

24.     Dr. Raza has never consented to Siemens' use of his proprietary trade secrets relating to the Dr-SIR software product.

25.     Upon information and belief, Siemens' misappropriation of Dr. Raza's proprietary trade secrets was willful and malicious.

6

## COUNT 2 – UNJUST ENRICHMENT

26.     Dr. Raza repeats and realleges the allegations of paragraphs 1 through 25 as though set forth fully herein.

27.     Upon information and belief, Siemens has been unjustly enriched by virtue of its use of Dr. Raza's proprietary concepts in connection with its development and sale of SOARIAN.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)     entry of judgment declaring that Defendants have misappropriated Plaintiff's trade secrets;

(b)     entry of judgment awarding Plaintiff damages for Defendants' misappropriation of Plaintiff's trade secrets, including exemplary damages;

(c)     prejudgment interest on all recovered sums; and

(d)     such other and further relief as this Court deems just, equitable and necessary to fully effectuate the rights of Plaintiff with respect to the subject matter of this case.

DB02:5160093.3                                                                                              064935.1001

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

Date: March 29, 2006

_____
Martin S. Lessner  (No. 3109)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th  Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Plaintiff*

8

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on March 29, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.

I further certify that March 29, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY HAND DELIVERY

SIEMENS CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

SIEMENS AG
c/o Delaware Secretary of State
Division of Corporations
John G. Townsend Bldg.
401 Federal Street – Suite 4
Dover, DE 19901

SIEMENS MEDICAL SOLUTIONS USA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Syed Iqbal Raza, M.D.*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. <u>06-132 (JJF)</u> |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, | ) | |
| INC., <u>SIEMENS MEDICAL SOLUTIONS</u> | ) | |
| <u>HEALTH SERVICES CORP.,</u> SIEMENS | ) | |
| CORPORATION and SIEMENS AG, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AMENDED COMPLAINT</u>

Plaintiff Syed Iqbal Raza, M.D. ("Plaintiff"), by and through his attorneys, hereby

demands a jury trial as to all claims that may be tried to a jury, and alleges for his <u>Amended</u>

Complaint against defendants Siemens Medical Solutions USA, Inc., <u>Siemens Medical</u>

<u>Solutions Health Services Corp.,</u> Siemens Corporation, and Siemens AG (collectively,

"Siemens" or "Defendants") as follows:

## <u>THE PARTIES</u>

1.      Plaintiff Syed Iqbal Raza, M.D. is the Director of Children's Hospital

Islamabad.  He is a Pakistani national residing at Farm No. 12 (Maimoona Farm), P&V

Scheme, No. 1, Lehtarar Road Tarali, Islamabad, Pakistan.

2.      Defendant Siemens Medical Solutions USA, Inc. is organized and existing

under the laws of the State of Delaware, with its principal place of business at 51 Valley

Stream Parkway, Malvern, Pennsylvania 19355.  Upon information and belief, Siemens

Medical Solutions USA, Inc. is a wholly owned subsidiary of defendant ~~Siemens AG.~~ Siemens Corporation.

3.     Defendant Siemens Medical Solutions Health Services Corp. is organized and existing under the laws of the State of Delaware, with its principal place of business at 51 Valley Stream Parkway, Malvern, Pennsylvania 19355.   Upon information and belief, Siemens Medical Solutions Health Services Corp. is a wholly owned subsidiary of defendant Siemens AG.

4.     ~~3.~~ Defendant Siemens Corporation is organized and existing under the laws of the State of Delaware, with its principal place of business at 153 East 53rd Street, New York, New York.  Upon information and belief, Siemens Corporation is a wholly owned subsidiary of Siemens AG, and is the parent corporation of Siemens Medical Solutions USA, Inc.

5.     ~~4.~~ Defendant Siemens AG is organized and existing under the laws of Germany, with its principal place of business in Munich, Germany, and includes a medical technology business unit, Siemens Medical Solutions (Germany).

