# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYED IQBAL RAZA, M.D., | : |
| | :    CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | :    NO. 06-132 (JJF) |
| | : |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : |
| SERVICES CORP., SIEMENS CORPORATION | : |
| and SIEMENS AG, | : |
| | : |
| Defendants. | : |

## DEFENDANT SIEMENS AG'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

OF COUNSEL:

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)


Dated: May 2, 2006

Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500 (Telephone)
(302) 421-8390 (Fax)

*Attorneys for Defendant Siemens AG*

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STATE OF THE PROCEEDING.............................................................1

II.     SUMMARY OF ARGUMENT.......................................................................................1

III.    CONCISE STATEMENT OF FACTS..............................................................................2

IV.     ARGUMENT.................................................................................................................3

        A.      Standard of Review .............................................................................................3

        B.      Dr. Raza's Complaint Against Siemens AG Should Be Dismissed
                Pursuant to Fed. R. Civ. P. 12(b)(5) for Insufficiency of Service of Process ........4

        C.      Dr. Raza's Complaint Against Siemens AG Should Be Dismissed
                Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction..................7

                1.      General Jurisdiction.................................................................................9

                2.      Specific Jurisdiction .............................................................................11

V.      CONCLUSION ...........................................................................................................133

## TABLE OF AUTHORITIES

### *CASES*

*Ace & Co., Inc. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418 (D. Del. 2001) ........................ 10, 11

*Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996) ..................................... 4

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254 (3d Cir. 2000) .......... 9, 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................................... 8, 12

*C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) ................................ 10, 11, 12

*Colter v. Siemens Energy & Automation, Inc.*, C.A.No. 94-08, 1994 U.S. Dist. LEXIS
    19012 (N.D. Ga. Aug. 25, 1994) ............................................................ 6

*Davies v. Jobs & Adverts Online, GMBH*, 94 F. Supp. 2d 719 (E.D. Va. 2000) ................... 6

*DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981) ......................... 6

*E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197
    F.R.D. 112 (D. Del. 2000) ............................................................. 5, 6, 10

*Grand Entertainment Group, Ltd. v. Start Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993) ........... 4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 404 (1984) ....................... 9

*IMO Industrial, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ................................ 8

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................... 8

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Brothers, Inc.*, 983 F.2d 551 (3d Cir.
    1993) ................................................................................... 3

*Milliken v. Meyer*, 311 U.S. 457 (1940) ....................................................... 8

*Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ....................... 4

*Outokumpu Engineering Enterprises, Inc.*, 685 A.2d 724 (Del. Super. 1996) .................... 10

*Patterson v. Federal Bureau of Investigation*, 893 F.2d 595 (3d Cir. 1990) .................. 3

*Pennsylvania Orthopedic Association v. Mercedes-Benz AG*, 160 F.R.D. 58 (E.D. Pa.
    1995) ................................................................................... 7

*Pittsburgh National Bank v. A.B. Kassir*, 153 F.R.D. 580 (W.D. Pa. 1994) ................................... 6

*Provident National Bank v. California Federal Savings & Loan Associate*, 819 F.2d 434
  (3d Cir. 1987) .......................................................................................................................... 3

*Quinn v. Keinicke*, 700 A.2d 147 ................................................................................................... 7

*Reach & Associates, P.C. v. Dencer*, 269 F. Supp. 2d 497 (D. Del. 2003) .............................. 9, 11

*Reed v. Weeks Marine, Inc.*, 166 F. Supp. 2d 1052 (E.D. Pa. 2001) ................................................ 4

*Reliance Steel Products v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982) .......... 9

*Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297 (1990) ..................................................... 10

*Sene v. MBNA America, Inc.*, C.A.No. 04-01331, 2005 U.S. Dist. LEXIS 20786 (D. Del.
  Sept. 20, 2005) ......................................................................................................................... 4

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ........................................... 5

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................................. 8

### STATUTES AND OTHER AUTHORITY

Fed. R. Civ. P. 4 ...................................................................................................................... 4, 5, 6

Fed. R. Civ. P. 12(b)(5) ......................................................................................................... 1, 3, 4,
                                                                                                                                      5, 8,
Fed. R. Civ. P. 4(f)(1) ................................................................................................................... 1

10 Del. C. § 3104 ...................................................................................................................... 5, 8

20 U.S.T. 361 ........................................................................................................................... 6, 7

Fed. R. Civ. P. 12(b)(2) ............................................................................................................. 2, 8

## I.    NATURE AND STATE OF THE PROCEEDING

Plaintiff filed a two-count action against Siemens Medical Solutions USA, Inc., Siemens Corporation and Siemens AG alleging trade secret misappropriation and unjust enrichment on February 28, 2006. On March 29, 2006, Plaintiff filed an Amended Complaint to add an additional defendant, Siemens Medical Solutions Health Services Corporation (the Complaint and Amended Complaint are collectively referred to as "Complaint"). By stipulation of counsel, Defendant Siemens Corporation was dismissed from the action by the Court on April 19, 2006. Defendants Siemens Medical Solutions USA, Inc. and Siemens Medical Solutions Health Services Corporation answered the Amended Complaint on April 18, 2006.

Plaintiff has attempted to serve process upon Defendant Siemens AG, a German company, through the Delaware Secretary of State. Such service is not consistent with the requirements of the Hague Convention. In addition, Siemens AG has no contacts with the state of Delaware, and as such, the Court has no jurisdiction over Siemens AG for the conduct alleged in the Complaint. Siemens AG moves, pursuant to Rule 12(b)(2) and (b)(5), to dismiss the Complaint for insufficiency of service of process and for lack of personal jurisdiction.

## II.    SUMMARY OF ARGUMENT

1. Siemens AG moves to dismiss the Complaint for insufficiency of service and lack of jurisdiction. Service of the Complaint was not sufficient as Plaintiff has not served Siemens AG pursuant to the requirements of the Hague Convention on Service Abroad ("Hague Convention"). Because the Federal Republic of Germany is a signatory to the Hague Convention, Fed. R. Civ. P. 4(f)(1) requires service pursuant to that treaty. Germany has specifically objected to Article 10 of the Hague Convention, which permits the service of judicial papers by mail in those States of destination which do not object to such service. Accordingly, service by mail pursuant to the Delaware long arm statute is not permitted upon a German

company.  Because Siemens AG is a German corporation, *see* Declaration of Erhard Meitinger,
attached hereto as Exhibit A at ¶ 2, there exists no basis for avoiding Hague Convention service
in this case.

       2.  Moreover, the Court has no jurisdiction over Siemens AG for the conduct
alleged in the Complaint.  Siemens AG is a German company having no contacts with the state
of Delaware and the Complaint does not contain any allegations linking Siemens AG and
Delaware.

