IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF DELAWARE

| | |
|---|---|
| SYED IQBAL RAZA, M.D., | : |
| | :    CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | :    NO. 06-132 (JJF) |
| | : |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : |
| SERVICES CORP., SIEMENS CORPORATION | : |
| and SIEMENS AG, | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANT SIEMENS AG'S ANSWER TO
PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH
THE COURT'S JULY 13, 2006 MEMORANDUM ORDER
<u>REGARDING JURISDICTIONAL DISCOVERY</u>**

OF COUNSEL:

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated:  September 20, 2006

M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE   19899-1709
(302) 777-6500

Attorneys for Defendants

This case involves a claim by Dr. Syed Iqbal Raza, a Pakistani national, against several defendants, including Siemens AG, a German Corporation. Siemens AG filed a motion to dismiss based in part, on the lack of personal jurisdiction. In its July 13, 2006 Memorandum Order, the Court permitted Dr. Raza to conduct discovery "limited to the issue of the Court's jurisdiction over Siemens AG." Siemens AG has provided substantial information to Dr. Raza. Dr. Raza filed this motion: (a) incorrectly trying to make it appear that Siemens AG provided no information; and (b) seeking information that has nothing to do with the issue of whether personal jurisdiction exists over Siemens AG in Delaware. Dr. Raza asserts three arguments allegedly to support his motion. All are incorrect and inconsistent with established law.

First, Dr. Raza argues that Siemens AG has "refused" to provide any information. This contention is belied by the record. Siemens AG provided verified responses and numerous declarations to Dr. Raza, informing him, among other things, (1) about the ownership interests of various subsidiaries; (2) that Siemens Medical Solutions Health Services Corporation ("Health Services"), not Siemens AG, owns Soarian (the allegedly infringing product); (3) that Siemens AG does not sell or license Soarian in Delaware; (4) that Siemens Medical Solutions USA, Inc. (the entity that markets, sells and licenses Soarian in the United States) has not made any sales or licenses of Soarian to any person or entity located in Delaware; (5) that Siemens AG receives no revenue from the sale or license of Soarian in the United States; (6) that Siemens AG does not sell or market any products, or otherwise do business in Delaware; (7) that Siemens AG does not own any property or equipment in Delaware; and (8) that Siemens AG has been involved in a limited number of lawsuits in Delaware. Thus, as explained in Siemens AG's letter to Dr. Raza's counsel, dated August 28, 2006, Siemens AG has provided discovery demonstrating that there exists no factual support for specific jurisdiction under 10 *Del. C.* § 3104(c)(1), or for

general jurisdiction under Section 3104(c)(4). *See* Letter to A. Poff, dated August 28, 2006, attached hereto as Exhibit 1.

Consequently, it is clear that Siemens AG has not "refused" to provide discovery relating to the issue of whether personal jurisdiction exists over Siemens AG in Delaware. Dr. Raza's requests for information *outside* the United States, as well as from *outside* Delaware, are irrelevant to the personal jurisdiction issue. *See, e.g., Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1462 (D. Del. 1991) (holding that to be relevant, contacts "must be with Delaware" "not simply the United States"); *Fishel v. BASF Group*, 175 F.R.D. 525, 530 (S.D. Iowa 1997) (denying motion to compel information from "outside the United States").[1]

Second, Dr. Raza suggests that this Court already ordered Siemens AG to respond to his worldwide, non-Delaware, and otherwise irrelevant and improper requests. Contrary to his mischaracterization, this Court, while recognizing that Dr. Raza had served Siemens AG with numerous discovery requests, stated only that it "will issue an Order for *limited* jurisdictional discovery before ruling on Defendant Siemens AG's Motion to Dismiss." D.I. 26, at 4 (emphasis supplied). The Court did not order Siemens AG to respond to each of Dr. Raza's discovery requests, including the irrelevant/improper ones. Dr. Raza did not tailor his requests to the Court's Order. But, pursuant to the Court's Order, Siemens AG provided discovery in connection with the issue of whether personal jurisdiction exists over Siemens AG in Delaware.

Finally, apparently recognizing that Siemens AG's discovery concretely establishes that there are no contacts by Siemens AG with the state of Delaware sufficient to

---

[1]    Dr. Raza's attempt to ignore the substantial information he received from Siemens AG and to obtain patently irrelevant information is particularly acute given the Supreme Court's admonition that courts "should exercise special vigilance to protect foreign litigants from the danger of" "unnecessary or unduly burdensome discovery." *Societe National Industrielle Aerospatiale v. U.S.D.C.*, 482 U.S. 522, 546 (1987).

create general or specific jurisdiction, Dr. Raza focuses the entirety of his motion to compel on "agency" principles.[2] Delaware law, however, does not support Dr. Raza's arguments.

It has long been the law in Delaware that, for purposes of personal jurisdiction, the "agency theory 'examines the degree of control which the parent exercises over the subsidiary.'" *Telcordia Technologies, Inc. v. Alcatal S.A.*, 2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005); *see also Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400 408-09 (D. Del. 2002) (Farnan, J.) (same). As this Court explained in *Bell Helicopter*, the factors "*relevant* to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Id.* at 409 (emphasis supplied).

Although Dr. Raza has refused to ask for any discovery on these relevant factors, Siemens AG provided such information to Dr. Raza. Siemens AG maintains strict corporate formalities; and each company has separate officers and independent boards. *See* Siemens AG's discovery responses attached as Exhibit 2, including Declarations of Erhard Meitinger. *See eSpeed, Inc. v. Brokertec USA*, 2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004) (rejecting "agency" theory; no evidence that parent disregarded its subsidiaries' corporate form). The discovery Dr. Raza seeks to compel is completely irrelevant to contacts with Delaware or the issue of personal jurisdiction and, moreover, ignores the discovery already provided:

---

[2] *See Monsanto Company v. Syngenta Seeds, Inc.*, 2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006) (Chief Judge Robinson rejected agency theory, and granted motion to dismiss, stating: "Syngenta AG and Participations [like Siemens AG] are holding companies that do not conduct business in Delaware. They [like Siemens AG] are not registered to do business in Delaware. They [like Siemens AG] do not produce, market or sell corn seed or any product in Delaware. They [like Siemens AG] do not have a bank account, a telephone number or an address in Delaware"). Dr. Raza's citation to *In re ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 376, 386-87 (S.D.N.Y. 2002) is misplaced for at least two significant reasons. First, that court concluded that Siemens AG's contacts with the state of New York (*e.g.*, listed on stock exchange and related activities, and purchased business in New York) were sufficient to establish general jurisdiction over Siemens AG in New York. No such contacts exist in Delaware. Second, when discussing the agency alternative, the court analyzed New York law, not Delaware law.

- Patents, Revenue and Location of Source Code *Outside of the United States* (D.R. 5, 8, Int. 3, 7, 15) – subjects 1 and 2 as characterized by Dr. Raza, *see* Motion, at 1-3.[3] Such information is irrelevant as a matter or law. *See supra*, at p.2; *see also Telcordia*, 2005 U.S. Dist. LEXIS 10194, at *23 (ownership of US patent cannot establish personal jurisdiction over foreign patentee in Delaware). Further, Siemens AG has stated that it has not filed any patent applications relating to Soarian in the United States, that it receives no revenue from the sale of Soarian in the United States, that source code for Soarian is located in Pennsylvania, and that no source code is located in Delaware.

- Communications Concerning Soarian *Outside of Delaware* (D.R. 3, Int. 5) – subjects 3 and 4 as characterized by Dr. Raza, *see* Motion, at 3-4.[4] Such vague and overbroad discovery has nothing to do with the "relevant" factors identified by Delaware courts to address the question of whether an agency relationship exists. Siemens AG has provided Dr. Raza with information that it maintains strict corporate formalities with subsidiaries, and that Siemens AG does not do business in Delaware. Dr. Raza's requests for communications that have nothing to do with overlapping officers, day-to-day management, etc. (the "relevant" factors) are irrelevant, overbroad and may (although it is not yet known) seek information protected from disclosure by various privileges. Further, Siemens AG has informed Dr. Raza that no sales or licenses of Soarian have been made in Delaware. *See Reach & Associates v. Dencer*, 269 F. Supp. 2d 497 (D. Del. 2003) (rejecting agency basis as no acts occurred *in* Delaware).

- Since Siemens AG Does Not Do Business in Delaware, Visits by Siemens AG Employees For Any Other Purpose (Int. 10, 11) – subject 5 as characterized by Dr. Raza, *see* Motion, at 4. Siemens AG has provided Dr. Raza with information that it does not do business in the State of Delaware, and as such, any non-business visits by employees would not be relevant to the question of personal jurisdiction over Siemens AG.

As such, this Court should deny Dr. Raza's motion for additional discovery, and, consistent with established law, including *Telcordia*, this Court should also reject Dr. Raza's request to extend the Court's September 15, 2006 deadline to complete jurisdictional discovery.

---

[3] Dr. Raza is simply wrong when he states that Siemens AG has not provided information about the ownership of various subsidiaries, or of Soarian. Siemens AG has provided complete information as to which entities hold 100% of the stock ownership of each of the subsidiaries. *See* Exh. A, at 6 (D.R. 6). Siemens AG has also provided information that Health Services manufactures and owns Soarian. *Id.* at pp. 2-7.

[4] In seeking communications with any "Delaware Entity," Dr. Raza defines "Delaware Entity" to include any entity that conducts business in Delaware. This highlights the irrelevance and substantial overbreadth of these requests. If Siemens AG had a communication with General Motors in Detroit about Soarian, such communication has nothing to do with personal jurisdiction over Siemens AG in Delaware, or whether Siemens AG "controls" a subsidiary under agency principles. Similarly, if Siemens AG had a communication with Health Services in Pennsylvania about when certain pieces of Soarian would be generally available, such communication has nothing to do with personal jurisdiction over Siemens AG in Delaware, or "control" for agency purposes.

OF COUNSEL:

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated:  September 20, 2006

Larry R. Wood, Jr.
M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE   19899-1709
(302) 777-6500

Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

I, Phillip T. Mellet, hereby certify that on this 20th day of September, 2006, I

caused to be served the foregoing Defendant Siemens AG's Answer to Plaintiff's Motion to

Compel Compliance with the Court's July 13, 2006 Memorandum Order Regarding

Jurisdictional Discovery *via* CM/ECF and hand delivery upon the following:

Martin S. Lessner, Esquire
Young, Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899
mlessner@ycst.com

/s/ Phillip T. Mellet
Phillip T. Mellet (DE No. 4741)

# EXHIBIT 1

# Pepper Hamilton LLP
#### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

Larry R. Wood, Jr.
Telephone: 215.981.4103
Facsimile: 215.981.4750
woodl@pepperlaw.com

August 28, 2006

## *VIA FACSIMILE AND U.S. FIRST CLASS MAIL*

Adam W. Poff, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

> Re:    Raza v. Siemens Medical Solutions USA, Inc., et al.
>        Civil Action No. 06-132 (D. Del.)

Dear Adam:

We are in receipt of your letter, dated August 23, 2006.  Quite simply, we cannot understand the positions expressed in your letter – positions that reflect both an avoidance of the concept of personal jurisdiction and an apparent disregard of the information provided by Siemens AG in its responses and declarations.

On July 13, 2006, the Court issued an Order permitting Plaintiff to conduct discovery "limited to the issue of the Court's jurisdiction over Siemens AG."  As you are well aware, personal jurisdiction must be premised on either specific jurisdiction or general jurisdiction.  "Specific jurisdiction arises when the particular cause of action arose from the defendant's activities *within the forum state*; general jurisdiction arises when the defendant has continuous and systematic contacts *with the state. . .*"  *Reach & Associates, P.C. v. Dencer*, 269 F.Supp.2d 497, 502 (D. Del. 2003) (Farnan, J) (emphasis supplied).  As such, based on the existing and established law, the limited jurisdictional discovery in which Dr. Raza has been permitted to engage must, at the very least, be related to Siemens AG's contacts with the State of Delaware.  Contrary to the suggestion contained in your letter, the Court did not Order that Siemens AG respond to each and every discovery request contained in Dr. Raza's document requests and interrogatories, and certainly, the Court did not have the opportunity to rule on whether Dr. Raza's discovery requests were relevant or otherwise appropriate under the law.

The Court's Order states only that "Plaintiff is permitted to conduct discovery limited to the issue of the Court's jurisdiction over Defendant Siemens AG."  Instead of serving

| Philadelphia | Washington, D.C. | Detroit | New York | Pittsburgh |
| Berwyn | Harrisburg | Orange County | Princeton | Wilmington |

www.pepperlaw.com

Pepper Hamilton LLP
—————Attorneys at Law

Adam W. Poff, Esquire
Page 2
August 28, 2006

narrowly tailored discovery requests on Siemens AG consistent with that Order and the law, Dr. Raza merely renewed his previous, objectionable requests. As explained in Siemens AG's objections and as further described below, most of those discovery requests have nothing to do with the personal jurisdiction issue pending before the Court, namely, Siemens AG's contacts with the State of Delaware, if any.

We take this opportunity to remind you that, in Dr. Raza's Brief in Opposition to Siemens AG's motion to dismiss, Dr. Raza alleges jurisdiction under two provisions of the Delaware long-arm statute, namely specific jurisdiction under 10 Del. C. § 3104(c)(1), and general jurisdiction under 10 Del. C. § 1304(c)(4).

