IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-132 (JJF) |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, | ) | |
| INC., SIEMENS MEDICAL SOLUTIONS | ) | |
| HEALTH SERVICES CORP., SIEMENS | ) | |
| CORPORATION and SIEMENS AG, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SYED IQBAL RAZA'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO DEFENDANT SIEMENS AG'S MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Martin S. Lessner  (No. 3109)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th  Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Plaintiff*

Dated:  December 29, 2006

064935.1001

# TABLE OF CONTENTS

Page

ARGUMENT

    I.      A CONSISTENT PATTERN OF CORPORATE
           DEALINGS UNDER DELAWARE LAW WILL
           GIVE RISE TO PERSONAL JURISDICTION
           PURSUANT TO 10 *DEL. C.* § 3104(c)(4)...................................................1

    II.     SIEMENS AG HAS ENGAGED IN A CONSISTENT
           PATTERN OF CORPORATE DEALINGS UNDER
           DELAWARE LAW .....................................................................................2

CONCLUSION.........................................................................................................6

# TABLE OF AUTHORITIES

Page

**Cases**

*Altech Industries, Inc. v. GATX Corporation,*
 542 F. Supp. 53 (D. Del. 1982)..................................................................................... 1, 2, 5

*Colonial Mortgage Serv. Co. v. Aeronson,*
 603 F. Supp. 323 (D. Del. 1985)............................................................................................ 5

*Hill v. Equitable Trust Co.,*
 562 F. Supp. 1324 (D. Del. 1983)......................................................................................... 5

*In re Ski Train Fire,*
 230 F. Supp. 2d 376 (S.D.N.Y. 2002) ................................................................................. 3, 5

*Sears, Roebuck & Co. v. Sears plc,*
 744 F. Supp. 1297 (D. Del. 1990).......................................................................................... 2

**Statutes**

10 *Del. C.* § 3104(c)(4) ...................................................................................................... 1

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .................................................................................. 1

On May 2, 2006, defendant Siemens AG moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss as to it the complaint of plaintiff Syed Iqbal Raza for lack of personal jurisdiction (the "Motion") (D.I. 15).[1] Dr. Raza subsequently served jurisdictional discovery upon Siemens AG in connection with his opposition to the Motion. When Siemens AG refused to comply with that discovery, the Court issued a Memorandum Order on July 13, 2006 instructing it to do so. The additional information about Siemens AG collected through both that formal jurisdictional discovery and informal discovery reveals that Siemens AG is and has been engaged in a consistent pattern of corporate dealings under Delaware law, as detailed below. Siemens AG is therefore subject to the general jurisdiction of this Court. For this reason and the reasons set forth in the papers earlier submitted by Dr. Raza, Siemens AG's motion to dismiss ought to be denied.

## ARGUMENT

### I.    A CONSISTENT PATTERN OF CORPORATE DEALINGS UNDER DELAWARE LAW WILL GIVE RISE TO PERSONAL JURISDICTION PURSUANT TO 10 *DEL. C.* § 3104(c)(4).

It is established as a matter of law that a defendant will be subject to the personal jurisdiction of this Court, pursuant to 10 *Del. C.* § 3104(c)(4), if that defendant has engaged in a consistent pattern of dealings under Delaware law. In *Altech Industries, Inc. v. GATX Corp.*, the plaintiff sued a non-Delaware defendant for violations of the Lanham Act and the Uniform Deceptive Trade Practices Act, among other claims. 542 F. Supp. 53, 54 (D. Del. 1982) (attached as "Exhibit A"). The defendant moved to dismiss the claims for lack of personal jurisdiction. *Id.* at 54-55. The Court denied the motion and concluded that the defendant was subject to personal jurisdiction under § 3104(c)(4) because it had "persistently engaged in a

---

[1] Siemens AG also moved to dismiss based on insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). That ground for dismissal has since been mooted by Dr. Raza's service of process via the Hague Convention.

course of conduct in the State of Delaware [by] ... utilizing the benefits of the Delaware corporation law in various ways." *Id.* at 55. The Court concluded so because the defendant controlled many Delaware subsidiaries, it had previously used Delaware law to merge its subsidiaries, it had submitted papers to the Delaware Secretary of State in connection with such mergers, and it had retained Delaware counsel to advise it with respect to the Delaware take-over statute. *Id.* at 55-56.

Since the *Altech* decision, this Court has been careful not to overextend the "course of conduct" doctrine to those defendants that own a single Delaware subsidiary and do not engage in a pattern of corporate dealings under Delaware law. *See Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1306 (D. Del. 1990) (finding no "course of conduct" where defendant owned only one Delaware subsidiary). However, given Siemens AG's consistent use of the Delaware corporation law and the resources of this jurisdiction for its benefit, as detailed below, there is no risk of such an overextension here.

## II. SIEMENS AG HAS ENGAGED IN A CONSISTENT PATTERN OF CORPORATE DEALINGS UNDER DELAWARE LAW.

Siemens AG, like the defendant in *Altech*, has consistently taken advantage of and benefitted from the Delaware corporation law. For example, Siemens AG owns, directly and indirectly, at least <u>29</u> Delaware subsidiaries, including the other two defendants in this case, Siemens Medical Solutions USA, Inc. and Siemens Medical Solutions Health Services Corporation, and Siemens Corporation, a former defendant in this case. (A list of Siemens AG's other Delaware subsidiaries is attached hereto as "Exhibit B;" the Declaration of Kenneth R. Myers, acknowledging ownership of the other defendants, is attached as "Exhibit C.") In fact, the District Court for the Southern District of New York has previously concluded that Siemens Corporation is Siemens AG's "agent" in the United States, and, while the use of a Delaware

2

corporation as an agent is not alone sufficient to confer jurisdiction over Siemens AG, it is one example of Siemens AG's utilization of Delaware law for its benefit. *In re Ski Train Fire*, 230 F. Supp. 2d 376, 385 (S.D.N.Y. 2002) (attached as "Exhibit D").

As for Siemens AG's other Delaware subsidiaries, there should be no dispute that Siemens AG focuses heavily upon their activities in the United States. Siemens AG's Chief Executive Officer has said that: "The U.S. is now Siemens' top priority. Our business [in the U.S.] will be the jewel in our worldwide operations." *Id.* at 386. Siemens AG pursues that agenda, at least in part, through the use of Delaware law to effect corporate mergers and acquisitions.

For example, in 2001, Siemens AG acquired Efficient Networks, Inc., a Delaware corporation, through its Delaware subsidiary and agent, Siemens Corporation. As the District Court for the Southern District of New York recognized, Siemens AG used its own funds to effect the merger. *Id.* (citing Efficient Networks, Inc., Schedule 13D, Feb. 21, 2001 ("Siemens Corporation, the parent of Memphis Acquisition Inc., will be financing the offer with funds provided by Siemens AG and its affiliates") (attached as "Exhibit E")) It is also important to note that Siemens AG created and used a Delaware merger subsidiary, Memphis Acquisition Inc., to acquire the Delaware target. (*See* Ex. E) Moreover, Siemens AG presumably retained Delaware counsel to advise them with respect to the transaction, and it used The Corporation Trust Company, a Delaware corporation, to file the appropriate merger documents with the Delaware Secretary of State. (*See* Declaration of Chad S.C. Stover, Esquire ("Stover Decl.") ¶¶ 3-5 (attached as "Exhibit F"))

In 2005, "Siemens Medical Solutions of Siemens AG (NYSE: SI)" (as the acquiring entity is identified and defined in the April 1, 2005 Siemens press release attached as

3

"Exhibit G") acquired another Delaware corporation, CTI Molecular Imaging, Inc., for

approximately $1 billion. (*See* Ex. G)  In doing so, Siemens Medical Solutions of Siemens AG

created and effected the merger through another Delaware merger subsidiary, MI Merger Corp.,

and it again used the services of The Corporation Trust Company to file the appropriate merger

documents with the Delaware Secretary of State.  (*See* Stover Decl. ¶¶ 3-5)

       Siemens AG's course of conduct under Delaware law has not been limited to

transactional matters.  On at least four occasions over the past decade, Siemens AG has willingly

used this Court (and its limited resources) to both prosecute and defend lawsuits on the merits.

*See, e.g., Siemens AG v. Fonar Corp.*, C.A. No. 95-261 (SLR), *Siemens Aktiengesellchaft v. LG

Semicon Co.*, C.A. No. 98-514 (RRM), *Fenster Family Patent Holding, Inc. v. Siemens AG*, C.A.

No. 04-038 (JJF), and *TI Group Automotive Systems, (North America) Inc. v. Siemens AG*, C.A.

No. 00-432 (GMS).

       In *Siemens AG v. Fonar Corp*, Siemens AG filed suit here and then opposed and

prevailed against a motion to transfer to the Southern District of New York on *forum non

conveniens* grounds, arguing that, among other advantages of litigating in Delaware, the District

Court for the District of Delaware "is recognized as having a commendable familiarity with

complex litigation in general." 1995 U.S. Dist. LEXIS 22334, at *7 (D. Del. 1995) (Ex. H).  And

in *Fenster Family Patent Holding, Inc. v. Siemens AG*, a patent infringement case, Siemens AG

did not even challenge (in an affirmative defense or otherwise) this Court's personal jurisdiction

over it.  (Siemens AG Ans. (C.A. No. 04-038 (JJF)) (Ex. I))

       In both prosecuting and defending (without jurisdictional challenge) these cases

and others, Siemens AG retained Delaware counsel, including the law firms of Richards Layton

and Finger, P.C. and Connolly Bove Lodge & Hutz, L.L.P.  Under similar circumstances, this

4

Court has previously concluded that a defendant purposefully availed itself of the laws and benefits of this forum based, in part, on its previous willingness to engage in litigation in this forum. *See Hill v. Equitable Trust Co.*, 562 F. Supp. 1324, 1331 (D. Del. 1983) (considering past litigation in forum as factor in favor of general jurisdiction); *Colonial Mortgage Serv. Co. v. Aeronson*, 603 F. Supp. 323, 327 (D. Del. 1985) (same). *See also In re Ski Train Fire*, 230 F. Supp. 2d at 382 (considering litigation activities in connection with jurisdictional analysis). This case should be no exception.

Given Siemens AG's ownership of at least 29 Delaware subsidiaries, its use of a Delaware subsidiary (Siemens Corporation) as its agent in the United States, its pattern of engaging in corporate transactions under Delaware law, and its history of and apparent preference for (except in this case) engaging in litigation in this forum, there can be no reasonable dispute that Siemens AG, like the defendant in *Altech*, has utilized the benefits of Delaware law and this forum in various ways. For these same reasons, Siemens AG cannot be heard to complain that traditional notions of fair play and substantial justice would be offended if it were required to defend the present action in Delaware or that it could not have reasonably anticipated that it might someday need to defend itself in the Delaware courts. Siemens AG's motion to dismiss ought to be dismissed as a result.

## CONCLUSION

For the foregoing reasons and those set forth in the papers earlier submitted by

Dr. Raza, Dr. Raza respectfully requests that the Court deny Siemens AG's motion to dismiss.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Martin S. Lessner  (No. 3109)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th  Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Plaintiff*

Date: December 29, 2006

6

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on December 29, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Duncan Grant., Esquire
> Pepper Hamilton LLP.
> Hercules Plaza, Suite 5100
> 1313 N. Market Street
> P.O. Box 1709
> Wilmington, DE 19899-1709

I further certify that December 29, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FIRST CLASS MAIL

> Larry R. Wood, Jr., Esquire
> Kathleen A. Mullen, Esquire
> Pepper Hamilton LLP.
> 3000 Two Logan Square
> Eighteenth & Arch Streets
> Philadelphia, PA 19103-2799

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Syed Iqbal Raza, M.D..*

DB02:5307621.1                                           064935.1001

# EXHIBIT A

ALTECH INDUSTRIES, INC. v. AL TECH SPECIALTY STEEL    **53**
Cite as 542 F.Supp. 53 (1982)

geant stripes to be "property" which can only be taken away after a hearing to determine "proper cause". We disagree.

*Sweeny v. Johns,* 33 Pa.Cmwlth. 209, 380 A.2d 504 (1977) relying upon 53 P.S. § 37002, the very next statutory sub-section, held that a third-class city's mayor may properly demote the police chief and "other officers without cause, and without a hearing or other civil service protection". *Id.* This is because third-class cities which have adopted the optional charter form of government, as has defendant Allentown, can supersede statewide statutes which govern "personnel and administration" policies. *Greenberg v. Bradford,* 432 Pa. 611, 614, 248 A.2d 51 (1968).

Because we conclude that Pennsylvania does not consider the position of police sergeant in a third-class city with an optional charter form of government to be a property right, we will grant defendants' motion to dismiss all federal claims based upon the "taking" thereof.

[3] In view of our holding, we also dismiss plaintiffs' pendent claims. Pendent jurisdiction is discretionary, *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 478 (3d Cir. 1979), and plaintiffs may claim no right thereto. *Wire Mesh Products, Inc. v. Wire Belting Association,* 520 F.Supp. 1004 (E.D.Pa.1981).



**ALTECH INDUSTRIES, INC., Plaintiff,**

v.

**AL TECH SPECIALTY STEEL CORPORATION and GATX Corporation, Defendants.**

**Civ. A. No. 81–226.**

United States District Court,
D. Delaware.

June 25, 1982.

Plaintiff brought action to recover for alleged trade name infringement, unfair

competition and false designation of origin. On motion to dismiss filed by New York defendant, the District Court, Steel, Senior Judge, held that District Court for District of Delaware had jurisdiction over New York corporation, since the New York corporation had persistently engaged in a course of conduct in Delaware and had utilized the benefits of Delaware corporate law, and the New York corporation did not claim that traditional notions of fair play and substantial justice would be offended if it were required to defend the action in Delaware.

Motion to dismiss denied.

**1. Federal Courts �441�a 34**
Plaintiff has burden of alleging facts justifying the exercise of jurisdiction.

**2. Federal Courts �441�a 79**
District Court for District of Delaware had jurisdiction over New York corporation in action alleging trade name infringement, unfair competition and false designation of origin, since the New York corporation had persistently engaged in a course of conduct in Delaware and had utilized the benefits of Delaware corporate law, and the New York corporation did not claim that traditional notions of fair play and substantial justice would be offended if it were required to defend the action in Delaware. 10 Del.C. § 3104(c)(1–4).

Harvey S. Kronfeld and John J. Marshall of Rawle & Henderson, Philadelphia, Pa., for plaintiff.

Jack B. Blumenfeld and Douglas E. Whitney of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants, Norman H. Zivin of Cooper, Dunham, Clark, Griffin & Moran, New York City, of counsel.

