# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| et al. | : | |
| Defendants. | : | |

## DEFENDANT SIEMENS AG'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)


Dated: January 12, 2007

M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Phillip T. Mellet (DE No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500 (Telephone)
(302) 421-8390 (Fax)

*Attorneys for Defendant Siemens AG*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

DR. RAZA SHOWS NO BASIS FOR JURISDICTION OVER SIEMENS AG UNDER
DELAWARE LAW ..................................................................................................... 3

    1.    Ownership of subsidiaries is insufficient to confer general jurisdiction ................ 4

    2.    Participation in litigation is insufficient to confer general jurisdiction .................. 8

CONCLUSION ............................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ace & Co., Inc. v. Balfour Beatty PLC*,
  148 F. Supp. 2d 418 (D. Del. 2001) ................................................................................4, 7

*Altech Industrial, Inc. v. Al Tech Specialty Steel Corp.*,
  542 F. Supp. 53 (D. Del. 1982) ...........................................................................................5

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
  772 F. Supp. 1458 (D. Del. 1991) ...................................................................................5, 7

*Bell Helicopter Textron, Inc., v. C & C Helicopter Sales, Inc.*,
  295 F. Supp. 2d 400 (D. Del. 2002) ...............................................................................4, 7

*Computer People, Inc. v. Best International Group*,
  Civ. Action No. 16648, 1999 Del. Ch. LEXIS 96 (Del. Ch. Apr. 27, 1999).........................5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) .............................................................................................................4

*eSpeed Inc. v. BrokerTec USA, L.L.C.*,
  Civ. No. 03-612, 2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004)..........................5

*Max Daetwyler Corp. v. Meyer*,
  762 F.2d 290 (3d Cir. 1985) ................................................................................................3

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  No. 04-305-SLR, 2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006) .............................7

*Provident National Bank v. Cal. Federal Sav. & Loan Associate*,
  819 F.2d 434 (3d Cir. 1987) ................................................................................................4

*Reach & Associates, P.C. v. Dencer*,
  269 F. Supp. 2d 497 (D. Del. 2003) ...............................................................................4, 7

*Sanitec Industrial, Inc. v. Sanitec Worldwide, Ltd.*,
  376 F. Supp. 2d 571 (D. Del. 2005) ...............................................................................4, 8

*Sears, Roebuck & Co. v. Sears plc*,
  744 F. Supp. 1289 (D. Del. 1990) .......................................................................................3

Page(s)

*Sears, Roebuck & Co. v. Sears plc,*
    744 F. Supp. 1297 (D. Del. 1990) ..............................................................6, 7

*Soma Medical International v. Standard Charted Bank,*
    196 F.3d 1292 (10th Cir. 1999) .....................................................................8

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
    735 F.2d 61 (3d Cir. 1984) ............................................................................4

**STATUTES**

10 Del. C. § 3104(c)(4) (2006) ...........................................................................4, 6

Plaintiff Dr. Syed Iqbal Raza ("Dr. Raza"), a Pakistani national, requests that this Court exercise jurisdiction over a German company in a case pertaining to conduct that allegedly occurred across the world. Provided with several months of opportunity for discovery and confronted with the absence of any contacts that would serve as a basis for the Court's exercise of either specific or general jurisdiction over Defendant Siemens AG, Dr. Raza attempts to avoid dismissal of Siemens AG simply by ignoring longstanding Delaware law regarding the maintenance of corporate formalities and the evidence provided by Siemens AG to show that it adheres to strict formalities with respect to its subsidiaries. Dr. Raza claims that Siemens AG's indirect relationship with Delaware-incorporated subsidiaries—absent any evidence supporting the assertion that the conduct of those subsidiaries should be imputed to Siemens AG—is persistent conduct necessary to confer general jurisdiction over Siemens AG. Delaware law does not support this argument, and as such the Court should grant Siemens AG's Motion to Dismiss.

On July 13, 2006, the Court ordered limited discovery on the jurisdictional issue based upon Raza's contentions that: (1) an agency relationship existed between Siemens AG and its Delaware-incorporated subsidiaries; (2) products of Siemens AG had been distributed within the stream of commerce within Delaware; and (3) Siemens AG previously participated in litigation in Delaware. *See* Memorandum Order of July 13, 2006 (D.I. 26). The parties subsequently complied with the Court's Order[1] and Siemens AG has provided four declarations showing:

---

[1] In November, the Court substantially denied Dr. Raza's Motion to Compel (D.I. 29) which claimed that Siemens AG failed to cooperate in the limited discovery contemplated by the July Order. *See* Memorandum Order of Nov. 3, 2006 (D.I. 31). The Court did direct Siemens AG to provide discovery responsive to Dr. Raza's inquiries regarding its ownership of Delaware-incorporated subsidiaries by December 1, 2006. *Id.* Siemens AG complied with that Order by its letter to Plaintiff's counsel dated November 17, 2006, attached hereto as Exhibit A.

- Siemens AG is a German corporation, organized under the laws of Germany, with its headquarters in Munich and Berlin.  (Decl. of Erhard Meitinger ("Meitinger Decl. I"), ¶ 2, attached to Siemens AG's Opening Brief in Support of Its Motion to Dismiss (D.I. 15).)

- Siemens AG is not registered to do business in Delaware.  (*Id.* ¶ 3)

- Siemens AG does not own any real property or maintain an office, telephone listing or mailing address in Delaware.  (*Id.*)

- Siemens AG has not authorized or appointed any entity to act as its general agent for accepting service of process of lawsuits in Delaware. (*Id.*)

- Siemens AG does not employ any personnel in Delaware. (*Id.*)

- Siemens AG does not conduct any business in Delaware and does not sell or market any products in Delaware.  (Decl. of Erhard Meitinger ("Metinger Decl. II"), ¶ 4, attached to Siemens AG's Reply Brief in Support of Its Motion to Dismiss ("Siemens AG's Reply Brief") (D.I. 21).)

- Siemens AG has not filed or been obliged to file a tax return or pay taxes in Delaware.  (Meitinger Dec. I, ¶ 3, 7.)

- Siemens AG is the indirect owner of the shares of Siemens Corporation, a Delaware corporation headquartered in New York, which in turn owns the shares of Defendant Siemens Medical Solutions USA, Inc. ("Medical Solutions"), a Delaware corporation, which in turn owns the shares of Defendant Siemens Medical Solutions Health Services Corporation ("Health Services"), a Delaware corporation.[2] (*Id.* ¶ 4)

- Siemens Corporation is owned by Siemens Schweiz AG, a Swiss corporation, and Siemens USA Holdings, Inc., a Delaware corporation. Siemens Schweiz AG is wholly owned by Siemens Beteiligungsverwaltung Schweiz AG, a Swiss corporation, which, in turn, is wholly owned by Siemens AG.  Siemens USA Holdings, Inc. is owned by Siemens Beteiligungen USA GMBH, a German corporation and Kyros 25GmbH, a German corporation.  (Decl. of Kenneth R. Meyers, Esq. , ¶¶ 5-8, attached hereto as Exhibit A).

- Siemens AG maintains an explicit corporate policy not to direct or control the day-to-day operations or management of Siemens Corporation or any of Siemens Corporation's subsidiaries, including the Defendants.  Siemens Corporation has its own Board of Directors which bears overall

---

[2]    On December 31, 2006, Health Services merged into Medical Solutions.

responsibility for management and governance of the company. Siemens AG and Siemens Corporation also have separate officers, conduct separate board meetings, maintain separate books, records and financial accounts, and separate headquarters. Any transactions between Siemens AG and Siemens Corporation are conducted at arms-length and in accordance with generally recognized accounting principles. (Meitinger Decl. I, ¶¶ 5-6.)

- Siemens AG neither manufactures nor markets or sells Soarian® in the United States. Soarian® is manufactured by Health Services. Soarian® is marketed and sold in the United States by Medical Solutions. (Decl. of James T. McAvoy, ¶¶ 3-4, attached to Siemens AG's Reply Brief.)

Additionally, Siemens AG provided verified discovery responses to all of Dr. Raza's requests showing its lack of any Delaware-based contacts that would support exercise of either specific or general jurisdiction by a Delaware court. Dr. Raza puts forth no evidence showing that Siemens AG purposefully directed any activities toward Delaware, let alone that he suffered any injuries arising from or relating to those activities. In fact, the evidence shows that Siemens AG neither manufactures, markets, nor sells Soarian® in Delaware or anywhere else in the United States. Dr. Raza has not even established that Soarian® was ever sold in Delaware by *any* entity.

## DR. RAZA SHOWS NO BASIS FOR JURISDICTION OVER SIEMENS AG UNDER DELAWARE LAW

Dr. Raza now seems to focus his argument on a general jurisdiction theory. Specifically, Dr. Raza claims that this Court can exercise general jurisdiction over Siemens AG based upon: (1) its indirect ownership of Delaware-incorporated subsidiaries; (2) its indirect subsidiaries' acquisition of two Delaware corporations; and (3) its participation in four Delaware cases over the past decade.[3] These sporadic contacts are insufficient to establish general jurisdiction under Delaware law.

---

[3]   Dr. Raza also apparently contends that other purported contacts in the United States at large support his jurisdictional argument. This contention is unsupported and, indeed, contrary to Delaware law. *See Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 300 (3d Cir. 1985) ("in personam jurisdiction may not rest [on] an alien defendant's aggregated national contacts"); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1292, n.3 (D. Del. 1990).

Dr. Raza holds the burden of establishing by preponderance of the evidence and with reasonable particularity the existence of sufficient minimum contacts between Siemens AG and this forum. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987); *Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 573 (D. Del. 2005); *Bell Helicopter Textron, Inc., v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). He must "sustain [his] burden of proof . . . through sworn affidavits or other competent evidence." *Time Share Vac. Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984).

Dr. Raza premises his jurisdictional argument upon subsection (c)(4) of the Delaware long-arm statute, which is a general jurisdiction provision.[4] *See Bell Helicopter*, 295 F. Supp. 2d at 405. The Supreme Court holds that the exercise of general jurisdiction over a non-resident defendant requires a showing of "continuous and systematic general business contacts" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Such a showing requires significantly more than mere minimum contacts. *See Provident*, 819 F.2d at 437. As this Court has noted, "the standard for general jurisdiction is high in practice and not often met." *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003). Dr. Raza has not met it here.

1.    Ownership of subsidiaries is insufficient to confer general jurisdiction

Delaware courts have consistently held that "the mere fact that a non-Delaware corporation owns Delaware subsidiaries is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent." *Ace & Co., Inc. v. Balfour Beatty PLC*,

---

[4]    *See* 10 *Del. C.* § 3104(c)(4) (2006). Subsection (c)(4) provides that a court may exercise personal jurisdiction over any nonresident who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the state." *Id.*

148 F. Supp. 2d 418, 423 (D. Del. 2001); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470-71 (D. Del. 1991) (holding that exercise of jurisdiction based on a direct subsidiary's continuous incorporation in Delaware and annual franchise tax filings was inconsistent with due process); *Computer People, Inc. v. Best Int'l Group,* Civ. No. 16648, 1999 Del. Ch. LEXIS 96, at *28-35 (Del. Ch. Apr. 27, 1999) (rejecting argument that act of incorporating Delaware subsidiary confers jurisdiction on non-resident parent) (attached hereto as Exhibit B).  Of course, here the evidence shows that Siemens AG has no direct ownership of either Medical Solutions or Health Services (the two other defendants in this action), making Dr. Raza's argument even more attenuated and inconsistent with the law.

In *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, Civ. No. 03-612, 2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004) (attached hereto as Exhibit C), the plaintiffs argued, similar to Dr. Raza, that general jurisdiction should be based upon a foreign defendant's ownership and operation of Delaware subsidiaries. *See id.* at *14.  The Court rejected that argument, noting plaintiffs' failure to set forth any reason to impute to the parent its subsidiaries' activities in Delaware, as well as its failure to adduce any evidence that the parent took action to disregard its subsidiaries' separate corporate status. *Id.* at *14-15.  The Court ascribed no jurisdictional importance to the parents' purchase of an established Delaware subsidiary. *See id.* at *14.  Similarly, Dr. Raza has provided absolutely no evidence that Siemens AG disregards its Delaware subsidiaries' independent operations.  The only evidence in the record on this subject directly contradicts any such assertion.

The sole case Dr. Raza cites to support his novel theory of jurisdiction, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53 (D. Del. 1982), is inapposite.  In *Altech*, the Court exercised jurisdiction over the non-resident defendant, a New York

corporation, based on evidence that the non-resident defendant "directed and controlled [its Delaware subsidiary] in infringing plaintiff's trade name," and that the "vast majority" of the non-resident defendant's eighty-two subsidiaries were Delaware corporations. *Id.* at 55. Dr. Raza's reliance on *Altech* to support jurisdiction here is misplaced. First, the unrebutted jurisdictional evidence of record shows that Siemens AG does not direct or control any of its indirect Delaware subsidiaries, either in general or with respect to any of the allegations of this case. *See* Meitinger Dec. I, ¶¶ 5-6. Second, Dr. Raza provides no authority that the purported ownership of twenty-nine Delaware subsidiaries[5] could meet the "persistent course of conduct" required under 10 *Del. C.* § 3104(c)(4). Third, Dr. Raza has not provided and cannot provide any support for his contention that Siemens AG directly owns any of these claimed twenty-nine subsidiaries. *See* Declaration of Kenneth R. Meyers, Esq., attached hereto as Exhibit D at ¶ 4.[6] Significantly, a more recent Delaware case, *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1306 n.8 (D. Del. 1990), rejected a similar attempt to use *Altech* to impute one entity's incorporation of Delaware subsidiaries to a parent of that entity. There the Court noted:

> Roebuck does contend that the incorporation in Delaware of up to twelve other companies should be attributed to PLC [foreign non-resident defendant]. All of these corporations are owned by DMH [subsidiary of PLC] or a subsidiary of DMH. Because there is no basis for disregarding DMH as a corporate entity, neither the incorporation nor the operation of these companies may be attributed to PLC.