**JURISDICTION AND VENUE**

6.     ~~5.~~ This Court can properly exercise subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists among the parties and the amount in controversy exceeds the sum of $75,000.

7.     ~~6.~~ This Court can properly exercise personal jurisdiction over ~~defendant~~defendants Siemens Medical Solutions Health Services Corp., Siemens Medical Solutions USA, Inc., and its parent, Siemens Corporation, by virtue of the fact that each is

2

incorporated in the State of Delaware, thereby availing itself of the laws of the State of Delaware and deriving the protections and benefits thereof.

8.    7. This Court can properly exercise personal jurisdiction over defendant Siemens AG by virtue of the fact that it is affiliated with and/or wholly owns defendants Siemens Corporation, Siemens Medical Solutions Health Services Corp. and Siemens Medical Solutions USA, Inc., each of which is incorporated in the State of Delaware, and as such does business through its agents (*i.e.*, Siemens Corporation, Siemens Medical Solutions Health Services Corp. and Siemens Medical Solutions USA, Inc.), thereby availing itself of the laws of the State of Delaware and deriving the protections and benefits thereof.

9.    8. This Court can properly exercise personal jurisdiction over all defendants by virtue of the fact that, upon information and belief, they have offered for sale and/or sold SOARIAN software products containing Dr. Raza's proprietary trade secrets in Delaware, thereby further availing themselves of the laws of the State of Delaware and deriving the protections and benefits thereof.

10.    9. Venue for the present action properly lies in this district pursuant to 28 U.S.C. §§ 1391 (a), (c) and (d).

## BACKGROUND

11.    In 1997, Dr. Raza set out to develop detailed methods for tracking and evaluating the performance of medical professionals with the ultimate purpose of creating new and novel software to make the processes for managing hospitals and hospital personnel more efficient. He did so by collecting various types of data from 104 medical professionals through a research study referred to as "Dr-SIR-104." By 2000, Dr. Raza had used the

3

research data collected through Dr-SIR-104 to develop his concept of "Dr-SIR," a hospital management software product embodying his methods.

12.    That same year, Dr. Raza was invited by officials at Strengthening of Health Services Academy in Pakistan ("SHAIP"), a project sponsored by GTZ Islamabad, to present to them his concepts for Dr-SIR, and he did so in September 2000. After Dr. Raza's presentation, the SHAIP officials requested that Dr. Raza provide them with written materials detailing the underlying concepts for Dr-SIR so that they could evaluate the potential software. Dr. Raza granted their request, providing them with approximately 160 pages of descriptive analyses and spreadsheets documenting his proprietary concepts. The SHAIP officials approved of Dr. Raza's work, and on October 9, 2000, SHAIP's Chief Technical Officer forwarded (with Dr. Raza's permission) the concept papers with a letter to the Counselor, Head Economic and Commercial Section of the German Embassy in Islamabad. The Chief Technical Officer inquired in the letter as to whether a German company would be interested in collaborating with Dr. Raza to develop a complete software product implementing his concepts for Dr-SIR.

13.    In November 2000, Dr. Raza briefed the Counselor Head Economic and Commercial Section of the German Embassy at Islamabad on the concepts for Dr-SIR, whereupon the Counselor told Dr. Raza that he believed that Siemens would likely be interested in entering into a partnership with Dr. Raza to develop a complete software product. Dr. Raza then permitted the Counselor to forward his concept papers to Siemens for the limited purpose of determining whether Siemens would be interested in engaging in a joint venture to develop such a product.

4

064935.1001

14.     In January 2001, Dr. Raza received from Farrukh Latif of Siemens Pakistan Engineering Company, Ltd. a letter stating that Dr. Raza's papers constituted "a very good effort," that the Pakistani entity was not sufficiently related to the "Hospital Management side" of Siemens to benefit from the software, that Siemens did "intend to recommend to [their] various clients to contact [Dr. Raza] for further details," and that it "appreciate[ed] Dr. Raza's efforts in developing the software [Dr-SIR]."