       3.  The Complaint against Siemens AG should accordingly be dismissed pursuant
to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

## III.    <u>CONCISE STATEMENT OF FACTS</u>

       Plaintiff Syed Iqbal Raza M.D. ("Dr. Raza") alleges that he is a citizen of
Pakistan.  Compl. ¶ 1.  Dr. Raza alleges that, in 1997, he began to collect data from 104 medical
professionals in an attempt to track and evaluate their performance.  Dr. Raza further alleges that,
by 2000, he developed a "concept" for hospital management called Dr. Sir.  *Id.* ¶ 11.  Dr. Raza
claims that he disclosed his "concept" to various individuals and entities in Pakistan, including
officials at Strengthening of Health Services Academy in Pakistan and the Counselor Head
Economic and Commercial Section of the German Embassy in Islamabad.  *Id.* ¶¶ 12-13.

       Dr. Raza alleges that "[i]n November 2000, [he] briefed the Counselor Head
Economic and Commercial Section of the German Embassy at Islamabad on the concepts for Dr.
Sir whereupon the Counselor told Dr. Raza that he believed that Siemens would likely be
interested in entering into a partnership with Dr. Raza to develop a complete software product.
Dr. Raza then permitted the Counselor to forward his concept papers to Siemens for the limited
purpose of determining whether Siemens would be interested in engaging in a joint venture to

develop such a product." *Id.* ¶ 13. Dr. Raza fails to identify the Siemens entity to which he purports to refer.

Dr. Raza further claims that in January, 2001, an individual named Farrukh Latif of Siemens Pakistan Engineering Company, Ltd. sent him a letter pertaining to Dr. Sir. *Id.* ¶ 14. Dr. Raza alleges that, in that letter, Mr. Latif from Siemens Pakistan Engineering Company, Ltd. stated that "the Pakistani entity was not sufficiently related to the 'Hospital Management side' of Siemens to benefit" from the concept. *Id.* Dr. Raza then alleges, upon information and belief, that some unidentified Siemens entity launched Soarian®, a hospital management software product, in the United States in October 2001. *Id.* ¶ 17.

Dr. Raza's Complaint is devoid of any allegations whatsoever regarding any purported conduct or activities allegedly taken or done by Siemens AG, much less any contacts by Siemens AG with the state of Delaware.

## IV.    **ARGUMENT**

### A.    Standard of Review

Siemens AG moves to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Once the question of personal jurisdiction is raised, the plaintiff bears the burden of establishing jurisdiction. *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993). Plaintiff must come forth with affirmative, competent evidence beyond the bare allegations of the pleadings to support the Court's jurisdiction. *See Patterson v. Federal Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990), *cert. denied*, 498 U.S. 812 (1990); *Provident National Bank v. California Federal Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) (plaintiff bears burden of establishing with "reasonable particularity" sufficient contacts between defendant and forum state to support jurisdiction).

Siemens AG also moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process. Once a party moves to dismiss under Rule 12(b)(5), "the party making service has the burden of demonstrating its validity." *Reed v. Weeks Marine, Inc.*, 166 F.Supp.2d 1052, 1054 (E.D. Pa. 2001) (citing *Grand Entm't Group, Ltd. v. Start Media Sales, Inc.*, 988 F.2d 476, 488-89 (3d Cir. 1993)).

    B.    Dr. Raza's Complaint Against Siemens AG Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(5) for Insufficiency of Service of Process

As a threshold matter, this Court lacks personal jurisdiction over Siemens AG because Siemens AG was not properly served with Dr. Raza's Complaint. As the Supreme Court has recognized, it is a "bedrock principle that an individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). In the absence of proper service of process, a court "may not exercise power over a party the complaint names as a defendant." *Id.* at 350. *See also Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 570 (3d Cir. 1996) (holding summons ineffective in conferring personal jurisdiction if not served in accordance with Fed. R. Civ. P. 4). Further, mere notice is insufficient to validate service that is otherwise ineffective. *See id.*, 99 F.3d at 568; *Sene v. MBNA America, Inc.*, C.A.No. 04-01331, 2005 U.S. Dist. LEXIS 20786, at *5 (D. Del. Sept. 20, 2005).[1]

Rule 4(h) of the Federal Rules of Civil Procedure, by reference to Rule 4(f), requires that service upon a foreign corporation shall be effected by "internationally agreed means reasonably calculated to give notice, such as authorized by the Hague Convention." Fed. R. Civ. P. 4(f); *see also E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin*

---

[1] All unreported cases are attached hereto in Exhibit C.

*Intermediates, S.A.S.*, 197 F.R.D. 112, 123 (D. Del. 2000), *affirmed in part on other grounds*,

269 F.3d 187 (3d Cir. 2001). The Hague Convention applies where civil litigants have cause to

transmit judicial or extrajudicial documents internationally. *See Volkswagenwerk*

*Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988); *duPont*, 197 F.R.D. at 123. "In all

cases in which the Hague Convention applies the Supremacy Clause preempts inconsistent

methods of service." *Id.; Volkswagenwerk*, 486 U.S. at 699.

       Dr. Raza, however, has not served Siemens AG pursuant to the Hague

Convention. Instead, it appears that Raza served the Delaware Secretary of State and mailed an

English copy of the Complaint to the headquarters of Siemens AG in Germany. *See*, Return of

Service, *DI* 2, 8.[2]

       As such, it appears that Dr. Raza has attempted to utilize section 3104(d) of

Delaware's long arm statute to attempt service on Siemens AG. Under Section 3104(d), service

is accomplished only if plaintiff sends by registered mail to the defendant a notice consisting of a

copy of the process and complaint served upon the Secretary of State. However, as Section

3104(d) requires delivery of judicial papers internationally, service pursuant to the Hague

Convention is required and any inconsistent method of service under the state long arm statute is

preempted. *See duPont*, 197 F.R.D. at 123; *see also* Fed. R. Civ. P. 4(2) (allowing alternate

means of service only "if there is no internationally agreed means of service or the applicable

international agreement allows other means of service."); *Colter v. Siemens Energy &*

*Automation, Inc.*, C.A.No. 94-08, 1994 U.S. Dist. LEXIS 19012, at *6 (N.D. Ga. Aug. 25, 1994)

---

[2]  Based upon Dr. Raza's Request for an Order Authorizing a Special Process Server, *DI* 12, it appears that Dr. Raza has now recognized that service on Siemens AG must be accomplished pursuant to the requirements of the Hague Convention. Siemens AG nevertheless files this Rule 12(b)(5) Motion out of an abundance of caution and to protect its rights, particularly given Plaintiff's counsel's correspondence that Siemens AG recently received notice of the action by mail.

("Because the Federal Republic of Germany is a signatory to the Hague Convention, the plaintiff must proceed under the Convention or any other internationally agreed means of serving [German] defendant.").