Dr. Raza claimed that specific jurisdiction exists over Siemens AG "because Siemens AG uses an established distribution channel to inject its SOARIAN products into" the State of Delaware. *See* D.I. 20, at 3. In its discovery responses, Siemens AG has provided Dr. Raza with information, among other things: (a) that Siemens Medical Solutions Health Services Corporation manufactures Soarian and is the holder and the assignee of all patents relating to Soarian; stated differently, that Siemens Medical Solutions Health Services Corporation, not Siemens AG, manufactures and owns Soarian; (b) that Siemens AG does not sell or license Soarian in the State of Delaware; (c) that Siemens Medical Solutions USA, Inc, the entity that markets, sells and licenses Soarian in the United States, has not made any sales or licenses of Soarian to any entity or person located within the State of Delaware; and (d) that Siemens AG does not sell or market any products, or otherwise do business in the State of Delaware. As such, the averment contained in Dr. Raza's opposition brief relating to alleged specific jurisdiction has no factual support.

Dr. Raza claimed that general jurisdiction exists over Siemens AG "because Siemens AG uses an established distribution channel to inject its products into" Delaware, and "because [Siemens AG] has purposefully availed itself of the laws and benefits" of Delaware "through its past litigation practices in the District of Delaware." *See* D.I. 20, at 3. In its discovery responses, Siemens AG has provided Dr. Raza with information, among other things: (a) that Siemens AG does not sell or market any products; (b) that Siemens AG does not do business in the State of Delaware; (c) that Siemens AG does not own any property or equipment in the State of Delaware; and (d) that, in addition to the cases identified by Dr. Raza, Siemens AG has also been a defendant in two federal court actions. As such, the averment contained in Dr. Raza's opposition brief relating to alleged general jurisdiction has no factual support.

With the guiding legal principles in mind, Siemens AG responds to the points made in your letter, dated August 23, 2006:

**Pepper Hamilton LLP**
<u>Attorneys at Law</u>

Adam W. Poff, Esquire
Page 3
August 28, 2006

### Interrogatory No. 3

In incorrectly suggesting that Siemens AG's response is incomplete, Dr. Raza is admittedly seeking information that has nothing whatsoever to do with Siemens AG's contacts with the State of Delaware. Siemens AG has provided Dr. Raza with information as to the owner of Soarian, and that Siemens Medical Solutions USA, Inc. has not made any sales or licenses of Soarian to any entity or person located in the State of Delaware. Yet, Dr. Raza requests information about patent applications for Soarian on a worldwide basis. Such information, by definition, has nothing to do with Siemens AG's contacts with the State of Delaware and is, therefore, not relevant to the personal jurisdiction question pending before the Court.

### Interrogatory No. 5

In incorrectly suggesting that Siemens AG's response is "non-responsive," Dr. Raza admits that Siemens AG provided a response, but that he is seeking information that has nothing whatsoever to do with Siemens AG's contacts with the State of Delaware. Siemens AG has provided Dr. Raza with information as to the owner of Soarian, as well as the fact that Siemens AG does not sell, market or license any products, including Soarian, in the State of Delaware, or otherwise do business in the State of Delaware. In reference to Dr. Raza's suggestion that his request for "every communication concerning Soarian between a defendant and a Delaware Entity" may relate to "investigating any agency relationship among the defendants," Dr. Raza's position is inconsistent with established law. Interrogatory No. 5 simply bears no relevance to the agency theory, which revolves around the extent to which a parent corporation directs and controls the actions of a subsidiary. *See C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (under agency theory, court focuses on arrangement between the parent and the subsidiary, the authority given in that arrangement and the relevance of the arrangement to plaintiff's claim); *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp.1458, 1463-64 (D. Del. 1991) (under agency theory, jurisdictional acts must have been instigated by the parent). Moreover, Siemens AG has provided Dr. Raza with information that Siemens Medical Solutions USA, Inc., the entity responsible for the sale and marketing of Soarian in the United States, has not made any sales or licenses of Soarian to any entity or person located with the State of Delaware.

### Interrogatory No. 7

In incorrectly suggesting that Siemens AG's response is incomplete, Dr. Raza is admittedly seeking information that has nothing whatsoever to do with Siemens AG's contacts with the State of Delaware. Remarkably, Dr. Raza requests information about the location of Soarian source code in areas outside of the United States, or stated differently, throughout the

Pepper Hamilton LLP
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Attorneys at Law

Adam W. Poff, Esquire
Page 4
August 28, 2006

world.  Such information, by definition, has nothing to do with Siemens AG's contacts with the
State of Delaware, and is, therefore, not relevant to the personal jurisdiction question pending
before the Court.  *See, e.g., Applied Biosystems*, 772 F. Supp. at 1462 ("relevant contacts for
establishing personal jurisdiction must be with Delaware in particular, and not simply the United
States").  Siemens AG has provided Dr. Raza with information as to the owner of Soarian, that
no Soarian source code is located in the State of Delaware, and that Siemens AG does not own
any property or equipment located in the State of Delaware.

     Interrogatory No. 8

        Despite the lack of specificity to Dr. Raza's definition of "Delaware Entity,"
Siemens AG has provided Dr. Raza with a verified response, supported by two declarations, that
Siemens AG does not sell, market or license any products, including Soarian, or otherwise do
business in the State of Delaware.  It is not clear what other information Plaintiff could possibly
seek that would be relevant to the personal jurisdiction question pending before the Court.

     Interrogatories 10 and 11

        In incorrectly suggesting that Siemens AG's responses are "non-responsive," Dr.
Raza admits that these requests are designed to obtain information relating to whether and to
what extent Siemens AG has a business presence in the State of Delaware.  Siemens AG has
provided this information to Dr. Raza, explaining that it does not sell or license Soarian, that, in
fact, it does not sell or market any products, and further, that it does not do any business in the
State of Delaware.  As such, given that Siemens AG does not do business in Delaware, and given
that Siemens AG does not sell, market or license any products, this response provides the
information Dr. Raza seeks.  If Dr. Raza is seeking information as to whether any Siemens AG
employee was ever present in the State of Delaware for any non-business purpose, such request
would not only be extremely overbroad and harassing, it could not be relevant to the personal
jurisdiction question pending before the Court.

     Interrogatories 14 and 15

        In incorrectly suggesting that Siemens AG's responses are "non-responsive," Dr.
Raza admits that Siemens AG provided a response, but suggests that he is seeking information
that has nothing whatsoever to do with Siemens AG's contacts with the State of Delaware.
Siemens AG has provided Dr. Raza with information as to the owner of Soarian, as well as the
fact that Siemens AG does not sell, market or license any products, including Soarian, in the
State of Delaware, or otherwise do business in the State of Delaware.  Moreover, Siemens AG

Pepper Hamilton LLP
Attorneys at Law

Adam W. Poff, Esquire
Page 5
August 28, 2006

has provided Dr. Raza with information that Siemens Medical Solutions USA, Inc., the entity
responsible for the sale and marketing of Soarian in the United States, has not made any sales or
licenses of Soarian to any entity or person located with the State of Delaware. Revenues
received by the entity that actually sells and markets Soarian (that being Siemens Medical
Solutions USA, Inc. in the United States) from the sale of Soarian in states other than Delaware
or around the world could not be relevant to the personal jurisdiction question pending before the
Court. Furthermore, as you requested, Siemens AG confirms that it receives no revenues from
the sale or license of Soarian in the United States.

Document Request 1

Despite the lack of specificity to Dr. Raza's definition of "Delaware Entity,"
Siemens AG has provided Dr. Raza with a verified response, supported by two declarations, that
Siemens AG does not sell, market or license any products, including Soarian, or otherwise do
business in the State of Delaware. Rather than the mischaracterization you place on that
response, since Siemens AG does not do business in the State of Delaware, we are not clear as to
what non-business related "communications" Dr. Raza is seeking in this request. Siemens AG
has performed a good-faith search, and not surprisingly, it has not uncovered any documents
concerning communications made by it to an entity or person located in the State of Delaware
relating to Soarian or to any business allegedly conducted by Siemens AG in the State of
Delaware.

Document Request 3

While recognizing that Siemens AG does not do business in the State of
Delaware, Dr. Raza admits that he is seeking information that has nothing whatsoever to do with
Siemens AG's contacts with the State of Delaware. Siemens AG has provided Dr. Raza with
information as to the owner of Soarian, as well as the fact that Siemens AG does not sell, market
or license any products, including Soarian, in the State of Delaware, or otherwise do business in
the State of Delaware. Neither of the other defendants in this case nor Siemens Corporation is
headquartered in the state of Delaware, and therefore, any communications between Siemens AG
and those companies "relating to Soarian," if any, are not Delaware contacts for jurisdictional
purposes. In reference to Dr. Raza's suggestion that his request for every "communication
relating to Soarian" between Siemens AG and another defendant or Siemens Corporation may
relate to agency principles, such an assertion is inconsistent with established law. Document
Request No. 3 bears no relevance to the agency theory, which revolves around the extent to
which a parent corporation directs and controls the actions of a subsidiary. *See Applied
Biosystems*, 772 F.Supp. at 1467 ("only acts by the agent which were directed [into the forum]
which were directed by the principal may provide the basis for jurisdiction"). Siemens AG has

Pepper Hamilton LLP
—————— Attorneys at Law ——————

Adam W. Poff, Esquire
Page 6
August 28, 2006

provided Dr. Raza with information that Siemens Medical Solutions USA, Inc., the entity
responsible for the sale and marketing of Soarian in the United States, has not made any sales or
licenses of Soarian to any entity or person located with the State of Delaware.  Moreover, on the
direction and control issues, in the declarations of Erhard Meitinger, attached to Siemens AG's
responses and objections to Dr. Raza's discovery requests, Siemens AG has provided
information factually refuting any argument Dr. Raza may attempt to make on that point.

        Document Request 5

        While recognizing that Siemens AG has not filed any patent applications relating
to Soarian in the United States, Dr. Raza admits that he is seeking information that has nothing
whatsoever to do with Siemens AG's contacts with the State of Delaware, namely documents
that relate to non-US patents or patent applications for Soarian.  Such information, by definition,
has nothing to do with Siemens AG's contacts with the State of Delaware and is, therefore, not
relevant to the personal jurisdiction question pending before the Court.  Moreover, despite Dr.
Raza's attempts to divert attention from his irrelevant requests, Siemens AG has also provided
Dr. Raza with information as to the owner of Soarian, and that Siemens Medical Solutions USA,
Inc. has not made any sales or licenses of Soarian to any entity or person located in the State of
Delaware.

        Document Request 6

        While recognizing that Siemens AG has provided the information sought by this
request, Dr. Raza seems to be confused.  As explained in its response, Siemens AG does not own
the stock of Siemens Medical Solutions Health Services Corporation, Siemens Medical Solutions
USA, Inc. or Siemens Corporation.  Rather, Siemens Medical Solutions USA, Inc. owns 100% of
the stock of Siemens Medical Solutions Health Services Corporation; Siemens Corporation owns
100% of the stock of Siemens Medical Solutions USA, Inc.; and Siemens USA Holdings, Inc.
and Siemens Schweiz AG own 100% of the stock of Siemens Corporation.  This responds fully
to Dr. Raza's question.  Other corporate entities, not Siemens AG, hold 100% of the stock of
Siemens USA Holdings, Inc.

        Document Request 7

        While recognizing that Siemens AG has provided information that it does not do
business in the State of Delaware; that Siemens AG follows an explicit policy of maintaining all
corporate formalities between it and subsidiary entities; and that there have been no sales or
licenses of Soarian in the State of Delaware, Dr. Raza suggests he is seeking information that has
nothing whatsoever to do with Siemens AG's contacts with the State of Delaware.  Revenues
received by Siemens Medical Solutions USA, Inc., the entity that actually sells and markets

Pepper Hamilton LLP
—————————————
Attorneys at Law

Adam W. Poff, Esquire
Page 7
August 28, 2006

Soarian in the United States, from the sale or license of Soarian in states other than Delaware could not be relevant to the personal jurisdiction question pending before the Court. *See*, *e.g.*, *Applied Biosystems*, 772 F. Supp. at 462 ("relevant contacts for establishing jurisdiction must be with Delaware in particular, and not simply the United States"). Furthermore, as you requested, Siemens AG confirms that it receives no revenues from the sale or license of Soarian in the United States.

Document Request 8

While recognizing that Siemens AG has provided information that it does not do business in the State of Delaware; that Siemens AG follows an explicit policy of maintaining all corporate formalities between it and subsidiary entities; and that there have been no sales or licenses of Soarian in the State of Delaware, Dr. Raza suggests he is seeking information that has nothing whatsoever to do with Siemens AG's contacts with the State of Delaware. Siemens AG has also provided Dr. Raza with information that Siemens AG does not sell or license Soarian. Revenues received by corporate entities that sell and license Soarian, not only outside of the State of Delaware but outside of the United States, could not be relevant to the personal jurisdiction question pending before the Court. Moreover, despite his attempt to divert attention from his irrelevant request, Siemens AG has provided Dr. Raza with information as to the owner of Soarian.

If you have any questions, please do not hesitate to contact us.

Very truly yours,

Larry R. Wood, Jr.

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT SIEMENS AG'S RENEWED OBJECTIONS AND RESPONSES TO PLAINTIFF'S JURISDICTIONAL DOCUMENT REQUESTS (DATED MAY 5, 2006)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Siemens AG,

by and through its attorneys Pepper Hamilton LLP, hereby renews its objections to Plaintiff Dr.

Syed Iqbal Raza's ("Dr. Raza") Jurisdictional Document Requests dated May 5, 2006 and

renewed on July 17, 2006 ("Requests") as follows.  By its objections to these Requests, Siemens

AG is not waiving, but rather expressly preserves its argument that this Court lacks personal

jurisdiction over it.

## GENERAL OBJECTIONS

1.    Siemens AG objects to these Requests to the extent that they are

overbroad, unduly burdensome and irrelevant to the jurisdictional issue.  Such Requests are

beyond the scope of the limited discovery ordered by the Court in its July 13, 2006 Order.

2.    Siemens AG objects to these Requests, and the definitions and instructions

contained therein, to the extent that they impose upon Siemens AG obligations that are

inconsistent with the Federal Rules of Civil Procedure, the Local Rules for the United States Court for the District of Delaware or the rules of this Court.