OPINION

STEEL, Senior District Judge:

Plaintiff, ALTECH Industries, Inc. (hereinafter "plaintiff") brought the action

against defendant, Al Tech Specialty Steel Corporation (hereinafter "defendant Al Tech") and defendant GATX (hereinafter "GATX"). Plaintiff and defendant Al Tech are Delaware corporations and defendant GATX is a New York corporation. Jurisdiction over the subject matter of the action in Count I arises under 15 U.S.C. § 1125(a), the Lanham Act; in Count II under the Uniform Deceptive Trade Practices Act, 6 Del.C. 1953, § 2536, 55 Del.Laws c. 36; and in Count III under the ancillary power of the Court to adjudicate common law unfair competition claims.

The complaint charges the defendant Al Tech with trade name infringement, unfair competition and false designation of origin.

GATX has moved to dismiss the complaint against it under Rule 12(b)(2) because of lack of personal jurisdiction over it under the Delaware "long-arm" statute:

The complaint alleges:

The plaintiff was incorporated on September 3, 1974. Its business consists primarily of designing, manufacturing, installing and selling apparatus for use with large vertical liquid storage tanks, including internal floating decks, aluminum roofs, peripheral seals, and related equipment. In 1974 plaintiff began using and has continuously marketed and promoted its products and services in the United States under the prominently displayed trademark "AL-TECH" with an ALTECH logo. As a result plaintiff's products have gained nationwide acceptance and are presently sold to numerous customers throughout the United States, including Delaware. Through much effort and substantial expense plaintiff has earned in the minds of its actual and potential customers and suppliers a reputation as a provider of high-quality products, reliable service, fair dealing and general business efficiency.

Sometime after plaintiff adopted the trade name and logo "ALTECH" the defendant Al Tech began manufacturing, promoting and selling in interstate commerce various steel products, including steel wire, tubing and bars made of stainless steel and other steel alloys under the prominently displayed trade name and logo "Al Tech." As a result plaintiff and its customers and others in the trade have been misled by the confusing similarity between plaintiff's trade name and that of defendant and have been caused to believe that the plaintiff ALTECH and the defendant Al Tech are the same or at least affiliated companies.

In April, 1981, the defendant GATX, a holding company with various subsidiaries, acquired all of the outstanding stock of defendant Al Tech. That acquisition has greatly enhanced the potential for damage to plaintiff's business and good will and the likelihood of confusion in the trade arising out of the confusing similarity between plaintiff's and defendant's trade name. The complaint, among other things, seeks an injunction against such use by defendants.

Plaintiff's claim is basically against the defendant Al Tech for infringing plaintiff's trade name ALTECH. Plaintiff has presented no evidence that GATX on itself or any of its subsidiaries, except defendant Al Tech, ever used plaintiff's name or its logo in its or their business or otherwise. The only charges against GATX are found in paragraphs 14, 16 and 18 of the complaint. Central to paragraphs 14 and 18 is the allegation that the use by defendant of plaintiff's trade name was under the "direction and control of GATX" with paragraph 18 adding that this was done in "concert and affiliation with GATX." Paragraph 16 alleges that by letter dated April 15, 1981, plaintiff notified defendants of plaintiff's prior use and superior right to its trade name and requested defendants to cease using their confusingly similar trade name, and by letter dated May 13, 1981, the defendant Al Tech wilfully refused to comply.[1] Paragraph 16 added that this refusal

---

1. Plaintiff does not contend that its attorney's "letter to GATX" (actually the letter was addressed only to defendant Al Tech) created a duty not to infringe upon plaintiff's name. The

letter, plaintiff asserts, served only to put GATX on notice of plaintiff's rights and injury and to make GATX's violation of those rights wilful. (Doc. 76, pp. 8–9).

"was consummated with the knowledge and approval of and in concert with GATX."

Service was purportedly made upon defendant GATX under the Delaware long-arm statute, 10 Del.C. § 3104(c)(1–4):

(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

[1] Plaintiff argues that personal jurisdiction existed over GATX under both subparagraph (3) and subparagraph (4) of paragraph (c). Plaintiff has the burden of alleging facts justifying the exercise of jurisdiction, see McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1939) and Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800, at 805 (3d Cir. 1981).

[2] At the outset it is necessary to understand the nature of plaintiff's claim against GATX. The mere acquisition by GATX of all of the stock of defendant Al Tech violated no right of the plaintiff; standing alone it gave rise to no cause of action. The wrong occurred when, as the complaint alleges, GATX directed and controlled the defendant Al Tech in infringing plaintiff's trade name.

In considering the jurisdictional question the allegations of the complaint are accepted as true even though the affidavits of Mintun and Bender refute the allegations of direction and control. These affidavits were attached to a motion which not only sought a dismissal of the action for lack of jurisdiction but also upon the ground that the complaint failed to state a cause of action. (Doc. 8). The motion in its latter respect has been withdrawn. Furthermore, plaintiff's discovery has been limited to the jurisdictional issue. (Doc. 22).

The complaint fails to allege whether it was in Delaware or elsewhere that GATX directed and controlled defendant Al Tech in infringing plaintiff's trade name. If it occurred in Delaware, the injury to plaintiff, a Delaware corporation, occurred in Delaware. In these circumstances jurisdiction existed under subparagraph (3) of paragraph (c).

If, on the other hand, the direction and control which GATX is alleged to have exercised over defendant Al Tech occurred outside of Delaware, then jurisdiction existed under subparagraph (4) of paragraph (c) inasmuch as GATX has persistently engaged in a course of conduct in the State of Delaware. GATX has utilized the benefits of the Delaware corporation law in various ways. It acquired the stock of defendant Al Tech as a result of a merger under Delaware law. A vast majority of its 82 subsidiaries are Delaware corporations formed, merged, or acquired under Delaware law. In conducting these activities GATX regularly files and records various corporate documents with and receives various documents and communications from the Office of the Secretary of State of Delaware. These activities are conducted by GATX through its agent the Corporation Trust Company in Wilmington with correspondence passing back and forth between them relating to the corporate activities. Between September 1, 1974 and September 30, 1981, GATX incorporated at last 35 subsidiaries in Delaware and amended the certificates of at least 5 others changing either their business purpose or corporate names. GATX regularly employs the Delaware corporation law to merge its subsidiaries and through its agent, Corporation Trust Com-

pany, has filed and recorded all documents in Delaware necessary to consummate the mergers. In addition, in October, 1980, GATX retained Delaware counsel to examine and advise with respect to the Delaware take-over statute.

These activities considered in their totality comprise a persistent course of conduct in Delaware which is required by Section 3104(c)(4).

The foregoing approach to the jurisdiction problem is consistent with the "forum-related" and "nonforum related" analysis in *Reliance Steel Products Company v. Watson, Ess, Marshal & Enggas*, 675 F.2d 587 (3d Cir. 1982) where the Pennsylvania long-arm statute, 42 Pa.C.S. § 5322(a)(3), (4) was involved.[2] *See also, Paolino v. Channel Home Centers and Air Control Industries, Inc.*, 668 F.2d 721 (3d Cir. 1982) decided under the Pennsylvania long-arm statute and *Carty v. Beech Aircraft Corporation*, 679 F.2d 1051, 1060 (3d Cir. 1982) which arose under the Virgin Island long-arm statute.

GATX does not claim that traditional notions of fair play and substantial justice will be offended if it is required to come to Delaware to defend the present action. Furthermore, the conduct and connection of GATX with Delaware is such that it should reasonably have anticipated that it might have to defend in Delaware an action in which it is charged with directing and controlling its subsidiary defendant Al Tech, a Delaware corporation, with infringing plaintiff's trade name. The teaching in *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) presents no obstacle to the maintenance of jurisdiction by this Court.

The motion of defendant GATX to dismiss the complaint for lack of personal jurisdiction will be denied.

2.  (a) *General rule.*—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

---

W & W FARMS, INC. Plaintiff,

v.

CHARTERED SYSTEMS CORPORATION OF NEW YORK, LTD., Frank T. Genovese, Mark J. Bienstock, Robert E. Wild, Jane Doe No. I Through X, Individually, Jane Doe No. XI Through XX, Individually, Richard Roe No. XXI Through XXX, Individually, Mary Roe No. XXXI Through XL, Individually.

No. S 81–254.

United States District Court,
N. D. Indiana,
South Bend Division.

June 28, 1982.

—

Action was brought under the Commodity Exchange Act and rules and regulations, and on other claims. The District Court, Sharp, Chief Judge, on motion for dismissal, held that: (1) defendants had sufficient minimum contacts with state of Indiana to permit court to exercise personal jurisdiction; (2) Indiana statutes forming basis of plaintiff's claim on one count envisioned no administrative agency involvement which would conflict with jurisdiction of Commodity Futures Trading Commission and was not preempted; and (3) implied right of action exists under Commodity Exchange Act.

Motion denied.

**1. Courts ⟐12(2)**

Indiana Trial Rule permits the court to assume jurisdiction over nonresident de-

* * * * * *

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

This is generally like the Delaware long-arm statute.

# EXHIBIT B

## SCHEDULE: SIEMENS AG'S DELAWARE SUBSIDIARIES[1]

| | |
|---|---|
| 1 | Siemens Corporation |
| 2 | Siemens Medical Solutions USA, Inc. |
| 3 | Siemens Building Technologies, Inc. |
| 4 | Siemens Business Services, Inc. |
| 5 | Siemens Energy and Automation, Inc. |
| 6 | Siemens Airfield Solutions, Inc. |
| 7 | Siemens Information and Communications Mobile LLC |
| 8 | Siemens Telecommunications Serviced GmbH, Inc. |
| 9 | Siemens Subscriber Networks, Inc. |
| 10 | Symbian Ltd., Inc. |
| 11 | New Energy Associates, LLC |
| 12 | Siemens Power Transmission and Distribution, Inc. |
| 13 | Siemens Transportation Systems, Inc. |

---

[1] The information included in this Schedule was derived from Siemens AG's public filings in Germany, the Declaration of Kenneth Myers and other publicly available documents.

064935.1001

| 14 | Siemens VDO Automotive Corporation |
|----|-----|
| 15 | Siemens Medical Solutions Health Services Corporation |
| 16 | BBC Technology Consultancy LLC |
| 17 | BBC Technology Holdings USA LLC |
| 18 | FINTRA Corp. |
| 19 | International Petroleum Corp. of Delaware |
| 20 | Mustang Ventures LLC |
| 21 | SI Des Plains, Inc. |
| 22 | Siemens Dematic Postal Automation LLC |
| 23 | Siemens Government Services, Inc. |
| 24 | Siemens Mexico Investment Corp. |
| 25 | Siemens Mustang Corp. |
| 26 | Siemens Venture Capital, Inc. |
| 27 | SIM Finance Corp. |
| 28 | SIM Holding Corp. |

| 29 | Trench Electric USA, Ltd. |
|----|---------------------------|

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP. and SIEMENS AG, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF KENNETH R. MEYERS, ESQUIRE

1.      My name is Kenneth R. Meyers.  I am the Vice President – Mergers & Acquisitions of Siemens Corporation in New York, New York and have served in this position for the past year.  From May 2000 until December 31, 2005, I served as Associate General Counsel of Siemens Corporation.  Prior to holding that position, for more than seven years I served as Counsel and Assistant Secretary of Siemens Corporation.  I provide this declaration on the basis of my personal knowledge, investigation and belief.

2.      I have specific knowledge and understanding of the chain of ownership from Siemens Medical Solutions Health Services Corporation through Siemens AG.

3.      Siemens Medical Solutions Health Services Corporation, a Delaware corporation with its principal place of business in Pennsylvania, is a wholly owned subsidiary of Siemens Medical Solutions USA, Inc. with Siemens Medical Solutions USA, Inc. holding 100% of the stock of Siemens Medical Solutions Health Services Corporation.

4.      Siemens Medical Solutions USA, Inc., a Delaware corporation with its principal place of business in Pennsylvania, is a wholly owned subsidiary of Siemens Corporation, with Siemens Corporation holding 100% of the stock of Siemens Medical Solutions USA, Inc.

5.      Siemens Corporation, a Delaware corporation with its principal place of business in New York, is owned by Siemens Schweiz AG (also known as Siemens Switzerland AG (Ltd.)) and Siemens USA Holdings, Inc.  Siemens Schweiz AG, a Swiss corporation, holds 10.3% of the voting stock of Siemens Corporation and Siemens USA Holdings, Inc., a Delaware corporation, holds 89.7% of the voting stock of Siemens Corporation.

6.    Siemens Schweiz AG is wholly owned by Siemens Beteiligungsverwaltung Schweiz AG, a Swiss corporation, which, in turn, is wholly owned by Siemens AG, a German corporation.

7.    Siemens USA Holdings, Inc. is owned by Siemens Beteiligungen USA GmbH, a German corporation, which holds 99.999% of the capital stock of Siemens USA Holdings, Inc., and Kyros 25 GmbH, a German corporation, which holds 0.001% of the capital stock of Siemens USA Holdings, Inc.

8.    Siemens Beteiligungen USA GmbH is wholly owned by Siemens AG.

9.    The chart attached hereto as Exhibit A depicts the ownership chain I have described above.

10.    I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge, information and belief.

_____
Kenneth R. Meyers
Vice President – Mergers & Acquisitions
Siemens Corporation

Dated:  November 16, 2006
New York, NY

-2-

*Exhibit A*

SIEMENS



# Exhibit D

In re SKI TRAIN FIRE IN KAPRUN,
AUSTRIA ON NOVEMBER 11,
2000

No. MDL 1428(SAS).
No. 01 Civ. 6554.

United States District Court,
S.D. New York.

Aug. 8, 2002.

Survivors of Americans killed in ski train accident in Austria brought negligence and strict liability action against German electrical and engineering manufacturer and others. German manufacturer moved to dismiss the action for lack of personal jurisdiction and on ground of forum non conveniens. The District Court, Scheindlin, J., held that: (1) German corporation's alleged contacts with the state of New York were sufficient to confer personal jurisdiction over the corporation under New York's long-arm statute; (2) plaintiffs' allegations were insufficient to make prima facie showing that German corporation's subsidiary located in New York was a "mere department" of the parent corporation as would confer personal jurisdiction over the parent corporation under New York's long-arm statute; (3) the New York subsidiary was an "agent" of the parent corporation as would confer personal jurisdiction over the parent corporation under New York's long-arm statute; (4) finding of personal jurisdiction over German corporation under New York long-arm statute comported with due process; and (5) case would not be dismissed on ground of forum non conveniens.

Motion denied.

**1. Federal Courts ⚙96 71**

A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**2. Federal Courts ⚙96 96**

Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the district court has jurisdiction over the defendant.

**3. Federal Courts ⚙96 94, 96**

At the pretrial stage, plaintiffs may carry burden of establishing district court's jurisdiction over defendants by pleading in good faith sufficient allegations of jurisdiction, or by showing through their own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.

**4. Federal Courts ⚙96 96**

District court may consider materials outside the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction. Fed.Rules  Civ.Proc.Rule  12(b)(2),  28 U.S.C.A.

**5. Federal Courts ⚙96 79**

Under New York long-arm statute, a foreign corporation is amenable to suit in New York if it is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in the jurisdiction. N.Y.McKinney's CPLR 301.