---

[5]   Dr. Raza provided this information in an unverified chart attached as Exhibit B to his Supplemental Brief (D.I. 33).

[6]   Siemens AG provides this declaration to correct Dr. Raza's false and unsupported assertion that Siemens AG directly owns these subsidiaries. Dr. Raza had every opportunity to take discovery on the issue of the extent of Siemens AG's ownership interests in Delaware subsidiaries during the jurisdictional discovery period and failed to do so.

*Id.* at 1306 n.8.  Here, Dr. Raza similarly provides no basis as to why the incorporation of entities several layers removed from Siemens AG should be imputed to Siemens AG for jurisdictional purposes.

Further, Dr. Raza has not asserted personal jurisdiction based on an agency theory that is consistent with Delaware law.  Under the agency theory, Delaware courts examine the degree of control which the parent exercises over the subsidiary.  *See Monsanto Co. v. Syngenta Seeds, Inc.*, Civ. No. 04-305, 2006 U.S. Dist. LEXIS 54534, *19-20 (D. Del. Aug. 4, 2006) (attached hereto as Exhibit E); *Bell*, 295 F. Supp. 2d at 408-09; *Applied Biosystems*, 772 F. Supp. at 1463.[7]  As Delaware courts have consistently held, the exercise of jurisdiction pursuant to an agency theory requires "not only that the precise conduct shown to be instigated by the parent be attributable to the parent . . . but also that such conduct . . . take place in Delaware." *See Ace & Co.*, 148 F. Supp. 2d at 425 (rejecting plaintiff's attempt to establish personal jurisdiction over parent based upon agency theory in absence of jurisdictional conduct).

Even if Dr. Raza had successfully alleged facts to establish that some subsidiary is Siemens AG's agent under Delaware law (which he has not done), he has not alleged any specific jurisdictional acts of that subsidiary that satisfy Delaware's long-arm statute.  Any claim of jurisdiction based upon agency is accordingly deficient.  *See Bell*, 295 F. Supp. 2d at 409 (holding that "an agency relationship with a Delaware corporation alone is not sufficient to exercise jurisdiction"); *Applied Biosystems*, 772 F. Supp. at 1464; *Reach*, 269 F. Supp. 2d at 507 ("Plaintiffs have failed to show that any of the actions alleged by the Complaint are jurisdictional acts, that is, none of the behavior underlying the Plaintiffs' claims occurred in Delaware.").

---

[7]    The relevant factors to this determination are the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. *Applied Biosystems*, 772 F. Supp. at 1463.

2.    <u>Participation in litigation is insufficient to confer general jurisdiction</u>

As already explained in more detail in Siemens AG's Reply Brief, Siemens AG's appearance in four lawsuits over the past decade (two as a defendant) is also not the kind of "substantial and continuous local activity" necessary to subject it to general jurisdiction. This court has similarly so recognized. *See Sanitec Indus.*, 376 F. Supp. 2d at 574 (rejecting argument that filing UCC financing statements and appearing in state court are type of activities necessary to subject a non-resident defendant to general jurisdiction); *accord Soma Medical Int'l v. Standard Charted Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999).

## CONCLUSION

For the reasons set forth above and for all of the reasons contained in Siemens AG's previous briefs in support of this Motion, this Court should grant Siemens AG's Motion to Dismiss Plaintiff's Complaint and dismiss Siemens AG with prejudice.

Respectfully submitted,

/s/ Larry R. Wood, Jr.
M. Duncan Grant (DE No. 2994)
OF COUNSEL:                          Larry R. Wood, Jr. (DE No. 3262)
                                     Phillip T. Mellet (DE No. 4741)
Kathleen A. Mullen                   PEPPER HAMILTON LLP
PEPPER HAMILTON LLP                  Hercules Plaza, Suite 5100
3000 Two Logan Square                1313 N. Market Street
Eighteenth & Arch Streets            P.O. Box 1709
Philadelphia, PA 19103-2799          Wilmington, DE 19899-1709
(215) 981-4000 (Telephone)           (302) 777-6500 (Telephone)
(215) 981-4750 (Fax)                 (302) 421-8390 (Fax)

                                     *Attorneys for Defendant Siemens AG*

Dated: January 12, 2007

*EXHIBIT  "A"*

# Pepper Hamilton LLP
#### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

Kathleen A. Mullen
Direct dial: 215.981.4786
direct fax: 215.981.4750
mullenk@pepperlaw.com

November 17, 2006

*Via Electronic and First Class Mail*

Adam W. Poff, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Re:   *Raza v. Siemens Medical Solutions USA, Inc., et al.*
       *Civil Action No. 06-132 (D. Del.)*

Dear Adam:

Pursuant to Judge Farnan's Order, dated November 3, 2006, denying Plaintiff's Motion to Compel except as to Plaintiff's requests regarding Siemens AG's ownership, direct or indirect, of the Delaware-incorporated subsidiaries, I enclose the Declaration of Kenneth R. Meyers, Esquire, Vice President – Mergers & Acquisitions of Siemens Corporation (and an accompanying chart) providing the information regarding the ownership interests of Siemens AG, direct or indirect. These materials fully respond to Plaintiff's Document Request No. 6, requesting "Documents sufficient to determine Defendant Siemens AG's ownership interests in other defendants and Siemens Corporation." If you have any questions, please do not hesitate to contact us.

Very truly yours,

Kathleen A. Mullen

KAM/lek

Enclosures

---

| Philadelphia | Washington, D.C. | Detroit | New York | Pittsburgh |
|---|---|---|---|---|
| Berwyn | Harrisburg | Orange County | Princeton | Wilmington |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP. and SIEMENS AG, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF KENNETH R. MEYERS, ESQUIRE

1.    My name is Kenneth R. Meyers.  I am the Vice President – Mergers & Acquisitions of Siemens Corporation in New York, New York and have served in this position for the past year.  From May 2000 until December 31, 2005, I served as Associate General Counsel of Siemens Corporation.  Prior to holding that position, for more than seven years I served as Counsel and Assistant Secretary of Siemens Corporation.  I provide this declaration on the basis of my personal knowledge, investigation and belief.

2.    I have specific knowledge and understanding of the chain of ownership from Siemens Medical Solutions Health Services Corporation through Siemens AG.

3.    Siemens Medical Solutions Health Services Corporation, a Delaware corporation with its principal place of business in Pennsylvania, is a wholly owned subsidiary of Siemens Medical Solutions USA, Inc. with Siemens Medical Solutions USA, Inc. holding 100% of the stock of Siemens Medical Solutions Health Services Corporation.

4.    Siemens Medical Solutions USA, Inc., a Delaware corporation with its principal place of business in Pennsylvania, is a wholly owned subsidiary of Siemens Corporation, with Siemens Corporation holding 100% of the stock of Siemens Medical Solutions USA, Inc.

5.    Siemens Corporation, a Delaware corporation with its principal place of business in New York, is owned by Siemens Schweiz AG (also known as Siemens Switzerland AG (Ltd.)) and Siemens USA Holdings, Inc.  Siemens Schweiz AG, a Swiss corporation, holds 10.3% of the voting stock of Siemens Corporation and Siemens USA Holdings, Inc., a Delaware corporation, holds 89.7% of the voting stock of Siemens Corporation.

6. Siemens Schweiz AG is wholly owned by Siemens Beteiligungsverwaltung Schweiz AG, a Swiss corporation, which, in turn, is wholly owned by Siemens AG, a German corporation.

7. Siemens USA Holdings, Inc. is owned by Siemens Beteiligungen USA GmbH, a German corporation, which holds 99.999% of the capital stock of Siemens USA Holdings, Inc., and Kyros 25 GmbH, a German corporation, which holds 0.001% of the capital stock of Siemens USA Holdings, Inc.

8. Siemens Beteiligungen USA GmbH is wholly owned by Siemens AG.

9. The chart attached hereto as Exhibit A depicts the ownership chain I have described above.

10. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge, information and belief.

Kenneth R. Meyers
Vice President – Mergers & Acquisitions
Siemens Corporation

Dated:  November 16, 2006
New York, NY

*Exhibit A*



SIEMENS

*E X H I B I T  "B"*

LEXSEE



Positive
As of: Jan 09, 2007

**COMPUTER PEOPLE, INC., Plaintiff, v. BEST INTERNATIONAL GROUP, INC.,
a Delaware corporation, BEST INTERNATIONAL GROUP PLC, a foreign corpo-
ration, BEST PEOPLE LIMITED, a foreign corporation, and RAYMOND
ARELLO, an individual, Defendants.**

**Civil Action No. 16648**

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

*1999 Del. Ch. LEXIS 96*

**November 2, 1998, Date Submitted
April 27, 1999, Date Decided**

**SUBSEQUENT HISTORY:** [*1]

Released for Publication by the Court May 25, 1999.

**DISPOSITION:**

Motion to dismiss granted. Defendants' 12(b)(6) mo-
tion with leave to renew based on briefs that take into
account the Court's jurisdictional ruling denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed
suit alleging defendant competitors engaged in a conspir-
acy to induce several of plaintiff's high level employees
to leave plaintiff's employ. All but one of the defendants
moved to dismiss the complaint as to them under Del.
Chancery Ct. R. 12(b)(2) for lack of personal jurisdic-
tion.

**OVERVIEW:** Several defendants moved to dismiss the
complaint against them under Del. Chancery Ct. R.
12(b)(2) for lack of personal jurisdiction. In response,
plaintiff sought to establish personal jurisdiction on the
ground that defendants' wrongful acts, none of which
occurred in Delaware, affected plaintiff corporation to a
sufficient extent to constitute the minimum contacts nec-
essary for jurisdiction under the state long arm statute,
*Del. Code Ann. tit. 10, § 3104* (the statute). The court
stated that under the common law conspiracy theory,
personal jurisdiction could sometimes be established

where a defendant's conduct had a substantial effect in
Delaware. Plaintiff asserted that two phone calls, one e-
mail, the incorporation of one defendant in Delaware,
and the presence of one defendant in the state in past
years were sufficient to support personal jurisdiction
under the conspiracy theory. The court disagreed and
held that such contacts were either not current or not
sufficiently extensive and continuing that it would be fair
to require defendants to appear and defend a claim. The
court therefore granted defendants' motion.

**OUTCOME:** The court granted defendants' motion to
dismiss the complaint against them for lack of personal
jurisdiction after holding defendants' contacts with the
state were either not current or not sufficiently extensive
and continuing to establish personal jurisdiction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > In Personam Actions > Challenges*
[HN1] To overcome a challenge to personal jurisdiction
under Del. Chancery Ct. R. 12(b)(2), a plaintiff must
establish, prima facie, that the court has personal juris-
diction over the moving defendant. In that context all
factual inferences are viewed in the light most favorable
to the plaintiff. Where the plaintiff attempts to effect

service of process under the Delaware Long Arm Statute, *Del. Code Ann. tit. 10, § 3104*, the plaintiff must prove that (i) the defendants' alleged conduct falls within one or more of the statutorily enumerated categories that confer jurisdiction and that (ii) the court's exercise of personal jurisdiction satisfies the due process requirements of U.S. Const. amend. XIV.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN2] See *Del. Code Ann. tit. 10, § 3104(c)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN3] *Del. Code Ann. tit. 10, § 3104(c)(1)* and (c)(3) authorize transactional or specific jurisdiction in cases where the cause of action arises out of the defendant's conduct in the State of Delaware. Under those subsections a single act in Delaware will suffice. *Del. Code Ann. tit. 10, § 3104(c)(4)*, on the other hand, creates general jurisdiction in cases where the cause of action is unrelated to the relevant Delaware contacts. General jurisdiction under § 3104(c)(4) requires a greater, more continuous pattern of contacts with the forum than does single act jurisdiction under § 3104(c)(1), (2), or (3). The tradeoff for this stricter requirement is that the activities which create that general presence need not be the basis for the plaintiff's cause of action.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
[HN4] In narrowly defined circumstances, personal jurisdiction may also be established under a common law conspiracy theory. The conspiracy theory of jurisdiction is not, strictly speaking, an independent jurisdictional basis, but rather, is a shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a substantial effect in Delaware is attributed to a defendant who would not otherwise be amenable to jurisdiction in Delaware.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
[HN5] Under the conspiracy theory of jurisdiction, a plaintiff may establish personal jurisdiction over a nonresident only if it satisfies five elements, namely, by showing that: (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. The test ultimately turns on the imputation to the alleged conspirator of meaningful activity on behalf of the conspiracy which occurred and caused effects in Delaware.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN6] The conspiracy theory of jurisdiction is narrowly and strictly construed; otherwise, that theory would become a facile way for a plaintiff to circumvent the International Shoe minimum contacts requirement. For that reason, where a conspiracy is alleged and the defendants submit factual evidence controverting personal jurisdiction as to them, the plaintiff may not rely upon conclusory allegations in his pleading that are unsupported by evidence. Such allegations will not be sufficient to overcome a motion to dismiss for lack of personal jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN7] *Del Code Ann. tit. 10, § 3104(c)(4)* jurisdiction arises only when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN8] To establish general jurisdiction under *Del. Code Ann. tit. 10, § 3104(c)(4)*, the defendant must have current contacts with the forum state.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN9] *Del. Code Ann. tit. 10, § 3104(c)(1)* authorizes a court, in its discretion, to exercise jurisdiction over a non-resident defendant who transacts any business or performs any character of work or service in Delaware and whose cause of action arises from that transaction or work. Under that subsection, an act or acts must have occurred in Delaware, and the plaintiff's causes of action must arise from that act or acts. To transact business in Delaware, a party must purposefully avail itself of the privileges and benefits of Delaware law.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Internet Business > General Overview*
[HN10] As a general matter, telephone calls and e-mails do not, in and of themselves, automatically constitute transacting business within Delaware sufficient to invoke jurisdiction under *Del. Code Ann. tit. 10, § 3104(c)(1)*.