15.     Siemens did not return, and has never returned, to Dr. Raza the 160 pages of Dr-SIR concept papers, nor has Siemens ever explained what became of the papers (or at least it has not in its multiple correspondence to Dr. Raza concerning this dispute).

16.     After receiving the January 2001 letter from Siemens, Dr. Raza continued to develop his concepts, winning first prize for software development at the 2002 National Software Competition sponsored by the National University in Islamabad and registering Dr-SIR with, among others, the World Health Organization in September 2001 and the United States Foreign Commerce Liaison Office in February 2003.

17.     Unbeknownst to Dr. Raza in Pakistan, Siemens, upon information and belief, launched its SOARIAN hospital management software product in the United States in October 2001, almost one year after receiving, reviewing and retaining Dr. Raza's propietary Dr-SIR concept papers.

18.     In April 2003, Dr. Raza met with Zia Chishty, past Chief Executive Officer of Align Technology (a NASDAQ-listed company) and then Chief Executive Officer of TRG, a venture capital firm. During the meeting, Mr. Chishty informed Dr. Raza that Siemens had developed, and was marketing in the United States, a software product that was very similar

to Dr-SIR.  Dr. Raza thereafter reviewed Siemens' public papers, press releases, patents and patent applications relating to the SOARIAN product and concluded that the product most likely incorporates a number of the proprietary concepts he had disclosed to Siemens in November 2000, including, but not limited to, Dr. Raza's concepts relating to patient-centric management, embedded analytics and work flow technologies.

19.    Upon information and belief, Siemens misappropriated, and is now unlawfully using for commercial gain, Dr. Raza's proprietary concepts in connection with its SOARIAN software products.

## COUNT 1 – TRADE SECRET MISAPPROPRIATION

20.    Dr. Raza repeats and realleges the allegations of paragraphs 1 through 19 as though set forth fully herein.

21.    Dr. Raza's concepts relating to the Dr-SIR software product derive independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

22.    Dr. Raza has at all times made reasonable efforts under the circumstances to maintain the secrecy of his concepts relating to the Dr-SIR software product.

23.    Upon information and belief, Siemens has improperly used Dr. Raza's proprietary trade secrets for commercial gain.

24.    Dr. Raza has never consented to Siemens' use of his proprietary trade secrets relating to the Dr-SIR software product.

25.    Upon information and belief, Siemens' misappropriation of Dr. Raza's proprietary trade secrets was willful and malicious.

6

## COUNT 2 – UNJUST ENRICHMENT

26.     Dr. Raza repeats and realleges the allegations of paragraphs 1 through 25 as though set forth fully herein.

27.     Upon information and belief, Siemens has been unjustly enriched by virtue of its use of Dr. Raza's proprietary concepts in connection with its development and sale of SOARIAN.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)     entry of judgment declaring that Defendants have misappropriated Plaintiff's trade secrets;

(b)     entry of judgment awarding Plaintiff damages for Defendants' misappropriation of Plaintiff's trade secrets, including exemplary damages;

(c)     prejudgment interest on all recovered sums; and

(d)     such other and further relief as this Court deems just, equitable and necessary to fully effectuate the rights of Plaintiff with respect to the subject matter of this case.

DB02:5260429.1                                              064935.1001

YOUNG CONAWAY STARGATT &
   TAYLOR, LLP

Date: ~~February 28,~~ March 29, 2006

                          _____

                          Martin S. Lessner  (No. 3109)
                          Adam W. Poff (No. 3990)
                          The Brandywine Building
                          1000 West Street, 17th  Floor
                          Wilmington, Delaware  19899
                          (302) 571-6600

                          *Attorneys for Plaintiff*

8

Document comparison done by DeltaView on Wednesday, March 29, 2006
8:36:17 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://WSDMS/DB02/5160093/2 |
| Document 2 | interwovenSite://WSDMS/DB02/5160093/3 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 18 |
| Deletions | 13 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 33 |

064935.1001