The Republic of Germany is a signatory to the Hague Convention. Pursuant to Article 10 of the Hague Convention, civil litigants may send judicial documents through the postal channels, "*[p]rovided the State of destination does not object.*" (emphasis added). The Republic of Germany has specifically objected to Article 10. *See* The Hague Convention, 20 U.S.T. 361 at Art. 10 and n.7a (containing German reservations and objections) (1990); Fed. R. Civ. P. 4 advisory committee's note; *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir.), *cert. denied*, 454 U.S. 1085 (1981) (alternative methods of service may not be used if the nation receiving service has objected to particular method); *Davies v. Jobs & Adverts Online, GMBH*, 94 F. Supp. 2d 719, 722 n.6 (E.D. Va. 2000) ("Germany. . . has expressly objected to service by mail, and requires that service be effected on the Central Authority"); *Pittsburgh Nat'l Bank v. A.B. Kassir*, 153 F.R.D. 580, 582 n.l (W.D. Pa. 1994) (same). *See also* U.S. State Department web site at http://travel.state.gov/law/info/judicial/judicial_648.html ("Service of process in the FRG can be obtained through the method prescribed by the Convention. Any other methods of service, including attempts at service by mail, are considered illegal in the FRG and an affront to its judicial sovereignty"), attached hereto as Exhibit B.[3]

---

[3] Where a signatory to the Hague Convention has not objected to service by mail, Delaware courts have held that service can be effectuated under the state's long arm statute by mailing a copy of the judicial papers. *See, e.g., Quinn v. Keinicke*, 700 A.2d 147, 155 and n.12 (Del. Super. 1996) (holding that mailing of service to Danish citizen compliant with Hague Convention because Denmark has not objected to Article 10(a)). Dr. Raza may attempt to rely on *Quinn* to suggest that service on Siemens AG was provided by sending a copy of the judicial documents by mail. Such an argument would be incorrect and misplaced. The Court in *Quinn* was quick to point out that Denmark had not objected to the sending of judicial documents by postal channels. *Id.* at 155 and n. 12. Thus, by contrast, where, as here, the receiving country has expressly objected to Article 10, service by mail is illegal, and service under Rule 4 cannot be made by sending the judicial papers through postal channels.

Moreover, the German Central Authority requires that the document to be served be translated into German.  The German resolution enacting the Hague Convention states, "Formal Service (paragraph 1 of Article 5 of the Convention) shall be permissible only if the document to be served is written in or translated into, the German language."  20 U.S.T. 361 at Art. 5 and n.7a (containing German reservations and objections) (1990); *Pennsylvania Orthopedic Association v. Mercedes-Benz AG*, 160 F.R.D. 58, 60 (E.D. Pa. 1995) (holding that plaintiffs who failed to translate summons into German were not in compliance with German requirements and Hague Convention).

Dr. Raza's attempt to serve Siemens AG by sending a copy of the summons and complaint by mail under the Delaware long arm statute (without a German translation of the summons and Complaint) does not comply with the Hague Convention, and indeed, is expressly prohibited by Germany's objection to judicial documents being sent by postal channels.  Dr. Raza's attempt to use the Delaware long arm statute, therefore, constitutes impermissible service, and as such, his attempted service on Siemens AG is accordingly void.  Because Siemens AG has not been served properly, jurisdiction cannot lie and this Court should dismiss Siemens AG from this action.

C.     Dr. Raza's Complaint Against Siemens AG Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction

This Court should also dismiss Siemens AG from this action because this Court lacks personal jurisdiction over Siemens AG.  Siemens AG does not maintain the continuous and systematic contacts with Delaware necessary to establish general jurisdiction.  Nor does Siemens AG possess any "minimum contacts" related to this dispute that would create specific jurisdiction.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must first apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction, and second must determine whether the exercise of personal jurisdiction satisfies the requirements of the Due Process Clause of the Constitution. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). The Delaware long arm statute provides that a court may exercise personal jurisdiction over non residents who, *inter alia*, transact business in the state. *See* 10 *Del. C.* § 3104(c)(1).

Due process requirements for the exercise of personal jurisdiction are satisfied when a nonresident corporate defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In order for the exercise of jurisdiction to be proper, it is necessary that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

To satisfy his burden to show that the exercise of jurisdiction is proper, Dr. Raza must establish either specific or general jurisdiction. "Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state; general jurisdiction arises when the defendant has continuous and systematic contacts with the state, irrespective of whether the defendant's connections are related to the particular cause of action." *Reach & Associates, P.C. v. Dencer*, 269 F.Supp.2d 497, 502 (D. Del. 2003); (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 404, 414-16 (1984)). To invoke

specific jurisdiction, a plaintiff must prove that the defendant "purposely directed his activities at residents of the forum" and the litigation must have resulted from alleged injuries that "arise out of or relat[e] to those activities." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000).

If the suit is unrelated to the defendant's purposeful activities with the forum state, general jurisdiction may apply, but only if the plaintiff can show that the nonresident defendant regularly does business or engages in a persistent course of conduct in the state. *See Reach & Associates*, 269 F.Supp.2d at 505. The standard to show general jurisdiction "is high in practice and not often met." *Id.*; *Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982)) ("the facts required to establish general jurisdiction must be 'extensive and persuasive'").

Dr. Raza's Complaint is devoid of a single allegation linking Siemens AG to Delaware. Instead, in his Complaint, Dr. Raza alleges only that "This Court can properly exercise personal jurisdiction over defendant Siemens AG by virtue of the fact that it is affiliated with and/or wholly owns defendants Siemens Corporation, Siemens Medical Solutions Health Services Corp. and Siemens Medical Solutions USA, Inc. each of which is incorporated in the State of Delaware, and as such does business through its agents. . . thereby availing itself of the laws of the State of Delaware and deriving the protections and benefits thereof." Compl. ¶ 8. This allegation, however, is patently insufficient as a matter of law to confer personal jurisdiction over Siemens AG.

### 1. General Jurisdiction

As Delaware courts have repeatedly held, the ownership of a Delaware subsidiary does not support a court's exercise of general jurisdiction. *Ace & Co., Inc. v. Balfour Beatty PLC*, 148 F.Supp.2d 418, 422-23 (D. Del. 2001) ("[T]he mere fact that a non-Delaware

corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent."); *DuPont*, 197 F.R.D. at 121 (rejecting argument that a parent's derivation of revenue from its Delaware subsidiaries conferred general jurisdiction over parent); *Outokumpu Engineering Enterprises, Inc.*, 685 A.2d 724, 728, n.1 (Del. Super. 1996); *C.R. Bard Inc. v. Guidant Corp.*, 997 F.Supp. 556, 561 (D. Del. 1998) (holding subsidiary's use of parent's name cannot confer general jurisdiction over parent); *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1306 (1990) ("Owning one subsidiary, where that subsidiary is not the alter-ego or general agent of the parent corporation, is not sufficient to establish substantial activities in the forum.").

Plaintiff has not, and cannot, plead any facts sufficient to establish general jurisdiction over Siemens AG. Other than its ownership of subsidiaries incorporated in Delaware, Siemens AG has no other contacts with the state:

- Siemens AG is not incorporated in Delaware;

- Siemens AG is not registered to do business in Delaware;

- Siemens AG has no registered agent in Delaware;

- Siemens AG maintains no offices in Delaware;

- Siemens AG owns no personal or real property in Delaware;

- Siemens AG has no telephone listing or mailing address in Delaware;

- Siemens AG maintains no bank accounts in Delaware;

- Siemens AG employs no personnel in Delaware; and

- Siemens AG has not filed or been obliged to file a tax return, or to pay taxes in, Delaware.