3.      Siemens AG objects to these Requests to the extent that they seek information that is not within the possession, custody or control of Siemens AG.

4.      Siemens AG objects to these Requests to the extent that they seek information in the public record that is equally accessible to Dr. Raza as it is to Siemens AG.

5.      Siemens AG objects to these Requests to the extent that they seek information that is protected against disclosure by the attorney-client privilege, the work product doctrine, or any other rule of privilege or confidentiality provided by law.

6.      Siemens AG objects to these Requests because they impose an unreasonable burden upon Siemens AG, a foreign litigant. *See Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa*, 482 U.S. 522, 546 (1987).

7.      Siemens AG objects to these Requests to the extent that they are duplicative.

8.      Siemens AG objects to these Requests to the extent that they are vague, ambiguous, oppressive and require an unduly burdensome search for, and production of, information that is unrelated to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.

9.      Siemens AG objects to providing any information prior to the entry of a Confidentiality Order.

10.     These general objections are hereby incorporated into the response to each Request as if fully set forth therein, and whether or not specifically referenced therein.

### SIEMENS AG'S SPECIFIC OBJECTIONS
### AND RESPONSES TO PLAINTIFF'S REQUESTS

1.     All documents concerning communications between defendant Siemens AG and a Delaware Entity.

**OBJECTION AND RESPONSE:**   Siemens AG objects to this Request as it is extremely overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Request because it seeks information that is not within the possession, custody or control of Siemens AG, and because it seeks confidential information and information protected from disclosure by the attorney-client privilege, the work product doctrine and other privileges. Siemens AG also objects to this Request as it is vague and unintelligible.  Siemens AG also objects to the definition of Delaware Entity contained in Plaintiff's Requests.  Siemens AG further objects to this Request because it exceeds the limited scope of discovery contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG states that it does not sell or market any products, or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006, attached hereto as Exhibit A.

2.     All documents concerning Siemens AG's sales or licensing of products to a Delaware Entity.

-3-

**OBJECTION AND RESPONSE:**   Siemens AG objects to this Request as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Request because it seeks information that is not within the possession, custody or control of Siemens AG.  Siemens AG also objects to this Request as it is vague and unintelligible, and Siemens AG further objects to the definition of Delaware Entity contained in Plaintiff's Requests.  Siemens AG further objects to this Request because it exceeds the limited scope of discovery contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG states that it does not sell or license Soarian, does not sell or market any products, or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.

        3.      All documents concerning communications relating to Soarian between defendant Siemens AG and another defendant or Siemens Corporation.

**OBJECTION AND RESPONSE:**   Siemens AG objects to this Request as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Request because it seeks information that is not within the possession, custody or control of Siemens AG and because it seeks confidential information or information that is protected from disclosure by the attorney-client privilege, work product doctrine and other privileges. Siemens AG also objects to this Request as it is vague and unintelligible and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Requests.  Siemens AG further objects to this Request because it exceeds the limited scope of discovery contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG states that it does not

sell or license Soarian in the United States.  Siemens AG does not sell or market any products or

otherwise do business in the state of Delaware.  Siemens Medical Solutions USA, Inc., Siemens

Medical Solutions Health Services Corporation and Siemens Corporation are not headquartered

in Delaware, and thus, any communications by Siemens AG with these entities, if any such

communications exist, would not be made or sent into the state of Delaware.

      4.    Documents sufficient to indicate the ownership of Soarian since 2001.

**OBJECTION AND RESPONSE:**  Siemens AG objects to this Request as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects

to this Request because it seeks information that is not within the possession, custody or control

of Siemens AG.  Siemens AG also objects to this Request as it is vague and unintelligible, and

Siemens AG further objects to the definition of Soarian contained in Plaintiff's Requests.

Siemens AG further objects to this Request because it exceeds the limited scope of discovery

contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG

states its understanding that Siemens Medical Solutions Health Services Corporation

manufactures Soarian.  Siemens AG also states that it does not sell or license Soarian, does not

sell or market any products or otherwise do business in the state of Delaware, as set forth in the

declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.

      5.    All patents and patent applications that relate to Soarian.

**OBJECTION AND RESPONSE:**  Siemens AG objects to this Request as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects

to this Request because it seeks information that is not within the possession, custody or control

of Siemens AG.  Siemens AG also objects to this Request as it is vague and unintelligible, and

Siemens AG further objects to the definition of Soarian contained in Plaintiff's Requests.

Siemens AG further objects to this Request because it exceeds the limited scope of discovery

contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG

states its understanding that Siemens Medical Solutions Health Services Corporation

manufactures Soarian and is the holder and assignee of all patents relating to Soarian.  Siemens

AG further states that it has not filed any patent applications relating to Soarian in the United

States.

   6. Documents sufficient to determine defendant Siemens AG's ownership

interests in other defendants and Siemens Corporation.

   **OBJECTION AND RESPONSE:** Siemens AG objects to this Request as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG also objects to

this Request as it is vague and unintelligible, and because it seeks information protected from

disclosure by the attorney-client privilege, the work product doctrine and other privileges.

Siemens AG further objects to this Request as it seeks publicly available information.  Without

waiving its objections, Siemens AG states that it does not have direct ownership interests in

Siemens Medical Solutions Health Services Corporation, Siemens Medical Solutions USA, Inc.

or Siemens Corporation.  Siemens Medical Solutions USA, Inc. owns 100% of the stock of

Siemens Medical Solutions Health Services Corporation.  Siemens Corporation owns 100% of

the stock of Siemens Medical Solutions USA, Inc.  Siemens Corporation is owned by Siemens

USA Holdings, Inc. and Siemens Schweiz AG.

7.    Documents sufficient to determine the revenues derived by Siemens AG from the sales or license of Soarian in the United States.

**OBJECTION AND RESPONSE:**   Siemens AG objects to this Request as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Request because it seeks information that is not within the possession, custody or control of Siemens AG.  Siemens AG also objects to this Request as it is vague and unintelligible, and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Requests. Siemens AG further objects to this Request because it exceeds the limited scope of discovery contemplated in the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG states that it does not sell or license Soarian or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.  Siemens AG further states, as set forth in the declaration of Erhard Meitinger, dated May 2, 2006, that it follows an explicit policy of maintaining all corporate formalities between it and subsidiary entities (in which Siemens AG has indirect ownership interest) - - entities that are separate and legally independent of Siemens AG.  Siemens AG also states its understanding that Siemens Medical Solutions USA, Inc., the entity that markets and sells Soarian in the United States, has not made any sales or licenses of Soarian to any entity or person located within the state of Delaware. *See* Declaration of James T. McAvoy, attached hereto as Exhibit B.

8.    Documents sufficient to determine the revenues derived by Siemens AG from the sales or license of Soarian worldwide.

**OBJECTION AND RESPONSE:**   Siemens AG objects to this Request as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects

to this Request because it seeks information that is not within the possession, custody or control

of Siemens AG.  Siemens AG also objects to this Request as it is vague and unintelligible, and

Siemens AG further objects to the definition of Soarian contained in Plaintiff's Requests.

Siemens AG further objects to this Request because it seeks documents beyond the scope of the

limited discovery contemplated by the Court's July 13, 2006 Order.


|  | /s/ Larry R. Wood, Jr. |
| --- | --- |
| OF COUNSEL: | M. Duncan Grant (DE No. 2994) |
|  | Larry R. Wood, Jr. (DE No. 3262) |
| Kathleen A. Mullen | Phillip T. Mellet (DE No. 4741) |
| PEPPER HAMILTON LLP | PEPPER HAMILTON LLP |
| 3000 Two Logan Square | Hercules Plaza, Suite 5100 |
| Eighteenth & Arch Streets | 1313 N. Market Street |
| Philadelphia, PA  19103-2799 | Wilmington, DE  19899-1709 |
| (215) 981-4000 (Telephone) | (302) 777-6500 (Telephone) |
| (215) 981-4750 (Fax) | (302) 421-8390 (Fax) |
|  |  |
| Dated:  August 21, 2006 | *Attorneys for Defendant Siemens AG* |

*EXHIBIT  A*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF Erhard Meitinger

I, Erhard Meitinger, make the following declaration under penalty of perjury under the laws of the United States:

1.      My name is Erhard Meitinger. I am employed by Siemens Aktiengesellschaft ("Siemens AG" or the "Company") as the Vice President of the Treasury Department, and my office is located in Munich, Germany. I have been working for Siemens AG for the past 19 years and am familiar with the structure and business operations of the Company. I understand that a lawsuit has been filed against Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.      I have reviewed Plaintiff's Answering Brief in Opposition to Defendant Siemens AG's Motion To Dismiss ("Answering Brief"). A number of the statements and inferences made in that Answering Brief relating to Siemens AG are not factually accurate.

3.      As stated in greater detail in my previous Declaration, attached to Siemens AG's Opening Brief in Support of its Motion to Dismiss Plaintiff's Complaint, Siemens AG does not "direct" or "control" the day-to-day operations or management of its directly and indirectly owned subsidiaries.

4.      Siemens AG does not do or conduct business in Delaware. Further, Siemens AG does not sell or market any products in the state of Delaware.

5.      The Answering Brief of Plaintiff Syed Iqbal Raza refers to various consumer household appliances, including washers and dryers. Siemens AG does not manufacture, sell or market these consumer household appliances anywhere in the United States,

including the state of Delaware. Instead, a different legal entity, BSH Bosch und Siemens Hausgeräte GmbH ("BSH Bosch"), a joint venture with Robert Bosch GmbH Stuttgart, manufactures and sells such consumer household appliances. BSH Bosch licenses the "Siemens" brand name for use on some of its products.

Name: E. REITINGER
Title: Vice President CFT

Dated: May 19, 2006

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION

I, Erhard Meitinger, make the following declaration under penalty of perjury under the laws of the United States:

1.     My name is Erhard Meitinger I am employed by Siemens Aktiengesellschaft ("Siemens AG" or the "Company") as the Vice President of the Treasury Department, and my office is located in Munich, Germany. I have been working for Siemens AG or one of its subsidiaries for the past 19 years and am familiar with the structure and business operations of the Company. I understand that a lawsuit, has been filed against Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.     Siemens AG is a German corporation, organized under the laws of Germany, with its headquarters in Munich and Berlin. Siemens AG manufactures and sells a broad range of electrical and electronic equipment products, systems, and services into a variety of markets, including automotive, components, power and energy, healthcare, information systems, lighting, automation, transportation and telecommunications.

3.     Siemens AG does not do business in Delaware and has not had a business presence in Delaware to the best of my knowledge at any time. Specifically:

- Siemens AG is not qualified or registered to do business in Delaware;

- Siemens AG does not maintain an office in Delaware;

- Siemens AG does not have a telephone listing or mailing address in Delaware;

PHLDMS (IP) 50 2 GNDBLER S

- Siemens AG does not own any real property in Delaware;

- Siemens AG has not authorized or appointed any entity to act as its general agent for accepting service of process of lawsuits in Delaware;

- Siemens AG does not employ any personnel in Delaware,

- Siemens AG has not filed or been obliged to file a tax return, or to pay taxes in, Delaware.

4.     Siemens AG does have ownership interests (direct and indirect) in a number of subsidiaries, which engage in business activities in different parts of the world, including the United States.  Siemens AG is the indirect owner of the shares of Siemens Corporation, a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions USA, Inc. a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions Health Services Corporation, a Delaware corporation.

5.     Siemens AG does not direct or control the day-to-day operations or management of Siemens Corporation or Siemens Corporation's subsidiaries.  To the contrary, the day-to-day business management and financial operations of Siemens Corporation is directed by that company's own management employees.  Siemens Corporation has its own Board of Directors which bears overall responsibility for management and governance of the company.  Siemens AG exercises influence over Siemens Corporation, if at all, only in its capacity as a indirect shareholder/ultimate parent and in accordance with the applicable local laws, the respective articles of incorporation and bylaws, and the rights of any other shareholders.  This is the explicit corporate policy of Siemens AG.

6.     Likewise consistent with the explicit corporate policy of Siemens AG is the fact that Siemens Corporation is separate from and legally independent of Siemens AG.  Specifically:

- All corporate formalities between the companies are observed;

- The companies have separate officers and independent boards of directors;

- The companies conduct separate board meetings and maintain separate minutes of such meetings;

- The companies maintain separate books, records, and financial accounts;

- The companies have separate headquarters, files and office space;

- Transactions between the companies are conducted on an "arms-length" basis and are recorded by the appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles; and

-2-



7.      Siemens AG is not responsible for paying the United States or Delaware taxes of Siemens Corporation, or its subsidiaries; nor is Siemens Corporation or its subsidiaries responsible for paying taxes owed in Germany by Siemens AG.

Dated: May 2, 2006

*EXHIBIT B*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYED IQBAL RAZA, M.D., : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | NO. 06-132 (JJF) |
| : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH : | |
| SERVICES CORP., SIEMENS CORPORATION : | |
| and SIEMENS AG, : | |
| : | |
| Defendants. : | |

## DECLARATION OF JAMES T. McAVOY

I, James T. McAvoy, make the following declaration under penalty of perjury under the laws of the United States:

1.    My name is James T. McAvoy. I am employed by Siemens Medical Solutions Health Services Corporation ("Health Services") as a Project Manager Level 5 (Technical) and Patent Manager, in Malvern, Pennsylvania. I have been working for Health Services for the past 33 years (27 of which were for the predecessor company Shared Medical Systems Corporation, acquired by Siemens in 2000) and am familiar with Soarian®. I understand that a lawsuit has been filed against Health Services, Siemens Medical Solutions USA, Inc., and Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.    I have reviewed Plaintiff's Answering Brief in Opposition to Defendant Siemens AG's Motion To Dismiss ("Answering Brief"). A number of the statements and inferences made in that Answering Brief relating to the manufacture, marketing and sales of Soarian® are not factually accurate.