**6. Courts ⚙96 12(2.15)**

Casual or occasional activity does not constitute "doing business" for purpose of New York long-arm statute; rather, the statute requires a showing of continuous, permanent, and substantial activity in New York. N.Y.McKinney's CPLR 301.

**7. Federal Courts ⚙96 86**

German corporation's alleged contacts with the state of New York were sufficient to confer personal jurisdiction over the corporation under New York's long-arm statute, which subjects a foreign corporation to general jurisdiction if it is doing

business in the state, in negligence and strict liability action brought by survivors of Americans killed in ski train accident in Austria, even though each of the alleged contacts would not, itself, confer such jurisdiction, where it had employees in New York, its stock was traded on New York Stock Exchange (NYSE), it had an account with a New York bank, it conducted sales in New York over the internet, it used New York law firm on regular basis to register patents and trademarks, and had sued in New York. N.Y.McKinney's CPLR 301; Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**8. Federal Courts ⊆=82**

While the presence of a subsidiary alone does not establish the parent's presence in the state for purposes of New York's long-arm statute, personal jurisdiction over a foreign parent exists where its New York subsidiary is either a mere department of, or an agent of, the parent. N.Y.McKinney's CPLR 301.

**9. Federal Courts ⊆=79**

The continuous presence and substantial activities that satisfy the requirements of "doing business" under the New York long-arm statute do not necessarily need to be conducted by a foreign corporation itself. N.Y.McKinney's CPLR 301.

> See publication Words and Phrases for other judicial constructions and definitions.

**10. Federal Courts ⊆=82**

In order to show that a subsidiary is a "mere department" of foreign parent corporation for purposes of New York long-arm statute, plaintiffs must allege facts supporting (1) common ownership, (2) financial dependency of the subsidiary on the parent (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's personnel and fails to observe corporate formalities, and (4) the degree of control that the parent exercises over the subsidiary's marketing

and operational policies. N.Y.McKinney's CPLR 301.

**11. Federal Courts ⊆=86**

Allegations of survivors of Americans killed in ski train accident in Austria, in negligence and strict liability action against German corporation and others, that the German corporation's subsidiary located in New York was included in the consolidated financial statements of the German parent corporation, received some funding from the parent corporation, and was held out to the public, along with all of the parent corporation's other subsidiaries, as part of one enterprise, were insufficient to make prima facie showing that the subsidiary was a "mere department" of the parent corporation as would confer personal jurisdiction over the parent corporation under New York's long-arm statute. N.Y.McKinney's CPLR 301; Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

> See publication Words and Phrases for other judicial constructions and definitions.

**12. Federal Courts ⊆=82**

No determination with respect to piercing of corporate veil is necessary to find that subsidiary is an "agent" of foreign parent corporation for purpose of New York long-arm statute; rather, plaintiffs need only show that the subsidiary does all the business which the parent corporation could do were it present in the jurisdiction by its own officials. N.Y.McKinney's CPLR 301.

> See publication Words and Phrases for other judicial constructions and definitions.

**13. Federal Courts ⊆=82**

Where a subsidiary is created by the parent corporation for corporate finance purposes, or to carry on business on its behalf, the subsidiary's activities may properly be attributed to the parent for jurisdictional purposes under New York's

long-arm statute. N.Y.McKinney's CPLR 301.

**14. Federal Courts ⟐82**

To show that subsidiary is an "agent" of defendant foreign parent corporation for purpose of New York long-arm statute, plaintiffs need demonstrate neither a formal agency agreement, nor that the foreign corporation exercised direct control over its putative agent; the agent must be primarily employed by the defendant and not engaged in similar services for other clients. N.Y.McKinney's CPLR 301.

**15. Federal Courts ⟐86**

German corporation's subsidiary located in New York was an "agent" of the parent corporation as would confer personal jurisdiction over the parent corporation under New York's long-arm statute, in negligence and strict liability action against German corporation brought by survivors of Americans killed in ski train accident in Austria, where the subsidiary was 100% owned by the parent and was engaged primarily in services for the parent and its businesses and served as a holding company for the parent. McKinney's CPLR 301; Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**16. Constitutional Law ⟐305(6)**
  **Federal Courts ⟐86**

Finding of personal jurisdiction over German corporation under New York long-arm statute on basis that its subsidiary located in New York was its agent comported with due process, in negligence and strict liability action against German corporation brought by survivors of Americans killed in ski train accident in Austria; requiring the parent corporation, a multinational corporation with both direct and indirect contacts in New York, to litigate there did not offend notions of fair play and substantial justice, but rather, the undisputed presence of its agent in New York, in addition to its extensive independent contacts in the forum, made it entirely reasonable to require the parent corporation to litigate in New York. U.S.C.A. Const.Amend. 5; N.Y.McKinney's CPLR 301.

**17. Federal Courts ⟐45**

In considering a motion to dismiss on forum non conveniens grounds, the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.

**18. Federal Courts ⟐45**

To succeed on a motion to dismiss on forum non conveniens grounds, defendants must show that (1) an adequate alternate forum exists, and (2) private and public interest factors weigh in favor of dismissal.

**19. Federal Courts ⟐45**

Negligence and strict liability suit against German corporation engaged in electrical and engineering manufacturing, by survivors of six Americans killed in ski train accident in Austria, would not be dismissed on ground of forum non conveniens in favor of trial in Austria; plaintiffs raised serious questions about integrity of Austrian criminal investigation, all named plaintiffs, two of whom were residents of forum district, and several eyewitnesses, were Americans, much of documentary evidence was in the United States, inaccessibility of accident site made it likely it would be viewed only on video, and public interest factors and relative inconvenience to corporate defendant weighed in favor of plaintiffs, even though Austrian law would likely apply.

**20. Federal Courts ⟐45**

A difference in substantive law is not to be considered on a forum non conveniens inquiry.

**21. Federal Courts ⚖=45**

Private interest factors to be considered when weighing private and public interest factors in a forum non conveniens context include (1) the private interest of the litigant, (2) the relative ease to sources of proof, (3) the availability of compulsory process for attendance of unwilling witnesses, (4) the cost of obtaining attendance of willing witnesses, (5) possibility of viewing the premises, if that would be appropriate, and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive.

**22. Federal Courts ⚖=45**

In a forum non conveniens context, while plaintiffs' choice of forum is entitled to somewhat less deference when they sue in a representative capacity, defendant must nevertheless make a clear showing that litigation would be vexatious and oppressive out of all proportion to plaintiffs' convenience in order to overcome the presumption in favor of plaintiffs' choice of forum.

**23. Federal Courts ⚖=45**

Public interest factors to be considered when weighing private and public interest factors in a forum non conveniens context include (1) whether forum law or foreign law applies to the case, (2) the administrative burden on the Court, and (3) whether the community has any relation to the litigation because there is local interest in having localized controversies decided at home.

**24. Federal Courts ⚖=409.1**

In a diversity case, a federal court must determine the body of substantive law to be applied by reference to the conflict of law and choice of law rules of the state in which it sits.

**25. Action ⚖=17**

Under New York's conflict of law rules, the first step in the inquiry is to determine whether there is an actual conflict between the laws invoked by the parties; if there is a conflict, the court must classify the conflicting laws by subject matter by reference to New York law, e.g., tort or contract, substantive or procedural, and, once having classified the laws, must then look to New York choice of law rules to determine which state's substantive law applies.

**26. Action ⚖=17**

New York courts do not indulge the presumption that New York law is the same as the law of a civil code country; it is only when no evidence has been presented on applicable foreign law that New York courts will decide cases in accordance with New York law.

**27. Torts ⚖=2**

Under New York conflict of law rules, substantive law sounding in tort requires the Court to apply the law of the state which has the greatest interest in the outcome.

**28. Action ⚖=17**

    **Evidence ⚖=517**

Trial courts may find and apply foreign law, and may even use experts on foreign law to assist them.

———

Robert Swift, Martin J. D'Urso, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Nagel, Rice, Dreifuss & Mazie LLP, Livingston, NJ, Edward D. Fagan, Fagan & Associates, Livingston, NJ, Kenneth Nolan, Christina Frye, Speiser, Krause, Nolan & Granito, New York City, for Plaintiffs.

Thomas D. Yannucci, Christopher Landau, James F. Basile, Grant M. Dixton, Kirkland & Ellis, Washington, DC, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Angela and Rudolf Kern, John and Suzanne Habblett, Dick and Carol Baker, and Clair Goodridge, are the parents and grandparents of six Americans killed in a ski train accident on November 11, 2000 in Kaprun, Austria. Their individual actions alleging that a total of seventeen defendant train and train part manufacturers, ski resort operators, and marketing companies were negligent and/or should be held strictly liable, have been consolidated before this Court by the Judicial Panel on Multidistrict Litigation ("MDL Panel").[1] Defendant Siemens AG now moves to dismiss the action against it pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction,[2] and, in the alternative, pursuant to the doctrine of forum non conveniens. *See* 3/28/02 Siemens AG's Memorandum in Support of Its Motion to Dismiss ("Def.Mem."). For the reasons set forth below, Siemens AG's motion is denied.

## I. BACKGROUND

### A. The Moving Defendant

Siemens AG is a German corporation that has its principal place of business in Munich. *See* MC ¶ 36. It is one of the world's largest electrical engineering and electronics manufacturers, and employs approximately 443,000 people in 193 countries. *See* 4/24/00 "Press Release: Siemens Completes Acquisition of ENTEX IT Services, Inc.," Siemens Website ("4/00 Press Rel."), Ex. 17 to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss Based on Personal Jurisdiction ("Pl.

Opp."), at 2. Siemens AG owns 100% of Siemens Corporation, a New York corporation with its principal place of business in New York City. *See* MC ¶ 38.

### B. Procedural History

Siemens AG originally moved to dismiss on December 10, 2001, but subsequently withdrew that motion because it had not been served with process, *see* 2/28/02 Letter from James Basile, Attorney for Siemens defendants, to the Court. On March 28, 2002, after having been served, defendant moved again to dismiss this action. Rather than oppose the motion, plaintiffs sought to compel jurisdictional discovery, *see* 4/3/02 Letter from Robert Swift to the Court ("4/3/02 Pl. Ltr."), and submitted several memoranda purporting to list Siemens AG's contacts with this forum, *see* Ex. C to 4/3/02 Pl. Ltr.; 1/23/02 Memorandum ("Pl. List Mem."), Ex. 1 to 1/22/02 Letter from Edward Fagan, Robert Swift and Jay Rice, Plaintiffs' Attorneys, to the Court ("1/22/02 Pl. Ltr."). On May 8, 2002, this Court directed plaintiffs to respond to defendant's motion so that the issue would be fully briefed. *See* 5/8/02 Order.

## II. PERSONAL JURISDICTION

Plaintiffs argue that Siemens AG's contacts with New York are sufficient to confer jurisdiction over it. In the alternative, they contend that this Court has jurisdiction over Siemens AG by virtue of the New York presence of its New York subsidiary, Siemens Corporation.

---

1. Subject matter jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(3).

2. Plaintiffs also sued Siemens AG Oesterreich, the Austria-based affiliate of Siemens AG. *See* 12/21/01 Consolidated and Amended Com-

plaint ("MC" or "Master Complaint"). Because that defendant was only recently served, *see* 7/2/02 Letter from Christopher Landau, Attorney for Siemens defendants, to the Court, its motion to dismiss is not fully briefed.

### A. Legal Standard

[1–4] A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. See Fed. R.Civ.P. 12(b)(2); Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 597 (S.D.N.Y. 1998). Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that this Court has jurisdiction over the defendant. See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994). At the pretrial stage, however, plaintiffs may carry this burden by pleading in good faith sufficient allegations of jurisdiction. See Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir.1998); Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996). Plaintiffs can make this showing through their own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. See Whitaker v. Am. Telecasting Inc., 261 F.3d 196, 208 (2d Cir.2001) (citations, quotation marks omitted). The court may thus consider materials outside the pleadings in ruling on this motion. See Hsin Ten Enter. USA, Inc. v. Clark Enter., 138 F.Supp.2d 449, 452 (S.D.N.Y.2000).

### B. New York Law on Personal Jurisdiction

[5] A court may exercise personal jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located," Fed.R.Civ.P. 4(k)(1)(a), provided that the exercise of jurisdiction comports with the Fifth Amendment's Due Process Clause. See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 36 (2d Cir.2001). Thus, "[i]n assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in this instance New York.'" Whitaker, 261 F.3d at 208 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir.1997)). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." Id. (citing Bensusan, 126 F.3d at 27). New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. See N.Y. C.P.L.R. § 301 (McKinney 2002) ("CPLR § 301");[3] Aerotel Ltd. v. Sprint Corp., 100 F.Supp.2d 189, 191 (S.D.N.Y.2000) (interpreting CPLR § 301). Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." Aerotel, 100 F.Supp.2d at 191–92 (quoting Frummer v. Hilton Hotels Int'l Inc., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)).

[6] To determine whether a foreign corporation is doing business in New York, courts have focused on a traditional set of indicia: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has

---

3. At common law, New York courts exercised general jurisdiction over foreign corporations which were doing business in the state. See Jacobs v. Felix Bloch Erben Verlag, 160 F.Supp.2d 722, 731 n. 7 (S.D.N.Y.2001) (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir.1985)). "Because section 301 provides that '[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore,' 'doing business' in New York continues to be a basis for general jurisdiction." Id. (quoting CPLR § 301).

individuals permanently located in the state to promote its interests. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.2000) (Leval, J.) (citing *Hoffritz*, 763 F.2d at 58; *Frummer*, 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001). Casual or occasional activity does not constitute doing business; rather, section 301 requires a showing of "continuous, permanent, and substantial activity in New York." *Landoil Res. Corp. v. Alexander & Alexander, Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). "The 'doing business' standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs*, 160 F.Supp.2d at 731 (quoting *Ball v. Metallurgie Hoboken–Overpelt S.A.*, 902 F.2d 194, 198 (2d Cir. 1990)).

### C. Analysis

#### 1. Siemens AG's Independent Contacts with New York

[7]  Plaintiffs argue that Siemens AG's own contacts with this forum, apart from those of any subsidiary, illustrate that it has a continuous, systematic and permanent presence in New York. The following jurisdictional allegations are derived from the Master Complaint and supporting materials provided by plaintiffs. Siemens AG's stock is traded on the New York Stock Exchange ("NYSE") in the form of American Depository Receipts ("ADRs"). *See* MC ¶ 43(c). Siemens AG employs an investor relations representative in New York, a "Press Contact" by the name of Bud Grebey, and a contact person "for Siemens AG's SEC filings." Pl. Opp. at 6. It uses the Morgan Guaranty Trust Com-

pany of New York as its "ADR Depository Bank," and the New York firm Spear, Leads & Kellog as its "specialist." "Siemens AG—U.S. Listing" Webpage, Ex. 21 to Pl. Opp., at 2. In addition, Siemens AG engages the New York office of Baker Botts LLP on a regular basis to register patents and trademarks in the United States. *See* 4/25/02 Patent Application No. 20020049514, Ex. 19–B to Pl. Opp. (listing Baker Botts LLP in New York under "Correspondence Name and Address"); 3/12/01 Press Release Entitled "Siemens Lists on New York Stock Exchange" ("3/12/02 Pr. Rel."), Ex. 19–A to Pl. Opp., at 1.