*Business & Corporate Law > Agency Relationships > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN11] Under the agency theory of personal jurisdiction, only acts of the agent that are directed by the principal may serve as a basis to assert jurisdiction over the principal.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN12] While the stock ownership of a Delaware subsidiary is not, without more, a sufficient contact upon which to predicate jurisdiction, that contact may be sufficient where the cause of action arises from the creation and operation of the Delaware subsidiary.

**COUNSEL:** David C. Weiss and Richard S. Cobb, Esquires, of DUANE, MORRIS & HECKSCHER LLP, Wilmington, Delaware; and Michael N. Sheetz and Peter M. Coppinger, Esquires, of GADSBY & HANNAH LLP, Boston, Massachusetts, Attorneys for Plaintiff.

Robert J. Steam Jr., Esquire, of RICHARDS, LAYTON & FINGER, Wilmington, Delaware; and John M. Murphy and Anthony G. Stamato, Esquires, of BAKER & McKENZIE, Chicago, Illinois, Attorneys for the Best Defendants.

R. Judson Scaggs, Jr. and William M. Lafferty, Esquires, of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware; and Bruce L. Atkins and Christine M. Stevenson, Esquires, of CONTANT, SCHERBY & ATKINS, Hackensack, New Jersey, Attorneys for Defendant Raymond Arello.

**JUDGES:** JACOBS, VICE CHANCELLOR.

**OPINION BY:** JACOBS

**OPINION:**

MEMORANDUM OPINION

JACOBS, VICE CHANCELLOR

In this action, the plaintiff, Computer People, Inc. ("Computer People" or "the company"), claims that the defendants have engaged in a conspiracy to induce several [*2] of the company's managers and other high level employees to leave Computer People and join forces with the defendants. The named defendants are Best International Group PLC ("Best PLC") and Best People Limited ("Best Ltd."), both United Kingdom corporations; Best International Group, Inc., a Delaware corporation ("Best USA"); and Raymond Arello ("Arello"), a New Jersey resident.

The defendants other than Best USA have moved to dismiss the complaint as to them under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. Additionally, all defendants have moved to dismiss the action under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

For the following reasons, the Court determines that it lacks personal jurisdiction over defendants Arello, Best PLC, and Best Ltd., and grants the motion to dismiss the complaint as to those defendants. The result is to leave Best USA as the sole remaining defendant. Because neither side has adequately briefed the 12(b)(6) motion with that contingency in mind, the Court denies the Rule 12(b)(6) motion, with leave to renew based on briefs that take into account the procedural consequences of the [*3] jurisdictional ruling made here.

I. BACKGROUND

The facts set forth below are derived from the complaint and the affidavits filed in connection with these motions.

A. The Parties

1. Computer People

Computer People, a Delaware corporation, is a subsidiary of Delphi PLC, a British corporation with branch offices throughout the United Kingdom. Computer People provides specialized employment staffing services on a contract basis within the information technology ("IT") industry. The company has 14 branch offices nationwide grouped into three regions. n1 Its business is to hire IT professionals ("consultants") and then place those consultants with commercial and governmental entities. In those environments, the consultants perform tasks that include programming, system administration, applications development, system analysis and design, and network administration and installation.

n1 The Western region, which has its headquarters in Los Angeles, includes branch offices in Seattle, Portland, Dallas, and Houston. The Midwest region, which is headquartered in King of Prussia, Pennsylvania, includes branch offices in Chicago, Detroit, Columbus, and Atlanta. The Mid-Atlantic region, which has its headquarters in Wilmington, Delaware, includes branch offices in New York City and King of Prussia, Pennsylvania.

[*4]

Each Computer People branch office has a manager who is responsible for operating that office, and who has access to highly confidential and sensitive information, including a database containing detailed information about Computer People's consultants and clients. Because of the sensitive and confidential nature of this information, all managers are required to sign employment agreements that contain various restrictive covenants covering topics such as employee non-solicitation, customer non-solicitation, and confidentiality. Some Computer People employees are also required to include non-competition provisions in their employment agreements.

2. The Defendants

Best PLC, a British corporation, is the corporate parent of several IT placement subsidiaries throughout the world, including defendants Best USA and Best Ltd. Defendants Best PLC and Best Ltd. do not own any real estate, maintain any office, or conduct any business; and neither company is registered to do business in Delaware. Best PLC and Best Ltd. also have no Delaware

mailing address, post office box, telephone number or listing; nor do they generate any substantial revenue from Delaware operations or have a designated [*5] agent for service of process in Delaware.

Best PLC incorporated Best USA in Delaware on August 12, 1998 to take advantage of the administrative convenience and corporate tax considerations associated with being a Delaware corporation. Best USA, like Computer People, is in the business of placing consultants in the IT field on a contractual basis. Best USA's principal place of business is in Freehold, New Jersey, and it also maintains three branch offices outside New Jersey, none of which are located in Delaware. n2

n2 The branches are located in Los Angeles, California; Dallas, Texas; and Seattle, Washington.

Raymond Arello worked for Computer People from May 22, 1989 through May 15, 1998. Originally hired as the New York branch manager, Arello served as Vice President and Regional Manager for Computer People's Northeast region from January 1, 1993 through March 1, 1998. On March 1, 1998, Arello was promoted to Senior Vice President for Computer People and Alpine Computer System (a separate operating division [*6] located in New York), n3 with oversight responsibility for profit improvement in New York and New Jersey.

n3 Alpine is involved in remote systems management, outsourcing, computer network design, and consulting services.

Although he was a New Jersey resident, Arello initially had many Delaware contacts as a Computer People employee. As a regional Vice President from 1993 to 1996, Arello was responsible for supervising Computer People's Delaware branch office; and in that role he had frequent contacts in Delaware with Michael Stanley, Computer People's Wilmington branch office manager. Arello visited the Delaware branch office weekly and communicated with that office almost daily by telephone and e-mail. He also frequently attended sales and staff meetings in Delaware and was available to answer operational and other questions for Stanley as needed. Arello never lived in Delaware, however, and after 1996 his Delaware contacts declined significantly.

In April 1998, Best Ltd. executives Susan E. Cuff ("Cuff") [*7] and Michael R. Bayfield ("Bayfield") contacted Arello and offered him a position with Best USA. In May 1998, Arello left Computer People after being

terminated as part of the company's cost-reduction plan. Thereafter, Arello became Best USA's President and Chief Executive Officer, and presently works out of Best USA's Freehold, New Jersey headquarters. After he left Computer People, Arello's only Delaware contact occurred in 1998, when he had lunch with Stanley in Delaware and toured Computer People's new Wilmington, Delaware facility.

B. The Defendants' Alleged Solicitation of Computer People Employees

Computer People claims that the defendants have conspired to lure away five key Computer People employees (including 4 of its 14 branch managers) who had access to sensitive and confidential company information. These defecting employees included former branch managers Thomas P. Meola ("Meola"), William Kalinowski ("Kalinowski"), Jon Raymond ("Raymond"), and Brian Mitchell ("Mitchell"), and former employee Chelsey D. English ("English"). What follows is a brief summary of the alleged wrongful acts committed by the defendants. None of those acts occurred in Delaware.

1. Meola [*8]

From December 16, 1994 until he resigned on September 8, 1998, Meola was Computer People's New York branch manager. During the summer of 1998, Meola met twice with Bayfield, and he also met with Cuff on an unspecified number of occasions. According to the complaint, at these meetings Bayfield allegedly promised Meola that he would be the "number two" person in charge of Best USA, and he offered Meola a one-year guaranteed employment contract that promised yearly compensation of approximately $ 350,000.

On August 27, 1998, Meola gave Computer People notice of his resignation effective September 25, 1998. Over the Labor Day weekend, Arello, who had remained friends with Meola since he left Computer People, n4 contacted Meola and persuaded him to accept employment with Best USA, where Meola is now currently employed.

n4 Arello and Meola were colleagues working in the same region while both were employed at Computer People. Arello hired and managed Meola in the New York branch office for two years.

2. Kalinowski [*9]

From January 1, 1989 until September 30, 1993, Kalinowski was Computer People's Los Angeles branch manager; and from October 1, 1993, to September 30,

1997, he was its Atlanta branch manager. Kalinowski again served as Computer People's Los Angeles branch manager from October 1, 1997, until he resigned on September 4, 1998.

In July or August 1998, Bayfield and Cuff, acting on behalf of Best Ltd. and/or Best PLC, solicited Kalinowski to leave Computer People and join Best USA. On August 6, 1998, Kalinowski tendered his resignation and gave Computer People one month's notice. Kalinowski now works for Best USA in its Los Angeles branch office.

3. Raymond

From July 7, 1997, until February 2, 1998, Raymond was an account manager in Computer People's Seattle office. On February 2, 1998, Raymond became the Seattle branch office manager, where he remained until his resignation on May 26, 1998. Shortly thereafter, Bayfield and Cuff, acting on behalf of Best Ltd. and/or Best PLC, offered Raymond a position with Best USA. Raymond is now Best USA's Seattle office branch manager.

4. Mitchell

From July 1, 1987 until he resigned on July 28, 1998, Mitchell was employed by Computer People, first [*10] as a contract sales executive in its New York office, then as its Wilmington, Delaware branch manager, and finally as its Dallas, Texas branch manager. By letter dated June 29, 1998, Mitchell tendered his resignation, effective July 28, 1998. Sometime during the summer of 1998, the defendants, including Bayfield and Cuff acting on behalf of Best Ltd. and/or Best PLC, contacted Mitchell in an effort to recruit him for Best USA. It is unclear from the complaint whether this contact occurred during or after Mitchell's employment with Computer People; but in any event, Mitchell now works for Best USA as its Dallas branch manager.

5. English

On July 27, 1998, English resigned from Computer People's Dallas office, effective August 14, 1998. At some point, Mitchell allegedly contacted English to recruit her on behalf of Best USA for the Dallas office. It is unclear from the complaint whether this contact occurred before or after English terminated her employment with Computer People. In any event, English now works for Mitchell in Best USA's Dallas office.

C. Other Alleged Solicitation Efforts

The plaintiff also alleges that beginning in January or February 1998, Bayfield and Cuff [*11] (on behalf of Best Ltd. and Best PLC) began to solicit Computer People's Mid-Atlantic branch manager, Michael Stanley, who is based in Wilmington, Delaware. That is the only

solicitation activity claimed to have occurred in Delaware. There were two other alleged telephone call solicitations by Bayfield from outside Delaware to Stanley's Delaware office, during which Bayfield allegedly informed Stanley that Best was "coming to the United States" and invited Stanley to join them. On May 21, Bayfield and Cuff met with Stanley at the Philadelphia Airport and again solicited him to join Best's "United States team." One month later, in June or July 1998, Stanley had a follow up meeting with Bayfield and Cuff in New York, and also received an e-mail from Bayfield at his Wilmington office. Ultimately, however, Stanley resisted these blandishments and decided to stay with Computer People.

In April 1998, Best Ltd. executives Cuff and Bayfield contacted Geoffrey Richardson, who at that time was Computer People's Senior Vice President of Recruiting and the Director of its National Resourcing Office. Cuff and Bayfield offered Richardson a position with Best USA. The complaint does not allege that [*12] Richardson presently works for the defendants or that he intends to work for the defendants in the future.

II. THE CONTENTIONS

Computer People's complaint has six counts. Count One alleges that the defendants tortiously interfered with Computer People's contractual relationship with its employees through its various solicitations. Computer People contends that its former employees cannot perform similar services for Best USA without violating the express terms of their Computer People employment agreements, because those employees, once employed by Best USA, will inevitably: (i) solicit and/or disclose the names of the customers and consultants that are a part of Computer People's database and/or workforce; and (ii) use and disclose other confidential Computer People information in the course of performing their managerial duties.

Count Two alleges that the defendants have tortiously interfered with Computer People's business relations by intentionally recruiting Computer People's key managerial employees. This depletion of its upper-level employees, Computer People claims, has caused or will cause the termination of Computer People's present or prospective business relations with [*13] its clients.

Count Three alleges that Arello's solicitation of Computer People's employees (in particular Meola) violated his employment agreement with Computer People. Count Four contends that that same conduct breached Arello's common law fiduciary duty owed by him to Computer People. Count Five alleges that Best Ltd. and Best PLC, through Bayfield and Cuff, knowingly participated and assisted in Arello's breach of fiduciary duty to Computer People.

The final count, Count Six, alleges that the defendants are parties to a conspiracy to create and operate Best USA as the vehicle for defendants' efforts to interfere tortiously with Computer People's contractual and business relationships.