*See* Ex. A ¶¶ 2, 3. Dr. Raza simply has not alleged any facts (nor could he) showing that Siemens AG maintained a persistent presence in the state of Delaware.

Nor has Dr. Raza alleged any facts to support jurisdiction on the basis of any alter-ego or agency theory. The alter ego theory requires that the plaintiff establish "fraud, injustice, or inequity in the use of the corporate form." *C.R. Bard*, 997 F.Supp. at 559; *Ace & Co.*, 148 F.Supp. 2d at 425. Dr. Raza has not and cannot allege any facts to support an allegation that Siemens AG has in any way abused the corporate form. *See* Ex. A ¶¶ 5, 6, 7. Moreover, any argument that jurisdiction on Siemens AG can be conferred on the basis of an agency theory fails because Dr. Raza has not alleged (nor could he) that any conduct was instigated by Siemens AG or that any conduct related to his claims took place in Delaware. *See Ace & Co.*, 148 F.Supp.2d at 425 (rejecting agency theory); *Reach*, 269 F.Supp.2d at 507 (rejecting agency theory because "none of the behavior underlying the Plaintiff's claims occurred in Delaware."); *C.R. Bard*, 997 F.Supp. at 561 (refusing to impute actions of subsidiary to parent under either alter ego theory or agency theory).

### 2.    Specific Jurisdiction

The Complaint also fails to set forth any basis upon which this Court could exercise specific jurisdiction consistent with either the Delaware long arm statute or the due process clause. Dr. Raza has not alleged that Siemens AG purposefully directed any activities toward Delaware or any injuries that "arise out of or relate to" those activities. *BP Chems.*, 75 F.3d at 151. On the contrary, Dr. Raza admits that his claims arise out of activities that purportedly occurred in Pakistan. *See* Am. Compl. ¶¶ 11-16.

Quite simply, the Complaint is devoid of any allegations as to any minimum contacts Siemens AG had with the state of Delaware, other than the legally insufficient averment that an indirect subsidiary of Siemens AG sold, or offered for sale, Soarian® software in the state. *See* Am. Compl. ¶ 9. Such an allegation is plainly insufficient to support an exercise of jurisdiction over Siemens AG. *See C.R. Bard*, 997 F.Supp. at 561 (refusing to confer jurisdiction

on parent based upon subsidiary's sale of product at issue in Delaware). Indeed, Dr. Raza could not even credibly allege that Siemens AG could "reasonably anticipate being haled into court" in Delaware for alleged actions that purportedly occurred on the other side of the globe. *Burger King*, 471 U.S. at 474.

Accordingly, this Court should dismiss Siemens AG from this action as this Court lacks personal jurisdiction over Siemens AG.

V.    **CONCLUSION**

For the reasons set forth above, this Court should grant Siemens AG's Motion to

Dismiss Plaintiff's Complaint against it with prejudice.

Respectfully submitted,

/s/ Larry R. Wood, Jr.

OF COUNSEL:

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)

M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500 (Telephone)
(302) 421-8390 (Fax)

*Attorneys for Defendant Siemens AG*

Dated:  May 2, 2006

-13-

## **CERTIFICATE OF SERVICE**

I, Phillip T. Mellet, hereby certify that on this 2nd day of May, 2006, I caused to

be served the foregoing Defendant Siemens AG's Opening Brief in Support of its Motion to

Dismiss Plaintiff's Complaint, together with the Exhibits, *via* CM/ECF upon the following:

> Martin S. Lessner, Esquire
> Young, Conaway Startgatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19899
> mlessner@ycst.com

> /s/ Phillip T. Mellet_____
> Phillip T. Mellet (DE No. 4741)

**EXHIBIT  A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION

I, Erhard Meitinger, make the following declaration under penalty of perjury under the laws of the United States:

1.    My name is Erhard Meitinger I am employed by Siemens Aktiengesellschaft ("Siemens AG" or the "Company") as the Vice President of the Treasury Department, and my office is located in Munich, Germany. I have been working for Siemens AG or one of its subsidiaries for the past 19 years and am familiar with the structure and business operations of the Company. I understand that a lawsuit has been filed against Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.    Siemens AG is a German corporation, organized under the laws of Germany, with its headquarters in Munich and Berlin. Siemens AG manufactures and sells a broad range of electrical and electronic equipment products, systems, and services into a variety of markets, including automotive, components, power and energy, healthcare, information systems, lighting, automation, transportation and telecommunications.

3.    Siemens AG does not do business in Delaware and has not had a business presence in Delaware to the best of my knowledge at any time.  Specifically:

- Siemens AG is not qualified or registered to do business in Delaware;

- Siemens AG does not maintain an office in Delaware;

- Siemens AG does not have a telephone listing or mailing address in Delaware;

- Siemens AG does not own any real property in Delaware;

- Siemens AG has not authorized or appointed any entity to act as its general agent for accepting service of process of lawsuits in Delaware;

- Siemens AG does not employ any personnel in Delaware;

- Siemens AG has not filed or been obliged to file a tax return, or to pay taxes in, Delaware.

4.      Siemens AG does have ownership interests (direct and indirect) in a number of subsidiaries, which engage in business activities in different parts of the world, including the United States. Siemens AG is the indirect owner of the shares of Siemens Corporation, a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions USA, Inc. a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions Health Services Corporation, a Delaware corporation.

5.      Siemens AG does not direct or control the day-to-day operations or management of Siemens Corporation or Siemens Corporation's subsidiaries. To the contrary, the day-to-day business management and financial operations of Siemens Corporation is directed by that company's own management employees. Siemens Corporation has its own Board of Directors which bears overall responsibility for management and governance of the company. Siemens AG exercises influence over Siemens Corporation, if at all, only in its capacity as a indirect shareholder/ultimate parent and in accordance with the applicable local laws, the respective articles of incorporation and bylaws, and the rights of any other shareholders. This is the explicit corporate policy of Siemens AG.

6.      Likewise consistent with the explicit corporate policy of Siemens AG is the fact that Siemens Corporation is separate from and legally independent of Siemens AG. Specifically:

- All corporate formalities between the companies are observed;

- The companies have separate officers and independent boards of directors;

- The companies conduct separate board meetings and maintain separate minutes of such meetings;

- The companies maintain separate books, records, and financial accounts;

- The companies have separate headquarters, files and office space;

- Transactions between the companies are conducted on an "arms-length" basis and are recorded by the appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles; and



7.     Siemens AG is not responsible for paying the United States or Delaware taxes of Siemens Corporation, or its subsidiaries; nor is Siemens Corporation or its subsidiaries responsible for paying taxes owed in Germany by Siemens AG.

Dated:  May 2, 2006

-3-

**EXHIBIT  B**

Monday May 1, 2006

## Judicial Assistance Germany

DISCLAIMER: The information in this circular relating to the legal requirements of specific foreign countries is provided for general information only and may not be totally accurate in a particular case. Questions involving interpretation of specific foreign laws should be addressed to foreign counsel or the foreign central authority for the Hague Conventions.