3.    Soarian® is manufactured by Health Services, not by Siemens AG. Health Services is a wholly owned subsidiary of Siemens Medical Solutions USA, Inc.

4.    Soarian® is marketed and sold in the United States by Siemens Medical Solutions USA, Inc., a wholly owned subsidiary of Siemens Corporation.  Siemens AG does not market or sell Soarian® in the United States.

Dated: May 22, 2006

*James T. McAvoy*

Name: James T. McAvoy
Title:  Project Manager, Level 5 (Technical)

-2-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF DELAWARE**

| | |
|---|---|
| SYED IQBAL RAZA, M.D., | : |
| | :   CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | :   NO. 06-132 (JJF) |
| | : |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : |
| SERVICES CORP., | : |
| and SIEMENS AG, | : |
| | : |
| Defendants. | : |

**DEFENDANT SIEMENS AG'S RENEWED OBJECTIONS AND RESPONSES TO**
**PLAINTIFF'S JURISDICTIONAL INTERROGATORIES (DATED MAY 5, 2006)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Siemens AG,

by and through its attorneys, Pepper Hamilton LLP, hereby renews its objections to Plaintiff Dr.

Syed Iqbal Raza's ("Dr. Raza") Jurisdictional Interrogatories dated May 5, 2006, and renewed on

July 17, 2006 ("Interrogatories") as follows.  By its objections to these Interrogatories, Siemens

AG is not waiving, but rather, expressly preserves its argument that this Court lacks personal

jurisdiction over it.

**GENERAL OBJECTIONS**

1.      Siemens AG objects to these Interrogatories to the extent that they are

overbroad, unduly burdensome and irrelevant to the jurisdictional issue.  Such Interrogatories are

beyond the scope of the limited discovery ordered by the Court in its July 13, 2006 Order.

2.      Siemens AG objects to these Interrogatories, and the definitions and

instructions contained therein, to the extent that they impose upon Siemens AG obligations that

are inconsistent with the Federal Rules of Civil Procedure, the Local Rules for the United States Court for the District of Delaware or the rules of this Court.

3.    Siemens AG objects to these Interrogatories to the extent that they seek information that is not within the possession, custody or control of Siemens AG.

4.    Siemens AG objects to these Interrogatories to the extent that they seek information in the public record that is equally accessible to Dr. Raza as it is to Siemens AG.

5.    Siemens AG objects to these Interrogatories to the extent that they seek information that is protected against disclosure by the attorney-client privilege, the work product doctrine, or any other rule of privilege or confidentiality provided by law.

6.    Siemens AG objects to these Interrogatories because they impose an unreasonable burden upon Siemens AG, a foreign litigant. *See Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa*, 482 U.S. 522, 546 (1987).

7.    Siemens AG objects to these Interrogatories to the extent that they are duplicative.

8.    Siemens AG objects to these Interrogatories to the extent that they are vague, ambiguous, oppressive and require an unduly burdensome search for, and production of, information that is unrelated to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.

9.    Siemens AG objects to providing any information prior to the entry of a Confidentiality Order.

10.    These general objections are hereby incorporated into the response to each Interrogatory as if fully set forth therein, and whether or not specifically referenced therein.

## SIEMENS AG'S SPECIFIC OBJECTIONS AND
## RESPONSES TO PLAINTIFF'S INTERROGATORIES

1.    For each owner of property rights in Soarian, identify the owner, the Soarian product(s) that it owns, and its percentage ownership of such product(s).

**OBJECTION AND RESPONSE:**  Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG.  Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Interrogatories, and further objects, because the interrogatory does not define the term "property rights."  Siemens AG also objects to this Interrogatory as it seeks information beyond the limited discovery permitted by the Court's July 13, 2006 Order.  Without waiving its objections, Siemens AG states its understanding that Siemens Medical Solutions Health Services Corporation manufactures Soarian and is the holder and the assignee of all patents and copyrights relating to Soarian.

2.    For each patent that has issued that concerns Soarian, identify the country that issued the patent, the patent number, the entity to whom it was issued, and the current owner of the patent.

**OBJECTION AND RESPONSE:**  Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction.  Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or

-3-

control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Interrogatories. Siemens AG also objects to this Interrogatory as it seeks information beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006 Order. Without waiving its objections, Siemens AG states its understanding that Siemens Medical Solutions Health Services Corporation manufactures Soarian and is the holder and the assignee of all patents relating to Soarian.

3.      For each patent application filed that concerns Soarian, identify the country in which the application was filed, the application number, and the entity that filed the application.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Interrogatories. Siemens AG also objects to this Interrogatory as it seeks information beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006 Order. Without waiving its objections, Siemens AG states its understanding that Siemens Medical Solutions Health Services Corporation manufactures Soarian and is the holder and the assignee of all patents relating to Soarian. Siemens AG further states that it has not filed any patent applications concerning Soarian in the United States.

4.      For every sale or license of Soarian to a Delaware Entity, identify the Delaware Entity, the seller or licensor, the Soarian product(s) sold or licensed to the entity, the purchase price or licensing fee paid by the entity, and when, if ever, the entity stopped using the Soarian product(s).

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG, and because it seeks confidential information. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definitions of Soarian and Delaware Entity contained in Plaintiff's Interrogatories. Without waiving its objections, Siemens AG states that it does not sell or license Soarian or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006, attached hereto as Exhibit A. Siemens AG also states its understanding that Siemens Medical Solutions USA, Inc., the entity that markets, sells and licenses Soarian in the United States, has not made any sales or licenses of Soarian to any entity or person located within the state of Delaware. *See* Declaration of James T. McAvoy, attached hereto as Exhibit B.

       5.     For every communication concerning Soarian between a defendant and a Delaware Entity (excluding written correspondence), identify the defendant, the Delaware Entity, and the date of the communication, and describe the substance of the communication.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG, and because it seeks confidential information. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definitions of Soarian and Delaware Entity contained in Plaintiff's Interrogatories. Siemens AG also objects to this Interrogatory because it seeks information beyond the limited jurisdictional

-5-

discovery permitted by the Court's July 13, 2006 Order, and further, as it purports to seek

information from entities other than Siemens AG. Without waiving its objections, Siemens AG

states that it does not sell or license Soarian or otherwise do business in the state of Delaware, as

set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006. Siemens

AG also states its understanding that Siemens Medical Solutions USA, Inc., the entity that

markets, sells and licenses Soarian in the United States, has not made any sales or licenses of

Soarian to any entity or person located within the state of Delaware. *See* Declaration of James T.

McAvoy, attached hereto as Exhibit B.

      6.    Identify the location of the server that hosts the website
www.healthcare.siemens.com/soarian/int/index_flash.html.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG also objects to

this Interrogatory because it seeks information beyond the limited jurisdictional discovery

permitted by the Court's July 13, 2006 Order. Without waiving its objections, Siemens AG

states that this address directs the user to a Siemens Medical Solutions web site. Siemens AG

states its understanding that the server hosting this website is located in Erlangen, Germany.

      7.    Identify the location(s) of the source code for Soarian.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or

control of Siemens AG, and because it seeks confidential information. Siemens AG also objects

to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the

definition of Soarian contained in Plaintiff's Interrogatories. Siemens also objects to this

Interrogatory because it seeks information beyond the limited jurisdictional discovery permitted

by the Court's July 13, 2006 Order. Without waiving its objections, Siemens AG states its

understanding that Siemens Medical Solutions Health Services Corporation manufactures

Soarian and that the source code for Soarian is located in Malvern, Pennsylvania and other

locations outside of the United States and that no Soarian source code is located in Delaware.

Siemens AG also states that it does not own any property located in Delaware.

        8.    For each Delaware Entity to whom defendant Siemens AG has sold or licensed products, identify the Delaware Entity, the product, and the date of the sale or inception of the license, as applicable.

        **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or

control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and

unintelligible, and Siemens AG further objects to the definition of Delaware Entity contained in

Plaintiff's Interrogatories. Without waiving its objections, Siemens AG states that it does not

sell or license Soarian, does not sell or market any products, or otherwise do business in the state

of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2,

2006.

        9.    For each Delaware Entity to whom defendant Siemens AG has marketed products or communicated concerning the potential for a sale or license of one or more products, identify the Delaware Entity, the product(s), and the date(s) of the communication(s).

        **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definition of Delaware Entity contained in Plaintiff's Interrogatories. Siemens AG further objects to this Interrogatory because it is beyond the limited scope of jurisdictional discovery permitted by the Court's July 13, 2006 Order. Without waiver of its objections, Siemens AG states that it does not sell or license Soarian, does not sell or market any products, or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.

10.     For each conference in Delaware to which defendant Siemens AG has sent a representative, state the name of the conference, and identify the date of the conference and the attendee from defendant Siemens AG.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and unintelligible. Siemens AG also objects to this Interrogatory because it seeks information beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006 Order. Without waiver of its objections, Siemens AG states that it does not sell or license Soarian, does not sell or market any products, or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.

11.     For each employee of defendant Siemens AG that has been physically in the State of Delaware for business purposes, identify the employee, the date(s) the employee was in Delaware, and the purpose of the employee's presence in Delaware.

**OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or

control of Siemens AG. Siemens AG also objects to this interrogatory as it is vague and

unintelligible. Siemens AG also objects to this Interrogatory because it seeks information

beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006 Order.

Without waiver of its objections, Siemens AG states that it does not sell or license Soarian, does

not sell or market any products, or otherwise do business in the state of Delaware, as set forth in

the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006.

      12.    Identify all products and equipment owned by defendant Siemens AG that
is physically within the State of Delaware.

      **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or

control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and

unintelligible. Without waiving its objections, Siemens AG states that it does not own any

property or equipment that is physically located in the state of Delaware.

      13.    Other than *Siemens AG v. Fonar Corp.*, C.A. No. 95-261 (SLR), *Siemens
Aktiengesellchaft v. LG Semicon Co.*, C.A. No. 98-514 (RRM), *Fenster Family Patent Holding,
Inc. v. Siemens AG*, C.A. No. 04-038 (JJF), and *TI Group Automotive Systems, (North America)
Inc. v. Siemens AG*, C.A. No. 00-432 (GMS) identify all actions in which defendant Siemens AG
has appeared as a party before the Delaware state or federal courts.

      **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is in the public record and is equally

available to Plaintiff. Without waiving its objections, Siemens AG states that it has also been a

defendant in the following federal actions: *St. Clair Intellectual Property Consultants Inc. v.

Siemens AG et al.*, C.A. No. 06-403; *TI Group Automotive v. VDO North America, et al.*, C.A.

01-0003 (consolidated with C.A. No. 00-432.).

      14.    Identify by year the revenues received by defendant Siemens AG from the
sale or license of Soarian in the United States.

      **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or

control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and

unintelligible, and Siemens AG further objects to the definition of Soarian contained in

Plaintiff's Interrogatories. Siemens AG also objects to this Interrogatory because it seeks

information beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006

Order. Without waiving its objections, Siemens AG states that it does not sell or license Soarian

or otherwise do business in the state of Delaware as set forth in the declarations of Erhard

Meitinger, dated May 19, 2006 and May 2, 2006. Siemens AG also states its understanding that

Siemens Medical Solutions USA, Inc., the entity that markets, sells and licenses Soarian in the

United States, has not made any sales or licenses to any entity or person located within the state

of Delaware.

      15.    Identify by year the revenues received by defendant Siemens AG from the
sale or license of Soarian worldwide.

      **OBJECTION AND RESPONSE:** Siemens AG objects to this Interrogatory as

overly broad, unduly burdensome, unrelated and irrelevant to the Court's resolution of Siemens

AG's pending Motion to Dismiss for lack of personal jurisdiction. Siemens AG further objects

to this Interrogatory because it seeks information that is not within the possession, custody or control of Siemens AG. Siemens AG also objects to this Interrogatory as it is vague and unintelligible, and Siemens AG further objects to the definition of Soarian contained in Plaintiff's Interrogatories. Siemens AG also objects to this Interrogatory as it seeks information beyond the limited jurisdictional discovery permitted by the Court's July 13, 2006 Order. Without waiver of its objections, Siemens AG states that it does not sell or license Soarian or otherwise do business in the state of Delaware, as set forth in the declarations of Erhard Meitinger, dated May 19, 2006 and May 2, 2006. Siemens AG also states its understanding that Siemens Medical Solutions USA, Inc., the entity that markets, sells and licenses Soarian in the Untied States, has not made any sales or licenses of Soarian to any entity or person located within the state of Delaware.

As to objections:

/s/ Larry R. Wood, Jr.

OF COUNSEL:

M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)

Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500 (Telephone)
(302) 421-8390 (Fax)

*Attorneys for Defendant Siemens AG*

Dated: August 21, 2006

-11-

21/08 2006 13:37 FAX +499131848725    MED ES

## VERIFICATION

I, _Frank Anton_, state that I am _President - Sales, Europe_ for Siemens Aktiengesellschaft. I

have reviewed the foregoing Renewed Objections and Responses to Plaintiff's Jurisdictional

Interrogatories. I hereby verify under penalty of perjury of the laws of the United States of

America that the Responses are true and correct to the best of my knowledge, information and

belief.

Dated: August _31_, 2006

P.12

*EXHIBIT  A*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF Erhard Meitinger

I, Erhard Meitinger, make the following declaration under penalty of perjury under the laws of the United States:

1.     My name is Erhard Meitinger. I am employed by Siemens Aktiengesellschaft ("Siemens AG" or the "Company") as the Vice President of the Treasury Department, and my office is located in Munich, Germany. I have been working for Siemens AG for the past 19 years and am familiar with the structure and business operations of the Company. I understand that a lawsuit has been filed against Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.     I have reviewed Plaintiff's Answering Brief in Opposition to Defendant Siemens AG's Motion To Dismiss ("Answering Brief"). A number of the statements and inferences made in that Answering Brief relating to Siemens AG are not factually accurate.