In 1985, Siemens AG sued here to enforce a settlement agreement. *See* "Search Result Documents" Listing Cases in United States Federal and State Courts in Which Siemens AG, Siemens AG Oesterreich, and Siemens Corporation Were Involved ("Westlaw Caselist"), Ex. 2 to 1/22/02 Pl. Ltr. (citing *Siemens AG v. Heather Leasing Corp.*, No. 85 Civ. 3123, 1986 WL 993, at *1 (S.D.N.Y. Jan. 13, 1986)). On another occasion, a lawsuit brought by Siemens AG in Illinois was transferred to New York. *See* Pl. Opp. at 11 (citing *Siemens AG v. Sonotone*, 370 F.Supp. 970, 973 (N.D.Ill.1973)).

Siemens's[4] "website's opening banner proclaims: Siemens … the Global Network of innovation." Pl. List Mem. ¶ 4. The website also states that "Siemens has been an integral part of the U.S. economy for almost fifty years" and "[W]e are building on that presence in all fifty states: The American market now generates about 22 percent of Siemens'[s] worldwide revenues and was the company's largest source of new orders in fiscal 2000." *Id.* ¶ 5(C). In addition to touting Siemens AG as a global

4.  Siemens AG's website does not distinguish between different entities in the "Siemens Group," but rather refers to "the generic 'Sie-

mens.'" Memorandum Entitled "Outline of Basis for General Jurisdiction over Siemens," Ex. 1 to 1/22/02 Pl. Ltr., ¶ 3.

company, the website also offers unique interactive features, such as a virtual saleswoman, "a green eyed, red haired smiling icon beckoning the consumer to 'Let me help you.'" Pl. Opp. at 8–9. The user is invited to engage in a range of transactions, from buying a cell phone to leasing a locomotive. *See* "Buy from us" and "Transportation Systems" Webpages, Exs. 11–12 to Pl. Opp. The website also advertises job openings. *See* "Career Opportunities at Siemens" Webpage, Ex. 14 to Pl. Opp. Finally, plaintiffs allege that Siemens AG transacts "significant sales in the U.S. and N.Y. regions," MC ¶ 43(d), and provides financing to American companies, *see id.* ¶ 43(e). In April 2000, Siemens AG purchased Entex, a Rye, New York corporation. *See* 4/00 Press Rel. at 1.

Plaintiffs thus summarize the alleged contacts that Siemens AG has with New York: "its employees, its contracts, its depository bank accounts, its phone numbers, its interactive web site, its television commercials, its lawyers, its shareholders, its investor relations department and its litigation in New York courts." Pl. Opp. at 1. Characteristically, plaintiffs' summary confuses many contacts of Siemens Corporation, the New York company, with those of Siemens AG. Plaintiffs do not, for example, make any specific allegation that Siemens AG actually has a bank account in this state, or that it has itself contracted in New York.

Each of the alleged contacts would not, itself, confer general jurisdiction over Siemens AG. "[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301." *Spencer Trask Ventures v. Archos S.A.*, No. 01 Civ. 1169, 2002 WL 417192, at *6–*7 (S.D.N.Y. Mar. 18, 2002). *See also Citigroup, Inc. v. City Hldg. Co.*, 97 F.Supp.2d 549, 570–71 (S.D.N.Y.2000) (stating that Internet activ-

ity *may* give rise to jurisdiction pursuant to CPLR § 302 depending on where the "transaction" is deemed to have occurred); *Armouth Int'l, Inc. v. Haband Co.*, 277 A.D.2d 189, 715 N.Y.S.2d 438, 439 (2d Dep't 2000) (holding that plaintiff failed to satisfy its burden of showing that the cause of action was substantially related to the defendant's Internet activity). Were it otherwise, every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York.

That Siemens AG is listed on the NYSE, employs a handful of individuals in New York to conduct the tasks necessary to facilitate this listing, and utilizes a New York depository bank and investment specialist firm, is also insufficient to confer jurisdiction. *See Wiwa*, 226 F.3d at 97 ("[T]he prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."). Further, most of the telephone calls received by Siemens AG's investor relations contact in New York are transferred to Germany. *See* 6/4/02 Declaration of Esra Ozer, Senior Manager at Siemens Corporation ("Ozer Decl."), Ex. B to Reply Memorandum in Support of Siemens AG's Motion to Dismiss ("Def.Reply") ¶¶ 4–5. Finally, Siemens AG's purchase of Entex, which plaintiffs do not allege that Siemens AG operates, is itself insufficient to confer jurisdiction. *See Jerge v. Potter*, No. 99 Civ. 0312E(F), 2000 WL 1160459, at *5 (W.D.N.Y. Aug. 11, 2000) (rejecting assertion of jurisdiction over foreign corporation that "invests in and owns several corporations within the United States but does not directly operate any of such entities.").

All of this activity when viewed with the remaining contacts, however, demonstrates that Siemens AG conducts substantial and continuous business in this state. In addition to conducting sales in New York over the Internet, being listed on the New York Stock Exchange and conducting related activities here, and buying a New York company, Siemens AG also utilizes the services of a New York law firm to register U.S. patents of which it holds 7,000, employs a press contact here, and has sued in New York. Siemens AG's glowing proclamation that the United States has been an integral part of its business for fifty years indicates the permanent and systematic— as opposed to occasional and random— nature of these contacts. Thus, New York has general jurisdiction over Siemens AG.

### 2. Presence of Siemens Corporation in New York

[8, 9] Regardless of its direct contacts with this state, the presence of its New York subsidiary, Siemens Corporation, is also sufficient to confer general jurisdiction over Siemens AG. "The continuous presence and substantial activities · that satisfy the requirements of doing business do not necessarily need to be conducted by the foreign corporation itself." *Wiwa*, 226 F.3d at 95. While "the presence of · [a] subsidiary alone does not establish the parent's presence in the state," *Jazini*, 148 F.3d at 184 (citing *Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984)), personal jurisdiction over a foreign parent exists where its New York subsidiary is either a "mere department," or an "agent," of the parent. *Id.* (citing *Koehler*, 101 F.3d at 865).

[10] In order to show that Siemens Corporation is a mere department of Siemens AG, plaintiffs must allege facts supporting the four factors outlined in *Beech Aircraft*: (1) common ownership; (2) fi-

nancial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's personnel and fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the subsidiary's marketing and operational policies. 751 F.2d at 120–22. "A corporate entity is considered to be a 'mere department' of a parent company only where the control of the lesser entity is 'pervasive enough that the corporate separation is more formal than real.'" *Jacobs*, 160 F.Supp.2d at 734 (quoting *H. Heller & Co. v. Novacor Chem. Ltd.*, 726 F.Supp. 49, 54 (S.D.N.Y.1988)).

[11] To this end, plaintiffs allege that Siemens Corporation is included in the consolidated financial statements of Siemens AG, receives some funding from the parent, and is held out to the public, along with all of Siemens AG's other subsidiaries, as part of one enterprise. Yet, each of these allegations has been rejected by courts analyzing whether a subsidiary is a mere department of its parent. *See J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F.Supp.2d 544, 550 (S.D.N.Y.2001) (noting that generally accepted accounting principles *require* consolidated financial reporting); *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 895 (W.D.N.Y.1992) (holding that intercompany loans and transfers of cash for investment does not provide any basis to infer an alter ego relationship); *Bellomo v. Pennsylvania Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y.1980) (stating that a parent does not subject itself to jurisdiction merely by holding an affiliate group out as a unitary enterprise). Other than these allegations, plaintiffs merely restate parts (2) through (4) of the *Beech* test.[5] *See* Pl. Opp. at 14–20. This is insufficient to make out a prima facie showing of jurisdiction. *See Jazini*, 148

---

5. They satisfy prong (1) of *Beech*: common          ownership.

F.3d at 185. Plaintiffs thus fail to allege that Siemens Corporation is a mere department of Siemens AG.

[12] By contrast, the Court need not make any determination with respect to piercing the corporate veil—to find that Siemens Corporation is an agent of Siemens AG. *See Bellomo,* 488 F.Supp. at 746 n. 4 (noting as part of agency analysis that a finding of jurisdiction does not require piercing the corporate veil); *see also id.* at 745–47 (holding that while plaintiff had not established foreign parent's control over New York subsidiary such that jurisdiction could be found pursuant to alter ego/mere department theory, jurisdiction nevertheless existed under agency theory); *Sunrise Toyota Ltd. v. Toyota Motor Co.,* 55 F.R.D. 519, 527–28 (S.D.N.Y.1972)(same); *see also Dorfman v. Marriott Int'l Hotels* ("*Dorfman I*"), No. 99 Civ. 10496, 2002 WL 14363, at *10 (S.D.N.Y. Jan. 3, 2002)("[W]hen two corporations have common ownership and their activities are interrelated as here, they may have an agency relationship for jurisdictional purposes, even if the resident corporation is not controlled by the nonresident entity.")(alterations in original; citation, quotation marks omitted). Plaintiffs need only "show that the subsidiary does all the business which the parent corporation could do were it here by its own officials." *Frummer,* 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (holding that New York courts had general jurisdiction over foreign hotel company by virtue of the New York presence of its subsidiary reservation service). *See also Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 120–21 (2d Cir.1967)(finding general jurisdiction over California bus company where its sales representative had office in New York and engaged in broad range of services for it—such that the California company would perform the same functions were it in New York by its own officials). The Second Circuit has elaborated on *Frummer* and *Gelfand* in

holding that agency may be found where the New York activity of a subsidiary is of "meaningful importance" to the parent. *Wiwa,* 226 F.3d at 96.

[13, 14] "To come within this rule, [ ] plaintiff[s] need demonstrate neither a formal agency agreement, nor that the defendant exercised direct control over its putative agent." *Id.* at 95 (citing *Palmieri v. Estefan,* 793 F.Supp. 1182, 1194 (S.D.N.Y. 1992); *New York Marine Managers, Inc. v. M.V. "Topor'l",* 716 F.Supp. 783, 785 (S.D.N.Y.1989)). "The agent must be primarily employed by the defendant and not engaged in similar services for other clients." Id. For example, independent contractors with many clients are not considered agents of their clients for jurisdictional purposes. *See Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). Where, on the other hand, a subsidiary is "created by the parent[ ] for . . . corporate finance purposes, [or] to carry on business on its behalf," its activities may properly be attributed to the parent for jurisdictional purposes. *Bellomo,* 488 F.Supp. at 746. *See also J.L.B. Equities,* 131 F.Supp.2d at 549 (agency will be found where subsidiary conducts business "on behalf of" the parent). Common ownership gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement. *See Bellomo,* 488 F.Supp. at 746; *Frummer,* 19 N.Y.2d at 538, 281 N.Y.S.2d 41, 227 N.E.2d 851.

[15] Here, plaintiffs have submitted materials showing that Siemens Corporation is (1) 100% owned by Siemens AG and (2) engaged primarily in services for Siemens AG. Siemens Corporation serves as a holding company for Siemens AG, *see* 8/2/88 "Siemens Renames U.S. Holding Company: Names Langer as Chairman," *PR Newswire Ass'n,* Ex. 2 to Pl. Opp., at 1, and its functions include: (1) providing

accounting, MIS support and financial reporting services for Siemens's businesses; (2) developing and implementing marketing communications, including corporate advertising and online communications, to "build the Siemens brand"; (3) executing mergers, acquisitions, divestitures and other transactions on behalf of Siemens's companies; (4) overseeing compliance of Siemens's companies with all federal and state income tax and securities laws. "Siemens Today: Siemens Corporation" Webpage, Ex. 22 to Pl. Opp., at 1. Siemens Corporation purchased Efficient Networks, Inc., a Delaware corporation, using funds provided by Siemens AG. *See* 3/2/2001 SEC Edgar Filing Statement, Ex. 8 to Pl. Opp., at 1, 4, 25–26 (describing negotiations and meetings involving officers of Siemens AG and Siemens Corporation). Siemens Corporation also conducts Siemens AG's core business on behalf of Siemens AG. It contracts with New York City Transit to provide electrical, communications, control, switching and safety systems. *See* MC ¶ 47.

It is fair to say, given the importance to Siemens of its United States business; and the necessity of Siemens Corporation's tasks, that Siemens AG would perform these functions were no agent available. *See* 3/12/02 Pr. Rel. at 1 (quoting Siemens AG's President and CEO as saying, "The U.S. is now Siemens'[s] top priority. Our business here will be a jewel in our worldwide operation."). Thus, this Court has personal jurisdiction over Siemens AG due to the presence of its agent in New York.

[16] This finding of jurisdiction comports with due process. As stated by New York's highest court, this Court is:

> not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in international trade. When their

activities abroad, either directly or through an agent, become as widespread and energetic as the activities in New York conducted by [defendant], they receive considerable benefits from such foreign business and may not be heard to complain about the burdens.

*Frummer*, 19 N.Y.2d at 538, 281 N.Y.S.2d 41, 227 N.E.2d 851. Requiring Siemens AG, a multinational corporation with both direct and indirect contacts in New York, to litigate in this forum does not offend notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(setting forth requirement that the exercise of long-arm jurisdiction comport with the Fifth Amendment's Due Process Clause). Rather, the undisputed presence of Siemens AG's agent in New York, in addition to Siemens AG's independent contacts in this forum, *see supra* Part II.C.1., make it entirely reasonable to require Siemens AG to litigate here. *See, e.g., Self Int'l Ltd. v. La Salle Nat'l Bank*, No. 01 Civ. 4291, 2002 WL 500372, at *3–*4 (S.D.N.Y. Mar. 20, 2002) (grouping parent's independent contacts in New York with presence of New York subsidiary to conclude that general jurisdiction would not offend due process).

## III.  FORUM NON CONVENIENS

I turn now to defendant's motion to dismiss in favor of trial in Austria, which defendant contends is the far more convenient forum for this litigation. "A federal court's inherent power to decline to entertain a case over which it has jurisdiction is embodied in the doctrine of *forum non conveniens.*" *Dorfman v. Marriott Int'l Hotels ("Dorfman II")*, No. 99 Civ. 10496, 2001 WL 69423, at *6 (S.D.N.Y. Jan. 29, 2002) (citation omitted). This doctrine "does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction

and is a proper venue." 15 Charles Alan Wright et al., *Fed. Prac. & Proc. Juris.2d* § 3828 (updated 2002) (citing *Patrickson v. Dole Food Co.*, 251 F.3d 795, 801 n. 3 (9th Cir.2001)). "If the case is wanting in any of those respects, the action should be dismissed on that ground without reaching questions of *forum non conveniens*." *Id.* Having determined that personal jurisdiction exists, I will next address defendant's motion to dismiss pursuant to the doctrine of forum non conveniens.