Defendants Arello, Best PLC, and Best Ltd., have moved to dismiss this action under Court of Chancery Rule 12(b)(2) for lack of jurisdiction over the person. (The defendants concede that the Court has personal jurisdiction over Best USA, which is a Delaware corporation.). In addition, all four defendants have moved to dismiss the complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Only the first of these motions is addressed, for the reasons [*14] discussed later herein.

III. ANALYSIS

A. Applicable Legal Standards

[HN1] To overcome a challenge to personal jurisdiction under Court of Chancery Rule 12(b)(2), a plaintiff must establish, prima facie, that this Court has personal jurisdiction over the moving defendant. n5 In that context all factual inferences are viewed in the light most favorable to the plaintiff. n6 Where, as here, the plaintiff attempts to effect service of process under the Delaware Long Arm Statute, *10 Del. C. § 3104*, the plaintiff must prove that (i) the defendants' alleged conduct falls within one or more of the statutorily enumerated categories that confer jurisdiction and that (ii) the Court's exercise of personal jurisdiction satisfies the due process requirements of the Fourteenth Amendment of the United States Constitution. n7

n5 *Newspan, Inc. v. Hearthstone Funding Corp., 1994 Del. Ch. LEXIS 52,* *10, Del. Ch., C.A. No. 13304, Allen, C. (May 10, 1994). The plaintiff bears the burden of showing by evidence that the fact finder could determine that the factual predicate for jurisdiction has been proven. *1994 Del. Ch. LEXIS 52, * 3 (citing Hart Holding Co. v. Drexel Burnham Lambert, Inc., Del. Ch., 593 A.2d 535, 539 (1991)).*

[*15]

n6 See *Outokumpu Eng. Entrs., Inc. v. Kvaerner Enviropower, Inc., Del. Super., 685 A.2d 724, 727 (1996).*

n7 *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd., Del. Supr., 611 A.2d 476, 480*

*(1992)*, cert. dismissed, *507 U.S. 1025, 113 S. Ct. 1836, 123 L. Ed. 2d 463 (1993)*.

The pertinent provisions of Delaware's Long Arm Statute, [HN2] *10 Del. C. § 3104(c)*, state:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > ***
> >
> > (3) Causes tortious injury in the State by an act or omission in this State;
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

[HN3] Subsections [*16] (c)(1) and (c)(3) authorize "transactional" or "specific" jurisdiction in cases where the cause of action arises out of the defendant's conduct in the State of Delaware. n8 Under those subsections a single act in Delaware will suffice. Subsection (c)(4), on the other hand, creates "general" jurisdiction in cases where the cause of action is unrelated to the relevant Delaware contacts. n9 General jurisdiction under subsection (c)(4) requires a greater, more continuous pattern of contacts with the forum than does "single act" jurisdiction under subsection (c)(1), (2), or (3). The "tradeoff" for this stricter requirement is that the activities which create that general presence need not be the basis for the plaintiff's cause of action.

n8 *Sears, Roebuck & Co. v. Sears PLC, D. Del., 744 F. Supp. 1289, 1292 (1990)*.

n9 Id.

[HN4]

In narrowly defined circumstances, personal jurisdiction may also be established under a common law "conspiracy theory." The conspiracy theory of jurisdiction is not, strictly speaking, [*17] an independent jurisdictional basis, but rather, is a shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a substantial effect in Delaware is attributed to a defendant who would not otherwise be amenable to jurisdiction in Delaware. n10

n10 *Newspan, 1994 Del. Ch. LEXIS 52, * 27* (citing *Hercules Inc. v. Leu Trust & Banking, Del. Supr., 611 A.2d 476, 482 n.6 (1992))*.

B. The Jurisdictional Motion

In opposition to the defendants Rule 12(b)(2) motion, Computer People has identified three categories of "Delaware contacts" that, it claims, support personal jurisdiction over the defendants. These contacts are: (i) Arello's continuing presence in Delaware as a Computer People employee from 1993 to 1996; (ii) two telephone calls and one e-mail made by Bayfield and Cuff to Stanley at his Delaware office; and (iii) the incorporation of Best USA in Delaware. These three sets of contacts, Computer People argues, are sufficient to establish personal jurisdiction (a) [*18] over Arello under *10 Del. C. § 3104(c)(1)*, (c)(3), (c)(4), and under the conspiracy theory; and (b) over Best PLC and Best Ltd. under *10 Del. C. § 3104(c)(1)* and the conspiracy theory. I disagree, and conclude that the plaintiff has failed to establish that this Court has personal jurisdiction over any of these defendants. n11

n11 That finding makes it unnecessary to reach the due process component of the jurisdictional analysis.

1. The Conspiracy Theory

Computer People first attempts to support jurisdiction over Best Ltd., Best PLC, and Arello on the basis

that Best USA was incorporated in Delaware and then was operated as part of a conspiracy among the non-Delaware defendants to interfere tortiously with Computer People's contractual and business relationships with employees, consultants, and customers. This alleged conspiracy forms the linchpin of Computer People's jurisdictional argument.

[HN5] Under the "conspiracy theory" of jurisdiction, a plaintiff may establish personal jurisdiction over a [*19] nonresident only if it satisfies five elements, namely, by showing that:

> (1) a conspiracy...existed; (2) the defendant was a member of the conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. n12

The test ultimately "turns on the imputation to the [alleged] conspirator of meaningful activity on behalf of the conspiracy which occurred and caused effects in Delaware." n13

> n12 *Istituto Bancario Italiano SpA v. Hunter Eng'g Co., Del. Supr., 449 A.2d 210, 225 (1982); Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., 1995 Del. Ch. LEXIS 140, * 38,* Del. Ch., C.A. No. 13950, Allen, C. (Nov. 21, 1995) (the "proper invocation of this basis of jurisdiction requires factual proof of each enumerated element."), appeal refused, *Del. Supr., 676 A.2d 908* (Jan. 22, 1996); *Newspan, 1994 Del. Ch. LEXIS 52, * 25-26* ("all [five elements] must be satisfied before a Delaware court may exercise personal jurisdiction").

[*20]

> n13 *HMG/Courtland Properties, Inc. v. Gray, 729 A.2d 300, 307,* Strine, V.C. (Jan. 13, 1999) (emphasis added).

[HN6]

The conspiracy theory of jurisdiction is narrowly and strictly construed; otherwise, that theory would become a facile way for a plaintiff to circumvent the minimum contacts requirement of International Shoe Co. v. Washington. n14 For that reason, where a conspiracy is alleged and the defendants submit factual evidence controverting personal jurisdiction as to them, the plaintiff may not rely upon conclusory allegations in his pleading that are unsupported by evidence. n15 Such allegations will not be sufficient to overcome a motion to dismiss for lack of personal jurisdiction.

> n14 *326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).*

> n15 See *Newspan, 1994 Del. Ch. LEXIS 52, * 28-29; Carlton Invs., 1995 Del. Ch. LEXIS 140, * 31; Naartex Consulting Corp. v. Watt, D.C. Cir., 232 U.S. App. D.C. 293, 722 F.2d 779, 787 (1983)* (Wald, J.) ("bald speculations that defendants are alleged co-conspirators do not constitute the threshold showing needed to carry the burden of establishing personal jurisdiction"), cert. denied, *467 U.S. 1210, 81 L. Ed. 2d 355, 104 S. Ct. 2399 (1984); Jarmuth v. Turetsky, D.D.C., 815 F. Supp. 4, 6 (1993)* (noting that the "'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction"); *Hasenfus v. Corporate Air Servs., D.D.C., 700 F. Supp. 58, 62 (1988)* (noting the insufficiency of an "argument...based solely on conclusory statements and allegations that the nonresident defendants were co-conspirators.").

[*21]

The Delaware contacts upon which Computer People relies to support its conspiracy theory of jurisdiction are (i) the two phone calls and one e-mail directed to Stanley at his Delaware office, and (ii) the incorporation of Best USA in Delaware. I find, for the reasons next discussed, that these contacts are insufficient to support personal jurisdiction in Delaware over Best PLC, Best Ltd., or Arello.

First, assuming there was a conspiracy, there is no evidence (or even a claim) that any meaningful, "substantial act or effect" in furtherance of that conspiracy took place in Delaware. n16 As discussed below, the aforementioned Delaware contacts are insufficient to sustain personal jurisdiction over any of the defendants, because those contacts are not a sufficiently significant basis to support jurisdiction under § 3104(c). For this reason also, these contacts are also not "substantial acts or effects" in furtherance of the conspiracy that would

support personal jurisdiction under the conspiracy theory.

n16 See *Instituto Bancario*, 449 A.2d at 225 (requiring for jurisdiction that a "substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state"); *Abajian v. Kennedy*, 1992 Del. Ch. LEXIS 6, * 35, Del. Ch., C.A. No. 11425, Allen, C. (Jan. 17, 1992) ("The conspiracy theory...requires that a substantial act or substantial effect [occur] in the forum state in furtherance of the alleged conspiracy.").

[*22]

Second, Computer People has furnished the Court with only conclusory and unsupported allegations that there was a conspiracy. n17 In the face of the contrary evidence offered by the defendants, the plaintiff has failed factually to support the conclusory allegation in its complaint that the defendants conspired to interfere tortiously with Computer People's contractual and business relationships. That is, there is no record evidence of any conspiracy among Arello, Best PLC, and Best Ltd. (through Bayfield and Cuff) to solicit Computer People employees. Accordingly, the plaintiff has failed to satisfy the first of Instituto Bancario's five elements.

n17 In fact, many of the critical allegations in their complaint are based solely "upon information and belief."

2. Arello's Delaware Contacts as a Computer People Employee

Despite the plaintiff's contrary argument, Arello's Delaware contacts as a Computer People employee between 1993 and 1996 are not sufficient to sustain general personal jurisdiction [*23] over him under *10 Del. C. § 3104(c)(4)*. That provision (to repeat) authorizes jurisdiction in cases where the defendant (or the defendant's agent) has a "general presence in the State," even if both the tortious act and the injury occur outside of Delaware. n18 The exercise of "general" jurisdiction under § 3104(c)(4) requires a higher level of activity within the forum state than does the exercise of "specific" jurisdiction under (c)(3). n19 Specifically, [HN7] subsection (c)(4) jurisdiction arises only "when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim." n20

n18 *Applied Biosystems, Inc. v. Cruachem Ltd., D. Del., 772 F. Supp. 1458, 1469 (1991)*.

n19 *United States v. Consolidated Rail Corp., D. Del., 674 F. Supp. 138, 145 (1987)*.

n20 *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Prods., Inc., 1991 Del. Ch. LEXIS 113, * 8*, Del. Ch., C.A. No. 12036, Allen, C. (July 10, 1991).

[*24]

Computer People argues that Arello's extensive Delaware contacts during the 1993 to 1996 period while he was employed with Computer People, were extensive and continuing. The difficulty, however, is that [HN8] to establish general jurisdiction under subsection (c)(4), the defendant must have current contacts with the forum state. n21 That Arello may have had substantial contacts with Delaware from 1993 to 1996 is not probative of whether this Court has general jurisdiction over him today, where (as here) (i) the cause of action does not arise out of those earlier contacts, and (ii) Arello's post-1996 Delaware contacts are too attenuated to support personal jurisdiction grounded upon his "general presence in this state." n22

n21 See § 3104(c)(4) (providing for jurisdiction when "person regularly *does* or *solicits* business, *engages* in any other persistent course of conduct in the State or *derives* substantial revenue from services, or things used or consumed in the State." (italics added)).

n22 Cf. *J. Royal Parker Assocs. Inc. v. Parco Brown & Root, Inc., 1984 Del. Ch. LEXIS 559, * 7*, Del. Ch., C.A. No. 7013, Berger, V.C. (Nov. 30, 1984) (finding that general jurisdiction was satisfied where defendant "regularly advertises in Delaware or carries on some other continuous course of activity in the state"); *Red Sail, 1991 Del. Ch. LEXIS 113, * 8* (holding that statutory provision will only apply where defendant "has had contacts with [Delaware] that are so extensive and continuing that it is fair and consistent with state policy to require the defendant [to appear and] defend a claim.").

[*25]

3. The Two Phone Calls and One E-mail to Stanley at his Delaware Office

Computer People next argues that the two telephone calls and one e-mail directed to Stanley at his Delaware office suffice to support personal jurisdiction over Best PLC, Best Ltd., and Arello under § 3104(c)(1). Again, I cannot agree.

[HN9] Section 3104(c)(1) authorizes a court, in its discretion, to exercise jurisdiction over a non-resident defendant who "transacts any business or performs any character of work or service in" Delaware and whose cause of action arises from that transaction or work. Under that subsection, an act or acts must have occurred in Delaware, and the plaintiff's causes of action must arise from that act or acts. n23 To "transact business" in Delaware, a party must purposefully avail itself of the privileges and benefits of Delaware law. n24

> n23 *Applied Biosystems, 772 F. Supp. at 1466.*

> n24 *Consolidated Rail Corp., 674 F. Supp. at 142; Regency Housing & Drilling L.P.I. v. Cohen, 1991 Del. Super. LEXIS 341, Del. Super., C.A. No. 89 C-DE-70, 1991 WL 190311, at * 4, Gebelein, J. (Sept. 11, 1991).*

[*26]

As to Best PLC and Best Ltd., Computer People's argument fails because [HN10] as a general matter telephone calls and an e-mail do not, in and of themselves, automatically constitute "transacting business" within Delaware sufficient to invoke jurisdiction under § 3104(c)(1). n25 Even when the argument is considered in this specific factual context it does not work, because the two telephone calls and one e-mail cannot be a basis for the plaintiff's causes of action for tortious interference. The company does not claim these Delaware contacts induced Stanley to leave Computer People to work for Best USA; indeed, plaintiff concedes that Stanley remained a Computer People employee. Nor are these "contacts" relevant as evidence of a conspiracy because, for the reasons earlier discussed, the plaintiff's conspiracy theory is legally deficient.