### A. SERVICE OF PROCESS:

#### 1. Civil Cases:

**a) Personal Service:** The FRG is party, as is the United States, to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 28 USCA (Appendix following Rule 4 FRCvP); Martindale-Hubbell International Law Digest, Part VII: "Selected International Conventions" (1993 Edition).

Pursuant to the Convention personal service may be obtained by sending a completed "Request and Summary" (See Martindale- Hubbell for the appropriate forms), with the documents to be served directly to the appropriate Central Authority. It is important to read the footnotes of the Convention which contain the German reservations. Footnote 7a, following the text of the Convention, contains the German reservations. The reservations include the addresses for the designated Central Authorities. Each "Land", or state, of the FRG has its own Central Authority. A list with addresses for those Authorities is also included in this flyer.

A request form may also be obtained from any U.S. Marshall"s office. Ask for Memorandum No. 386, Revision 3.

One of the German reservations states that the documents to be served must be accompanied by German translations. This is a requirement upon which the Central Authorities generally insist. The documents to be served and their translations should be in duplicate. The "Request and Summary" themselves need not be translated into German.

Service of process in the FRG can be obtained through the method prescribed by the Convention. Any other methods of service, including attempts at service by mail, are considered illegal in the FRG and an affront to its judicial sovereignty.

#### 2. Criminal Cases:

**a) Personal Service:** The Hague Service Convention does not apply to criminal cases. Therefore, in order to obtain personal service, it is necessary to prepare a letter rogatory, as described in 4 Moore"s Federal Practice 28.05. As stated in Moore"s, it should be sent through diplomatic channels, in duplicate, with German translations, also in duplicate. In the letter rogatory it is important to specifically request that the documents be served personally.

The letter rogatory and documents to be served should be sent to:

CA/OCS/ACS/WE
Room 4817, N.S.
Department of State
Washington, D.C. 20520-4818

Effective June 1, 2002, there is a $650.00 consular fee for processing letters rogatory (See Federal

Register, May 16, 2002, Volume 67, Number 95, Rules and Regulations, Pages 34831-34838; 22 CFR 22.1, item 51). Counsel are requested to submit a certified bank check in the amount of $650.00 payable to the U.S. Embassy Berlin). Corporate or personal checks are not acceptable. Foreign authorities may also charge a fee. Counsel will be notified by the U.S. embassy and/or the Office of American Citizens Services and Crisis Management in the Department of State if the Embassy is advised by foreign authorities of any applicable local fees. There is no consular fee for letters rogatory on behalf of federal, state or local government officials. (See 22 CFR 22.1, item 53). If the letter rogatory requests compulsion of evidence from more than one witness or service of process on more than one person, multiple fees may be charged if more than one foreign court is required to execute the request due to multiple jurisdictions.

The FRG does not object to American Consular Officers serving subpoenas on American citizens in that country. However, American Consular Officers, by regulation, may serve subpoenas only on American citizens in criminal cases and, usually, only if the subpoenas emanate from a Federal Court. If the person to be served is an active duty member of the U.S. Armed Forces stationed in the FRG, it would be advisable to first consult with CA/OCS/ACS/WE by calling (202) 647-6178.

**b) Service by Mail:** The same German objections to service by mail in civil cases also prevail in criminal cases.

## B. OBTAINING EVIDENCE:

### 1. Civil Cases:

a) In civil cases, where a witness is willing to testify voluntarily, a deposition may be conducted at the American Embassy in Bonn or any of the American Consulates. Depositions may be taken on notice or by issuance of a commission by an American court to a "Consular Officer". See 22 CFR 92.53.

Effective June 1, 2002, consular fees related to taking depositions or executing commissions to take testimony changed. See Federal Register, May 16, 2002, Volume 67, Number 95, Rules and Regulations, Page 34831-34838; 22 CFR 22.1. A deposit for fees is payable in advance prior to taking of deposition based on consular officer"s estimate of time required. Make certified or corporate check payable to "American Embassy (name of city)".

Effective June 1, 2002, the consular fees for a deposition involving little participation by consular officers is $235.00, representing one hour or part thereof of consular officer time. See Federal Register, May 16, 2002, Volume 67, Number 95, Rules and Regulations, Page 34831-34838; 22 CFR 22.1, Item No. 52(b). In addition, there is a $475.00 fee for scheduling/arranging appointments for depositions, including video teleconference depositions (per daily appointment); Item No. 52(a).

The new fees are:

Item No. 52(a) - Scheduling/arranging appointments for depositions, including depositions by video teleconference (per daily appointment) - $475 (If an appointment is changed and a new appointment must be scheduled and new arrangements made, a new $475 fee will be charged each time.)

Item No. 52(b) - Attending or taking depositions, or executing commissions to take testimony (per hour or part thereof) - $235 per hour plus expenses

Item No. 52(c) - Swearing in witnesses for telephone (teleconference) depositions - $235

Item No. 52(d) - Supervising telephone (teleconference) depositions (per hour or part thereof over the first hour) - $235 per hour plus expenses

Item No. 52(e) - Providing seal and certification of depositions - $60.00

Postage for Return of Transcript - Actual Costs

Although technically the consular officer is "taking the deposition", attorneys for either side may pose all questions orally or in writing. Authority for American Consular Officers to depose willing witnesses of German or third-country nationality is derived from Agreements Between the United States of America and the Federal Republic of Germany, T.I.A.S. 9938.* Any deposition of German or third-country nationals** must be in accordance with the agreements made in this exchange of diplomatic notes.

b) In civil cases in which a witness must be compelled to testify, a German judge must pose the questions in a German court proceeding. Nevertheless, an American attorney may request to be present and may, on occasion, have the flexibility in such a proceeding to pose additional questions through the German Judge. Just as in requests for service, requests for evidence from involuntary witnesses must follow the procedures set forth in the appropriate convention, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Part VII USCA 1781 (1977 Supp.); Martindale-Hubbell International Law Digest, Part VII (1993). Essentially, the same rules as those for the Service Convention (described previously) apply. Although under the Evidence Convention, the Letter of Request, as well as questions and all other documents must be translated into German and submitted in duplicate. A model letter of request follows the text of the Convention.

* Key points under the notes are: (a) that absolutely no compulsion be brought to bear on the witness to appear or to provide testimony (e.g. the request to give information may not be called a "summons" nor may the interview be called an "interrogation"); (b) witnesses must give their expressed consent to be interviewed outside the consulate (i.e. at their home or place of business); and (c) witnesses have a right to be accompanied by an attorney.

** The issue of whether non-Germans who do not have a business or residence in Germany may be deposed is presently in dispute.

For background information, see the Report on the work of the Special Commission on the Operation of the Hague Convention on the Taking of Evidence Abroad in Civil or Commericial Matters prepared by the United States Delegation at 17 Int"l. Legal Mat. 1417 (Nov. "78). A useful discussion of the operation of the Convention in the FRG is contained in an article by Donald R. Shemanski, "Obtaining Evidence in the Federal Republic of Germany: The Impact of the Hague Evidence Convention on German American Judicial Cooperation," International Lawyer, Vol. 17, #3, Summer 1983 p. 465-487.