3.     As stated in greater detail in my previous Declaration, attached to Siemens AG's Opening Brief in Support of its Motion to Dismiss Plaintiff's Complaint, Siemens AG does not "direct" or "control" the day-to-day operations or management of its directly and indirectly owned subsidiaries.

4.     Siemens AG does not do or conduct business in Delaware. Further, Siemens AG does not sell or market any products in the state of Delaware.

5.     The Answering Brief of Plaintiff Syed Iqbal Raza refers to various consumer household appliances, including washers and dryers. Siemens AG does not manufacture, sell or market these consumer household appliances anywhere in the United States,

including the state of Delaware. Instead, a different legal entity, BSH Bosch und Siemens Hausgeräte GmbH ("BSH Bosch"), a joint venture with Robert Bosch GmbH Stuttgart, manufactures and sells such consumer household appliances. BSH Bosch licenses the "Siemens" brand name for use on some of its products.

Name:  E. N REITINGER
Title:  Vice President  CFT

Dated:  May 19, 2006

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION

I, Erhard Meitinger, make the following declaration under penalty of perjury under the laws of the United States:

1.    My name is Erhard Meitinger I am employed by Siemens Aktiengesellschaft ("Siemens AG" or the "Company") as the Vice President of the Treasury Department, and my office is located in Munich, Germany. I have been working for Siemens AG or one of its subsidiaries for the past 19 years and am familiar with the structure and business operations of the Company. I understand that a lawsuit has been filed against Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.    Siemens AG is a German corporation, organized under the laws of Germany, with its headquarters in Munich and Berlin. Siemens AG manufactures and sells a broad range of electrical and electronic equipment products, systems, and services into a variety of markets, including automotive, components, power and energy, healthcare, information systems, lighting, automation, transportation and telecommunications.

3.    Siemens AG does not do business in Delaware and has not had a business presence in Delaware to the best of my knowledge at any time. Specifically:

- Siemens AG is not qualified or registered to do business in Delaware;

- Siemens AG does not maintain an office in Delaware;

- Siemens AG does not have a telephone listing or mailing address in Delaware;

- Siemens AG does not own any real property in Delaware;

- Siemens AG has not authorized or appointed any entity to act as its general agent for accepting service of process of lawsuits in Delaware;

- Siemens AG does not employ any personnel in Delaware,

- Siemens AG has not filed or been obliged to file a tax return, or to pay taxes in, Delaware.

4.      Siemens AG does have ownership interests (direct and indirect) in a number of subsidiaries, which engage in business activities in different parts of the world, including the United States. Siemens AG is the indirect owner of the shares of Siemens Corporation, a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions USA, Inc. a Delaware corporation, which in turn owns the shares of Siemens Medical Solutions Health Services Corporation, a Delaware corporation.

5.      Siemens AG does not direct or control the day-to-day operations or management of Siemens Corporation or Siemens Corporation's subsidiaries. To the contrary, the day-to-day business management and financial operations of Siemens Corporation is directed by that company's own management employees. Siemens Corporation has its own Board of Directors which bears overall responsibility for management and governance of the company, Siemens AG exercises influence over Siemens Corporation, if at all, only in its capacity as a indirect shareholder/ultimate parent and in accordance with the applicable local laws, the respective articles of incorporation and bylaws, and the rights of any other shareholders. This is the explicit corporate policy of Siemens AG.

6.      Likewise consistent with the explicit corporate policy of Siemens AG is the fact that Siemens Corporation is separate from and legally independent of Siemens AG. Specifically:

- All corporate formalities between the companies are observed;

- The companies have separate officers and independent boards of directors;

- The companies conduct separate board meetings and maintain separate minutes of such meetings;

- The companies maintain separate books, records, and financial accounts;

- The companies have separate headquarters, files and office space;

- Transactions between the companies are conducted on an "arms-length" basis and are recorded by the appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles; and

PP3:1414ML #3NP609 v1 (41-N.DOC)



7.    Siemens AG is not responsible for paying the United States or Delaware taxes of Siemens Corporation, or its subsidiaries; nor is Siemens Corporation or its subsidiaries responsible for paying taxes owed in Germany by Siemens AG.

Dated: May 2, 2006

-3-

SIH I G.S: 19598687 v1 (13X2pm!.DOC)

*EXHIBIT B*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP., SIEMENS CORPORATION | : | |
| and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF JAMES T. McAVOY

I, James T. McAvoy, make the following declaration under penalty of perjury under the laws of the United States:

1.      My name is James T. McAvoy. I am employed by Siemens Medical Solutions Health Services Corporation ("Health Services") as a Project Manager Level 5 (Technical) and Patent Manager, in Malvern, Pennsylvania. I have been working for Health Services for the past 33years (27 of which were for the predecessor company Shared Medical Systems Corporation, acquired by Siemens in 2000) and am familiar with Soarian®. I understand that a lawsuit has been filed against Health Services, Siemens Medical Solutions USA, Inc., and Siemens AG in the federal district court for the District of Delaware. I am over the age of twenty-one and give this declaration on the basis of my personal knowledge, investigation and belief for use in that litigation.

2.      I have reviewed Plaintiff's Answering Brief in Opposition to Defendant Siemens AG's Motion To Dismiss ("Answering Brief"). A number of the statements and inferences made in that Answering Brief relating to the manufacture, marketing and sales of Soarian® are not factually accurate.

3.      Soarian® is manufactured by Health Services, not by Siemens AG. Health Services is a wholly owned subsidiary of Siemens Medical Solutions USA, Inc.

4.     Soarian® is marketed and sold in the United States by Siemens Medical Solutions USA, Inc., a wholly owned subsidiary of Siemens Corporation.  Siemens AG does not market or sell Soarian® in the United States.

Dated: May 22, 2006

*James T. McAvoy*

Name: James T. McAvoy
Title:   Project Manager, Level 5 (Technical)

-2-

# EXHIBIT 3

<u>Unreported Decisions</u>

*eSpeed, Inc. v. Brokertec USA*,
    2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004) ................................ Tab A

*Monsanto Company v. Syngenta Seeds, Inc.*,
    2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006) ...................................Tab B

*Telcordia Technologies, Inc. v. Alcatal S.A.*,
    2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005)...................................Tab C

# TAB A

LEXSEE 2004 U.S. DIST. LEXIS 19760

**eSPEED, INC.; CANTOR FITZGERALD, L.P.; CFPH, L.L.C., and eSPEED GOVERNMENT SECURITIES, INC., Plaintiffs, v. BROKERTEC USA, L.L.C.; BROKERTEC GLOBAL, L.L.C.; GARBAN, LLC; ICAP PLC; OM AB; and OM TECHNOLOGY (U.S.), INC., Defendants.**

**Civil Action No. 03–612–KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 19760*

**September 13, 2004, Decided**

**PRIOR HISTORY:** *eSpeed, Inc. v. BrokerTec USA, L.L.C., 2004 U.S. Dist. LEXIS 20589 (D. Del., Sept. 9, 2004)*

**DISPOSITION:** [*1] Motion of defendant ICAP Plc to dismiss for lack of personal jurisdiction granted. Plaintiffs' contingent cross motion to compel discovery denied.

**COUNSEL:** Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, counsel for plaintiffs.

Of counsel: Gary A. Rosen, Esquire, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania; David J. Wolfsohn, Esquire, Alan C. Promer, Esquire, and Michele D. Hangley, Esquire, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania.

Richard L. Horwitz, Esquire and David E. Moore, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, counsel for defendants.

Of counsel: James W. Dabney, Esquire, Peter L. Simmons, Esquire, and Henry C. Lebowitz, Esquire, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**JORDAN, District Judge**

**I. INTRODUCTION**

This is a patent infringement case. Jurisdiction is proper under *28 U.S.C. § 1338*. The plaintiffs filed their Complaint on June 30, 2004, naming [*2] BrokerTec USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1.) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

**II. BACKGROUND**

**A. The Parties**

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, PP 2–4; *see also* D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (*Id., PP* 5–7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (*Id.,* P 8.)

**B. Factual Background**

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in [*3] jurisdictional discovery. (*See* D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal jurisdiction over ICAP in this District, *see Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d*

*434, 437 (3d Cir. 1987)*, the following is taken largely from the plaintiffs' recitation of the facts (*see* D.I. 271 at 3–10), unless noted otherwise.

The plaintiffs allege that all of the defendants are willfully and intentionally infringing *U.S. Patent No. 6,560,580* B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (*See* D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) n1 ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (*Id.*) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (*Id.*) ICAP characterizes itself as a "holding [*4] company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

> n1 In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3–4.) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (*Id.* at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. n2 (*Id.* at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board"). (*Id.*) The Board approves the ICAP Group's budget and makes [*5] regular internal audit visits to the Group's operating companies in the United States. (*Id.* at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (*Id.* at 9.)

> n2 BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC,

and Wrightson ICAP LLC. (*Id.* at 8 (citing D.I. 275, Ex. 30).)

ICAP, together with its BrokerTec n3 and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec.com. (*Id.* at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms n4 from anywhere in the world. (*Id.*)

> n3 ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (*Id.* at 7.)

[*6]

> n4 BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

## III. STANDARD OF REVIEW

Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

> before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)*. This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Rule 4(e)(1) of the Federal Rules of Civil Procedure* [*7] states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, *10 Del. C. § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. n5 *La Nuova D&B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986)*. I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the

Delaware long–arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*; *see generally, Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

n5 According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out–of–state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)*. The Federal Circuit has instructed that, "in interpreting the meaning of state long–arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998)*. The Delaware Supreme Court has not collapsed the analysis under the Delaware long–arm statute into the constitutional due process analysis, as some courts have done.

[*8]

As noted previously, once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. n6 *Provident Nat'l Bank, 819 F.2d at 437*; *see also Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 422 (D. Del. 2001)* (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 (D. Del. Aug. 3, 1999)*. General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *Id.*

N6 In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (*see supra* at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I. 272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests.

The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully *infra* at n.7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I. 272) will be denied.

[*9]

The Delaware long–arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c)*. The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents [*10] a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156–57 (Del. Super. 1997)*.

IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long–arm statute. (D.I. 162 at 4–5.) The plaintiffs say that ICAP is subject to specific jurisdiction, under *10 Del C. § 3104(c)(1)*, on the basis of its website activities and its

subsidiaries' actions in Delaware. (D.I. 271 at 11–16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under *10 Del. C. § 3104(c)(4)* because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n.2). (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its website activity alone. "Where the defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website," it is proper to exercise [*11] specific jurisdiction over a defendant. *See Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452–54 (3d Cir. 2003)* (specific jurisdiction exists if "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."). In this case, the plaintiffs have come forward with evidence showing that ICAP's websites are accessible to computer users anywhere in the world. Mere accessibility of a website, though, is not a matter of much moment. It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences. *Toys 'R' Us, 318 F.3d at 452* (exercise of personal jurisdiction proper where commercial website's interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)*). There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's websites, downloaded the [*12] BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. n7 (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its website, they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's websites. Therefore, the plaintiffs have failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites, *see Toys 'R' Us, 318 F.3d at 453*, and I decline to exercise personal jurisdiction over ICAP on the basis of its website alone.

> n7 For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.,* while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I.

273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n.6, the plaintiffs' request to compel further discovery pertaining to Webtrends will be denied.

[*13]

I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, "under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4–5 (citing *C.R. Bard v. Guidant Corp., 997 F. Supp. 556, 558–59 (D. Del. 1998)*).) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. n8 Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

> n8 To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 425 (D. Del. 2001)* (quoting *C.R Bard, 997 F. Supp. at 559*). The plaintiffs have not come forward with any evidence to establish those things in this case.

[*14]

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 at *2.* The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7–8.)

2004 U.S. Dist. LEXIS 19760, *14

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members [*15] of the Board occasionally travel to the United States on business; however, there is no evidence that they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to *Federal Rule of Civil Procedure 4(k)(2)*, on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) Personal jurisdiction pursuant to *Rule 4(k)(2)* may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction [*16] over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 258 (3d Cir. 2000)*.

In this case, the plaintiffs' patent infringement claims arise under federal law. However, ICAP asserts that it would properly be subject to jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under *Rule 4(k)(2)*. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001)* ("A defendant who wants to preclude use of *Rule 4(k)(2)* has only to name some other state in which the suit could proceed.")

V. CONCLUSION

For these reasons, ICAP's Motion (D.I. 161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) will be denied. An appropriate order will follow.

**ORDER**

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 161) is GRANTED and [*17] the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

September 13, 2004
Wilmington, Delaware

# TAB B

LEXSEE 2006 U.S. DIST. LEXIS 54534

**MONSANTO COMPANY, et al., Plaintiffs, v. SYNGENTA SEEDS, INC., et al., Defendants.**

**Civ. No. 04-305-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 54534*

**August 4, 2006, Decided**

**PRIOR HISTORY:** *Monsanto Co. v. Syngenta Seeds, Inc., 2006 U.S. Dist. LEXIS 54515 (D. Del., Aug. 4, 2006)*

**COUNSEL:** [*1] For Monsanto Company, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John H. Bogart, John J. Rosenthal, Sean P. Beaty, Pro Hac Vice.

For Monsanto Technology LLC, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John J. Rosenthal, Pro Hac Vice.

For DeKalb Genetics Corp, Plaintiff: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.; Seth Jason Reidenberg, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE.