### A. Legal Standard

[17, 18] In considering a motion to dismiss on forum non conveniens grounds, "'the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" *Massaquoi v. Virgin Atlantic Airways*, 945 F.Supp. 58, 60 (S.D.N.Y.1996) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). The Supreme Court established the modern doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which courts continue to apply when faced with a motion to dismiss on this ground. To succeed on such a motion, a defendant must satisfy a two-prong test: it must show that (1) an adequate alternate forum exists; and (2) private and public interest factors weigh in favor of dismissal. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839; *Peregrine Myanmar, Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996).

Defendant must demonstrate that these public and private interest factors "weigh so heavily in favor of the foreign forum that they overcome the presumption for plaintiff[s'] choice of forum," which will "rarely be disturbed." *Dorfman II*, 2001 WL 69423, at *7 (citation omitted). This presumption "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "This remains true even where ... United States plaintiff[s] sue[ ] a foreign defendant in a U.S. court that is outside the plaintiff[s'] home district." *Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund*, 205 F.Supp.2d 176, 179 (S.D.N.Y.2002) (citing cases).

### B. Analysis

[19] The first requirement is "usually satisfied if the defendant is amenable to process in the alternative forum," but the alternate forum may not be deemed adequate where the remedy offered is "'clearly unsatisfactory.'" *Massaquoi*, 945 F.Supp. at 61 (quoting *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252). Here, plaintiffs have raised serious questions going to the integrity of the criminal investigation in Austria. Austrian investigators have apparently handled evidence with little care, secreting physical and documentary evidence in hotel rooms, a trunk of a car, and other places. *See* 7/12/02 and 7/16/02 Letters from Edward Fagan, Plaintiffs' Attorney, to the Court (quoting from, and attaching, articles in online Austrian newspapers concerning the criminal trial in the *Kaprun* case). In addition, Austrian investigators have no record of many statements made by Americans to them in the days following the accident. *See* 6/25/02 Affidavit of John Habblett, Plaintiff ("6/25/02 Habblett Aff.") ¶¶ 21(c), 23–24, 27; 6/21/02 Affidavit of Michael Witti, Attorney for Families of German Victims and Survivors ("Witti Aff.") (freestanding document) ¶ 21. The integrity of the judicial system, however, is at issue here—and not that of the executive branch.

[20] Plaintiffs also argue that the forum is inadequate because Austrian substantive law is unfavorable to them. Yet, it is well-settled that a difference in sub-

stantive law is not to be considered on a forum non conveniens inquiry. *See Piper Aircraft*, 454 U.S. at 250–52, 102 S.Ct. 252. Further, Austrian law most likely governs plaintiffs' claims. Thus, to the extent plaintiffs argue that the forum is inadequate because Austrian law does not provide a cause of action for, *e.g.*, spoliation of evidence, or loss of consortium for the wrongful death of minor children, these arguments are meritless. In any event, because defendant fails to make the required showing under the second prong in the *forum* inquiry, there is no need to further address plaintiffs' contentions regarding the first.

[21, 22] The second prong requires defendant to show that public and private interest factors tip decisively in favor of trial in the alternate forum. Private interest factors include (1) the private interest of the litigant; (2) the relative ease to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) possibility of viewing the premises, if that would be appropriate; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See* 15 *Fed. Prac. & Proc. Juris.2d* § 3828 (citing *Gilbert*, 330 U.S. at 509, 67 S.Ct. 839). While plaintiffs' choice of forum is entitled to somewhat less deference because they have sued in a representative capacity,[6] defendant must nevertheless

make a clear showing that litigation would be vexatious and oppressive out of all proportion to plaintiffs' convenience in order to overcome the presumption in favor of plaintiffs' choice of forum. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28–30 (2d Cir.2002) (citing *Koster*, 330 U.S. at 524, 67 S.Ct. 828, and vacating discussion of that case in *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 60–62 (2d Cir.2000)).

Regarding private interest factors, defendant argues that this case should be dismissed because the accident took place in Austria, and therefore the majority of the witnesses, and the bulk of the evidence, are located in Austria. Defendants rely, however, on witness lists provided by the Austrian criminal authorities who "provide no relevant facts for the civil litigation and would not be witnesses at trial in any event." Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss on the Ground of Forum Non Conveniens ("FNC Opp.") at 19. Plaintiffs, on the other hand, intend to call American eyewitnesses who were at the resort on the day of the accident—many of whom gave statements to criminal investigators. *See* Affidavit of Major Drew Stathis, United States Army ("Stathis Aff."), Ex. 9 to Certification of Jay J. Rice, Plaintiffs' Attorney ("Rice Cert."), ¶ 27. They will also call employees of the named defendants who are American, German and Austrian. *See* Pl. FNC Opp. at 19. To the extent that certain foreign defendants would not be sub-

---

6. Plaintiffs propose that all victims' family members be certified as a class. Here, the balance of conveniences is not affected by plaintiffs' proposed representative suit because (1) all named plaintiffs in this multidistrict litigation are American, and two, Angela and Rudolf Kern, are residents of the Southern District of New York, *see In re Lloyd's Am. Trust Fd. Litig.*, 954 F.Supp. 656, 660 (S.D.N.Y.1997) (denying forum non conveniens motion where named plaintiffs were American, although remainder of proposed

class was not); and (2) the non-American plaintiffs are widely dispersed, *see Cromer Fin. Ltd. v. Berger*, 158 F.Supp.2d 347, 363 (S.D.N.Y.2001) (denying forum non conveniens motion in proposed class action even where named plaintiffs were foreign because plaintiffs were "widely dispersed"). The convenience of the named plaintiffs is most important to a forum non conveniens analysis because it is these individuals who will be responsible for the vigorous prosecution of this action.

ject to process here, plaintiffs have used and plan to rely upon letters rogatory to obtain those witnesses' testimony. Courts have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient. *See Overseas Programming Cos., Ltd. v. Cinematographische Commerz–Anstalt,* 684 F.2d 232, 235 (2d Cir.1982); *In re Livent, Inc. Sec. Litig.,* 78 F.Supp.2d 194, 211 (S.D.N.Y.1999). Plaintiffs also represent that they will call residents of the United States, Germany, Japan, Holland and Slovenia as damage witnesses. *See* Pl. FNC Opp. at 19–20. A good portion of the documentary evidence—in the form of investigative reports made by the United States Army—is located in the United States. Finally, plaintiffs' expert has testified that the inaccessibility of the site of the accident makes it likely that it would be viewed only on video, *see* Declaration of Stefan Launsky, Plaintiffs' Expert, Ex. 9 to 2/1/02 Declaration of Edward Fagan et al. ("Fagan Decl."), ¶ 19—which can be done here as conveniently as in Austria.

While litigation in a foreign forum is always inconvenient, the inconvenience to the corporate defendant in this action is slight compared to the "obvious and significant inconvenience" to the individual named plaintiffs, if this case were transferred to Austria. *Guidi v. Inter–Cont'l Hotels Corp.,* 224 F.3d 142, 147 (2d Cir. 2000). "This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." *Id.* Siemens AG, the parent company to a multinational conglomerate, has vast resources and can therefore easily transport witnesses and evidence to this forum, a major city that is a direct flight from any major city in the world. In contrast, the named plaintiffs have only modest means and would suffer hardship if forced to litigate in Austria. *See, e.g.,* 1/29/02 Affidavit of John Habblett Regarding Financial Condition, Ex. 3 to Rice

Cert., ¶ 15. Thus, the convenience of witnesses and location of the evidence do not favor dismissal.

[23] Nor does Siemens AG show that public interest factors weigh in favor of dismissal. Public interest factors include (1) whether New York law or foreign law applies to the case; (2) the administrative burden on the Court; and (3) whether the community has any relation to the litigation because there is local interest in having localized controversies decided at home. *See Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839. With respect to these factors, Siemens AG argues that (1) Austrian law applies to this action; (2) there are related proceedings taking place in Austria; and (3) it would be unfair to impose jury duty on residents of the Southern District of New York due to the lack of connection to the lawsuit. These arguments are addressed in turn.

[24, 25] In a diversity case, a federal court must determine the body of substantive law to be applied by reference to the conflict of law and choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's conflict of law rules, the first step in the inquiry is to determine whether there is an actual conflict between the laws invoked by the parties. *See Booking v. Gen'l Star Mgt. Co.,* 254 F.3d 414, 419 (2d Cir.2001) (citing *In re Allstate Ins. Co.,* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). If there is a conflict, the court must classify the conflicting laws by subject matter by reference to New York law (*e.g.,* tort or contract, substantive or procedural). *See id.* at 420. Having classified the laws, the court must then look to New York choice of law rules to determine which state's substantive law applies. *See id.*

[26]  Here, it is clear that Austrian law and New York law differ on many issues, including strict liability and damages. For example, Austrian law contains rules specific to mass transportation, may cap recovery under a strict liability theory to $260,000 per victim, and does not allow punitive damages. *See* Declaration of Dr. Georg Kodek, an Austrian Judge in the Superior Court in Eisenstadt, Austria ("Kodek Decl."), Ex. A to Def. Reply, ¶ 10; Declaration of Christian Wolf, Plaintiffs' Expert on Austrian Law ("Wolf Decl."), Ex. 10 to Rice Cert., ¶ 12. Further, Austria is a civil code country. "New York courts do not indulge the presumption that New York law is the same as the law of a civil code country." *Curley v. AMR Corp.,* 153 F.3d 5, 14 (2d Cir.1998) (citing *Loebig v. Larucci,* 572 F.2d 81, 85 (2d Cir.1978)). It is only when no evidence has been presented on foreign law that New York courts will decide cases in accordance with New York law. *See id.* As in *Curley,* "[s]uch is not the situation here." *Id.* Both parties have provided the Court with evidence of Austrian law. *See* Kodek Decl.; Wolf Decl.; 1/30/02 Declaration of Paul Oberhammer, Professor of Law, Germany, Ex. 10 to Fagan Decl.; 6/27/02 Supplementary Declaration of Oberhammer (free-standing document).

[27]  Substantive law sounding in tort requires the Court to apply the law of the state which has the greatest interest in the outcome. *See Curley,* 153 F.3d at 12; (citing *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)); *AroChem Int'l Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir.1992). As part of its interest analysis, "the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation." *Comer v. Titan Tool, Inc.,* 875 F.Supp. 255, 259 (S.D.N.Y.1995). Here, the plaintiffs' negligence and strict liability claims all involve conduct-regulating—not loss-allocating—rules of law. *See Richardson v. Michelin North Am., Inc.,* No. 95 Civ. 760, 1998 WL 135804, at *4 (W.D.N.Y. Mar. 18, 1998) (citations omitted). "'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Id.* (quoting *Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)).

Here, not only is Austria the locus of the tort, but it is clear that Austria has the far greater interest in this litigation—many if not most of the 155 victims were Austrian, the safety of Austria's transportation systems is implicated, and the defendants committed much of the alleged wrongful conduct within Austria's borders. While New York has a strong interest in compensating the Kerns, New York law dictates that the law of the locus of the tort apply.[7] In addition, it appears that all of the alleged wrongful conduct—including the design of the train and train parts—took place outside New York. *See Value Partners S.A. v. Bain & Co.,* No. 98 Civ. 1562, 1998 WL 336648, at *4 (S.D.N.Y. June 22, 1998) (holding that an action had "very little to do with New York and nearly everything to do with Brazil" because "all alleged injuries and damages were sustained in Brazil [and] the tortious conduct

---

7.  Where loss-allocating rules are in issue, the law of the domicile of at least one of the parties ought to apply. *See Comer,* 875 F.Supp. at 259 (citing *Padula v. Lilarn Prop. Corp.,* 84 N.Y.2d 519, 520, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 128–29, 335 N.Y.S.2d 64,

286 N.E.2d 454 (1972)). Thus, even if the rules in issue here were deemed loss-allocating, the law of Austria would still apply because it appears from the Master Complaint that more of the plaintiffs and defendants are domiciled there than in any other country.

giving rise to plaintiffs' claims occurred in areas outside New York."). "While the choice of law issue need not be definitively resolved at this point," this Court would "likely be required to apply" Austrian law to plaintiffs' claims. *McLaughlin v. Bankers Trust of New York*, No. 97 Civ. 9312, 1998 WL 355419, at *4 (S.D.N.Y. July 2, 1998).

[28] Although *Gilbert* cautions against entanglement with issues of foreign law, this factor is by no means dispositive. *See World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A.*, No. 97 Civ. 8627, 1999 WL 47206, at *8 (S.D.N.Y. Feb. 3, 1999). Trial courts may find and apply foreign law. *See* 9 Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2444 (3d ed.1995). They may even use experts on foreign law to assist them. *See In re Initial Public Offering Sec. Litig.*, 174 F.Supp.2d 61, 65 (S.D.N.Y.2001) ("[W]hen interpreting foreign law, expert legal opinion may be allowed."). Indeed, this Circuit has stated that the "need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens, and [courts] must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l, S.A. v. Avon Prods.*, 641 F.2d 62, 67 (2d Cir.1981) (reversing district court's dismissal on forum non conveniens grounds).

Defendant argues that the criminal proceeding already underway in Austria would render this litigation duplicative, which weighs heavily in favor of dismissal. To the contrary, the Second Circuit has stated repeatedly that the existence of related proceedings is not even mentioned in *Gilbert*, and therefore should not be given much consideration. *See Guidi*, 224 F.3d at 148 (reversing district court for giving this factor decisive weight); *DiRienzo*, 294 F.3d at 31 (noting that overlap with related proceeding in Canada was "of little

weight"). Moreover, legal efforts will not be duplicated because the proceeding underway in Austria is criminal in nature, and involves different parties than those before the Court. Furthermore, plaintiffs' representative, Edward Fagan, has thus far been excluded from participating in the Austrian criminal proceeding, *see* Witti Aff. ¶¶ 6(b), 15, 19, thus further reducing any administrative advantage to deferring to the related proceeding.

Defendants argue, finally, that it is unfair to impose jury duty in a forum which has little to no interest in the litigation. This argument is not persuasive. The Southern District of New York has a strong interest in resolving the claims of two of its own residents, Angela and Rudolf Kern, and may fairly press its citizens into jury duty in conjunction with this case. In addition, this case involves the claims of American military personnel serving abroad, and their families, who perished on a vacation that was marketed to them as members of the military. It is estimated that 500 military personnel and family members were at the Kaprun resort on the day of the accident. *See* Stathis Aff. ¶ 25. The United States Army launched a far-ranging investigation into possible causes immediately after the accident. *See id.* ¶¶ 24–25, 38. The United States, and New York in particular, have a strong interest in the proper resolution of the claims in this litigation. Even under a standard of reduced deference to plaintiffs' choice of forum, defendant has not met its burden of showing that the balance of public and private interest factors tips in favor of trial in Austria, or that this litigation would be so oppressive and vexatious to it as to be out of all proportion to plaintiffs' convenience. *See Koster*, 330 U.S. at 524, 67 S.Ct. 828.

## IV. CONCLUSION

For the foregoing reasons, Siemens AG's motion to dismiss for lack of personal

jurisdiction, and on the ground of forum non conveniens, must be denied. A status conference will be scheduled after the motions of the remaining defendants are decided.