> n25 See *Fischer v. Hilton, D. Del., 549 F. Supp. 389, 390 (1982)* (finding that mere "phone calls do not constitute a transacting of business within the State of Delaware for purposes of subsection (c)(1)."); *Koster v. Automark Indus., Inc., 7th Cir., 640 F.2d 77, 79 (1981)* (discussing minimum contacts, court found that telephone calls, in and of themselves, could not confer personal jurisdiction).

[*27]

Computer People next claims that Arello is subject to personal jurisdiction under § 3104(a)(1) because Bayfield and Cuff's solicitation of Stanley on behalf of Best USA may be attributed to Arello as the president and CEO of Best USA. Stated differently, Computer People argues that Bayfield and Cuff were Arello's agents, and that therefore Bayfield's two telephone calls to Stanley and the e-mail to Stanley's Delaware office should be attributed to Arello.

This argument also lacks merit. [HN11] Under the agency theory of personal jurisdiction, only acts of the agent that are directed by the principal may serve as a basis to assert jurisdiction over the principal. n26 The complaint here does not allege, nor does the factual record show, that Arello directed anyone -- Bayfield included -- to contact Stanley in Delaware to induce him to join Best USA. Therefore, Bayfield and Cuffs Delaware contacts with Stanley may not be imputed to Arello to establish personal jurisdiction over him under § 3104(c)(1). n27

> n26 *Applied Biosystems, 772 F. Supp. at 1465-66.*

> n27 the plaintiff in its complaint invokes jurisdiction under *10 Del. C. § 3104(c)(3)*, they do not make any argument based upon subsection (c)(3) in their brief. Accordingly, that argument is deemed to have been abandoned.

[*28]

4. The Incorporation of Best USA in Delaware

Finally, the plaintiff asserts that the act of incorporating Best USA in Delaware is enough, in and of itself, to establish jurisdiction over Best PLC and Best Ltd. The plaintiff relies on a line of cases that raise the issue presented here: whether the creation, ownership, and operation of a Delaware subsidiary (Best USA) is sufficient to invoke personal jurisdiction over the foreign parent (Best PLC). n28

> n28 *Shaffer v. Heitner, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977); Sternberg v. O'Neil, Del. Supr., 550 A.2d 1105 (1988); Papendick v. Robert Bosch GmbH, Del. Supr., 410 A.2d 148 (1979).*

1999 Del. Ch. LEXIS 96, *

In Shaffer v. Heitner ("Shaffer"), n29 the United States Supreme Court held that the mere ownership of stock in a Delaware corporation is not a sufficient "minimum contact" with Delaware to permit a Delaware court to exercise personal jurisdiction over a nonresident defendant consistent with due process. Thereafter, in Papendick v. Robert Bosch GmbH ("Papendick"), n30 the Delaware [*29] Supreme Court confronted the issue of whether the "mere ownership" principle of Shaffer precluded a Delaware court from exercising jurisdiction over a foreign corporation in a case where the cause of action was related to and arose out of the foreign parent's creation and operation of a Delaware subsidiary. Later, in a somewhat different context, the Delaware Supreme Court revisited the Shaffer issue in Steinberg v. O'Neil ("Steinberg"). n31

n29 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

n30 Del. Supr., 410 A.2d 148 (1979).

n31 Del. Supr., 550 A.2d 1105 (1988).

In Papendick, a German corporation (Bosch) formed a Delaware subsidiary (RBNA) to serve as a vehicle to acquire the stock of another company. The plaintiff filed a breach of contract action in Delaware. The action arose out of that stock acquisition transaction. Bosch argued that because its sole Delaware contact was its "mere" ownership of RBNA stock, under Shaffer that was an insufficient basis to establish personal jurisdiction. The [*30] Delaware Supreme Court disagreed. It held that Delaware could exercise jurisdiction over Bosch because the formation of RBNA was an integral part of the scheme of wrongdoing challenged in the complaint, and because in forming RBNA, Bosch had purposefully utilized the benefits and protections of Delaware law in connection with the challenged stock acquisition transaction. n32

n32 Papendick, 410 A.2d at 152.

Papendick stands for the proposition that [HN12] while the stock ownership of a Delaware subsidiary is not, without more, a sufficient contact upon which to predicate jurisdiction, that contact may be sufficient where the cause of action arises from the creation and operation of the Delaware subsidiary. In this case, Computer People alleges that the defendants incorporated Best USA in Delaware in furtherance of a conspiracy to cause key Computer People employees to desert the company. Accordingly, the plaintiff contends, the creation and operation of Best USA supports personal jurisdiction over Best USA [*31] for the same reason that the formation of RBNA supported jurisdiction over Bosch in Papendick.

I have already determined that the plaintiff's conspiracy theory argument fails, not as a matter of theory but as a matter of evidence. As earlier discussed, the plaintiff has not satisfied the conspiracy theory requirements for establishing jurisdiction, because there is no record evidence (save, perhaps, for Computer People's suppositions based on "information and belief") to support that conspiracy theory. Having rejected the conspiracy theory, the Court will not now reverse itself and permit plaintiff to use that theory to prop up its Papendick/Sternberg argument. The plaintiff has failed to show, in a procedurally proper way, that Best USA was created to further a conspiracy to steal Computer People's employees.

Also misplaced is the plaintiff's reliance on Steinberg. There, a plaintiff brought a double derivative action against an Ohio corporation (GenCorp) and its wholly-owned Delaware subsidiary (RKO). Although no claim was alleged directly against the parent, GenCorp, the parent was named as a defendant because "in double derivative actions, both parent and subsidiary corporations [*32] are indispensable parties." n33 In upholding personal jurisdiction over GenCorp, the Supreme Court articulated two separate grounds for its decision. The first was that GenCorp had consented to general jurisdiction in the Delaware courts, because it had registered as a foreign corporation and had appointed a Delaware agent for service of process. n34 Second (and even though the Court could have ended its analysis at that point), it proceeded to uphold personal jurisdiction over GenCorp on the ground that its ownership of RKO was a sufficient minimum contact, since the basis for the double derivative action was GenCorp's operation of RKO. n35

n33 Steinberg, 550 A.2d at 1124.

n34 550 A.2d at 1115-16. The same is not true of the defendants in the instant case.

n35 550 A.2d at 1116-26. Specifically, the Court held that "a foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play." Id. at 1121.

[*33]

Commentators have interpreted Steinberg in two quite different ways. One interpretation views Steinberg as recognizing a narrow "double derivative suit exception" to the Shaffer rule. The other interpretation reads Steinberg more broadly, as expanding Shaffer to validate personal jurisdiction in Delaware over a majority stockholder of a Delaware subsidiary, in any suit "relating to the operation of the subsidiary." n36 In this case, the Court need not decide which interpretation is correct, because under either view the plaintiff's argument falls short.

n36 See Donald J. Wolfe, Jr. and Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery (1998), at § 3-5(c)(3); William A. Voxman, Jurisdiction Over a Parent Corporation in its Subsidiary's State of Incorporation, *141 U. Pa. L. Rev. 327, 363-66 (1992);* see also *Outokumpu, supra* note 6, at 728 (rejecting the broad interpretation of Steinberg by stating that the decision "cannot mean that Delaware courts may always exercise personal jurisdiction over the foreign parent of a Delaware subsidiary or any cause of action arising out of the operation or acts of that subsidiary, regardless of where the operative facts transpired or the parent's contacts with Delaware. Otherwise, mere ownership of a Delaware subsidiary would in practice subject a foreign parent to our jurisdiction, a result inconsistent with due process.").

[*34]

Under the narrow ("double derivative suit exception") reading of Steinberg, the plaintiff's argument fails because the plaintiff here has not brought a double derivative action. Under the broad interpretation, the argument falters because Computer People has failed to show in a factually sufficient way that its causes of action arise out of Best PLC's operation, control, or ownership of Best USA. Although the complaint alleges conclusorily that all four defendants were involved in incorporating Best USA for wrongful purposes, all that the undisputed evidence shows is that Best USA "was established as a subsidiary of [Best PLC]...in Delaware exclusively for reasons of administrative convenience and corporate tax considerations." n37 That, without more, does not support this conclusory allegation for purposes of sustaining jurisdiction over Best USA's foreign corporate parent, Best PLC. That evidence is also insufficient to establish personal jurisdiction over Best Ltd., a separate subsidiary of Best PLC (and sister corporation of Best USA), which is not alleged to have played any role in incorporating Best USA in Delaware.

n37 Bayfield Aff. at 8.

[*35]

***

For the foregoing reasons, the Court determines that it lacks personal jurisdiction over defendants Arello, Best PLC, and Best Ltd., and grants their motion to dismiss under Rule 12(b)(2). Because Best USA will remain in the case as the sole defendant, I deny the defendants' 12(b)(6) motion with leave to renew based on briefs that take into account the Court's jurisdictional ruling. IT IS SO ORDERED.

*E X H I B I T   "C"*

LEXSEE



Analysis
As of: Jan 09, 2007

eSPEED, INC.; CANTOR FITZGERALD, L.P.; CFPH, L.L.C., and eSPEED
GOVERNMENT SECURITIES, INC., Plaintiffs, v. BROKERTEC USA, L.L.C.;
BROKERTEC GLOBAL, L.L.C.; GARBAN, LLC; ICAP PLC; OM AB; and OM
TECHNOLOGY (U.S.), INC., Defendants.

Civil Action No. 03-612-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 19760

September 13, 2004, Decided

**PRIOR HISTORY:** eSpeed, Inc. v. BrokerTec USA, L.L.C., 2004 U.S. Dist. LEXIS 20589 (D. Del., Sept. 9, 2004)

**DISPOSITION:** [*1] Motion of defendant ICAP Plc to dismiss for lack of personal jurisdiction granted. Plaintiffs' contingent cross motion to compel discovery denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant, a corporation organized and existing under the laws of the United Kingdom with a principal place of business in New Jersey, moved to dismiss for lack of personal jurisdiction a patent infringement case brought against it and six other corporate defendants by plaintiffs, all corporate entities with principal places of business in New York. Plaintiffs moved to compel discovery.

**OVERVIEW:** Plaintiffs claimed that defendant was subject to specific jurisdiction, under Del. Code Ann. tit. 10, § 3104(c)(1), based on its website activities and its subsidiaries' actions in Delaware, and to general jurisdiction under § 3104(c)(4), based on its continuous and systematic filings in Delaware relating to the formation, operation, and cancellation of its subsidiaries. The court was unpersuaded that it was appropriate to exercise specific jurisdiction over defendant on the basis of its website activity alone. Plaintiffs had not shown that defendant purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites. The court was also unpersuaded that the actions of its subsidiaries could be attributed to defendant for the purpose of establishing specific jurisdiction. Filing amended certificates for certain subsidiaries did not constitute continuous or systematic contacts with Delaware. Finally, the exercise of jurisdiction over defendant, pursuant to Fed. R. Civ. P. 4(k)(2), was not proper when defendant admitted that it was subject to jurisdiction in New Jersey.

**OUTCOME:** The court granted defendant's motion to dismiss; the court denied plaintiffs' contingent cross-motion to compel discovery as unwarranted.

**CORE TERMS:** website, subsidiaries, jurisdictional, discovery, forum state, long-arm, general jurisdiction, continuous, systematic, residents, certificates, exercise of personal jurisdiction, particularity, conducting, electronic, customers, exercise personal jurisdiction, federal law, unpersuaded, attributed, summons, pertaining, personal jurisdiction, exercise jurisdiction, patent infringement, burden of proving, course of conduct, conduct business, come forward, interactivity

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

[HN1] Pursuant to Fed. R. Civ. P. 12(b)(2), a court may dismiss a suit for lack of jurisdiction over the person. According to the U.S. Supreme Court, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant. This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*

[HN2] Fed. R. Civ. P. 4(e)(1) states that service of a summons may be effected pursuant to the law of the state in which the district court is located.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

[HN3] The Delaware long-arm statute, Del. Code Ann. tit. 10, § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. Nevertheless, a court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN4] According to the U.S. Court of Appeals for the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, rather

than that of the regional circuit in which the case arose, is applicable. The Federal Circuit has instructed that, in interpreting the meaning of state long-arm statutes, courts defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process. The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

[HN5] Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Insurance Law > Property Insurance > Coverage > Real Property > General Overview*

[HN6] The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in the State; (4) causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) has an interest in, uses or possesses real property in the State; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. Del. Code Ann. tit. 10, § 3104(c). The provisions have been construed liberally so as to provide jurisdiction to the maximum extent possible in order to

provide residents a means of redress against those not subject to personal service within the State.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Internet Business > General Overview*
[HN7] Where a nonresident defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website, it is proper to exercise specific jurisdiction over a defendant. Specific jurisdiction exists if the defendant purposefully availed itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.

*Civil Procedure > Jurisdiction > General Overview*
*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Internet Business > General Overview*
[HN8] It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN9] Under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent for jurisdictional purposes.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN10] The alter ego theory is applicable only when the party asserting jurisdiction has established some fraud, injustice, or inequity in the use of the corporate form.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional Sources*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN11] Personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN12] A defendant who wants to preclude use of Fed. R. Civ. P. 4(k)(2) has only to name some other state in which the suit could proceed.