**2. Criminal Cases:**

a) The Hague Evidence Convention does not apply to criminal cases. In criminal cases, the taking of evidence from any witness must be handled by a German court pursuant to written questions submitted under cover of a letter rogatory, set up as described in the previous paragraphs concerning service in criminal cases. Letters rogatory can take some time to execute and return to the American requesting court. Often more than three months.

**C. ADMINISTRATIVE CASES:**

a) German authorities do not regard The Hague Evidence and Service Conventions as applying to administrative cases. They may, however, entertain requests for both service and evidence in these cases if made by letters rogatory, arranged and sent as previously described.

## D. ENFORCEMENT OF JUDGMENTS

There is no treaty, convention, or other international agreement in force between the FRG and the United States regarding enforcement of judgments. Expedited enforcement of American judgments may not be available. For general information on German law, see the Law Digest on the Federal Republic of Germany in Martindale-Hubbell International Law Digest. Lists of attorneys who practice in the FRG, prepared by our consular posts in that country are available from CA/OCS/ACS/WE upon request.

## E. AMERICAN POSTS IN THE FRG WITH CONSULAR FUNCTIONS

The American Embassy Bonn
Deichmannsaue 53170
Bonn, FRG

*-or-*

PSC 117, Box 345
APO AE 09080

Telephone: (228) 3391
Fax: (228) 332-712

United States Embassy Office Berlin
Clayallee 170
14169 Berlin (Dahlem), FRG

*-or-*

APO AE 09265

Telephone: (30) 832-9233
Fax: (30) 831-4926

American Consulate General Frankfurt
Siesmayerstrasse 21
60323 Frankfurt am Main, FRG

*-or-*

PSC 115
APO AE 09213-0115

Telephone: (69) 7535-0
Fax: (69) 748-938

American Consulate General Hamburg
Alsterufer 27/28
20354 Hamburg, FRG

Telephone: (40) 411-710
Fax: (40) 443-004

American Consulate General Munich
Koeniginstrasse 5

80539 Muenchen, FRG

-or -

Unit 24718
APO AE 09178

Telephone: (89) 28880
Fax: (89) 280-5163

## F. CENTRAL AUTHORITIES FOR THE FEDERAL REPUBLIC OF GERMANY

Baden-Wuerttemberg
Justizministerium Baden-Wuerttemberg Schillerplatz
4 70173 Stuttgart

Bavaria
Bayerisches Staatsministerium der Justiz
80097 Muenchen

Berlin
Senator fuer Justiz
Salzburger Strasse 21-25
10825 Berlin

Brandenburg
Ministerium der Justiz des Landes Brandenburg
Heinrich-Mann-Allee 107
14473 Potsdam

Bremen
Praesident des Landgerichts Bremen
Domsheide 16
28195 Bremen

Hamburg
Praesident des Amtsgerichts Hamburg
Sievekingplatz 1
20535 Hamburg

Hessen
Hessischer Minister der Justiz
Luisenstrasse 13
65185 Wiesbaden

Lower Saxony
Niedersaechsischer Minister der Justiz Am Waterloo Platz 1
30169 Hannover

Mecklenburg-Western
Minister fuer Justiz, Bundes- und Pomerania
Europa Angelegenheiten

Demmlerplatz 1-2
19053 Schwerin

Northrhine-Westphalia Der Praesident des Oberlandesgerichts Cecilienallee 3
40474 Duesseldorf

Rhineland-Palatinate
Ministerium der Justiz
Ernst-Ludwig-Strasse 3
55116 Mainz

Saarland
Minister fuer Rechtspflege und Bundesangelegenheiten
Zaehringerstrasse 12
66119 Saarbruecken 1

Saxony
Das Saechsische Staatsministerium der Justiz
Archivstrasse 1 PSF 100930
01076 Dresden

Saxony Anhalt
Das Ministerium der Justiz des Landes Sachsen-Anhalt
Wilhelm-Hoepfner-Ring 46
39116 Magdeburg

Schleswig-Holstein
Justizminister des Landes Schleswig-Holstein
Lorentzendamm 35
24103 Kiel

Thuringia
Das Justizministerium des Landes Thueringen
Alfred-Hess-Strasse 8 99094 Erfurt

Return to Judicial Assistance Page

 This site is managed by the Bureau of Consular Affairs, U.S. Department of State. External links to other Internet sites should not beconstrued as an endorsement of the views contained therein. Copyright Information   Disclaimers

**EXHIBIT  C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## APPENDIX OF UNREPORTED OPINIONS

*Sene v. MBNA America, Inc.,* Civ. No. 04-01331,                                    A-1
2005 U.S.Dist. LEXIS 20786 (D. Del. Sept. 20, 2005)


*Colter v. Siemens Energy & Automation, Inc.,*                                      A-4
Civ. No. 94-08-WCO, 1994 U.S. Dist. LEXIS 19012
(N.D. Ga. Aug. 25, 1994)

1 of 1 DOCUMENT

MATY SENE, Plaintiff, v. MBNA AMERICA, INC., Defendant.

Civil Action No. 04-1331-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 20786

September 20, 2005, Decided

COUNSEL: [*1] Kester I.H. Crosse, Esquire, of WILLIAMS & CROSSE, Wilmington, Delaware. Of Counsel: Tshaka H. Lafayette, Esquire of LAFAYETTE LAW GROUP, P.C., Philadelphia, Pennsylvania, for Plaintiff.

Scott A. Hold, Esquire, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware, for Defendant.

JUDGES: Farnan, District Judge.

OPINIONBY: Farnan

OPINION:

MEMORANDUM OPINION

September 20, 2005
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant's Motion To Dismiss (D.I. 4). For the reasons discussed, Defendant's motion will be granted.

I. Background

On October 5, 2004, Plaintiff filed a complaint, alleging that Defendant, Plaintiff's former employer, engaged in racially discriminatory practices in violation of Title VII of the Civil Rights Act of 1964, Title 1 of the Civil Rights Act of 1991, and the Delaware Discrimination Act. No summons was issued by the Clerk at that time. Plaintiff, after requesting a waiver of service and not receiving it, served a copy of the complaint on Defendant's custodian of records. A summons, which accompanied the complaint, contained neither the signature of the Clerk nor the seal of the Court. Defendant [*2] filed a Motion To Dismiss, and Plaintiff responded, rec-

ognizing February 3, 2005 to be the last day service could be effected under the 120-day rule of Federal Rule of Civil Procedure 4(m). On February 8, 2005, Plaintiff served Defendant with a summons bearing the signature of the Clerk and the seal of the Court.

By its Motion, Defendant moves the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction, insufficient service of process, and failure to serve the complaint and summons within 120 days. Because the 90-day limitations period of Title VII has expired, a dismissal by the Court would be with prejudice.

II. Parties Contentions

Defendant contends that the Court lacks personal jurisdiction over it due to a defective summons, that service of process on the custodian of records was insufficient, and that the time for serving the summons and complaint has passed and an extension should not be granted.