For Garst Seed Company, Golden Harvest Seeds, Inc., Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Counter Claimants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Monsanto Company, Monsanto Technology LLC, Counter Defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Garwood Seed Co., Golden Seed Company, LLC,

[*2] Sommer Bros. Seed Company, Thorp Seed Co., JC Robinson Seeds, Inc., Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Advanta USA Inc, Syngenta Corporation, Syngenta Participations AG, Counter Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Garst Seed Company, Syngenta AG, Golden Harvest Seeds, Inc., Syngenta Corporation, Counter Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Sue L. Robinson, Chief Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: August 4, 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust action against Monsanto Company and Monsanto Technology LLC (collectively called "Monsanto"), alleging that Monsanto has monopolized the markets for glyphosate-tolerant corn ("GA21 corn") traits and European corn borer-tolerant corn traits and has attempted to monopolize the foundation corn seed

Case 1:06-cv-00132-JJF     Document 30-4     Filed 09/20/2006     Page 10 of 25

Page 2
2006 U.S. Dist. LEXIS 54534, *2

market. Monsanto filed an amended answer with counterclaims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, [*3] Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Gartst Seed Co., and Golden Harvest Seed Inc. n1 In its counterclaims, Monsanto alleges that counterclaim defendants misappropriated Monsanto's GA21 event and are improperly selling Monsanto's event as their own. The counterclaims include: (1) Reverse passing off under the Lanham Act; (2) False advertising under the Lanham Act; (3) Violations of the Delaware Deceptive Trade Practices Act; and (4) Tortious interference with a contract. (D.I. 77)

> n1 Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co., and Golden Harvest Seeds, Inc., together with Syngenta Seeds, Inc., are collectively referred to as the "Syngenta U.S. Companies".

Before the court is a motion to dismiss by Syngenta AG and Syngenta Participations AG ("Participations") for lack of personal jurisdiction. n2 (D.I. 169)

> n2 If the motion is denied, Syngenta AG and Participations also move for dismissal for failure to state a claim upon which relief can be granted, adopting the arguments advanced by the Syngenta U.S. Companies in their motion. (D.I. 132)

[*4]

## II. BACKGROUND

### A. The Business of Syngenta AG and Participations

Syngenta AG is a holding company located in Basel, Switzerland, formed in 1999 under the laws of Switzerland. (D.I. 171 at P 3) Syngenta AG became a public company in November 2000. (Id.) Syngenta AG has no employees and its business consists primarily of owning shares in companies in the agriculture, seeds and chemicals businesses. (Id.)

Syngenta AG owns Syngenta Corporation, the parent company to all of the other Syngenta U.S. Companies engaged in the distribution, marketing and sale of genetically modified corn seeds. (D.I. 185 at P 5)

Participations is a Swiss company, located in Basel, Switzerland, which is a wholly owned subsidiary of Syngenta AG. (D.I. 171 at P 4) Like Syngenta AG, Participations is a holding company with no employees. (Id.) Participations owns interests in companies located outside of Switzerland that are in the agriculture, seeds and chemicals businesses. (Id.) Participations also owns intellectual property rights, which it licenses principally to affiliated companies. (Id.)

### B. Business of the Sygenta U.S. Companies

Syngenta Corporation is a Delaware [*5] corporation with its principal place of business in Wilmington, Delaware. (D.I. 172 at P 3) It is a holding company that owns, either directly or indirectly, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and Garst Seed Company. n3 (Id.) Syngenta Corporation is a wholly-owned subsidiary of Participations and it is only one of more than 100 subsidiaries worldwide ultimately owned by Syngenta AG. (D.I. 171 at P 18)

> n3 The other Syngenta U.S. Companies are majority owned, directly or indirectly, by GH Holding, Inc., a wholly-owned subsidiary of Participations. (D.I. 172 at P 18)

Syngenta Seeds, Inc. was formed under the laws of Delaware and is headquartered in Golden Valley, Minnesota. (D.I. 172 at P 5) It is engaged, among other things, in the production, marketing and sale of commercial seeds, including hybrid corn seeds. (Id.)

### C. Contacts With Delaware

Syngenta AG's Executive Committee is based at corporate headquarters in Basel, Switzerland. (D.I. 185 at ex. 8) The Executive Committee is [*6] "responsible for the operational management of the Company." (Id.) The Executive Committee consists of a Chief Executive Officer ("CEO"), the Chief Operating Officers ("COO") of the Crop Protection and Seed business, and the heads of Syngenta AG's global functions. (Id.) Individual members of the Executive Committee include: (1)

2006 U.S. Dist. LEXIS 54534, *6

Michael Mack, who is based in Basel and is Chairman and President of Syngenta Corporation in Delaware and the COO of Syngenta Seeds in Minnesota; (2) Jeff Beard, who is the COO of Syngenta Seeds; (3) John Atkin, who is the COO of Syngenta Corporation in Delaware and the COO of Syngenta Crop Protection in North Carolina; (4) David Lawrence, who is the head of Research and Technology for Syngenta AG and sits on the board of directors of Syngenta Biotechnology, Inc.; (5) Richard Steiblin, a former member of the Executive Committee, who also served as a board member of Syngenta Corporation in Delaware. (Id. at exs. 8, 9, 11, 12, 14, 15)

Each of the Syngenta U.S. Companies has its own board of directors, which is separate from the boards of Syngenta AG and Participations, as well as from the Syngenta AG Executive Committee. (D.I. 171 at P 21; D.I. 172 [*7] at P 12) There are no overlapping members on the boards of Syngenta AG and the Syngenta U.S. Companies. (D.I. 171 at P 21) A few of the Participations directors and some Executive Committee members serve on the boards of certain of the Syngenta U.S. Companies. (D.I. 171 at ex. B) The board of directors of Syngenta AG has its own meetings, at times and locations separate and apart from the meetings of any Syngenta U.S. Companies' boards and the board of directors of Participations generally acts by written consent. (D.I. 171 at P 12, 21)

Syngenta AG and Participations are not authorized to, and do not, direct the day-to-day operations of the Syngenta U.S. Companies. (D.I. 171 at P 19) The Syngenta U.S. Companies are managed by their own officers and employees, who have responsibility for the day-to-day operation of the business. (D.I. 172 at P 10) For example, Syngenta Seeds, Inc. and its United States affiliates in the seeds business develop and implement the United States sales and marketing strategy for GA21 corn seed. (Id.) These companies make the day-to-day decisions on what, where, when, and how to sell GA21 corn seed. (Id.) They hire and fire their own sales forces, [*8] adopt their own branding strategies, set their own prices, run their own promotions, and decide on their own which customers to target. (Id.)

The Syngenta U.S. Companies maintain office, production, research, sales and distribution facilities in the United States, separate from the operations of Syngenta AG and Participations, neither of which has any facilities in the United States. (D.I. 171 at P 22; D.I. 172

at P 11) Syngenta Corporation and its subsidiaries also maintain their own books and records and prepare their own financial statements. (D.I. 171 at P 24; D.I. 172 at P 13) Syngenta Corporation files its own United States tax returns. (D.I. 172 at P 13) In accordance with Swiss law and international accounting standards, Syngenta AG does prepare a consolidated financial statement for it and its subsidiaries, which includes the results of Syngenta Corporation and its subsidiaries. (D.I. 171 at P 24) However, Syngenta Corporation and its U.S. affiliates are responsible for preparing their own financial statements, which are then consolidated with Syngenta AG's results. (D.I. 171 at P 24; D.I. 172 at P 13)

**D. Syngenta AG and Participations' Strategy to Misappropriate** [*9] **GA21 for Sale in the United States**

A four day meeting was held in Washington, D.C. to orchestrate a "strategy for bringing Syngenta branded GA21 to the [U.S.] market." (D.I. 185 at ex. 1) The meeting was attended by Adrian Dubock, the head of mergers and Acquisitions for Participations in Basel; Marian Flattery, the head of Global IP and Licensing for Participations in Basel; Ed Resler, Vice President and General Counsel, Plant Science, of Syngenta Seeds, Inc. in Minnesota; Jeff Stein, Regulatory Director at Syngenta Biotechnology, Inc. in North Carolina; and Erik Dunder, Regulatory Manager for GA21 for Syngenta Biotechnology, Inc. (D.I. 185 at ex. 1)

To implement its strategy, Syngenta AG assembled a unit called the Corn Business Team. (D.I. 185, ex. 16 at 17) Until 2004, the Corn Business Team was formally a part of Syngenta AG and reported directly to Syngenta AG's Business Development Leadership and Technical Review Committees. (D.I. 185, ex. 16 at 152) The Corn Business Team was comprised of employees from Syngenta AG, Syngenta International AG, Syngenta Seeds, Syngenta Crop Protection, Syngenta Biotechnology, and Syngenta Corporation. n4 (D.I. 185, ex. 32 at 3, 5.1) The [*10] Corn Business Team required Syngenta AG's approval for important business decisions, such as deciding on a logo for the Agrisure trademark. (D.I. 185, ex. 37 at 3)

n4 One member, Bill Dickheiser, was located in Delaware. (D.I. 185 at ex. 32)

**E. Syngenta AG's Control Over Business Decisions** n5

**1. Delaware meeting**

A meeting took place in May of 2002 in Wilmington, Delaware. (D.I. 310, ex. A at 1) David Jessen did not attend the meeting, but testified regarding a Power Point presentation given at the meeting. (D.I. 310, ex. A at 1) In attendance and participating in the meeting were members of Syngenta AG's management and various employees of the Syngenta U.S. Companies. (D.I. 310, ex. A at 1) The goal of the meeting was to "gain a better understanding of the competitive threat we face from [the Monsanto product]." (Id.) The presentation sets forth other specific goals of the meeting, including: (1) Review a number of short-term actions that Syngenta n6 can take to reduce the penetration of Monsanto's [*11] product; (2) Consider the long term strategic options available to Syngenta to redefine its competitive position in the marketplace; and (3) Discuss obstacles to impact, how to overcome these obstacles, and next steps. (D.I. 310, ex. A at 2) The "Five Pillars" of the meeting were discussed: (1) "Create doubt about claims - Syngenta disputing Monsanto's claims about the performance and safety of its Roundup Ready trait;" (2) "Offer compelling alternatives -Syngenta offering its conventional seed along with its selective herbicide rather than Monsanto's Roundup Ready trait along with Roundup;" (3) "Drive up switching costs - Syngenta offering its customers financial incentives not to switch to Roundup Ready;" (4) "Non-market activities - Syngenta initiating legal action to impede Roundup Ready's growth;" and (5) "Redefine the playing field - Syngenta would counter Monsanto's and Pioneer's strategy of marketing their products as a complete package." (D.I. 407, ex. 1 at 10) A Steering Committee was set up to "provide overall direction" and "make decisions" regarding the project. (D.I. 310, ex. A at 2) A number of Syngenta AG employees attending the Delaware meeting are on the Steering [*12] Committee. (D.I. 310, ex. A at 2)

n5 The court denies Monsanto's request for jurisdictional discovery due to its two supplemental record submissions and the extensive discovery already performed. However, the court will consider the supplemental record produced and, therefore, grants Monsanto's two motions to supplement the record. (D.I. 310, 407)

n6 The record is unclear as to whether the presentation was directed to Syngenta AG or the Syngenta U.S. Companies. The facts were derived from a business presentation and there is no clarification from Monsanto regarding what entities are encompassed by the term "Syngenta."

**2. Syngenta AG's Executive Committee**

Syngenta AG's Executive Committee had the "final say" over whether a product was commercialized. n7 (Id. at 7) Approval was also required before going forward in a development stage. (Id.) The final budget for a product required approval from the Executive Committee of Syngenta AG. Before Syngenta Seeds could invest in a capital item or commit [*13] to a capital item, it had to get the approval of the Executive Committee in Switzerland. (D.I. 310, ex. A at 8) The CEO of Syngenta AG and the Executive Committee also made decisions regarding the acquisition of Garst and Golden Harvest. (D.I. 310, ex. A at 9, 10)

n7 However, related specifically to GA21, the approvals in place were not addressed in the testimony. (D.I. 310, ex. A at 7)

Syngenta AG's Executive Committee was allegedly involved in the development, approval and execution of a strategy to: (1) Acquire certain rights to GA21 from Bayer AG; (2) Acquire seed companies (Garst and Golden Harvest) with access to Monsanto's GA21; (3) Obtain Monsanto GA21 from those seed companies; and (4) Sell the Monsanto GA21. (D.I. 407, ex. 1 at 2) Various Syngenta AG employees including David Jones (member of Syngenta AG's Executive Committee), Adrian Dubock (head of Mergers and Acquisitions for Syngenta AG), and Marian Flattery (head of Global IP and Licensing for Participations) participated in internal meetings leading [*14] up to the Bayer AG agreement. (D.I. 407, ex. 1 at 4-5) Furthermore, Syngenta AG had ultimate approval over the acquisition and licensing of Bayer's GA21 rights, Syngenta AG signed the Agreement for Scientific Evaluation of Transgenic Material transferring certain GA21 material to Syngenta AG, and

Participations' Marian Flattery and Adrian Dubock signed the Acquisition Agreement with Bayer AG relating to certain rights in GA21 owned by Bayer AG. (D.I. 407, ex. 1 at 5) Mr. Dubock and Ms. Flattery also executed the subsequent Amendment to the Agreement for Scientific Evaluation of Transgenic Materials with Bayer AG. (D.I. 407, ex. 1 at 5) Syngenta AG was involved in the communications surrounding the public announcement of the Agreement. (D.I. 407, ex. 1 at 6)

Dr. Sorenson, head of Syngenta's n8 United States corn and soybean business, reported directly to Syngenta AG Executive Committee member Jeff Beard and his successor Michel Mack on many issues, including marketing strategy and financials of the business. (D.I. 407, ex. A1, 113-14) Dr. Sorenson spoke to Mr. Beard (and later Mr. Mack) an average of once a week or once every two weeks. (D.I. 407, ex. A1 at 115) Dr. Sorenson provided [*15] the Executive Committee with regular written reports on the United States corn seed business. (D.I. 407, ex. A1 at 138-39) Dr. Sorenson would fly to Switzerland to have in-person meetings to discuss, among other things, the strategy to enter into the glyphosate tolerant seed business. (D.I. 407, ex. A1 at 115-16)

> n8 Again, due to the excerpting of the deposition testimony, the record is unclear as to what entity "Syngenta" encompasses in this context.