SO ORDERED.



In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000.

No. 02 Civ. 3101.
MDL No. 1428(SAS).

United States District Court,
S.D. New York.

Aug. 14, 2002.

Survivors of Americans killed in ski train accident in Austria brought several actions against numerous defendants, including negligence and strict liability action against domestic corporation and against multinational corporation with principal place of business in Germany. After consolidation of the suits for pretrial purposes by the Judicial Panel on Multidistrict Litigation, the domestic corporation and the multinational corporation moved to dismiss for failure to state a claim, and the multinational corporation moved to dismiss for lack of personal jurisdiction. The District Court, Scheindlin, J., held that: (1) original complaint would be deemed amended by consolidated complaint, which was filed in transferee court without leave to amend; (2) plaintiffs' allegations complied with requirement that they provide a short and plain statement that gave the defendants fair notice of what plaintiffs' claims were; (3) "forum state" whose long-arm statute would apply in multidistrict litigation proceeding that was consolidated and transferred to trans-

feree district court for disposition of pretrial motions was that of the district court where the action was originally filed; (4) plaintiffs' allegations were sufficient to make prima facie showing of significant interrelationship between the defendant corporations as to provide basis for limited jurisdictional discovery under Pennsylvania law for purpose of assessing the multinational corporation's claim of lack of personal jurisdiction under Pennsylvania longarm statute; and (5) case would not be dismissed on ground of forum non conveniens.

Motions denied.

1. Federal Courts ⬅157

Transferee district court in multidistrict litigation tort action would deem original complaint as amended by consolidated complaint, which was filed in transferee court without leave to amend after the conditional transfer of the action to the transferee court, and which was served upon defendants after multidistrict litigation panel issued transfer order denying one defendant's motion to vacate the conditional transfer order, absent a showing of prejudice by either defendant in the action. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

2. Products Liability ⬅73

Allegations of survivors of Americans killed in ski train accident in Austria that defendant multinational corporation with principal place of business in Germany negligently designed, constructed, modified, recommended, installed and/or tested the hydraulics system of the ski train involved in the accident, and that the hydraulics system was dangerously defective because it contained highly flammable and unsafe plastic pipes, connectors, and hydraulic oil, sufficiently complied with requirement that plaintiffs provide a short and plain statement that gave the defen-

# EXHIBIT-E

```
        BUSINESS ADDRESS:
                STREET 1:              WITTE ISBACHERPLATZ 2
                STREET 2:              D-80333
                CITY:                  MUNICH GERMANY
                STATE:                 NY
                ZIP:                   10006
                BUSINESS PHONE:        2129785009
</SEC-HEADER>
<DOCUMENT>
<TYPE>SC 13D
<SEQUENCE>1
<FILENAME>0001.txt
<DESCRIPTION>SCHEDULE 13D
<TEXT>

<PAGE>

- --------------------------------------------------------------------------------
- --------------------------------------------------------------------------------
```

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

----------------

SCHEDULE 13D
(Rule 13d-101)

Information to be Included in Statements Filed Pursuant to Rule 13d-1(a) and
Amendments Thereto Filed Pursuant to Rule 13d-2(a)

EFFICIENT NETWORKS, INC.

```
- --------------------------------------------------------------------------------
```

(Name of Issuer)

Common Stock, Par Value $0.001 Per Share

```
- --------------------------------------------------------------------------------
```

(Title of Class of Securities)

282056100

```
- --------------------------------------------------------------------------------
```

(CUSIP Number)

Kenneth R. Meyers, Esq.
Siemens Corporation
153 East 53rd Street
New York, New York 10022
(212) 258-4000

Copy to:

Peter D. Lyons, Esq.
Shearman & Sterling
1550 El Camino Real
Menlo Park, California 94025
(650) 330-2200

this Offer and have not carried on any activities other than in connection with this Offer. See "Section 8. Certain Information Concerning Siemens AG, Siemens Corp. and Purchaser."

. Siemens Corporation serves as the holding company for businesses of Siemens AG in the United States and is responsible for developing, coordinating and maintaining the overall business strategy of Siemens AG in the United States. See "Section 8. Certain Information Concerning Siemens AG, Siemens Corp. and Purchaser."

. Siemens AG's principal business is the design, development, manufacture and marketing of a wide range of electrical and electronic products and systems. See "Section 8. Certain Information Concerning Siemens AG, Siemens Corp. and Purchaser."

What are the classes and amounts of securities sought in this Offer?

. We are seeking to purchase all of the issued and outstanding shares of common stock, par value $0.001 per share, of Efficient Networks, Inc. See "Introduction" and "Section 1. Terms of the Offer; Expiration Date."

. The Offer is not being made for (nor will tenders be accepted of) any of Efficient Networks' 5% Convertible Subordinated Notes due March 15, 2005. Holders of the Convertible Notes who wish to participate in the Offer must first convert their Convertible Notes into Efficient Networks shares. After the consummation of the Offer, the Company will mail a written notice setting forth the procedure for the holders of Convertible Notes to exercise their right to require the Company to repurchase their Convertible Notes. See "Introduction" and "Section 11. Purpose of the Offer, Plans for the Company After the Offer and the Merger; Effect on Convertible Notes."

How much are you offering to pay and what is the form of payment?

. We are offering to pay $23.50 per share of common stock of Efficient Networks, net to the seller in cash (subject to applicable withholding taxes) and without interest thereon. See "Introduction," "Section 1. Terms of the Offer; Expiration Date" and "Section 5. Certain Federal Income Tax Consequences."

. If you tender your Efficient Networks shares in the Offer, you will not be obligated to pay brokerage fees or commissions or, except as otherwise provided in Instruction 6 of the Letter of Transmittal, stock transfer taxes with respect to the sale of your shares pursuant to the Offer. See "Introduction."

What are the most significant conditions of the Offer?

. We are not obligated to purchase any Efficient Networks shares unless there have been validly tendered and not withdrawn prior to the expiration of the Offer at least the number of Efficient Networks shares

<PAGE>

that, when added to the 3,716,800 Efficient Networks shares already owned by Siemens AG, is equal to at least a majority of the then outstanding shares on a fully diluted basis (including, without limitation, all shares issuable upon conversion of any convertible security or upon the exercise of any options, warrants, or rights, excluding, however, any securities not convertible or exercisable on or prior to July 31, 2001 or which have

an effective conversion or exercise price in excess of $23.50 per share immediately prior to the expiration of the Offer). See "Section 1. Terms of the Offer; Expiration Date" and "Section 14. Certain Conditions to the Offer."

. We are not obligated to purchase any Efficient Networks shares unless prior to the expiration of the Offer the applicable waiting periods under United States, German and other applicable foreign antitrust and competition laws, have expired or been terminated. See "Section 15. Certain Legal Matters and Regulatory Approvals."

These and other conditions to our obligation to purchase Efficient Networks shares tendered in the Offer are described in greater detail in "Section 1. Terms of the Offer; Expiration Date," "Section 14. Certain Conditions of the Offer" and "Section 15. Certain Legal Matters and Regulatory Approvals."

Do you have the financial resources to make the offered payment?

. Yes. Siemens Corporation, the parent of Memphis Acquisition Inc., will be financing the Offer with funds provided by Siemens AG and its affiliates. See "Section 9. Financing of the Offer and the Merger."

Is your financial condition relevant to my decision to tender in the Offer?

. We do not think that our financial condition is relevant to your decision to tender in the Offer because the form of payment consists solely of cash and the Offer is not subject to a financing condition. In addition, no relevant historical information concerning Memphis Acquisition Inc. is available because we have not carried on any activities other than in connection with this Offer.

How long do I have to decide whether to tender in the Offer?

. You will have at least until 12:00 midnight, New York City time, on Thursday, March 29, 2001, to decide whether to tender your Efficient Networks shares in the Offer. If you cannot deliver everything that is required in order to make a valid tender by that time, you may be able to use a guaranteed delivery procedure which is described in "Section 3. Procedures for Accepting the Offer and Tendering Shares."

Can the Offer be extended, and under what circumstances?

. We may, without the consent of the Company, but subject to the terms of the Merger Agreement and applicable law, extend the period of time during which the Offer remains open. We have agreed in the Merger Agreement that we may extend the Offer or will extend the Offer if any conditions to the Offer have not been satisfied. See "Section 1. Terms of Offer; Expiration Date."

How will I be notified if the Offer is extended?

. If we decide to extend the Offer, we will inform Mellon Investor Services LLC, the Depositary, of that fact, and will issue a press release giving the new expiration date no later than 9:00 a.m., New York City time, on the day after the day on which the Offer was previously scheduled to expire. See "Section 1. Terms of Offer; Expiration Date."

                                    ii

<PAGE>

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYED IQBAL RAZA, M.D.,                    )
                                          )
                 Plaintiff,               )
                                          )
        v.                                )       Civil Action No. 06-132 (JJF)
                                          )
SIEMENS MEDICAL SOLUTIONS USA,  )
INC., SIEMENS MEDICAL SOLUTIONS  )
HEALTH SERVICES CORP., SIEMENS   )
CORPORATION and SIEMENS AG,       )
                                          )
                 Defendants.              )

## DECLARATION OF CHAD S.C. STOVER, ESQUIRE

I, Chad S.C. Stover, declare as follows:

1.      I am an attorney with the law firm of Young Conaway Stargatt & Taylor, LLP, and I am admitted to practice before the Supreme Court of Delaware, United States District Court for the District of South Carolina, the Supreme Court of the State of South Carolina, and the United States Patent and Trademark Office..

2.      I submit this declaration in support of plaintiff Dr. Raza's Supplemental Brief in Opposition to Defendant Siemens AG's Motion to Dismiss.

3.      On December 27, 2006 I reviewed the Delaware Secretary of State records filed in connection with the merger of Efficient Networks, Inc. and Memphis Acquisition, Inc., filed April 3, 2001, and the merger of CTI Molecular Imaging, Inc. and MI Merger Co., filed May 5, 2005.

4.      Those records indicate that the Certificates of Merger for both of the above-referenced mergers were filed by The Corporation Trust Company.

5.    I also reviewed the online Delaware Department of State, Division of Corporations, General Information Name Search, which lists The Corporation Trust Company as a Delaware corporation formed in 1907.

\*    \*    \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED:  December 29, 2006

_____
CHAD S.C. STOVER

# EXHIBIT G

# SIEMENS



**FOR IMMEDIATE RELEASE**

CONTACT:  LuJean Smith                          David Gill
          Siemens Medical Solutions             CTI Molecular Imaging, Inc.
          (425) 432-9601                        (865) 218-2743
          lujean.smith@siemens.com              david.gill@ctimi.com

## SIEMENS COMMENCES CASH TENDER OFFER FOR CTI MOLECULAR IMAGING, INC.

**HOFFMAN ESTATES, Ill., and KNOXVILLE, Tenn., April 1, 2005** — Siemens Medical Solutions USA, Inc., a wholly owned subsidiary of Siemens AG (NYSE: SI), and CTI Molecular Imaging, Inc. (Nasdaq: CTMI) announced today that Siemens Medical Solutions, through its wholly owned subsidiary MI Merger Co., has commenced a previously announced tender offer for all of the outstanding shares of common stock of CTI Molecular Imaging, Inc. for $20.50 per share, net to the seller in cash.

The tender offer is being made pursuant to an Agreement and Plan of Merger, dated as of March 18, 2005 among Siemens Medical Solutions USA, Inc., MI Merger Co. and CTI Molecular Imaging, Inc. The tender offer remains open until 12:00 a.m. (midnight) in New York City (Eastern Time Zone), on Thursday, April 28, 2005, unless extended. Following completion of the tender offer, any remaining shares of CTI Molecular Imaging, Inc. will be acquired in a merger at the same price.

As previously announced, the board of directors of each company has approved the agreement. The transaction is subject to customary regulatory approvals and other customary closing conditions, and is expected to close in the second quarter of 2005. The transaction has a value of approximately $1 billion.

Siemens Medical Solutions of Siemens AG, with headquarters in Malvern, Pennsylvania and Erlangen, Germany, is one of the largest suppliers to the healthcare industry in the world. The company is known for bringing together innovative medical technologies, healthcare information systems, management consulting, and support

-more-

<u>Siemens Commences Cash Tender Offer for CTI Molecular Imaging, Inc., page 2</u>

services, to help customers achieve tangible, sustainable, clinical and financial outcomes. Employing approximately 31,000 people worldwide and operating in more than 120 countries, Siemens Medical Solutions reported sales of 7.07 billion EUR, orders of 8.12 billion EUR and group profit of 1.05 billion EUR for fiscal 2004. More information can be obtained at http://www.usa.siemens.com/medical-pressroom.

CTI Molecular Imaging, Inc. is a leading supplier of products and services for positron emission tomography (PET), a diagnostic imaging technology for detection and treatment of cancer, neurological disorders and cardiac disease. In fiscal year 2004 (September 30), CTI reported sales of $402 million and income from operations of $58 million. Additional information is available at http://www.ctimi.com.

This announcement does not constitute an offer to purchase nor a solicitation of an offer to sell any securities. Any offers to purchase or solicitation of offers to sell will be made only pursuant to a tender offer statement and a solicitation and recommendation statement filed with the Securities and Exchange Commission. The tender offer statement (including an offer to purchase, a letter of transmittal and other offer documents) and the solicitation/recommendation statement will contain important information and should be read carefully before any decision is made with respect to the tender offer. Those materials will be made available to all stockholders of CTI at no expense to them. In addition, all of those materials (and all other offer documents filed with the SEC) will be available at no charge on the SEC's web site (http://www.sec.gov). Georgeson Shareholder Communications will be serving as Information Agent for the tender offer, and CTI stockholders wishing to receive copies of the Offer to Purchase and other tender offer materials may contact Georgeson at (212) 440-9800 or toll-free at (800) 676-0216. (Mellon Investor Services LLC will be serving as Depositary for the tender offer.

This document contains forward-looking statements about Siemens and CTI Molecular Imaging, Inc. All forward-looking statements (including statements regarding future financial and operating results) involve risks, uncertainties and contingencies,

-more-

<u>Siemens Commences Cash Tender Offer for CTI Molecular Imaging, Inc., page 3</u>

many of which are beyond the ability of Siemens or CTI to control, which may cause actual results, performance, or achievements to differ materially from anticipated results, performance, or achievements. All statements contained in this document that are not clearly historical in nature or that necessarily depend on future events are forward-looking, and the words "anticipate," "believe," "expect," "estimate," "plan," and similar expressions are generally intended to identify forward-looking statements. Economic, business, funding market, competitive and/or regulatory factors, among others, affecting Siemens' and CTI's businesses are examples of factors that could cause actual results to differ materially from those described in the forward-looking statements. More detailed information about these factors with respect to Siemens are described in its filings with the Securities and Exchange Commission, including its Annual Report on Form 20-F for its fiscal year ended September 30, 2004 filed with the Securities and Exchange Commission on November 29, 2004. Further information regarding risks, uncertainties and other factors that could adversely affect CTI or cause actual results to differ materially from those anticipated in forward-looking statements are included in CTI's Annual Report on Form 10-K for the fiscal year ended September 30, 2004 and its Quarterly Report on Form 10-Q for the fiscal quarter ended December 31, 2004.