**COUNSEL:** Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, counsel for plaintiffs.

Of counsel: Gary A. Rosen, Esquire, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania; David J. Wolfsohn, Esquire, Alan C. Promer, Esquire, and Michele D. Hangley, Esquire, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania.

Richard L. Horwitz, Esquire and David E. Moore, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, counsel for defendants.

Of counsel: James W. Dabney, Esquire, Peter L. Simmons, Esquire, and Henry C. Lebowitz, Esquire, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

    **MEMORANDUM OPINION**

Wilmington, Delaware

**JORDAN, District Judge**

I. INTRODUCTION

    This is a patent infringement case. Jurisdiction is proper under 28 U.S.C. § 1338. The plaintiffs filed their Complaint on June 30, 2004, naming [*2] BrokerTec

USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1.) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

## II. BACKGROUND

### A. The Parties

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, PP 2-4; see also D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (Id., PP 5-7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (Id., P 8.)

### B. Factual Background

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in [*3] jurisdictional discovery. (See D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal jurisdiction over ICAP in this District, see Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d 434, 437 (3d Cir. 1987), the following is taken largely from the plaintiffs' recitation of the facts (see D.I. 271 at 3-10), unless noted otherwise.

The plaintiffs allege that all of the defendants are willfully and intentionally infringing U.S. Patent No. 6,560,580 B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (See D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) n1 ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (Id.) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (Id.) ICAP characterizes itself as a "holding [*4] company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

n1 In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3-4.) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (Id. at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. n2 (Id. at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board"). (Id.) The Board approves the ICAP Group's budget and makes [*5] regular internal audit visits to the Group's operating companies in the United States. (Id. at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (Id. at 9.)

n2 BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC, and Wrightson ICAP LLC. (Id. at 8 (citing D.I. 275, Ex. 30).)

ICAP, together with its BrokerTec n3 and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec.com. (Id. at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms n4 from anywhere in the world. (Id.)

n3 ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (Id. at 7.)

[*6]

n4 BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

## III. STANDARD OF REVIEW

[HN1] Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

[HN2] Rule 4(e)(1) of the Federal Rules of Civil Procedure [*7] states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." [HN3] The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. n5 La Nuova D&B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986). I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998); see generally, Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

n5 [HN4] According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995). The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process."

Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998). The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[*8]

As noted previously, [HN5] once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. n6 Provident Nat'l Bank, 819 F.2d at 437; see also Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 422 (D. Del. 2001) (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 (D. Del. Aug. 3, 1999). General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. Id.

N6 In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (see supra at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I. 272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests. The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully infra at n.7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I. 272) will be denied.

[*9]

[HN6] The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents [*10] a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997).

IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long-arm statute. (D.I. 162 at 4-5.) The plaintiffs say that ICAP is subject to specific jurisdiction, under 10 Del. C. § 3104(c)(1), on the basis of its website activities and its subsidiaries' actions in Delaware. (D.I. 271 at 11-16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under 10 Del. C. § 3104(c)(4) because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n.2). (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its website activity alone. [HN7] "Where the defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website," it is proper to exercise [*11] specific jurisdiction over a defendant. *See Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452-54 (3d Cir. 2003) (specific jurisdiction exists if "the defendant 'pur-

posefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."). In this case, the plaintiffs have come forward with evidence showing that ICAP's websites are accessible to computer users anywhere in the world. Mere accessibility of a website, though, is not a matter of much moment. [HN8] It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences. *Toys 'R' Us*, 318 F.3d at 452 (exercise of personal jurisdiction proper where commercial website's interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's websites, downloaded the [*12] BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. n7 (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its website, they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's websites. Therefore, the plaintiffs have failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites, *see Toys 'R' Us*, 318 F.3d at 453, and I decline to exercise personal jurisdiction over ICAP on the basis of its website alone.

n7 For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.*, while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I. 273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n.6, the plaintiffs' request to compel further discovery pertaining to Webtrends will be denied.

[*13]

I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, [HN9] "under the agency theory only precise conduct known to

be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4-5 (citing *C.R. Bard v. Guidant Corp.*, 997 F. Supp. 556, 558-59 (D. Del. 1998)).) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. n8 Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

n8 To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, [HN10] that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 425 (D. Del. 2001) (quoting *C.R. Bard*, 997 F. Supp. at 559). The plaintiffs have not come forward with any evidence to establish those things in this case.

[*14]

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp.*, 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 at *2. The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7-8.)

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members [*15] of the Board occasionally travel to the United States on business; however, there is no evidence that

they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to *Federal Rule of Civil Procedure 4(k)(2)*, on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) [HN11] Personal jurisdiction pursuant to *Rule 4(k)(2)* may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction [*16] over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000).

In this case, the plaintiffs' patent infringement claims arise under federal law. However, ICAP asserts that it would properly be subject to jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under *Rule 4(k)(2)*. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ( [HN12] "A defendant who wants to preclude use of *Rule 4(k)(2)* has only to name some other state in which the suit could proceed.")

V. CONCLUSION

For these reasons, ICAP's Motion (D.I. 161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) will be denied. An appropriate order will follow.

**ORDER**

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 161) is GRANTED and [*17] the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

September 13, 2004
Wilmington, Delaware

*E X H I B I T  "D"*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-132 (JJF) |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : | |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : | |
| SERVICES CORP. and SIEMENS AG, | : | |
| | : | |
| | : | |
| Defendants. | : | |

### DECLARATION OF KENNETH R. MEYERS, ESQUIRE

1.      My name is Kenneth R. Meyers. I am the Vice President – Mergers & Acquisitions of Siemens Corporation in New York, New York and have served in this position for the past year. From May 2000 until December 31, 2005, I served as Associate General Counsel of Siemens Corporation. Prior to holding that position, for more than seven years I served as Counsel and Assistant Secretary of Siemens Corporation. I previously submitted a Declaration in this matter on November 16, 2006. I provide this declaration on the basis of my personal knowledge, investigation and belief.

2.      I have reviewed the chart attached as Exhibit B to Plaintiff's Supplemental Brief in Opposition to Defendant Siemens AG's Motion to Dismiss ("Chart").

3.      I have also reviewed information available to me at Siemens Corporation in connection with subsidiaries, direct or indirect, of Siemens AG.

4.      From this review I can confirm that none of the twenty-nine entities listed on the Chart are directly owned by Siemens AG.

5.      I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge, information and belief.

_Kenneth R. Meyers_
Kenneth R. Meyers, Esquire
Vice President – Mergers & Acquisitions, Siemens
Corporation

Dated: January _5_, 2007
New York, NY

*E X H I B I T   "E"*

LEXSEE



Analysis
As of: Jan 09, 2007

## MONSANTO COMPANY, et al., Plaintiffs, v. SYNGENTA SEEDS, INC., et al., Defendants.

### Civ. No. 04-305-SLR

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

### *2006 U.S. Dist. LEXIS 54534*

### August 4, 2006, Decided

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by *Monsanto Co. v. Syngenta Seeds, Inc., 2006 U.S. Dist. LEXIS 84963 (D. Del., Nov. 8, 2006)*

**PRIOR HISTORY:** *Monsanto Co. v. Syngenta Seeds, Inc., 2006 U.S. Dist. LEXIS 54515 (D. Del., Aug. 4, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Alleging that defendants, Swiss holding companies and U.S. subsidiaries, misappropriated their corn product, plaintiff seed companies asserted claims for reverse passing off under the Lanham Act, false advertising under the Lanham Act, violations of the Delaware Deceptive Trade Practices Act, and tortious interference with a contract. The holding companies filed a *Fed. R. Civ. P. 12(b)(2)* motion to dismiss for lack of personal jurisdiction.

**OVERVIEW:** The conduct of the Swiss holding companies did not satisfy the jurisdictional requirements of Delaware's long arm statute, *Del. Code Ann. tit. 10, § 3104(c)*, because the holding companies did not conduct business in Delaware and the holing companies' attendance at a meeting at which general marketing strategies were discussed did not give rise to the seed companies' claims. The court held that the acts of the U.S. subsidiaries did not confer personal jurisdiction over the holding companies because the U.S. subsidiaries were not general agents of the holding companies. No agency relationship was demonstrated because the U.S. subsidiaries made their own decisions about how to

design, manufacture, and market corn. Jurisdiction could not be obtained under § 3104(c)(1) or (2) because the holding companies did not direct or control sales or marketing in Delaware. Jurisdiction could not be obtained under § 3104(c)(3) because the tortious interference claim was based on a contract that had no relationship to Delaware. General jurisdiction was not authorized under § 3104(c)(4) because the holding companies had not engaged in a pattern of corporate dealings under Delaware law.

**OUTCOME:** The court granted the holding companies' motion to dismiss.

### LexisNexis(R) Headnotes

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN1] When reviewing a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(2)*, a court must accept as true all allegations of jurisdictional fact made by a plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction.

2006 U.S. Dist. LEXIS 54534, *

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
[HN2] To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. With regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. In cases involving foreign parties, great care and reserve should be exercised when extending the United States' notions of personal jurisdiction into the international field.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN3] The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent (1) transacts any business or performs any character of work or service in the state; (2) contracts to supply service or things in the state; (3) causes tortious injury in the state by an act or omission in the state; (4) causes tortious injury in the state or outside of the state by an act or omission outside the state if the person regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from services, or things used or consumed in the state; (5) has an interest in, uses or possesses real property in the state; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing. *Del. Code Ann. tit. 10, § 3104(c).* Pursuant to *Del. Code Ann. tit. 10, § 3104(c)(1)*-(3) and (5)-(6), specific jurisdiction may be established if the cause of action arises from contacts with the forum. *Del. Code Ann. tit. 10, § 3104(c)(4)* provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts.

*Business & Corporate Law > Agency Relationships > Establishment > General Overview*
*Business & Corporate Law > Corporations > Formation > Corporate Existence, Powers & Purpose > Powers > Distinct & Separate Principle*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

[HN4] The agency theory examines the degree of control which a parent exercises over a subsidiary. The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant. If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

*Business & Corporate Law > Corporations > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN5] The mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Placement of Product in Commerce*
[HN6] The mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN7] The filing of a lawsuit may be relevant to establishing jurisdiction when the claim at issue is sham litigation.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Torts > Procedure > Commencement & Prosecution > Personal Jurisdiction*
[HN8] *Del. Code Ann. tit. 10, § 3104(c)(4)* provides for general jurisdiction in tort cases.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*

[HN9] When a foreign defendant does not have sufficient minimum contacts with any single forum to comport with due process, *Fed. R. Civ. P. 4(k)(2)* allows an alternate jurisdictional basis to pursue a claim arising under federal law, where the defendant has sufficient nationwide contacts. If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service of process is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state. Fed. R. Civ. P. (4)(k)(2). The court must first determine that (1) the case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction; and (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction there. The court can then ascertain whether the plaintiff has demonstrated that the defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

[HN10] *Fed. R. Civ. P. 4(k)(2)* provides a narrow exception which may subject an alien defendant to a federal court's personal jurisdiction. To satisfy this requirement, plaintiffs are required to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court.

**COUNSEL:** [*1] For Monsanto Company, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John H. Bogart, John J. Rosenthal, Sean P. Beaty, Pro Hac Vice.

For Monsanto Technology LLC, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John J. Rosenthal, Pro Hac Vice.

For DeKalb Genetics Corp, Plaintiff: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.;

Seth Jason Reidenberg, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE.

For Garst Seed Company, Golden Harvest Seeds, Inc., Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Counter Claimants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Monsanto Company, Monsanto Technology LLC, Counter Defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Garwood Seed Co., Golden Seed Company, LLC, [*2] Sommer Bros. Seed Company, Thorp Seed Co., JC Robinson Seeds, Inc., Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Advanta USA Inc, Syngenta Corporation, Syngenta Participations AG, Counter Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Garst Seed Company, Syngenta AG, Golden Harvest Seeds, Inc., Syngenta Corporation, Counter Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Sue L. Robinson, Chief Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: August 4, 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust action against Monsanto Company and Monsanto Technology LLC (collectively called "Monsanto"), alleging that Monsanto has monopolized the markets for glyphosate-tolerant corn ("GA21 corn") traits and European corn borer-tolerant corn traits and has attempted to monopolize the foundation corn seed market. Monsanto filed an amended answer with counterclaims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, [*3] Inc., Syngenta Biotechnology, Inc., Advanta

USA, Inc., Garst Seed Co., and Golden Harvest Seed Inc. n1 In its counterclaims, Monsanto alleges that counterclaim defendants misappropriated Monsanto's GA21 event and are improperly selling Monsanto's event as their own. The counterclaims include: (1) Reverse passing off under the Lanham Act; (2) False advertising under the Lanham Act; (3) Violations of the Delaware Deceptive Trade Practices Act; and (4) Tortious interference with a contract. (D.I. 77)

n1 Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co., and Golden Harvest Seeds, Inc., together with Syngenta Seeds, Inc., are collectively referred to as the "Syngenta U.S. Companies".