In response, Plaintiff contends that he had time to correct the defective summons, and therefore, he should be granted leave to amend the summons without service on Defendant. Plaintiff also contends that dismissal [*3] is not warranted, particularly in light of the statute of limitations imposed by Title VII and the fact that Defendant has not been prejudiced. Furthermore, Plaintiff requests that the Court declare the custodian of records to be a person authorized to receive service for Defendant.

III. Discussion

A. Whether process was sufficient so as to give the Court personal jurisdiction over Defendant

Federal Rule of Civil Procedure 4(a) provides that the summons to be served on the defendant "shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff." FED. R. CIV. P. 4(a).

2005 U.S. Dist. LEXIS 20786, *

Compliance with this rule is required to give a court personal jurisdiction over the defendant. Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996) (holding the court did not have personal jurisdiction over the defendant because the summons did not contain the signature of the clerk or the seal of the court). Failure to comply is "fatal [*4] to the plaintiff's case. The parties cannot waive a void summons." Id.

If the defendant raises the issue of the plaintiff's failure to comply with Rule 4(a) in a motion or a responsive pleading, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(2). Ayres, 99 F.3d at 569. When the issue is raised by the defendant, "it becomes unnecessary for the district courts to consider such questions as whether service was properly made, or whether an extension to the 120-day service period should be granted under Rule 4(m)." Id.

Plaintiff argues that Defendant was not actually prejudiced by the "minor, technical error" in the summons, and therefore, Plaintiff should be permitted to amend the summons without additional service on Defendant. (D.I. 8). The Court's lack of personal jurisdiction, however, is more than just a minor, technical error. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). "Requiring the Clerk to sign and issue the summons assures the defendant that the process is valid and enables the Clerk to collect whatever filing fees are required." Ayres, 99 F.3d at 569. [*5]

Additionally, the fact that Defendant had notice of the lawsuit is not helpful to Plaintiff's argument because notice is not enough to confer personal jurisdiction. Omni Capital Int'l, Ltd., 484 U.S. at 104; see also Ayres, 99 F.3d at 569.

Based on the facts presented, the Court concludes that it lacks personal jurisdiction over Defendant. Plaintiff served a summons on Defendant that contained neither the signature of the Clerk nor the seal of the Court, and the lack of signature and seal is fatal.

B. Whether the Court should grant Plaintiff an extension of time under Rule 4(m) to effect service of process

Having concluded that the action should be dismissed for lack of personal jurisdiction, the Court need not "consider such questions as whether service was properly made, or whether an extension to the 120-day service period should be granted under Rule 4(m)." Ayres, 99 F.3d at 569. Although consideration may not be necessary, the Court will address Plaintiff's request for an extension.

Rule 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the [*6] complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Thus, the determination of whether to extend time for service pursuant to Rule 4(m) is a two-part inquiry. First, a court must determine whether good cause exists for the plaintiff's failure to properly effect timely service. Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). If a court finds good cause, the court must grant an extension of time. Id. Second, if good cause is not shown, a court has discretion to grant the plaintiff an extension of time. Id.

1. Whether Plaintiff has demonstrated good cause for his failure to effect timely service

Courts generally consider three factors in determining whether good cause exists: 1) whether the plaintiff has reasonably attempted to effect service; 2) whether the defendant [*7] is prejudiced by the absence of timely service; and 3) whether plaintiff moved for an extension of time for effecting service. United States v. Nuttall, 122 F.R.D. 163, 166-67 (D. Del. 1988) (citations omitted). When evaluating good cause, courts should focus primarily on the plaintiff's reasons for not complying with the time limits of Rule 4. MCI Telecoms. Corp. v. Teleconcepts, 71 F.3d 1086, 1097 (3d Cir. 1995).

Although the Court finds that Defendant did not suffer undue prejudice as a result of Plaintiff's failure to comply with the service requirements of Rule 4, the Court concludes that Plaintiff has not demonstrated good cause. Plaintiff served Defendant with a summons that failed to contain the signature of the Clerk and the seal of the Court. In responding to Defendant's Motion to Dismiss, Plaintiff noted that he had until February 3, 2005, thirteen days from filing that response, to effect service. Rather than correcting the problem at that time, Plaintiff waited until February 8, 2005 to serve Defendant with a proper summons. Plaintiff did not at any time request an extension of the 120 days. Additionally, Plaintiff offers no reason [*8] for his failure to comply with the time limits of Rule 4.

2005 U.S. Dist. LEXIS 20786, *

Plaintiff did not make a reasonable attempt to effect service, and Plaintiff did not move for an extension of time. The Court concludes that Plaintiff has not shown good cause for his failure to effect service within 120 days.

2. Whether, in its discretion, the Court should grant Plaintiff an extension, despite the absence of a showing of good cause

Because the Court has concluded that Plaintiff has not established good cause for failure to timely effect service, the Court will consider whether, in its discretion, Plaintiff should be granted an extension beyond the 120-day period provided by Rule 4(m). The Third Circuit has not provided an exhaustive list of factors district courts should consider when deciding whether to exercise discretion; however, the Third Circuit has advised district courts that the Advisory Committee Notes to the 1993 Amendments to Rule 4 provide some guidance. Petrucelli, 46 F.3d at 1305-06. One of the considerations that the Advisory Notes explain may justify an extension is if the applicable statute of limitations has run. n1 FED. R. CIV. P. 4 [*9] advisory committee's note. The running of the statute of limitations, however, does not require the Court to permit an extension. Petrucelli, 46 F.3d at 1306.

n1 Other factors courts may consider include: whether the defendant has evaded service; whether service was required to be made on multiple defendants; and whether the plaintiff is appearing pro se. FED. R. CIV. P. 4 advisory committee's note. None of these factors is present here.

In Farrace v. United States Department of Justice, 220 F.R.D. 419, 422 (D. Del. 2004), this Court, after considering all the circumstances presented, allowed an extension of time under Rule 4 (m) to prevent the cause of action from being barred by the statute of limitations. The Court, recognizing that it was not required to permit an extension, allowed the extension because the attorney, while trying to effect service, had a death in the family and problems with office staff. Id.

The statute of limitations [*10] on Plaintiff's case has run; however, circumstances like those in Farrace are not present here. Plaintiff has offered no explanation for his failure to serve the summons, other than the defective summons contained a "minor, technical error" that could be corrected. Plaintiff recognized in January that there was a problem with the summons and that he had a certain amount of time to effect service. Still, Plaintiff waited until February 8, 2005 to serve Defendant and did not request an extension of time prior to the deadline.

Courts have warned that plaintiffs should "treat the 120 days with the respect reserved for a time bomb." Petrucelli, 46 F.3d at 1307 (citing Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987)). Plaintiff did not heed this warning. Thus, the Court concludes that an extension of time is not warranted.

**IV. Conclusion**

Because the Court lacks personal jurisdiction over Defendant, Defendant's Motion To Dismiss will be granted, and this lawsuit will be dismissed pursuant to Federal Rule of Civil Procedure 12(b) (2). n2 Additionally, Plaintiff will not be given an extension [*11] of time to effect proper service under Federal Rule of Civil Procedure 4(m).

n2 Because the Court concludes that it lacks personal jurisdiction over Defendant, the Court will not address Defendant's argument with regard to insufficiency of service of process.