Dr. Sorenson made several presentations to Syngenta AG's Executive Committee regarding the United States corn and soy business, the Garst and Golden Harvest acquisitions, possibilities of joint ventures, and five year business plans, including one for the United States corn seed business. n9 (D.I. 407, ex. A1 at 16-7) Leadership teams with responsibilities for corn seed strategy in the United States included Syngenta AG employees. (D.I. 407, ex. A1 at 17)

> n9 Tom Klevorn, head of NK Brands, made a presentation on GA21 to the Executive Committee. Jeffrey Stein, director of Regulatory Affairs for North America, made a presentation to the Executive Committee on the regulatory assessment of GA21. (D.I. 407 at 17)

[*16]

## III. STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to *Rule 12(b)(2)*, a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)*. To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. See *Reach & Assoc., P.C. v. Dencer, 269 F.Supp. 2d 497, 502 (D. Del. 2003)*. With regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. Id. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. Id. In cases involving foreign parties, the Supreme [*17] Court has stated that "[g]reat care and reserve should be exercise when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)*

## IV. DISCUSSION

The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply service or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the

State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is [*18] made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c).* Pursuant to *subsection (c)(1)-(3)* and *(5)-(6)*, specific jurisdiction may be established if the cause of action arises from contacts with the forum. *Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458, 1466 (D. Del. 1991)*. Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts. Id.

It is apparent from the record that the individual conduct of Syngenta AG and Participations does not satisfy the jurisdictional requirements cited above. Syngenta AG and Participations are holding companies that do not conduct business in Delaware. They are not registered to do business in Delaware. They do not produce, market or sell corn seed or any product in Delaware. They do not have a bank account, a telephone number or an address in Delaware. They do not have "contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim. [*19] " *Red Sail Easter Ltd Partners, L.P. v. Radio City Music Hall Productions, Inc., 1991 Del. Ch. LEXIS 113, *8, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991).*

The only personal contact these parties have had with Delaware is the meeting that took place in this State in May 2002. Certainly such a limited activity is insufficient to establish general jurisdiction. Likewise, this court cannot assert specific jurisdiction over Syngenta AG and Participations based on their conduct at the 2002 meeting. Although general marketing strategies were discussed, there is no record evidence that the acts identified in Monsanto's counterclaims took place in Delaware at that meeting.

The question remains whether the Syngenta U.S. Companies should be considered "agents" of Syngenta AG and Participations and, if so, whether the activities of the Syngenta U.S. Companies within the State of Delaware satisfy the requirements of the Delaware long arm statute.

### A. Agency

Monsanto asserts that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations and, therefore, their acts confer personal jurisdiction in Delaware. As explained in *Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458 (D. Del. 1991),* [*20] the agency theory

> examines the degree of control which the parent exercises over the subsidiary. . . . The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant. . . .
>
> If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

*Id. at 1463.* "An agency relationship alone, however, is not sufficient to confer jurisdiction. Rather, the result of finding such an agency relationship is simply that we may attribute certain of [the Syngenta U.S. Companies'] acts to [Syngenta AG and Participations] in assessing whether the requirements of the Delaware long-arm statute have been satisfied." *Id. at 1464.*

Monsanto relies on several aspects of the relationship between [*21] the parties to establish that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations. More specifically, Monsanto asserts that there is: (1) An overlap of some officers and directors; (2) Transferring of employees; and (3) Syngenta AG's involvement in formulating and approving strategic policy (e.g., meetings with the Executive Committee

regarding the United States strategy and budgetary issues), major capital expenditures (e.g., acquiring GA21 rights), and key decisions (e.g., the Garst and Golden Harvest acquisitions).

Under Delaware case law, however, the facts asserted by Monsanto are not sufficient to establish an agency relationship. See *Akzona Inc. v. E.I. Du Pont Nemours & Co., 607 F.Supp. 227 (D. Del. 1984)*; n10 *Sears, Roebuck & Co v. Sears, 744 F.Supp. 1297 (D. Del. 1990)*. n11 The facts of record do not reflect a situation where the parent company is involved in manufacturing or production activities and the subsidiary is acting as the parent's distributor or sales agent. See *C.R. Bard Inc. v. Guidant Corp, 997 F.Supp. 556, 561 (D. Del. 1998)*. The Syngenta U.S. Companies make their own decisions [*22] about day-to-day activities, and design, manufacture, market and distribute the GA21 corn. See *Akzona Inc., 607 F.Supp. at 238.* n12 No agency relationship has been demonstrated.

> N10 The Akzona court found no agency relationship between a parent and its wholly owned subsidiary, where there was some overlap between the board of directors, references to subsidiaries as divisions of the parent in the annual report, requirement that parent approve capital expenditures by subsidiaries exceeding $ 850,000, references in board meetings and reports to the development of products as the parent company's "decision" or "project," parent company taking credit for the product project in its annual report, parent company's negotiation with an agency of the Dutch government to set up a joint venture, parent company's guarantee of 50% of the Dutch government loans to the subsidiaries, and parent company's participation in the decision to bring a declaratory judgment.

> n11 The Sears court found no agency relationship when there was no evidence that the subsidiary could enter into negotiations or binding agreements for the parent or act for the parent in any other way in Delaware.

[*23]

> n12 The meeting in Delaware is the only event that could arguably reflect an agency relationship if, at that meeting, the details of the alleged misappropriation plan were explored. As noted above, the record is devoid of any evidence that suggests the participants at the Delaware meeting discussed a misappropriation plan or any actions that are alleged to constitute the misappropriation.

**B. Delaware Long Arm Statute**

Even if an agency relationship were shown, Monsanto has not carried its burden to demonstrate that the activities directed or controlled by Syngenta AG and Participations are the jurisdictional acts of Syngenta AG and Participations. n13 See *C.R. Bard Inc, 997 F.Supp. at 560* ("The agency theory requires not only that the precise conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy *§ 3104(c)(1)*."). "When applying the agency theory, a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement [*24] to the . . . claim." *Id. at 560*. The counterclaims at issue are: (1) Reverse passing off under the Lanham Act; (2) Violations of the Delaware Deceptive Trade Practices Act; (3) False advertising under the Lanham Act; and (4) Tortious interference with a contract.

> n13 For this reason, the court need not reach the constitutional analysis.

**1. Specific Jurisdiction *§ 3104(c)(1), (2), (3)***

Jurisdiction under *§ 3104(c)(1)* or *(2)* can be obtained if, through the Syngenta U.S. Companies, Syngenta AG and Participations have conducted any business or contracted to supply services or things in Delaware. *Section 3104(c)(3)* provides for jurisdiction when a nonresident or its agent has caused tortious injury in Delaware by an act or omission that occurred in this State. *Applied Biosystems, 772 F.Supp. at 1467.*

It is established that the incorporation of the Syngenta U.S. Companies in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation. [*25] See *Applied Biosystems at 1467*. However, "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent." *Ace & Co. v. Balfour Beatty PLC, 148 F.Supp.2d 418, 422-23 (D. Del. 2001)*. None of the counterclaims rise from the act of incorporation.

The reverse passing off claim and deceptive trade practices claim are based on the sale and marketing of GA21 corn seed without acknowledging Monsanto as the source of the GA21 event. There is no evidence that Syngenta AG and Participations direct or control sales or marketing in Delaware. To the contrary, the evidence that the Syngenta U.S. Companies report to and update the Executive Committee regarding these decisions tends to substantiate the opposite conclusion. The 2002 meeting is equally unavailing to establish jurisdiction. The 2002 meeting in Delaware is not related to and does not give rise to any of the counterclaims. In fact, the meeting took place several years prior to the relevant time period of the counterclaims. Finally, the tortious interference claim is based on a contract between [*26] Syngenta Seeds, Inc. and Advanta USA, Inc. and has no relationship to Delaware, as it was neither negotiated nor signed in Delaware.

Monsanto also asserts a stream of commerce theory, citing *A.V. Imports, Inc. v. Col De Fratta, 171 F.Supp.2d 369 (D.N.J. 2001)*. n14 However, as the court in A.V. Imports clearly states, "the mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts." *Id. at 372* (citing *Asahi Metal Industry Co., 480 U.S. at 107*). Monsanto has produced no evidence that Syngenta AG or Participations, or any of the Syngenta U.S. Companies, "purposefully availed" themselves of the forum state.

n14 The court is not confident this precedent is applicable to the case at bar, but need not decide this issue as there is no showing that Delaware was in any way targeted, as is required under this theory.

Press releases and similar communications do not give [*27] rise to personal jurisdiction unless they are "expressly aimed" at the relevant forum. See *IMO Indus. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998)*. Syngenta International AG issued a press release on May 12, 2004 from its Swiss headquarters, but it was not "specifically directed toward Delaware residents" nor was it "part of a 'sustained promotional campaign'" in Delaware. *Applied Biosystems, 772 F.Supp. at 1467*; *Virgin Wireless, Inc. v. Virgin Enters., 201 F.Supp.2d 294, 299* (finding a single press release attributed to English company cannot justify personal jurisdiction in Delaware).

Finally, Monsanto asserts that the filing of the antitrust litigation in Delaware serves as a basis for personal jurisdiction. The court finds this argument unpersuasive. The holding in *Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., 833 F.Supp. 437 (D. Del. 1993)*, establishes that the filing of a lawsuit may be relevant to establishing jurisdiction when the claim at issue is sham litigation. Again, the filing of the lawsuit bears no relevance to the counterclaims at issue and, therefore, cannot serve as a basis for personal jurisdiction.

**2. General** [*28] **Jurisdiction *§ 3104(c)(4)***

*Section 3104(c)(4)* provides for general jurisdiction in tort cases. Jurisdiction is authorized if Syngenta AG or Participations, through its agents, "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

That the subsidiaries are incorporated in Delaware is not imputed to Syngenta AG and Participations. See *Applied Biosystems, 772 F.Supp. 1458, 1469*. The act of incorporating a subsidiary in Delaware is not enough to confer general jurisdiction in this instance because it does not appear that Syngenta AG and Participations have engaged in a pattern of corporate dealings under Delaware law. See *Sears, 744 F.Supp. at 1306* (finding that the defendant only owned one Delaware subsidiary and had not engaged in a pattern of corporate dealings in Delaware). In *Altech Indus., Inc. v. Al Tech Speciality Steel Corp., 542 F.Supp. 53 (D. Del. 1982)*, the court held it could exercise jurisdiction over a non-Delaware corporation under *§ 3104(c)(4)* where: (1) The defendant owned eighty-two [*29] subsidiaries and a "vast majority" of these were incorporated in Delaware; and (2)

The defendant had "utilized the benefits of the Delaware corporation law in various ways," including conducting mergers and acquisitions with, and amending the articles of incorporation of, its many subsidiaries. *Id. at 55.* The court does not find that Syngenta AG and Participations have availed themselves of the general jurisdiction of Delaware.

### C. *Fed. R. Civ. P. 4(k)(2)*

When a foreign defendant does not have sufficient minimum contacts with any single forum to comport with due process, *Rule 4(k)(2)* allows an alternate jurisdictional basis to pursue a claim arising under federal law, where defendant has sufficient nationwide contacts.

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service of process is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

*Fed. R. Civ. P. (4)(k)(2)* [*30] . The court must first determine that: (1) The case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction; and (2) The foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction there. *United States v. Int'l Brotherhood of Teamsters, 945 F.Supp. 609, 617 (D. Del. 1997).* The court can then ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process. *Id.*

The court's analysis stops at the first step. The court finds that Monsanto has not satisfied its burden of proving the lack of state-specific contacts. See *CFMT, Inc. v. Steag Microtech, Inc., 965 F. Supp. 561, 1997 WL 313161 (D. Del. 1997). Rule 4(k)(2)* "provides a narrow exception which may subject an alien defendant to a federal court's personal jurisdiction." Id. at *7. "To satisfy this requirement, plaintiffs are required to make an affirmative representation that the defendant is not

subject to the general jurisdiction of any state court." *Id.*; *Telcordia Techs. v. Alcatel S.A., 2005 U.S. Dist. LEXIS 10194, *17, 2005 WL 1268061,* [*31] *at *5 (D. Del. May 27, 2005)*("The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that [the plaintiff] bears the burden of demonstrating that [the defendant] is not subject to jurisdiction in any state."). While Monsanto asserts that it can argue *Rule 4(k)(2)* in the alternative of arguing that Delaware has personal jurisdiction, the court finds that Monsanto has not affirmatively represented that Syngenta AG and Participations are not subject to the jurisdiction of any state. Instead, Monsanto has tried only to shift the burden to Syngenta AG and Participations by arguing that, if the court finds no jurisdiction lies in Delaware, then no jurisdiction lies in any other state and *Rule 4(k)(2)* applies. See *In re Lupron Marketing & Sales Practices Litig., 245 F.Supp.2d 280, 302-03 (D. Mass. 2003).* The only basis asserted by Monsanto that no jurisdiction lies in any other state is that Monsanto is unable to find any basis for jurisdiction through review of the discovery record and publicly available sources. Unfortunately, Monsanto does not elaborate on these bald assertions. Furthermore, since the filing [*32] of its original brief, Monsanto has submitted two motions to supplement the record with extensive deposition testimony. Yet, no evidence was presented in furtherance of its argument that Syngenta AG and Participations are not subject to jurisdiction in any state. Rather, Monsanto has extensively asserted that jurisdiction is proper in Delaware. Monsanto has also produced some tangential evidence that meetings have taken place in the United States other than Delaware, offices exist in states other than Delaware, and the GA21 corn is sold in the United States other than Delaware. The court is unwilling to merely take Monsanto's assertion that if jurisdiction does not lie in Delaware, jurisdiction does not lie anywhere else in the country. Monsanto has not fulfilled its burden in showing this element of *Rule 4(k)(2)*; as a result, the court need not perform further analysis.