Siemens and CTI are under no obligation to (and each expressly disclaims any such obligation to) update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

###

http://www.medical.siemens.com/siemens/en_US/rg_marcom_FBAs/files/Press_Releases/2005/
PDF/030.05_CTI_Tender_Offer.pdf

# EXHIBIT H

LEXSEE

**SIEMENS MEDICAL SYSTEMS, INC., a Delaware corporation, and SIEMENS AG, a German corporation, Plaintiffs, v. FONAR CORPORATION, a Delaware corporation, and RAYMOND V. DAMADIAN, M.D. MRI SCANNING CENTERS MANAGEMENT CO., INC., a Delaware corporation, Defendants.**

Civil Action No. 95-261-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1995 U.S. Dist. LEXIS 22334

April 27, 1995, Filed

**DISPOSITION:** d

[*1] Defendants' motion to dismiss, stay or transfer action denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff corporation's action seeking a declaratory judgment that it had had not infringed certain of defendant company's patents and that defendant was guilty of certain inequitable conduct in securing the patents, the court (United States) considered a motion brought by the company and other defendants to dismiss, stay, or transfer the case from the district in which it was pending to another district court pursuant to 28 U.S.C.S. § 1404.

**OVERVIEW:** Plaintiff was a Delaware corporation with its principal place of business in New Jersey. Two defendants were Delaware corporations headquartered in the Eastern District of New York. The court ruled that defendants failed to meet their burden of showing that the relevant factors warranted dismissal. As to the motion to transfer, the court ruled that the fact that plaintiffs were incorporated in Delaware was a legitimate reason for their forum choice. Even if the Eastern District of New York were the more convenient trial forum for the parties and non-party witnesses, such would not be sufficient to compel transfer. Further, defendants did not demonstrate that litigation in Delaware imposed on them a unique or unexpected burden. Nor did the efficient use of judicial resources require transfer. As a practical matter, defendants could compel their employee-witnesses to testify without a subpoena. The court was not persuaded that the net cost of litigating in Delaware would be significantly greater than that of litigating in the Eastern District of New York. Neither the "access to proof" factor nor the interests of justice required transfer. There was no basis for granting a stay.

**OUTCOME:** The court denied defendants' motion to dismiss, stay, or transfer.

**CORE TERMS:** patent, convenience, inventor, infringement, choice of forum, familiarity, technology, effective, unwilling, motion to dismiss, shopping, defendants contend, judicial economy, attendance, compelled, balance of convenience, declaratory judgment, patent infringement, compulsory process, motion to transfer, legitimate reason, subject matter, present action, file suit, presently, incorporation, inconvenient, expenditure, unexpected, paramount

**LexisNexis(R) Headnotes**

*Civil Procedure > Declaratory Judgment Actions > Federal Judgments*
[HN1] See 28 U.S.C.S. § 2201(a).

*Civil Procedure > Jurisdiction*
[HN2] Ordinarily, where an action has been filed in two federal district courts, the court in which the action was first filed will preside over the litigation.

*Civil Procedure > Venue > Federal Venue Transfers*
*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
[HN3] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*

*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
*Civil Procedure > Judicial Officers > Judges > Discretion*
[HN4] Congress intended through 28 U.S.C.S. § 1404 to place discretion in a district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court.

*Civil Procedure > Venue > Federal Venue Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN5] As a general rule, because the plaintiffs' choice of forum is accorded substantial weight, to obtain a transfer the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Plaintiffs' choice of forum is paramount. The deference to the plaintiffs' choice of forum will apply so long as the plaintiffs have chosen the forum for some legitimate reason.

*Civil Procedure > Venue > Federal Venue Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN6] While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*Business & Corporate Law > Corporations > Formation > Place of Incorporation*

*Civil Procedure > Venue > Federal Venue Transfers*
[HN7] Absent some showing of a unique or unexpected burden, a corporation should not be successful in arguing that litigation in the state of incorporation is inconvenient.

*Civil Procedure > Venue > Federal Venue Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
[HN8] In analyzing the "interest of justice" factor for the purposes of a motion to transfer under 28 U.S.C.S. § 1404(a), a court looks to judicial resources, cost to the parties, access to proof, and the availability of compulsory process.

**COUNSEL:** For SIEMENS MEDICAL SYSTEMS, INC., plaintiff: Frederick L. Cottrell, III, Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For FONAR CORPORATION, RAYMOND V. DAMADIAN, defendants: Thomas P. Preston, Duane, Morris & Heckscher, Wilmington, DE.

For SIEMENS MEDICAL SYSTEMS, INC., counter-defendant: Frederick L. Cottrell, III.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

## MEMORANDUM ORDER

### I. INTRODUCTION

On April 27, 1995, Siemens Medical Systems, Inc. brought this action in the United States District Court for the District of Delaware against Fonar Corporation ("Fonar") for a declaratory judgment that Siemens had not infringed certain Fonar patents and that Fonar was guilty of certain "inequitable conduct" in securing the patents. On June 15, 1995, Siemens served Fonar and Raymond V. Damadian, M.D. MRI Scanning Centers Management Co. ("RVDC") an amended complaint adding a patent infringement claim against both defendants. In its amended complaint, Siemens seeks a declaratory judgment that U.S. Letters patent 5,061,897 (the "'897 patent"),
[*2] 4,675,609 (the "'609 patent"), 4,871,966 (the "'966 patent"), 3,789,832 (the "'832 patent"), and 4,616,180 (the "'180 patent") are invalid and not infringed.

Presently before the court is defendants' motion to dismiss, stay or transfer the case from this District to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404. (D.I. 13) For the reasons discussed below, the motion will be denied.

## II. BACKGROUND

Plaintiff Siemens Medical Systems, Inc. ("Siemens") is a Delaware corporation with its principal place of business in Iselin, New Jersey. Siemens is a wholly-owned subsidiary of plaintiff Siemens AG, a German corporation. Defendants Fonar and RVDC are Delaware corporations. Fonar is headquartered in Melville, New York, in the Eastern District of New York.

On September 2, 1992, Fonar filed a patent infringement suit in the United States District Court for the Eastern District of New York against, inter alia, General Electric Company ("the GE litigation"), alleging, inter alia, infringement of the '966 patent and the '832 patent. By letter dated October 7, 1992, Fonar charged Siemens with infringement [*3] of these same patents and stated its intent to file suit for infringement upon the completion of the GE litigation.

In April of this year, prior to the jury verdict on liability in the GE litigation, Siemens instituted the present action. On June 14, 1995, plaintiffs' amended complaint was filed. Two days later, on June 16, 1995, Fonar filed an action in the Eastern District of New York charging Siemens with infringement of the '897 patent and the '609 patent, which Fonar had asserted against defendant Hitachi in the GE litigation. n1 On June 19, 1995, Fonar filed the pending motion.

n1 Hitachi settled at the outset of trial. (D.I. 13 at 7 n.2)

## III. DISCUSSION

### A. Motion to Dismiss

Title 28, Section 2201 provides, in relevant part:

[HN1] In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights or other legal relations of any interested party seeking such declaration, whether or not further [*4] relief is or could be sought.

28 U.S.C. § 2201(a). [HN2] Ordinarily, where an action has been filed in two district courts, the court in which the action was first filed will preside over the litigation. Optical Recording Corp. v. Capitol EMI Music, Inc., 803 F. Supp. 971 (D.Del. 1992). Defendants contend, however, that "where a party purposefully misuses [Section 2201] to engage in forum shopping, dismissal is the rule." (D.I. 13 at 9, citing Pacific Employers Ins. Co. v. M/V Captain W.D. Cargill, 751 F.2d 801, 804 (5th Cir.), cert. denied, 474 U.S. 909, 88 L. Ed. 2d 244, 106 S. Ct. 279 (1985) and Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982)). Here, defendants argue,

Siemens' misuse of the Declaratory Judgment Act is obvious . . . . It clearly did not file this suit to avoid accrual of avoidable damages. Those damages have already multiplied unchecked over the three years of willful infringement that have elapsed since Siemens was offered license terms in October 1992. Nor did Siemens sue here to obtain an early adjudication of its rights. It knew [*5] Fonar was prepared to file suit immediately after the GE Litigation concluded if Siemens failed to negotiate a license in good faith. . . . Siemens' earnest race to the courthouse began only when the GE Litigation drew to its inevitable close.

(Id. at 10-11) (citation omitted).

Moreover, defendants argue, the first filed rule may be abandoned where inconsistent with judicial and litigant economy and the just and effective disposition of disputes. (Id. at 13, citing Serco Services Co., L.P. v. Kelly Co., Inc., 51 F.3d 1037, 34 U.S.P.Q.2d 1217 (Fed.Cir. 1995)). In the present case, defendants aver, "the inventions at issue are exceedingly complex," and "the technology of the patents in suit is the same as the technology and patents involved in the later-filed action in the Eastern District of New York[,]" and "the same technology involved in the GE Litigation recently concluded before Judge Waxler in that District." (D.I. 13 at 12-13) According to defendants, the Eastern District's "familiarity with the subject matter of the litigation will reduce the expenditure of judicial resources in the handling of this case, a consideration which 'alone is sufficient [*6] . . . to justify departure from the first filed rule.'" (Id. at 13, quoting Optical Recording, 803 F. Supp. at 974). Defendants contend that Siemens' amendment of its complaint to add a claim for infringement of the '180 patent does not change the analysis, primarily because the '180 patent is "self-evidently similar to those involved in the GE Litigation." (D.I. 13 at 15)

Lastly, defendants argue that a declaratory judgment action can be dismissed "in the interests of judicial economy and for the convenience of the parties and witnesses." (D.I. 13 at 17) (citations omitted). According to defendants, "the convenience of the litigants virtually compels dismissal here," in that (1) Siemens is headquartered in Iselin, New Jersey; (2) Fonar has no offices in Delaware; and (3) documents and witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York. n2 Should any witness be unwilling, defendants contend, their attendance at trial could be compelled only in New York. (D.I. 13 at 18)

> n2 According to defendants, all four of the named inventors on the '966 patent, all three of the named inventors on the '609 patent, and the "lead" inventor on the '897 patent reside in the Eastern District of New York, the named inventor on the '832 patent resides in Woodbury, New York, and the inventor on the '180 patent "apparently lived in Ohio at the time the patent was issued." (D.I. 13 at 7-9)

[*7]

Plaintiffs respond that they chose the Delaware forum not for reasons of forum shopping, but because it was more convenient than the New York forum, and that dismissal is therefore unwarranted. (D.I. 14 at 11-12) (citations omitted) Moreover, plaintiffs argue, the prosecution of this action in Delaware is not inconsistent with judicial and litigant economy and the just and effective disposition of disputes. According to plaintiffs,

> because many of the patents and issues involved in the prior GE cases are different from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of New York. Of the four Fonar patents involved here, only two were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id. at 18) (emphasis in original). As for effective disposition, plaintiffs contend, the Delaware court "moves faster [than the New York court], as reflected in the Annual Report of the Administrative Office of the United States Courts (the "AO Report"), and is recognized as having a commendable familiarity with complex litigation in general, [*8] and with patent litigation in particular." (D.I. 14 at 12) Nor, plaintiffs argue, does the convenience of the parties or witnesses warrant dismissal. According to plaintiffs, (1) Melville, New York is only 147 miles from

Wilmington; (2) Wilmington is "more centrally located, which makes it more accessible to Siemens' New Jersey and North Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

Based on the record before it, the court concludes that defendants have failed to meet their burden of demonstrating that the relevant factors warrant dismissal. Plaintiffs have not clearly engaged in forum shopping in contravention of the purpose behind the Declaratory Judgment Act. Nor is the court persuaded that reasons of judicial and litigant economy, the just and effective disposition of disputes or the convenience of the parties or witnesses justify dismissal. Therefore, defendants' motion to dismiss will be denied.

**B. Motion to Transfer**

Title 28, Section 1404(a) provides:

> [HN3] For the convenience of the parties and the witnesses in the interests [*9] of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[HN4] Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." SportsMEDIA Technology Corp. v. Upchurch, 839 F. Supp. 8, 9 (D.Del. 1993). The parties do not dispute that this action could have been brought in the Eastern District of New York.

[HN5] As a general rule, "because plaintiffs' choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D.Del. 1981) (citing [*10] Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert denied, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971)) (emphasis added). Plaintiffs' choice of forum is "paramount." See, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 216 (D.Del. 1993). Indeed, the deference to the plaintiffs'

choice of forum will apply so long as the plaintiffs have chosen the forum for some legitimate reason. See, Tuff-Torq. Corp v. Hydro-Gear Ltd. Partnership. 882 F. Supp. 359, 362 (D.Del. 1994). n3 In the present case, plaintiffs have a legitimate reason for their forum choice: the fact that defendants are incorporated in Delaware. n4 Therefore, even if Delaware is not plaintiffs' "home turf" for purposes of this action, deference to plaintiffs' choice will still apply.

    n3 See also In re M.L.-Lee Acquisition Fund II. L.P., 816 F.Supp 973, 976 (D.Del. 1993) (emphasis added) [HN6] ("While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.").

[*11]

    n4 As this court has previously held:

        At the outset, the fact that [defendant] incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that [defendant] desired the benefits that it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another [party] has decided to sue [defendant] in Delaware.

    Critikon. Inc. v. Becton Dickinson Vascular Access. Inc. 821 F. Supp. 962, 965 (D.Del 1993).

    With respect to convenience of the parties and witnesses, defendants contend that (1) Siemens' headquarters in Iselin, New Jersey is "a comparatively short distance from the Eastern District of New York courthouse in Hauppauge[;]" and (2) "documents and witnesses relating to the patents, their prosecution, and Fonar's enforcement of them, are all located in New York. (D.I. 13 at 18) As noted above, plaintiffs counter that (1) Melville, New York is only 147 miles from Wilmington; (2) Wilmington is "more centrally located, which makes it more [*12] accessible to Siemens' New Jersey and North

Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

    Even if the Eastern District of New York were the more convenient trial forum for both the parties and the non-party witnesses, this would not be sufficient to compel a transfer. This court in Wesley-Jessen analyzed an analogous situation in which a defendant made a similar showing, and concluded that transfer was inappropriate for three reasons. First, the court noted that, being a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. 157 F.R.D. at 218. Defendant Fonar is similarly situated with business operations throughout the United States. (D.I. 14 at 6) The second factor noted by the court in Wesley-Jessen is the incorporation of defendant in Delaware. Here again, the court outlined the heightened burden on such a business. [HN7] "Absent some showing of a unique or unexpected burden, these corporations should not be successful in [*13] arguing that litigation in their state of incorporation is inconvenient." Id. Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer.

        A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum . . .. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

Id. The court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

    The final factor to be addressed by the court is the interest of justice. [HN8] In analyzing this factor the court looks to judicial resources, cost to the parties, access to proof, and the availability of compulsory process. Critikon. 821 F. Supp. at 966. With respect to judicial resources, defendants argue that the New York court's "familiarity with the subject matter of this litigation [*14] will reduce the expenditure of judicial resources in the handling of this case . . .." (D.I. 13 at 13) As noted above, plaintiffs respond that the Delaware court "moves faster, as reflected in the . . . AO Report . . ., and is recognized as having a commendable familiarity with complex litigation in general, and with patent litigation in particular." (D.I. 14 at 12) Specifically, plaintiffs

contend,

the AO Report for the 12-month period ending in September 1994 reported that each judge in the Eastern District of New York had 663 pending cases. That case load is more than four times the 155 pending cases per judge in the District of Delaware. The AO Report also indicated that the median time from filing to trial in civil cases is 26 months in the Eastern District of New York, compared with 16 months in the District Court of Delaware.

(Id. at 18) (emphasis in original). Moreover, plaintiffs argue,

because many of the patents and issues involved in the prior GE cases are different from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of New York. Of the four Fonar patents involved in issue, only two [*15] were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id.) (emphasis in original).

Based on these arguments, the court is not persuaded that this case would be resolved in the Eastern District of New York more efficiently or expeditiously than in the District of Delaware. The efficient use of judicial resources does not require the transfer of this case.

Addressing compulsory process, defendants argue that "should any [of the New York] witnesses prove to be unwilling, their attendance at trial can be compelled only if the trial proceeds in New York." (D.I. 13 at 18) These witnesses include "most of the named inventors of the patents in issue . . . ." (D.I. 19 at 5) Plaintiffs respond that "Fonar has not provided a single example of a witness who is unwilling to attend trial in Delaware." According to plaintiffs, the patent inventors specifically identified by defendants are all employed by Fonar, and their attendance can be compelled regardless of the reach of this court's subpoena power. (Id. at 20)

The court agrees with plaintiffs that here, as in Critikon, 821 F. Supp. at 967, [*16] defendants

ha[ve] not represented to the court that [the witnesses] would be unwilling to testify at trial voluntarily. [To the extent these witnesses are] . . . employee[s] of [Fonar], . . . the court must assume that [they] would be willing to testify absent a

subpoena.

Accordingly, the court finds that this factor does not weigh strongly in defendants' favor.

Defendants make no specific argument concerning the cost to the parties, and the court is not persuaded that the net cost of litigating in Delaware will be significantly greater than that of litigating in the Eastern District of New York.

With respect to access to proof, defendants contend that transfer is appropriate because "documents and witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York." (D.I. 13 at 18) Plaintiffs respond that

discovery by document production and deposition normally proceeds in patent cases without regard to the location of the forum, in that documents are either made available for inspection where they are kept by the producing party, or copies are simply provided to the requesting party's counsel. [*17] Depositions normally proceed where the witness is located or at counsel's office. . . . Fonar's counsel is located in Minnesota . . . .

(D.I. 14 at 19-20)

As this court held in Critikon:

The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendants'] . . . counsel and [plaintiffs'] . . . counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

821 F. Supp. at 966-67. For this reason, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

## C. Motion to stay

Lastly, defendants urge this court to stay these proceedings pending resolution of the action Fonar filed

against Siemens in the Eastern District of New York after plaintiffs filed the present action.

[*18] (D.I. 13 at 19). The court finds no basis in this record for granting this relief and, therefore, the motion to stay will be denied.

## IV. CONCLUSION

Therefore, at Wilmington, this 1st day of November, 1995, IT IS ORDERED that defendants' motion to dismiss, stay or transfer this action (D.I. 13) is denied.

Sue L. Robinson

United States District Judge

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FENSTER FAMILY PATENT HOLDINGS, INC., ELSCINT LTD., and ELSCINT INC., ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | C.A. No. 04-0038 (JJF) |
| SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS MEDICAL SYSTEMS, INC., SIEMENS CORPORATION, and SIEMENS AG, ) ) ) ) ) | |
| Defendants. ) | |

## ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

Defendants Siemens Medical Solutions USA., Inc., Siemens Medical Systems, Inc., Siemens Corporation, and Siemens AG (collectively "Siemens") respond to the First Amended Complaint of Plaintiffs Fenster Family Patent Holdings, Inc., Elscint Ltd., and Elscint Inc. (collectively "Plaintiffs"), as follows:

1.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 1.

2.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 2.

3.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 3.

4.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 4.

5.    Deny the allegations contained in paragraph 5, except admit that Siemens Medical Solutions USA, Inc. is organized under the laws of the State of Delaware and has its principal place of business at 51 Valley Stream Parkway, Malvern, PA.

6.    Deny the allegations contained in paragraph 6.

7.    Deny the allegations contained in paragraph 7 except admit that Siemens Corporation is organized and existing under the laws of the State of Delaware, has its principal place of business at 153 East 53d Street, New York, NY, and is the parent corporation of Siemens Medical Solutions USA, Inc.

8.    Deny the allegations contained in paragraph 8, except admit that Siemens AG is a corporation organized under the laws of Germany, and has its principal place of business at Wittelsbacherplatz 2, 8033 Munich, Germany.

9.    Admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10.    Deny the allegations in paragraph 10, except admit that Siemens Medical Solutions USA, Inc. and Siemens Corporation are incorporated in Delaware and subject to jurisdiction in this Court.

11.    Deny the allegations in paragraph 11.

12.    Deny the allegations in paragraph 12.

13.    Deny the allegations in paragraph 13.

14.    Deny the allegations in paragraph 14.

15.    Deny the allegations in paragraph 15, except admit that the '728 patent is entitled "Digital Fluorography" and that what appears to be an accurate copy of the '728 patent is attached as Exhibit 1 of the First Amended Complaint.

2

16.    Deny the allegations in paragraph 16, except admit that the '864 patent is entitled "Method of Determining Stenosis of Blood Vessels" and that what appears to be an accurate copy of the '864 patent is attached as Exhibit 2 of the First Amended Complaint.

17.    Deny the allegations in paragraph 17, except admit that the '990 patent is entitled "Radiographic Method and Apparatus for the Visualization of the Interior of a Body Particularly Useful for the Visualization of a Subject's Circulatory System" and that what appears to be an accurate copy of the '990 patent is attached as Exhibit 3 of the First Amended Complaint.

18.    Deny the allegations in paragraph 18, except admit that the '146 patent is entitled "Automatic Misregistration Correction" and that what appears to be an accurate copy of the '146 patent is attached as Exhibit 4 of the First Amended Complaint.

19.    Deny the allegations in paragraph 19, except admit that the '398 patent is entitled "Superinterlacing Imaging Systems" and that what appears to be an accurate copy of the '398 patent is attached as Exhibit 5 of the First Amended Complaint.

20.    Deny the allegations in paragraph 20, except admit that the '949 patent is entitled "Systems and Methods for Translating Radiation Intensity into Pixel Values" and that what appears to be an accurate copy of the '949 patent is attached as Exhibit 6 of the First Amended Complaint.

21.    Deny the allegations in paragraph 21, except admit that the '518 patent is entitled "Arrangement for Processing Data in Digital Flurographic Systems" and that what appears to be an accurate copy of the '518 patent is attached as Exhibit 7 of the First Amended Complaint.

3

22.    Deny the allegations in paragraph 22, except admit that the '620 patent is entitled "Data compression System" and that what appears to be an accurate copy of the '620 patent is attached as Exhibit 8 of the First Amended Complaint.

23.    The allegations in paragraph 23 require no response.

24.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 24.

25.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 25.

26.    Deny the allegations in paragraph 26.

27.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 27.

28.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 28.

29.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29.

30.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 30.

31.    Deny the allegations of paragraph 31, except admit that Siemens AG received a letter dated October 19, 2000 from attorneys purporting to represent Fenster Family Patent Holdings, Inc. ("FFPH") and refer to that letter for its contents.

32.    Deny the allegations in paragraph 32, except admit that Siemens AG received a letter dated May 13, 2002 from attorneys purporting to represent Plaintiffs and refer to that letter for its contents.

4

33. Deny the allegations in paragraph 33.

34. Repeat and reallege the responses set forth in paragraphs 1-33 above as if fully set forth herein.

35. Deny the allegations in paragraph 35.

36. Deny the allegations in paragraph 36.

37. Deny the allegations in paragraph 37.

38. Deny the allegations in paragraph 38.

39. Deny the allegations in paragraph 39.

40. Deny the allegations in paragraph 40.

41. Deny the allegations in paragraph 41.

42. Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 42.

43. Deny the allegations in paragraph 43.

## First Affirmative Defense

44. The First Amended Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

45. Siemens has not infringed any claim of the Patents-in-Suit, either directly, indirectly, literally or under the doctrine of equivalents.

## Third Affirmative Defense

46. Siemens has not contributorily infringed or induced infringement of any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

5

### Fourth Affirmative Defense

47.    Plaintiffs are estopped from asserting that Siemens has infringed or is infringing any claim of the Patents-in-Suit by virtue of statements, amendments or other actions taken during the prosecution of those patents.

### Fifth Affirmative Defense

48.    The Patents-in-Suit are invalid for failure to comply with the requirements of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103 and 112.

### Sixth Affirmative Defense

49.    Plaintiffs' claims are barred by the doctrine of laches.

### Seventh Affirmative Defense

50.    Plaintiffs' claims are barred by the doctrine of equitable estoppel.

### Eighth Affirmative Defense

51.    Upon information and belief, Plaintiffs' claims for damages are barred by failure to mark.

### Ninth Affirmative Defense

52.    Plaintiffs' claims are barred in part by the statute of limitations.

## DECLARATORY JUDGMENT COUNTERCLAIM

Siemens Medical Solutions USA, Inc., alleges as follows for its Counterclaim, against Fenster Family Patent Holdings, Inc., Elscint, Ltd., and Elscint, Inc.:

53.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq., and is based

6

upon an actual and judiciable controversy between the parties with respect to the infringement and validity of U.S. Patent Nos. 4,555,728 (the "'728 patent"); 4,692,864 (the "'864 patent"); 4,459,990 (the "'990 patent"); 4,685,146 (the "'146 patent"); 4,644,398 (the "'398 patent"); 4,595,949 (the "'949 patent"); 4,590,518 (the "'518 patent");and 4,777,620 (the "'620 patent") (collectively, the "Patents-in-Suit").  This Court has jurisdiction over the subject matter of this counterclaim based upon 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

54.    This Court has personal jurisdiction over Fenster Family Patent Holdings, Inc. ("FFPH"), Elscint, Ltd., and Elscint, Inc.  FFPH, Elscint, Ltd., and Elscint, Inc. have submitted to this Court's jurisdiction by filing their Complaint in this action.

55.    Siemens Medical Solutions USA, Inc., is a corporation organized under the laws of Delaware having its principal place of business at 51 Valley Stream Parkway, Malvern, PA.

56.    Upon information and belief, FFPH is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 300 Delaware Avenue, Wilmington, Delaware 19801.  FFPH has alleged that it is the exclusive licensee of the Patents-in-Suit.  FFPH is one of the plaintiffs in this action.

57.    Upon information and belief, Elscint Ltd. is an Israeli Company having an address at 13 Noah Moses Street, Tel Aviv 67442.  Elscint Ltd. has alleged that it is the owner of the Patents-in-Suit.  Elscint Ltd. is one of the plaintiffs in this action.

58.    Upon information and belief, Elscint Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts having an address of c/o

7

Corporation Service Company, 84 State Street, Boston MA 02109. Elscint Inc. is one of the plaintiffs in this action.

59.    FFPH, Elscint Ltd., and Elscint Inc. have alleged in this action that Siemens has infringed and is infringing the Patents-in-Suit.

60.    Siemens Medical Solutions USA, Inc. has not infringed any claim of the Patents-in-Suit, either directly, indirectly, literally or under the doctrine of equivalents.

61.    Siemens Medical Solutions USA, Inc. has not contributorily infringed or induced infringement of any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

62.    FFPH, Elscint Ltd., and Elscint Inc. are estopped from asserting that Siemens Medical Solutions USA, Inc. has infringed or is infringing the Patents-in-Suit by virtue of statements, amendments or other actions taken during the prosecution of those patents.

63.    The Patents-in-Suit and all claims therein are invalid for failure to comply with the requirements of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103 and 112.

64.    Plaintiffs' claims are barred by the doctrine of laches.

65.    Plaintiffs' claims are barred by the doctrine of equitable estoppel.

66.    Upon information and belief, Plaintiffs' claims for damages are barred by a failure to mark.

67.    For the reasons set forth above, Siemens Medical Solutions USA, Inc. seeks a judgment declaring that the Patents-in-Suit are invalid and not infringed.

WHEREFORE, Siemens respectfully prays the Court enter judgment:

990518v1

A.    Dismissing the First Amended Complaint, with prejudice, and denying

Plaintiffs the relief requested in the First Amended Complaint;

B.    Enjoining Plaintiffs from asserting U.S. Patent Nos. 4,555,728; 4,692,864;

4,459,990; 4,685,146; 4,644,398; 4,595,949; 4,590,518 and 4,777,620 against Siemens;

C.    Declaring that the claims of U.S. Patent Nos. 4,555,728; 4,692,864;

4,459,990; 4,685,146; 4,644,398; 4,595,949; 4,590,518 and 4,777,620 are not infringed by

Siemens;

D.    Declaring that the claims of U.S. Patent Nos. 4,555,728; 4,692,864;

4,459,990; 4,685,146; 4,644,398; 4,595,949; 4,590,518 and 4,777,620 are invalid and/or

unenforceable;

E.    Declaring the case exceptional under 35 U.S.C. § 285 and awarding

Siemens its reasonable attorneys' fees and expenses in this action; and

F.    Awarding such other and further relief as the Court deems just and proper.


Dated:  April 28, 2004

CONNOLLY BOVE LODGE & HUTZ, LLP

*Of Counsel:*

Eugene M. Gelernter
Chad J. Peterman
Melissa Mandrgoc
PATTERSON, BELKNAP,
    WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Arthur G. Connolly III (#2667)
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington, DE 19899-2207

*Attorneys for Defendants Siemens Medical
Solutions USA, Inc., Siemens Medical Systems,
Inc., Siemens Corporation and Siemens AG,
and for Counterclaim-Plaintiff Siemens
Medical Solutions USA, Inc.*

9

990518v1

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2004, I caused copies of the foregoing to be served upon the following counsel of record in the manner indicated:

**By Hand Delivery**
Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Adam W. Poff , Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Drive, 17th Floor
Wilmington, DE 19899

**By Federal Express**
Neil F. Greenblum, Esq.
Michael J. Fink, Esq.
Jill M. Browning, Esq.
Van C. Ernest, Esq.
Greenblum & Bernstein, P.L.C.
1950 Roland Clark Place
Reston, VA 20191

Arthur G. Connolly, III (#2667)

#331355v1