Before the court is a motion to dismiss by Syngenta AG and Syngenta Participations AG ("Participations") for lack of personal jurisdiction. n2 (D.I. 169)

n2 If the motion is denied, Syngenta AG and Participations also move for dismissal for failure to state a claim upon which relief can be granted, adopting the arguments advanced by the Syngenta U.S. Companies in their motion. (D.I. 132)

[*4]

## II. BACKGROUND

### A. The Business of Syngenta AG and Participations

Syngenta AG is a holding company located in Basel, Switzerland, formed in 1999 under the laws of Switzerland. (D.I. 171 at P 3) Syngenta AG became a public company in November 2000. (Id.) Syngenta AG has no employees and its business consists primarily of owning shares in companies in the agriculture, seeds and chemicals businesses. (Id.)

Syngenta AG owns Syngenta Corporation, the parent company to all of the other Syngenta U.S. Companies engaged in the distribution, marketing and sale of genetically modified corn seeds. (D.I. 185 at P 5)

Participations is a Swiss company, located in Basel, Switzerland, which is a wholly owned subsidiary of Syngenta AG. (D.I. 171 at P 4) Like Syngenta AG, Participations is a holding company with no employees. (Id.) Participations owns interests in companies located outside of Switzerland that are in the agriculture, seeds

and chemicals businesses. (Id.) Participations also owns intellectual property rights, which it licenses principally to affiliated companies. (Id.)

### B. Business of the Syngenta U.S. Companies

Syngenta Corporation is a Delaware [*5] corporation with its principal place of business in Wilmington, Delaware. (D.I. 172 at P 3) It is a holding company that owns, either directly or indirectly, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and Garst Seed Company. n3 (Id.) Syngenta Corporation is a wholly-owned subsidiary of Participations and it is only one of more than 100 subsidiaries worldwide ultimately owned by Syngenta AG. (D.I. 171 at P 18)

n3 The other Syngenta U.S. Companies are majority owned, directly or indirectly, by GH Holding, Inc., a wholly-owned subsidiary of Participations. (D.I. 172 at P 18)

Syngenta Seeds, Inc. was formed under the laws of Delaware and is headquartered in Golden Valley, Minnesota. (D.I. 172 at P 5) It is engaged, among other things, in the production, marketing and sale of commercial seeds, including hybrid corn seeds. (Id.)

### C. Contacts With Delaware

Syngenta AG's Executive Committee is based at corporate headquarters in Basel, Switzerland. (D.I. 185 at ex. 8) The Executive Committee is [*6] "responsible for the operational management of the Company." (Id.) The Executive Committee consists of a Chief Executive Officer ("CEO"), the Chief Operating Officers ("COO") of the Crop Protection and Seed business, and the heads of Syngenta AG's global functions. (Id.) Individual members of the Executive Committee include: (1) Michael Mack, who is based in Basel and is Chairman and President of Syngenta Corporation in Delaware and the COO of Syngenta Seeds in Minnesota; (2) Jeff Beard, who is the COO of Syngenta Seeds; (3) John Atkin, who is the COO of Syngenta Corporation in Delaware and the COO of Syngenta Crop Protection in North Carolina; (4) David Lawrence, who is the head of Research and Technology for Syngenta AG and sits on the board of directors of Syngenta Biotechnology, Inc.; (5) Richard Steiblin, a former member of the Executive Committee, who also served as a board member of Syngenta Corporation in Delaware. (Id. at exs. 8, 9, 11, 12, 14, 15)

Each of the Syngenta U.S. Companies has its own board of directors, which is separate from the boards of Syngenta AG and Participations, as well as from the Syngenta AG Executive Committee. (D.I. 171 at P 21;

D.I. 172 [*7] at P 12) There are no overlapping members on the boards of Syngenta AG and the Syngenta U.S. Companies. (D.I. 171 at P 21) A few of the Participations directors and some Executive Committee members serve on the boards of certain of the Syngenta U.S. Companies. (D.I. 171 at ex. B) The board of directors of Syngenta AG has its own meetings, at times and locations separate and apart from the meetings of any Syngenta U.S. Companies' boards and the board of directors of Participations generally acts by written consent. (D.I. 171 at P 12, 21)

Syngenta AG and Participations are not authorized to, and do not, direct the day-to-day operations of the Syngenta U.S. Companies. (D.I. 171 at P 19) The Syngenta U.S. Companies are managed by their own officers and employees, who have responsibility for the day-to-day operation of the business. (D.I. 172 at P 10) For example, Syngenta Seeds, Inc. and its United States affiliates in the seeds business develop and implement the United States sales and marketing strategy for GA21 corn seed. (Id.) These companies make the day-to-day decisions on what, where, when, and how to sell GA21 corn seed. (Id.) They hire and fire their own sales forces, [*8] adopt their own branding strategies, set their own prices, run their own promotions, and decide on their own which customers to target. (Id.)

The Syngenta U.S. Companies maintain office, production, research, sales and distribution facilities in the United States, separate from the operations of Syngenta AG and Participations, neither of which has any facilities in the United States. (D.I. 171 at P 22; D.I. 172 at P 11) Syngenta Corporation and its subsidiaries also maintain their own books and records and prepare their own financial statements. (D.I. 171 at P 24; D.I. 172 at P 13) Syngenta Corporation files its own United States tax returns. (D.I. 172 at P 13) In accordance with Swiss law and international accounting standards, Syngenta AG does prepare a consolidated financial statement for it and its subsidiaries, which includes the results of Syngenta Corporation and its subsidiaries. (D.I. 171 at P 24) However, Syngenta Corporation and its U.S. affiliates are responsible for preparing their own financial statements, which are then consolidated with Syngenta AG's results. (D.I. 171 at P 24; D.I. 172 at P 13)

**D. Syngenta AG and Participations' Strategy to Misappropriate [*9] GA21 for Sale in the United States**

A four day meeting was held in Washington, D.C. to orchestrate a "strategy for bringing Syngenta branded GA21 to the [U.S.] market." (D.I. 185 at ex. 1) The meeting was attended by Adrian Dubock, the head of mergers and Acquisitions for Participations in Basel; Marian Flattery, the head of Global IP and Licensing for

Participations in Basel; Ed Resler, Vice President and General Counsel, Plant Science, of Syngenta Seeds, Inc. in Minnesota; Jeff Stein, Regulatory Director at Syngenta Biotechnology, Inc. in North Carolina; and Erik Dunder, Regulatory Manager for GA21 for Syngenta Biotechnology, Inc. (D.I. 185 at ex. 1)

To implement its strategy, Syngenta AG assembled a unit called the Corn Business Team. (D.I. 185, ex. 16 at 17) Until 2004, the Corn Business Team was formally a part of Syngenta AG and reported directly to Syngenta AG's Business Development Leadership and Technical Review Committees. (D.I. 185, ex. 16 at 152) The Corn Business Team was comprised of employees from Syngenta AG, Syngenta International AG, Syngenta Seeds, Syngenta Crop Protection, Syngenta Biotechnology, and Syngenta Corporation. n4 (D.I. 185, ex. 32 at 3, 5.1) The [*10] Corn Business Team required Syngenta AG's approval for important business decisions, such as deciding on a logo for the Agrisure trademark. (D.I. 185, ex. 37 at 3)

n4 One member, Bill Dickheiser, was located in Delaware. (D.I. 185 at ex. 32)

**E. Syngenta AG's Control Over Business Decisions n5**

**1. Delaware meeting**

A meeting took place in May of 2002 in Wilmington, Delaware. (D.I. 310, ex. A at 1) David Jessen did not attend the meeting, but testified regarding a Power Point presentation given at the meeting. (D.I. 310, ex. A at 1) In attendance and participating in the meeting were members of Syngenta AG's management and various employees of the Syngenta U.S. Companies. (D.I. 310, ex. A at 1) The goal of the meeting was to "gain a better understanding of the competitive threat we face from [the Monsanto product]." (Id.) The presentation sets forth other specific goals of the meeting, including: (1) Review a number of short-term actions that Syngenta n6 can take to reduce the penetration of Monsanto's [*11] product; (2) Consider the long term strategic options available to Syngenta to redefine its competitive position in the marketplace; and (3) Discuss obstacles to impact, how to overcome these obstacles, and next steps. (D.I. 310, ex. A at 2) The "Five Pillars" of the meeting were discussed: (1) "Create doubt about claims - Syngenta disputing Monsanto's claims about the performance and safety of its Roundup Ready trait;" (2) "Offer compelling alternatives -Syngenta offering its conventional seed along with its selective herbicide rather than Monsanto's Roundup Ready trait along with Roundup;" (3) "Drive up switching costs -

Syngenta offering its customers financial incentives not to switch to Roundup Ready;" (4) "Non-market activities - Syngenta initiating legal action to impede Roundup Ready's growth;" and (5) "Redefine the playing field - Syngenta would counter Monsanto's and Pioneer's strategy of marketing their products as a complete package." (D.I. 407, ex. 1 at 10) A Steering Committee was set up to "provide overall direction" and "make decisions" regarding the project. (D.I. 310, ex. A at 2) A number of Syngenta AG employees attending the Delaware meeting are on the Steering [*12] Committee. (D.I. 310, ex. A at 2)

n5 The court denies Monsanto's request for jurisdictional discovery due to its two supplemental record submissions and the extensive discovery already performed. However, the court will consider the supplemental record produced and, therefore, grants Monsanto's two motions to supplement the record. (D.I. 310, 407)

n6 The record is unclear as to whether the presentation was directed to Syngenta AG or the Syngenta U.S. Companies. The facts were derived from a business presentation and there is no clarification from Monsanto regarding what entities are encompassed by the term "Syngenta."

## 2. Syngenta AG's Executive Committee

Syngenta AG's Executive Committee had the "final say" over whether a product was commercialized. n7 (Id. at 7) Approval was also required before going forward in a development stage. (Id.) The final budget for a product required approval from the Executive Committee of Syngenta AG. Before Syngenta Seeds could invest in a capital item or commit [*13] to a capital item, it had to get the approval of the Executive Committee in Switzerland. (D.I. 310, ex. A at 8) The CEO of Syngenta AG and the Executive Committee also made decisions regarding the acquisition of Garst and Golden Harvest. (D.I. 310, ex. A at 9, 10)

n7 However, related specifically to GA21, the approvals in place were not addressed in the testimony. (D.I. 310, ex. A at 7)

Syngenta AG's Executive Committee was allegedly involved in the development, approval and execution of a strategy to: (1) Acquire certain rights to GA21 from Bayer AG; (2) Acquire seed companies (Garst and Golden Harvest) with access to Monsanto's GA21; (3)

Obtain Monsanto GA21 from those seed companies; and (4) Sell the Monsanto GA21. (D.I. 407, ex. 1 at 2) Various Syngenta AG employees including David Jones (member of Syngenta AG's Executive Committee), Adrian Dubock (head of Mergers and Acquisitions for Syngenta AG), and Marian Flattery (head of Global IP and Licensing for Participations) participated in internal meetings leading [*14] up to the Bayer AG agreement. (D.I. 407, ex. 1 at 4-5) Furthermore, Syngenta AG had ultimate approval over the acquisition and licensing of Bayer's GA21 rights, Syngenta AG signed the Agreement for Scientific Evaluation of Transgenic Material transferring certain GA21 material to Syngenta AG, and Participations' Marian Flattery and Adrian Dubock signed the Acquisition Agreement with Bayer AG relating to certain rights in GA21 owned by Bayer AG. (D.I. 407, ex. 1 at 5) Mr. Dubock and Ms. Flattery also executed the subsequent Amendment to the Agreement for Scientific Evaluation of Transgenic Materials with Bayer AG. (D.I. 407, ex. 1 at 5) Syngenta AG was involved in the communications surrounding the public announcement of the Agreement. (D.I. 407, ex. 1 at 6)

Dr. Sorenson, head of Syngenta's n8 United States corn and soybean business, reported directly to Syngenta AG Executive Committee member Jeff Beard and his successor Michel Mack on many issues, including marketing strategy and financials of the business. (D.I. 407, ex. A1, 113-14) Dr. Sorenson spoke to Mr. Beard (and later Mr. Mack) an average of once a week or once every two weeks. (D.I. 407, ex. A1 at 115) Dr. Sorenson provided [*15] the Executive Committee with regular written reports on the United States corn seed business. (D.I. 407, ex. A1 at 138-39) Dr. Sorenson would fly to Switzerland to have in-person meetings to discuss, among other things, the strategy to enter into the glyphosate tolerant seed business. (D.I. 407, ex. A1 at 115-16)

n8 Again, due to the excerpting of the deposition testimony, the record is unclear as to what entity "Syngenta" encompasses in this context.

Dr. Sorenson made several presentations to Syngenta AG's Executive Committee regarding the United States corn and soy business, the Garst and Golden Harvest acquisitions, possibilities of joint ventures, and five year business plans, including one for the United States corn seed business. n9 (D.I. 407, ex. A1 at 16-7) Leadership teams with responsibilities for corn seed strategy in the United States included Syngenta AG employees. (D.I. 407, ex. A1 at 17)

n9 Tom Klevorn, head of NK Brands, made a presentation on GA21 to the Executive Committee. Jeffrey Stein, director of Regulatory Affairs for North America, made a presentation to the Executive Committee on the regulatory assessment of GA21. (D.I. 407 at 17)

[*16]

## III. STANDARD OF REVIEW

[HN1] When reviewing a motion to dismiss pursuant to *Rule 12(b)(2)*, a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).* [HN2] To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. See *Reach & Assoc., P.C. v. Dencer, 269 F.Supp. 2d 497, 502 (D. Del. 2003)*. With regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. Id. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. Id. In cases involving foreign parties, the Supreme [*17] Court has stated that "[g]reat care and reserve should be exercise when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)*

## IV. DISCUSSION

[HN3] The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply service or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly

does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is [*18] made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c)*. Pursuant to *subsection (c)(1)-(3)* and *(5)-(6)*, specific jurisdiction may be established if the cause of action arises from contacts with the forum. *Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458, 1466 (D. Del. 1991)*. Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts. Id.

It is apparent from the record that the individual conduct of Syngenta AG and Participations does not satisfy the jurisdictional requirements cited above. Syngenta AG and Participations are holding companies that do not conduct business in Delaware. They are not registered to do business in Delaware. They do not produce, market or sell corn seed or any product in Delaware. They do not have a bank account, a telephone number or an address in Delaware. They do not have "contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim. [*19] " *Red Sail Easter Ltd Partners, L.P. v. Radio City Music Hall Productions, Inc., 1991 Del. Ch. LEXIS 113, *8, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991)*.

The only personal contact these parties have had with Delaware is the meeting that took place in this State in May 2002. Certainly such a limited activity is insufficient to establish general jurisdiction. Likewise, this court cannot assert specific jurisdiction over Syngenta AG and Participations based on their conduct at the 2002 meeting. Although general marketing strategies were discussed, there is no record evidence that the acts identified in Monsanto's counterclaims took place in Delaware at that meeting.

The question remains whether the Syngenta U.S. Companies should be considered "agents" of Syngenta AG and Participations and, if so, whether the activities of the Syngenta U.S. Companies within the State of

Delaware satisfy the requirements of the Delaware long arm statute.

## A. Agency

Monsanto asserts that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations and, therefore, their acts confer personal jurisdiction in Delaware. As explained in *Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458 (D. Del. 1991),* [*20] [HN4] the agency theory

> examines the degree of control which the parent exercises over the subsidiary. . . . The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant. . . .

> If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

*Id. at 1463.* "An agency relationship alone, however, is not sufficient to confer jurisdiction. Rather, the result of finding such an agency relationship is simply that we may attribute certain of [the Syngenta U.S. Companies'] acts to [Syngenta AG and Participations] in assessing whether the requirements of the Delaware long-arm statute have been satisfied." *Id. at 1464.*

Monsanto relies on several aspects of the relationship between [*21] the parties to establish that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations. More specifically, Monsanto asserts that there is: (1) An overlap of some officers and directors; (2) Transferring of employees; and (3) Syngenta AG's involvement in formulating and approving strategic policy (e.g., meetings with the Executive Committee regarding the United States strategy and budgetary issues), major capital expenditures (e.g., acquiring GA21 rights), and key decisions (e.g., the Garst and Golden Harvest acquisitions).

Under Delaware case law, however, the facts asserted by Monsanto are not sufficient to establish an agency relationship. See *Akzona Inc. v. E.I. Du Pont Nemours & Co., 607 F.Supp. 227 (D. Del. 1984);* n10 *Sears, Roebuck & Co v. Sears, 744 F.Supp. 1297 (D. Del. 1990).* n11 The facts of record do not reflect a situation where the parent company is involved in manufacturing or production activities and the subsidiary is acting as the parent's distributor or sales agent. See *C.R. Bard Inc. v. Guidant Corp, 997 F.Supp. 556, 561 (D. Del. 1998).* The Syngenta U.S. Companies make their own decisions [*22] about day-to-day activities, and design, manufacture, market and distribute the GA21 corn. See *Akzona Inc., 607 F.Supp. at 238.* n12 No agency relationship has been demonstrated.

> N10 The Akzona court found no agency relationship between a parent and its wholly owned subsidiary, where there was some overlap between the board of directors, references to subsidiaries as divisions of the parent in the annual report, requirement that parent approve capital expenditures by subsidiaries exceeding $ 850,000, references in board meetings and reports to the development of products as the parent company's "decision" or "project," parent company taking credit for the product project in its annual report, parent company's negotiation with an agency of the Dutch government to set up a joint venture, parent company's guarantee of 50% of the Dutch government loans to the subsidiaries, and parent company's participation in the decision to bring a declaratory judgment.

> n11 The Sears court found no agency relationship when there was no evidence that the subsidiary could enter into negotiations or binding agreements for the parent or act for the parent in any other way in Delaware.

[*23]

> n12 The meeting in Delaware is the only event that could arguably reflect an agency relationship if, at that meeting, the details of the alleged misappropriation plan were explored. As noted above, the record is devoid of any evidence that suggests the participants at the Delaware meeting discussed a misappropriation plan or any actions that are alleged to constitute the misappropriation.

**B. Delaware Long Arm Statute**

Even if an agency relationship were shown, Monsanto has not carried its burden to demonstrate that the activities directed or controlled by Syngenta AG and Participations are the jurisdictional acts of Syngenta AG and Participations. n13 See *C.R. Bard Inc, 997 F.Supp. at 560* ("The agency theory requires not only that the precise conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy *§ 3104(c)(1)*."). "When applying the agency theory, a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement [*24] to the . . . claim." *Id. at 560.* The counterclaims at issue are: (1) Reverse passing off under the Lanham Act; (2) Violations of the Delaware Deceptive Trade Practices Act; (3) False advertising under the Lanham Act; and (4) Tortious interference with a contract.

n13 For this reason, the court need not reach the constitutional analysis.

**1. Specific Jurisdiction *§ 3104(c)(1), (2), (3)***

Jurisdiction under *§ 3104(c)(1)* or *(2)* can be obtained if, through the Syngenta U.S. Companies, Syngenta AG and Participations have conducted any business or contracted to supply services or things in Delaware. *Section 3104(c)(3)* provides for jurisdiction when a nonresident or its agent has caused tortious injury in Delaware by an act or omission that occurred in this State. *Applied Biosystems, 772 F.Supp. at 1467.*

It is established that the incorporation of the Syngenta U.S. Companies in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation. [*25] See *Applied Biosystems at 1467.* However, [HN5] "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent." *Ace & Co. v. Balfour Beatty PLC, 148 F.Supp.2d 418, 422-23 (D. Del. 2001).* None of the counterclaims rise from the act of incorporation.

The reverse passing off claim and deceptive trade practices claim are based on the sale and marketing of GA21 corn seed without acknowledging Monsanto as the source of the GA21 event. There is no evidence that Syngenta AG and Participations direct or control sales or marketing in Delaware. To the contrary, the evidence that the Syngenta U.S. Companies report to and update the Executive Committee regarding these decisions tends to substantiate the opposite conclusion. The 2002

meeting is equally unavailing to establish jurisdiction. The 2002 meeting in Delaware is not related to and does not give rise to any of the counterclaims. In fact, the meeting took place several years prior to the relevant time period of the counterclaims. Finally, the tortious interference claim is based on a contract between [*26] Syngenta Seeds, Inc. and Advanta USA, Inc. and has no relationship to Delaware, as it was neither negotiated nor signed in Delaware.

Monsanto also asserts a stream of commerce theory, citing *A.V. Imports, Inc. v. Col De Fratta, 171 F.Supp.2d 369 (D.N.J. 2001).* n14 However, as the court in A.V. Imports clearly states, [HN6] "the mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts." *Id. at 372* (citing *Asahi Metal Industry Co., 480 U.S. at 107*). Monsanto has produced no evidence that Syngenta AG or Participations, or any of the Syngenta U.S. Companies, "purposefully availed" themselves of the forum state.

n14 The court is not confident this precedent is applicable to the case at bar, but need not decide this issue as there is no showing that Delaware was in any way targeted, as is required under this theory.

Press releases and similar communications do not give [*27] rise to personal jurisdiction unless they are "expressly aimed" at the relevant forum. See *IMO Indus. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998).* Syngenta International AG issued a press release on May 12, 2004 from its Swiss headquarters, but it was not "specifically directed toward Delaware residents" nor was it "part of a 'sustained promotional campaign'" in Delaware. *Applied Biosystems, 772 F.Supp. at 1467; Virgin Wireless, Inc. v. Virgin Enters., 201 F.Supp.2d 294, 299* (finding a single press release attributed to English company cannot justify personal jurisdiction in Delaware).

Finally, Monsanto asserts that the filing of the antitrust litigation in Delaware serves as a basis for personal jurisdiction. The court finds this argument unpersuasive. The holding in *Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., 833 F.Supp. 437 (D. Del. 1993)*, establishes that [HN7] the filing of a lawsuit may be relevant to establishing jurisdiction when the claim at issue is sham litigation. Again, the filing of the lawsuit bears no relevance to the counterclaims at issue and, therefore, cannot serve as a basis for personal jurisdiction.

**2. General  [\*28]  Jurisdiction *§ 3104(c)(4)***

[HN8] *Section 3104(c)(4)* provides for general jurisdiction in tort cases. Jurisdiction is authorized if Syngenta AG or Participations, through its agents, "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

That the subsidiaries are incorporated in Delaware is not imputed to Syngenta AG and Participations. See *Applied Biosystems, 772 F.Supp. 1458, 1469.* The act of incorporating a subsidiary in Delaware is not enough to confer general jurisdiction in this instance because it does not appear that Syngenta AG and Participations have engaged in a pattern of corporate dealings under Delaware law. See *Sears, 744 F.Supp. at 1306* (finding that the defendant only owned one Delaware subsidiary and had not engaged in a pattern of corporate dealings in Delaware). In *Altech Indus., Inc. v. Al Tech Speciality Steel Corp., 542 F.Supp. 53 (D. Del. 1982)*, the court held it could exercise jurisdiction over a non-Delaware corporation under *§ 3104(c)(4)* where: (1) The defendant owned eighty-two [\*29] subsidiaries and a "vast majority" of these were incorporated in Delaware; and (2) The defendant had "utilized the benefits of the Delaware corporation law in various ways," including conducting mergers and acquisitions with, and amending the articles of incorporation of, its many subsidiaries. *Id. at 55.* The court does not find that Syngenta AG and Participations have availed themselves of the general jurisdiction of Delaware.

**C. *Fed. R. Civ. P. 4(k)(2)***

[HN9] When a foreign defendant does not have sufficient minimum contacts with any single forum to comport with due process, *Rule 4(k)(2)* allows an alternate jurisdictional basis to pursue a claim arising under federal law, where defendant has sufficient nationwide contacts.

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service of process is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

*Fed. R. Civ. P. (4)(k)(2)* [\*30] . The court must first determine that: (1) The case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction; and (2) The foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction there. *United States v. Int'l Brotherhood of Teamsters, 945 F.Supp. 609, 617 (D. Del. 1997).* The court can then ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process. *Id.*

The court's analysis stops at the first step. The court finds that Monsanto has not satisfied its burden of proving the lack of state-specific contacts. See *CFMT, Inc. v. Steag Microtech, Inc., 965 F. Supp. 561, 1997 WL 313161 (D. Del. 1997).* [HN10] *Rule 4(k)(2)* "provides a narrow exception which may subject an alien defendant to a federal court's personal jurisdiction." *Id.* at \*7. "To satisfy this requirement, plaintiffs are required to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." *Id.; Telcordia Techs. v. Alcatel S.A., 2005 U.S. Dist. LEXIS 10194, \*17, 2005 WL 1268061,* [\*31] *at \*5 (D. Del. May 27, 2005)*("The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that [the plaintiff] bears the burden of demonstrating that [the defendant] is not subject to jurisdiction in any state."). While Monsanto asserts that it can argue *Rule 4(k)(2)* in the alternative of arguing that Delaware has personal jurisdiction, the court finds that Monsanto has not affirmatively represented that Syngenta AG and Participations are not subject to the jurisdiction of any state. Instead, Monsanto has tried only to shift the burden to Syngenta AG and Participations by arguing that, if the court finds no jurisdiction lies in Delaware, then no jurisdiction lies in any other state and *Rule 4(k)(2)* applies. See *In re Lupron Marketing & Sales Practices Litig., 245 F.Supp.2d 280, 302-03 (D. Mass. 2003).* The only basis asserted by Monsanto that no jurisdiction lies in any other state is that Monsanto is unable to find any basis for jurisdiction through review of the discovery record and publicly available sources. Unfortunately, Monsanto does not elaborate on these bald assertions. Furthermore, since the filing [\*32] of its original brief, Monsanto has submitted two motions to supplement the record with extensive deposition testimony. Yet, no evidence was presented in furtherance if its argument that Syngenta AG and Participations are not subject to jurisdiction in any state. Rather, Monsanto has extensively asserted that jurisdiction is proper in Delaware. Monsanto has also produced some tangential evidence that meetings have taken place in the United States other than Delaware, offices exist in states other than Delaware, and the GA21 corn is sold in the United States other than Delaware.

2006 U.S. Dist. LEXIS 54534, *

The court is unwilling to merely take Monsanto's assertion that if jurisdiction does not lie in Delaware, jurisdiction does not lie anywhere else in the country. Monsanto has not fulfilled its burden in showing this element of *Rule 4(k)(2)*; as a result, the court need not perform further analysis.

## V. CONCLUSION

For the reasons discussed above, Syngenta AG and Syngenta Participations AG's motion to dismiss for lack of personal jurisdiction is granted. An order consistent with this memorandum opinion shall issue.

## CERTIFICATE OF SERVICE

I, Phillip T. Mellet, hereby certify that on this 12th day of January, 2007, I caused

to be served the foregoing Defendant Siemens AG's Supplemental Brief in Support of Its Motion

to Dismiss *via* CM/ECF and hand delivery upon the following:

> Martin S. Lessner, Esquire
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19899
> mlessner@ycst.com

/s/ Phillip T. Mellet
Phillip T. Mellet (DE No. 4741)