An appropriate order will be entered.

**ORDER**

At Wilmington this 20th day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant's Motion To Dismiss (D.I. 4) is **GRANTED.**

UNITED STATES DISTRICT JUDGE

LEXSEE 1994 U.S. DIST. LEXIS 19012

**EUGENIA T. COLTER VERSUS SIEMENS ENERGY & AUTOMATION, INC., a Delaware corporation; THOMAS J. MALOTT; JOACHIM (JOE) MOELLER; WALLACE L. PORTER; ALEXANDER P. FARKAS; and BIRGIT NICKLAS ILLAN**

**CIVIL NO. 2:94-CV-08-WCO**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, GAINESVILLE DIVISION**

**1994 U.S. Dist. LEXIS 19012**

**August 25, 1994, Decided**
**August 25, 1994, FILED; August 26, 1994, ENTERED**

**COUNSEL:** [*1] PLAINTIFF'S ATTORNEY: PRO SE: Eugenia T. Colter, Dawsonville, GA.

DEFENDANTS' ATTORNEYS: John Lewis Sapp, William Drummond Deveney, Elarbee, Thompson & Trapnell, Atlanta, GA.

**JUDGES:** WILLIAM C. O'KELLEY, Chief United States District Judge

**OPINIONBY:** WILLIAM C. O'KELLEY

**OPINION:**

ORDER

The captioned case is before the court on several motions by the parties. These motions include defendants' motion to dismiss [7-1], plaintiff's motion for default judgment [14-1] and defendants' motion to set aside entry of default or, in the alternative, for leave to file responsive pleadings [16-1; 16-2]. The parties have responded in opposition to these motions. The court considers the motions below.

Defendants' Motion to Dismiss

Defendants Malott, Moeller, Porter and Farkas n1 have moved the court to dismiss the plaintiffs' complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff has responded in opposition to this motion. The court considers the motion below.

n1 Defendant Illan has not filed a formal answer to this suit based upon her allegations of in-

effective service of process. The court addresses these arguments infra.

[*2]

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the allegations of the complaint and all reasonable inferences from the facts alleged must be taken as true." Currie v. Cayman Resources Corp., 595 F. Supp. 1364, 1370 (N.D. Ga. 1984), aff'd in part and rev'd in part, 835 F.2d 780 (11th Cir. 1988). In addition, the motion "should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982)

In this case, the defendants argue that plaintiffs' claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., cannot be maintained against a party in an individual capacity. The court agrees. With regard to Title VII, the Eleventh Circuit Court of Appeals has expressly held that "the relief granted under Title VII is against the employer, not individual employees [*3] whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original); see also Grant v. Lone Star Co., B.L., 21 F.3d 649, 652-53 (5th Cir. 1994); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 584 (9th Cir. 1993). "Individual capacity suits under Title VII are . . . inappropriate." Id.; see also Yeldell v. Cooper Green Hosp., 956 F.2d 1056, 1060 (11th Cir. 1992). Based on this analysis, it appears beyond doubt that the plaintiff cannot maintain a claim against these defendants under Title VII. The defendants' motion as to plaintiffs' claims under Title VII is hereby GRANTED. Plaintiff's Title VII claims against the indi-

1994 U.S. Dist. LEXIS 19012, *

vidual defendants are hereby DISMISSED WITH PREJUDICE.

Next, the court considers plaintiffs' claims under the ADEA. The defendants argue that individual claims under the ADEA are also inappropriate. The court agrees. Under the ADEA, civil liability is limited to the employer. Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993), cert. [*4] denied, 114 S. Ct. 1049 (1994). In the Miller decision, the Ninth Circuit noted:

> The statutory scheme [of the ADEA] indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), and the ADEA limits liability to employers with twenty or more employees, 29 U.S.C. § 630(b), in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

Id. Therefore, defendants' motion as to plaintiff's claims under the ADEA is hereby GRANTED. Plaintiff's ADEA claims against the individual defendants are hereby DISMISSED WITH PREJUDICE. Plaintiff's Motion for Default Judgment and Defendant's Motion to Set Aside Entry of Default or for Leave to File Responsive Pleadings

The plaintiff has previously requested the clerk for an entry of default [*5] against defendant Illan. The clerk made an entry of default on April 22, 1994. The plaintiff has now moved the court to enter a default judgment against defendant Illan. In response, defendant Illan has moved the court to vacate or set aside the clerk's entry of default or, in the alternative, for leave to file responsive pleadings to the plaintiff's complaint. The court considers these motions below.

Defendant Illan is a German citizen who is currently residing in Germany. On this basis, defendant Illan argues that she has not been properly served under the Federal Rules of Civil Procedure. Due to the alleged insufficient service, defendant Illan argues that the clerk's entry of default should be vacated and the plaintiff's motion for default judgment should be denied. The court agrees. The plaintiff has merely sent a copy of the original complaint and the amended complaint to the defen-

dant by certified mail to her address in Germany. This form of service is insufficient under the Federal Rules.

Because defendant Illan is a citizen of a foreign country and because she is currently a resident of Germany, she is subject to service under Federal Rule of Civil Procedure 4(f). Rule 4(f) [*6] provides:

> Service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> . . .
>
>> (C) unless prohibited by the law of the foreign country, by
>>
>>> (i) delivery to the individual personally of a copy of the summons and the complaint; or
>>>
>>> (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the party to be served . . . .

Fed. R. Civ. P. 4(f) (emphasis added). The court finds that the plaintiff has not complied with Rule 4(f). Because the Federal Republic of Germany is a signatory to the Hague Convention, the plaintiff must proceed under the Convention or any other internationally agreed means of serving defendant Illan. The [*7] court notes that the service by mail provision of Rule 4(f) do not apply in this case. Further, if these provisions did apply, the plaintiff has failed to meet their requirements because the copies of her pleadings were mailed directly to the defendant and did not originate from the clerk of the court.

1994 U.S. Dist. LEXIS 19012, *

Because the plaintiff has failed to perfect service upon defendant Illan, the plaintiff's motion for a default judgment is DENIED [14-1] and, pursuant to Federal Rule of Civil Procedure 55(c), defendant Illan's motion to vacate or set aside the clerk's entry of default is GRANTED [16-1]. The clerk is hereby directed to VACATE the entry of default against defendant Illan. Because the court has granted the defendant's motion to set aside the default, defendant Illan's motion to file responsive pleadings is DENIED AS MOOT [16-2].

Conclusion

Based on the above analysis, the defendants' motion to dismiss is GRANTED WITH PREJUDICE [7-1]. The plaintiffs' motion for default judgment is DENIED [14-1]. Defendant Illan's motion to set aside or vacate the clerk's entry of default is GRANTED [16-1] and defendant Illan's motion for leave to file responsive pleadings is DENIED AS MOOT [16-2]. [*8] Finally, the clerk is directed to VACATE the entry of default against defendant Illan.

IT IS SO ORDERED this 25th day of August, 1994.

WILLIAM C. O'KELLEY

Chief United States District Judge