## V. CONCLUSION

For the reasons discussed above, Syngenta AG and Syngenta Participations AG's motion to dismiss for lack of personal jurisdiction is granted. An order consistent with this memorandum opinion shall issue.

# TAB C

LEXSEE 2005 U.S. DIST. LEXIS 10194

**TELCORDIA TECHNOLOGIES, INC., Plaintiff, v. ALCATEL S.A. and ALCATEL USA, INC., Defendants.**

**Civil Action No. 04–874 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 10194*

**May 27, 2005, Decided**

**COUNSEL:** [*1]  For Telcordia Technologies Inc., Plaintiff: Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE.

For Alcatel S.A., Defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Alcatel USA Inc., Defendant:  Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Alcatel USA Inc., Counter Claimant:  Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Telcordia Technologies Inc., Counter Defendant: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this patent infringement action against Alcatel S.A. ("Alcatel S.A.") and Alcatel USA, Inc. ("Alcatel USA"). Presently before the court is Alcatel S.A.'s motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will grant the motion.

**II. BACKGROUND**

Alcatel S.A. is a French corporation [*2] with its prin-cipal place of business in Paris, France. Alcatel S.A. is the parent company of Alcatel USA, a Delaware corporation with its principal place of business in Plano, Texas. (*D.I. 18 Ex. 2 PP 2–3.*). It is a holding company that does not manufacture, sell, advertise, offer to sell, trade or import any goods or services in the United States or anywhere in the world. (*Id. PP 3–5.*)  It does not maintain any offices or other facilities in Delaware, or the United States. (*Id. P 7.*)  It neither owns nor leases any real property in Delaware or the United States, but it does own United States patents. (*Id. P 8.*)  Alcatel S.A. does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. (*Id. PP 9–10.*)

Telcordia, a Delaware Corporation with its principal place of business in Piscataway, New Jersey, is the assignee and owner of the patent-in-suit, *U.S. Patent No. 4,893,306* (the "'306 patent"). n1 The *'306 patent* relates to a method and apparatus for multiplexing circuit and packet traffic. The patent discloses a data transmission technique, [*3] or Dynamic Time Division Multiplexing ("DTDM"), that is compatible with the digital circuit transmission format, as well as the packet transmission format, thereby providing "a flexible migration strategy between present circuit networks and future broadband packet networks." (*U.S. Patent No. 4,893,306* Abstract.) The complaint alleges that Alcatel S.A. and Alcatel USA have infringed, induced infringement of, and/or contributorily infringed one or more claims of the *'306 patent* by making, using, offering for sale, selling and/or importing into the United States communication network products embodying the patented invention. (D.I. 1 PP 13–14.)

> n1 The *'306 patent* was issued on January 9, 1990 and assigned to Bell Communications Research, Inc. ("Bellcore"), which became Telcordia in 1999.

Case 1:06-cv-00132-JJF    Document 30-4    Filed 09/20/2006    Page 20 of 25

Page 2
2005 U.S. Dist. LEXIS 10194, *3

## III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack of personal jurisdiction over the defendant. "*Rule 12(b)(2) of the Federal Rules of Civil Procedure* [*4] requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, 197 F.R.D. 112, 119 (D.Del.2000)*. In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long–arm statute of the state in which the court sits. *Transportes Aereos de Angola v. Ronair, Inc., 544 F. Supp. 858 at 864–65 (D. Del. 1982)*. If jurisdiction is proper for the long–arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause of the Fourteenth Amendment*. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs., 948 F. Supp. 338, 342 (D. Del. 1996)* (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions [*5] of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)* (citation omitted). Specifically, Telcordia must show that Alcatel S.A. "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958))*; *see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108–09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*. Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414–15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)*.

In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F. Supp. 53, 55 (D. Del. 1982)*. However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Alcatel S.A. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268, 270–71 (D. Del. 2001)*. [*6] To meet this burden, Telcordia must adduce facts which "'establish with reasonable particularity'" that jurisdiction over Alcatel S.A. exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 193 (D. Del. 1996))*.

## IV. DISCUSSION

### A. Delaware's Long–Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long–arm statute, *Del. Code Ann. tit. 10 § 3104*, warrant the exercise of jurisdiction over Alcatel S.A. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections *(c)(1)* and *(c)(3)* of the long–arm statute.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." *DEL. CODE ANN. tit. 10 § 3104(c)(1)*. Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission [*7] in this State." *DEL. CODE ANN. tit. 10 § 3104(c)(3)*. Delaware courts construe the long–arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156–57 (Del. Super. 1997)*. The Delaware Supreme Court has interpreted subsections *(c)(1)* and *(c)(3)* as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See La Nuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986)*. In order to meet the requirements of subsections *(c)(1)* and *(c)(3)*, Alcatel S.A.'s actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology, 821 F. Supp. 272, 274 (D. Del. 1993)*.

Telcordia asserts that the court should exercise jurisdiction under *§ 3104(c)(1)* and/*or (c)(3)* because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of [*8] agency. n2 The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard Inc. v. Guidant Corp., 997 F. Supp. 556, 559 (D. Del. 1998)* (citing *Mobil Oil Corp. v. Linear Films, Inc., 718 F. Sup. 260, 266 (D. Del. 1989))*. Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1463 (D. Del. 1991)*. The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the

division of responsibility for day–to–day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.* If the court determines that an agency relationship exists, it may attribute certain [*9] actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether Telcordia has satisfied the requirements of the long–arm statute. *See id.* However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long–arm statute. *See id. at 1465* ("[A] finding of agency does not render the long–arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

> n2 Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1463 (D. Del. 1991).* Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.*; *see Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 266 (D. Del. 1989).* Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

[*10]

Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one." (D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries – that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chose to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id. at 3–5, 10.*) Telcordia further contends that,"at the very least," Alcatel USA has offered to sell in

Delaware products accused of infringing the *'306 patent* and, therefore, transacts business in the state. In addition, because Alcatel USA committed these [*11] acts as Alcatel S.A.'s agent, they are attributable to Alcatel S.A. (D.I. 20, at 10.)

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day–to–day management between the two, and the process by which each corporation obtains its business. After having considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; *D.I. 22 P 6.*) This minor overlap, however, is not dispositive, [*12] as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998)* (citations omitted) (noting that it is "well established principle . . . that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 PP 3–5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard, 997 F. Supp. at 561.* In addition, Alcatel USA maintains its own executive team, which is responsible for the day–to–day management of Alcatel USA, and no employee of [*13] Alcatel S.A. is a member of the executive team of Alcatel USA. (*D.I. 22 P 5.*) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (*D.I. 22 P 10.*) Alcatel USA files a consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id. P 12.*) Alcatel USA finances its day–to–day activities through

funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id. P 13.*) Accordingly, the court finds that while there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections *(c)(1)* and *(c)(3)* do not warrant the exercise of jurisdiction over Alcatel S.A. n3

> n3 The court need not address whether jurisdiction in Delaware comports with the requirements of the *Due Process Clause* because it has no statutory authority under the Delaware long–arm statute to exercise jurisdiction over Alcatel S.A.

[*14]

**B. *Federal Rule of Civil Procedure 4(k)(2)***

Telcordia next asserts that, even if the Delaware long–arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to *Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2)* provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

*FED. R. CIV. P. 4(k)(2)*. In order to establish jurisdiction pursuant to *Rule 4(k)(2)*, (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States [*15] as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 258–59 (3d Cir. 2000)*. Telcordia contends that all three requirements of *Rule 4(k)(2)* are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily infringed the *'306 patent*. Patents and the protection of patent rights are the subject of Title 35 of the United States Code. *35 U.S.C. §*

*271* specifically provides the elements of patent infringement. Additionally, *28 U.S.C. § 1338* gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises under federal law. Telcordia has thus satisfied the first requirement of *Rule 4(k)(2)*.

Having found that the first requirement of *Rule 4(k)(2)* is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd., 179 F.R.D. 156, 160, 38 V.I. 422 (D.V.I. 1998)*; *Revak v. Locatum A.B., 2005 U.S. Dist. LEXIS 11076, No. Civ. A. 03–4822, 2005 WL 1017771, at *2 (E.D. Pa. Apr. 28, 2005)*. [*16] As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.,* the United States District Court for the District of the Virgin Islands noted that "the question [of] which party bears the burden of proving. . . that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction." *Offshore Marine Ltd., 179 F.R.D. at 160*. Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 47 Fed. Appx. 73, 75 (3d Cir. 2002)* (unpublished) (determining that negation issues need not be reached because the Due Process requirement of *Rule 4(k)(2)* was [*17] not satisfied). n4 Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd., 179 F.R.D. at 160* ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A L 'Energie Atomique v. Chi Mei Optoelectronics Corp., 293 F. Supp. 2d 423, 430 (D. Del. 2003), vacated on other grounds by 395 F.3d 1315 (Fed. Cir. 2005)* (issue abandoned on appeal) ("Plaintiffs must also demonstrate that defendant is 'not subject to the jurisdiction of *any* state' under *Rule 4(k)(2)*. Therefore, *Rule 4(k)(2)* "provides 'a narrow exception which may subject an alien defendant to a federal court's jurisdiction.'") The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject [*18] to jurisdiction in any state.

n4 Likewise, it appears that the Federal Circuit has not had occasion to address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then *Rule 4(k)(2)* applies. (*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement [*19] of *Rule 4(k)(2)*.

Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of *Rule 4(k)(2)* because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process. *The Due Process Clause* requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*(citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 (1984)*. The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed his activities at residents of the forum and the litigation [*20] results from alleged injuries that 'arise out of or related to' those activities." *Burger King, 471 U.S. at 472* (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum, regardless of their relation to the litigation, are "continuous and systematic." *Helicopteros Nacionales, 466 U.S. at 416*. The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give rise to specific jurisdiction, "it is essential in each case that there be some act by which the defendant pur-posely avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *BP Chems., 229 F.3d at 259* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286*). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. [*21] Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with that activity. *See Burger King, 471 U.S. at 475-76*. In the present case, however, the court need not make this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, as discussed in Section IV.A., *supra*, do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S.A.'s website fails to distinguish [*22] among its multinational subsidiaries and uses its name in the name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. *See Presbyterian Church of Sudan*

*v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 330 (S.D.N.Y. 2003)*; [*23] *Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)*("The Court is not persuaded that Congress intended for the courts to assert jurisdiction under *Rule 4(k)(2)* whenever a corporation lists its stock on a United States exchange."). Likewise, "ownership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 1996 U.S. Dist. LEXIS 11696, No. C-95-3577 DLJ, 1996 WL 467293, at *6 n. 5 (N.D. Cal. July 24, 1996)* (citing *35 U.S.C. § 293*). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. *See Applied Biosystems, 772 F. Supp. at 1468*. Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via [*24] its web site." *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003)*. Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States. n5

> n5 Telcordia asserts that there can be "no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing products) from Delaware residents, pointing to a "website page concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with [*25] Telcordia's assertion that Alcatel's website "never discloses that its U.S. activities are performed by some entity (or entities) other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country/region the web address changes from "www.alcatel.com" to "www.usa.alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects "Alcatel in the U.S.A.," he or she is provided

with information regarding Alcatel USA, including its business locations. Moreover, the web page states "it is the policy of *Alcatel USA* to satisfy the expectation of our customers." www.usa.alcatel.com/company/ausa_info.jhtml (last visited May 23, 2005)(emphasis added). Thus, the Alcatel web site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis [*26] to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254 (3d Cir. 2000)* is instructive on this point. In *BP Chemicals,* the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of *Rule 4(k)(2)* jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id. at 263*. The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of those alleged by the plaintiff in *BP Chemicals*. As such, the court finds that there is no basis for exercising *Rule 4(k)(2)* jurisdiction over Alcatel S.A.

**C. Jurisdictional Discovery**

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute,* [*27] " it should permit limited jurisdictional discovery rather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11)(emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the personal jurisdiction issue.

Conversely, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware." (D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that Plaintiff (1) did not know which entities in the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them." (*Id.* at 17.) According

to Alcatel S.A., Telcordia has had prior business inter-actions with Alcatel entities regarding the patent–in–suit, as well as other communications technology. (*Id.* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most [*28] knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market." (*Id.* at 1.) Thus, it "is hard to believe that it [Telcordia] does not know exactly who the relevant players in the market are." (*Id.*) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." (*Id* at 18–19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa, 482 U.S. 522, 546, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987)).* The court is persuaded by Alcatel S.A.'s argument.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)* (internal citations omitted). Thus, resolution of Telcordia's request [*29] "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. Oct. 5, 1995).* However, "the court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id. at 475.* For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id. at 476.* Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997); see B.L. Poe v. Babcock Int'l, 662 F. Supp. 4, 7 (M.D. Pa. Mar. 14, 1985)* ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent

evidence to demonstrate that personal jurisdiction [*30] over [a] defendant might exist before allowing discovery to proceed." *Hansen, 163 F.R.D. at 475.* Furthermore, "when the lack of personal jurisdiction is clear, . . . further discovery serves no purpose and should be denied." *Hockerson–Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 338 (Fed. Cir. 2003)* (unpublished).

Here, as previously discussed in Section IV.A., *supra,* the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court could exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long–arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long–arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's request for jurisdictional discovery would amount to allowing it to conduct a fishing expedition in order to form a basis for jurisdiction. The court, therefore, will deny [*31] Telcordia's request for jurisdictional discovery.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Alcatel S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 17) is GRANTED.

2. Telcordia's request for jurisdictional discovery is DENIED.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE