IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYED IQBAL RAZA, M.D., | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : NO. 06-132 (JJF) |
| | : |
| SIEMENS MEDICAL SOLUTIONS USA, INC., | : |
| SIEMENS MEDICAL SOLUTIONS HEALTH | : |
| SERVICES CORP., SIEMENS CORPORATION | : |
| and SIEMENS AG, | : |
| | : |
| Defendants. | : |

**OPENING BRIEF OF DEFENDANT SIEMENS MEDICAL SOLUTIONS USA, INC. AND DEFENDANT SIEMENS MEDICAL SOLUTIONS HEALTH SERVICES CORPORATION IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE <u>PLEADINGS</u>**

OF COUNSEL:

Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)

Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000 (Telephone)
(215) 981-4750 (Fax)

Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Matthew A. Kaplan (DE No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500 (Telephone)
(302) 421-8390 (Fax)

*Attorneys for Defendants Siemens Medical Solutions USA, Inc. and Siemens Medical Solutions Health Services Corporation*

Dated: April 28, 2008

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. CONCISE STATEMENT OF FACTS ............................................................................ 2

    A. The Alleged Trade Secret ..................................................................................... 2

        1. The Purported Concept of Dr. SIR ........................................................... 2

        2. Raza's Repeated and Unprotected Disclosures of Dr. SIR. ...................... 3

    B. The Alleged Misappropriation .............................................................................. 5

        1. Raza Discloses Concepts to SHAIP. ........................................................ 5

        2. SHAIP Allegedly Discloses To German Embassy ................................... 6

        3. German Embassy Allegedly Discloses to Siemens Pakistan Engineering Co. Ltd. ................................................................................ 7

    C. Raza Fails to Timely Assert Claim ....................................................................... 8

III. SUMMARY OF ARGUMENT ....................................................................................... 9

IV. ARGUMENT ................................................................................................................... 9

    A. Standard of Review ............................................................................................... 9

    B. Plaintiff's Unjust Enrichment Claim Is Preempted By The Delaware Trade Secrets Act. ............................................................................................... 11

    C. Plaintiff's Misappropriation of Trade Secrets Claim is Time Barred. ................ 12

V. CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

CASES

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
    182 Fed. Appx. 994 (Fed. Cir. 2006)......................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..............................................................................................2, 10

*Bell, Jr. v Brigantie Mun. Court*,
    Civ. No. 07-1587 (RMB), 2008 WL 323768 (D.N.J. Jan. 29, 2008) ........................................9

*Engelhard Corp. v. Savin Corp.*,
    505 A.2d 30 (Del. Ch. 1986)......................................................................................................2

*Ethypharm S.A. France v. Bentley Pharm., Inc.*,
    388 F. Supp. 2d 426 (D. Del. 2005) ...................................................................................11, 12

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..............................................................................................10, 13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)......................................................................................13

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)...................................................................................................10

*Kaempe v. Myers*,
    367 F. 3d 958 (D.C. Cir. 2004) ................................................................................................13

*Kaufman v. C.L. McCabe & Sons, Inc.*,
    603 A.2d 831 (Del. 1992) .........................................................................................................13

*Pfizer, Inc. v. Ranaxby Labs., Ltd.*,
    525 F. Supp. 2d 680 (D. Del. 2007)............................................................................................9

*UD Techn. Corp. v. Phenomenex, Inc.*,
    Civ. A. No. 05-842-GMS, 2007 WL 28295 (D. Del. Jan. 4, 2007).........................................12

*White v. H&R Block, Inc.*,
    No. 02-CV-8965 (MBM), 2004 WL 1698628 (S.D.N.Y. July 28, 2004)................................13

**Page(s)**

**STATUTES**

6 *Del. C.* § 2006 ................................................................................................................12

6 *Del. C.* § 2007 ................................................................................................................11

Case 1:06-cv-00132-JJF   Document 39   Filed 04/28/2008   Page 4 of 18

I.  **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff Syed Iqbal Raza, M.D., a Pakistani national ("Plaintiff" or "Raza"), filed a two-count complaint on February 28, 2006, alleging misappropriation of trade secrets and unjust enrichment. (D.I. 1).

Raza initially sued three Defendants, namely, Siemens Medical Solutions USA, Inc. ("Medical Solutions"); Siemens Corporation ("Siemens Corp."); and Siemens AG ("Siemens AG"). *Id.* On March 29, 2006, Raza filed an Amended Complaint to add Siemens Medical Solutions Health Services Corporation ("Health Services") as a Defendant.[1] (D.I. 7). Shortly after filing this action, Raza voluntarily dismissed his claims against Siemens Corp. (D.I. 9). On July 23, 2007, this Court dismissed Siemens AG from this action for lack of personal jurisdiction. (D.I. 35 and 36). On April 18, 2006, the two remaining Defendants – Medical Solutions and Health Services – each filed an Answer and Counterclaim for declaratory relief to confirm that Defendants have not misappropriated trade secrets or any other purportedly proprietary information from Raza, and similarly, have not been unjustly enriched by selling Soarian.® (D.I. 10 and 11).[2]

The bare bones Amended Complaint (which is only seven pages, and essentially, only eight paragraphs long), generally alleges that Raza developed a "concept" called "Dr. SIR" for evaluating the performance of medical professionals. Am. Compl. ¶ 11 (D. I. 7). Raza alleges that Medical Solutions USA somehow "misappropriated" his "concept" and incorporated

---

[1] This is not Raza's first lawsuit on this subject. As explained in Medical Solutions' and Heath Services' Answers and Counterclaims, on September 5, 2003, Raza sued various Siemens-related entities in Pakistan, including Health Services, for the same alleged misappropriation. *See* Exhibit B to Answers and Counterclaims of Defendants Medical Solutions and Health Services (D.I. 10 and 11).

[2] On December 31, 2006, Health Services merged into Medical Solutions. Medical Solutions and Health Services shall be hereinafter referred to collectively as "Medical Solutions USA."

#9544749 v2

it in some unspecified manner into its Soarian® software system, which, he admits, was publicly launched in October 2001.

This case is still in its early stages and discovery has not yet commenced. Defendants Medical Solutions and Health Services bring the instant Motion for Judgment on the Pleadings. Plaintiff's unjust enrichment claim is preempted by the Delaware Trade Secrets Act, and Plaintiff's misappropriation of trade secrets claim is barred by the appropriate Delaware statute of limitations. Defendants Medical Solutions and Health Services thus respectfully request that the Court grant their Motion for Judgment on the Pleadings, and dismiss Plaintiff's claims.[3]

## II. CONCISE STATEMENT OF FACTS

### A. The Alleged Trade Secret.

#### 1. The Purported Concept of Dr. SIR.

Raza alleges that he is a physician who lives and works in Islamabad, Pakistan. Am. Compl., ¶ 1 (D.I. 7). According to the Amended Complaint, Raza allegedly collected "various types" of unspecified "data" from "104 medical professionals" in Pakistan in a "research study" he called "Dr-SIR-104." Am. Compl., ¶ 11 (D.I. 7). Raza further alleges that

---

[3] As part of the parties' Rule 26 discussions, and particularly as Raza's Amended Complaint does not identify the alleged trade secrets at issue, Medical Solutions USA asked Raza to provide it with a Trade Secret statement describing the allegedly misappropriated trade secret with reasonable particularity as required by established Delaware law. *See, e.g., Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (holding that, in misappropriation of trade secrets claim, "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret"). But, Raza has not yet identified his alleged trade secrets with "reasonable particularity." Given that, Medical Solutions USA will seek a stay of discovery until Raza discloses his alleged trade secret with reasonable particularity. Raza's failure to provide the required detailed trade secret statement, of course, is consistent with the vague and conclusory-style allegations of his Amended Complaint. Because of the generality of the allegations in the Amended Complaint (which do not comport with the required pleading standard after *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)) and Raza's refusal to describe the alleged trade secrets in a Trade Secret Statement with "reasonable particularity" as required by Delaware law, should Raza continue to fail to disclose with particularity what it is that is supposedly his "trade secret," this Court should also dismiss this meritless action for this additional basis as well.

-2-

"by 2000" he used the "research data" to develop his "concept of Dr.-SIR." Am. Compl., ¶ 11 (D.I. 7).

It is unclear exactly what "Dr. SIR" was in 2000, or what the alleged trade secrets purport to have been at that time. Although Raza initially tries artificially to inflate his description of Dr. SIR by calling it "a hospital management software product embodying his methods," Am. Compl., ¶ 11 (D.I. 7), he concedes that it was merely a "concept," and similarly, is quick to admit, without equivocation, that "no software relating to Dr. Raza's proprietary concepts had been developed as of" September 20, 2000. *See* Am. Compl, ¶¶ 12-14 (D.I. 7); *see also* Answer to Counterclaim, ¶ 12 (D.I. 18 and 19). Raza further "admits that he has not sought to register his concepts under the patent, trademark, or copyright laws of any nation." Answer to Counterclaim, ¶ 53 (D.I. 18 and 19).

Raza appears to claim that his "concept" was embodied in "approximately 160 pages of descriptive analyses and spreadsheets," which he apparently gave to Strengthening of Health Services Academy in Pakistan ("SHAIP") in or around September/October 2000. *Id.* ¶ 12.

### 2. Raza's Repeated and Unprotected Disclosures of Dr. SIR.

Raza was not shy about sharing his supposed "trade secrets," or stated differently, his alleged "concepts" relating to Dr. Sir (to the extent the so-called "concepts" were the alleged trade secret). Despite now suggesting that he "has at all times made reasonable efforts under the circumstances to maintain the secrecy of his concepts," Am. Compl., ¶ 22 (D.I. 7), Raza admits that he repeatedly disclosed his Dr. Sir concepts to virtually everyone and anyone who would listen, including:

- The World Bank;
- The Asian Development Bank;

-3-

- The World Health Organization;
- The Pakistan Medical Research Council;
- The Pakistan Medical and Dental Council;
- The Ministry of Health of Pakistan;
- The Board of Governors of Rawalpindi Medical College and Allied Hospitals;
- The Pakistan Software Export Board and National Productivity Organization;
- The United States State Department;
- The United States Educational Foundation in Pakistan;
- "One of the top Universities of [the] USA;"
- "An international organization with [a] Head Office at USA;"
- The "FCL (Foreign Commercial Liaison Office) of [the] USA;"
- An entity called "Anjum Asim Shahid and Company" in Pakistan, which Raza alleges is a "member" of U.S. accounting firm Grant Thornton;
- An individual named Zia Chishty, alleged to be an executive with a venture capital firm;
- The National University in Islamabad;
- The Strengthening of Health Services Academy in Pakistan; and
- The German Embassy in Pakistan.

Am. Compl., ¶¶ 12-18 (D.I. 7); Exh. B to Answer and Counterclaim of Medical Solutions and Health Services, ¶¶ 6-16 (D.I. 10 and 11). Raza expressly admitted that such "presentations" and "demonstrations" of his Dr. Sir "concepts" were "***detailed***" and "***extensive***." *See* Exh. B to Answers and Counterclaims of Medical Solutions and Health Services, ¶¶ 5, 12 (D.I. 10 and 11) (emphasis added).

Plaintiff nowhere alleges that any of these eighteen entities executed a confidentiality or nondisclosure agreement with him, or that Raza otherwise informed these various entities that they were being exposed to an alleged "trade secret" that could not be disclosed to third parties.

#9544749 v2

### B. The Alleged Misappropriation.

#### 1. Raza Discloses Concepts to SHAIP.

Raza alleges that, in September 2000, he presented "his concepts for Dr-SIR" to SHAIP, "a project sponsored by GTZ Islamabad." Am. Compl., ¶ 12 (D.I. 7). Raza alleges that, after such presentation, he gave SHAIP "approximately 160 pages of descriptive analyses and spreadsheets documenting his proprietary concepts." *Id.*

On September 20, 2000, a Dr. Simon Azariah of SHAIP wrote a letter to Raza, which, on its face, "contained various criticisms relating" to the concepts apparently shared by Raza in connection with his alleged "concepts." *See* Medical Solutions' Answer, at ¶ 12 (D.I. 10); Health Services' Answer, at ¶ 12 (D.I. 11). More specifically, the letter states:

- "The mathematical basis and the necessary background information used for the calculation of the 'co-efficient' used in the computing of Work Unit . . . are not clear . . . which leaves a gap in understanding;"
- "The calculation of Work Efficiency (per Dollar/Rupee) appears to be incomplete or perhaps is a misnomer;"
- "[T]hat more arguments and work need to go in for clarifying the concept of work-efficiency used in Dr. SIR 104;"
- "[T]he explanation . . . does not offer clear-cut benefits;"
- "The definition of various baseline information requirements . . . are not clear at all;"
- "[T]he information needs for doing specific calculations are also not clearly mentioned."

*Id.*

While politely stating that Dr. SIR may have "a lot of potential," Dr. Azariah pointed out that Raza had much work to do before any potential software could be developed, tested and marketed "to compete with ***other products in its category***." *Id.* (emphasis supplied).

-5-

Dr. Azariah concluded his letter by stating that SHAIP was not in a position to help Raza in connection with his "concept," but offered to help set up meetings with other third parties. *Id.*

### 2. SHAIP Allegedly Discloses To German Embassy.

Raza alleges that, "on October 9, 2000," SHAIP forwarded Raza's "concept" papers – whatever those were – to the German Embassy in Islamabad. Am. Compl., ¶ 12 (D.I. 7). As alleged in Medical Solutions' and Health Services' Answer and Counterclaim, that October 9, 2000 letter states:

> Dear Dr. Muerz,
>
> I send you a ***short outline*** of a proposal aiming to develop an expert system in hospital management. The proposed expert system is a continuation of recent efforts undertaken by Dr. Syed Iqbal Raza that lead [*sic*] to a spreadsheet based calculation of hospital efficiency.
>
> Would some German industry be interested to participate in the development of this expert system?
>
> Sincerely yours,
>
> Aime de Muynck

Exh. C to Answers and Counterclaims of Medical Solutions and Health Services (D.I. 10 and 11) (emphasis supplied).

Raza next alleges that, in November 2000, he disclosed "the concepts for Dr-Sir" to the Counselor Head Economic and Commercial Section of the German Embassy at Islamabad." Am. Compl., ¶ 13 (D.I. 7). Raza alleges that "the Counselor" told him that "he believed" some undefined Siemens entity "would likely be interested." *Id.*

### 3. German Embassy Allegedly Discloses to Siemens Pakistan Engineering Co. Ltd.

Raza next alleges that he "permitted" the Counselor at the German Embassy in Islamabad to forward his "concept papers" (whatever those may have been and however they may have been obtained by the German Embassy) to an undefined "Siemens" entity for "the limited purpose of determining" whether the unspecified entity that may have used the "Siemens" brand in its name "would be interested in engaging in a joint venture to develop such a product." *Id.* He then alleges that, on January 1, 2001, Farrukh Latif of Siemens Pakistan Engineering Co., Ltd. ("Pakistan Engineering"), wrote to Raza as follows:

> Dear Dr. Iqbal Raza,
>
> We invite reference to the subject software developed by you. We received a summary of the salient features of this software from the German Embassy in Islamabad (Mr. Muerz).
>
> Going through the available details, we feel that you have put in a very good effort. As you know, we are not related with the Hospital Management side and as such we would not really be in a position to fully benefit from this software. However, we do intend to recommend to our various clients to contact you for further details.
>
> We once again appreciate your efforts in developing the software DR. SIR-104.
>
> Thank you, we remain,
>
> Your faithfully,
>
> SIEMENS PAKISTAN ENGINEERING CO., LTD.,
>
> Farrukh Latif

Exh. D to Answers and Counterclaims of Medical Solutions and Health Services (D.I. 10 and 11); *see also See* Am. Compl., ¶ 14 (D.I. 7).

#9544749 v2

This is the *only* alleged communication between Raza and any Siemens-related entity. Raza alleges no communications whatsoever with Medical Solutions or with Health Services – the Defendants in this action.

### C. Raza Fails to Timely Assert Claim.

Raza alleges that "Siemens . . . launched its SOARIAN hospital management software product in the United States in October 2001." Am. Compl., ¶ 17 (D.I. 7). This is confirmed by the contemporaneous documentary record, as there was substantial press coverage in October 2001 relating to the Soarian® launch. *See* Sample News Articles attached hereto as Appendix Pages A-1 to A-6. In addition, Health Services has filed patent applications with the United States Patent and Trademark Office, including from the 2001 time frame. *See e.g.*, Patent Application for U.S. Patent 6,551,243, provisionally filed January 24, 2001 relating to "a comprehensive information system and architecture for use in clinical care delivery and optimization," attached hereto as Appendix Pages A-7 to A-19.

Raza alleges that he "reviewed Siemens' public papers, press releases, patents and patent applications." Am. Compl., ¶ 18 (D.I. 7). Based on his review of such information in the *public* record, Raza "concluded" that Soarian® "most likely" uses his "concepts." *Id.*, ¶ 18. However, other than his vague conclusions and wild speculations, Raza nowhere purports to explain why (or how) he believes that Soarian® uses his undefined "concepts" relating to Dr. Sir (whatever those were).

Nevertheless, Raza did not file this two-count complaint in this United States Court until February 28, 2006 – 4 ½ years after he admits Soarian® was publicly launched in October 2001.

#9544749 v2

### III. SUMMARY OF ARGUMENT

1. Plaintiff's common law claim for unjust enrichment is preempted by the Delaware Trade Secrets Act.

2. Plaintiff's misappropriation of trade secrets claim is barred by the applicable three-year statute of limitations, as he knew or should have known of his alleged claim in October 2001 but failed to bring an action until February 2006 – more than one year too late.

### IV. ARGUMENT

#### A. Standard of Review.

This Court has recently explained the standard for granting a motion for judgment on the pleadings:

> A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court must accept the facts alleged in the pleadings as true and draw all reasonable factual inferences in the light most favorable to the nonmovant. The Supreme Court has retired the standard for dismissal under Rule 12(b)(6) announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007) (citing *Conley*, 355 U.S. at 45-46, 78 S.Ct. 99). Instead, the Supreme Court has instructed that dismissal is not appropriate if the plaintiff alleges sufficiently detailed facts to "raise a right to relief above the speculative level." *Id.* The moving party bears the burden of demonstrating that dismissal is appropriate under Rule 12(b)(6) and that judgment on the pleadings is appropriate under Rule 12(c).

*Pfizer, Inc. v. Ranaxby Labs., Ltd.*, 525 F. Supp. 2d 680, 684-685 (D. Del. 2007) (Farnan, J.); *see also Bell, Jr. v Brigantie Mun. Court*, Civ. No. 07-1587 (RMB), 2008 WL 323768, at *4-5 (D.N.J. Jan. 29, 2008) (same).

In ruling upon a Motion for Judgment on the Pleadings, the plaintiff cannot rely on conclusory statements or legal contentions, but must point to allegations of fact that set forth a plausible claim:

> While, for most types of claims, the Federal Rules eliminated the cumbersome requirement that a claimant set out *in detail* the facts upon which he bases his claim," Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is difficult to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n. 3 (2007) (citation omitted) (emphasis in original). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a case will not do." *Id.* at 1964-1965.

Moreover, in ruling upon a Motion for Judgment on the Pleadings, the Court may consider and judicially notice any documents attached to, or referenced by, the parties' pleadings, as well as which are matters of public record. *See, e.g., In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (upholding district court's judicial notice on a motion to dismiss of "(1) documents relied upon in the Complaint . . . (2) documents filed with the SEC, but not relied upon in the Complaint . . . and (3) stock price data compiled by the Dow Jones news service"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating "a document integral to or explicitly relied upon in the complaint may be considered

without converting the motion [to dismiss] into one for summary judgment.") (internal citation omitted).

    **B.    Plaintiff's Unjust Enrichment Claim Is Preempted By The Delaware Trade Secrets Act.**

In Count II of his Amended Complaint, Raza asserts a claim for unjust enrichment. Raza devotes one sentence to explaining the basis for this common law claim: "Upon information and belief, Siemens has been unjustly enriched by virtue of its use of Dr. Raza's proprietary concepts in connection with its development and sale of Soarian." Am. Compl., ¶ 27 (D.I. 7). This common law claim is clearly preempted by the Delaware Trade Secrets Act, which expressly "displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." 6 *Del. C.* § 2007.

> This Court has explained that:
>
> Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 *Del. C.* § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation. Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret. Thus, a determination of whether the information at issue constitutes a trade secret under the DUTSA need not be addressed prior to making a determination of displacement. . . .
>
> The issue has been stated as whether the failure of the misappropriation claim would doom the common law claim. If so, the common law claim would be barred by the trade secret statute. A claim will be preempted if it is grounded in the same facts which purportedly support the misappropriation of trade secrets claim.

*Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (citations and internal quotes omitted).

This is a straightforward case of preemption: Raza expressly pleads that Medical Solutions' and Health Services' alleged unjust enrichment derives from their supposed

misappropriation of his allegedly proprietary "concepts." As such, Raza relies on the exact same factual allegations (however inadequate they may be) to support both his misappropriation of trade secrets claim and his unjust enrichment claim, and thus, his unjust enrichment claim should be dismissed. *Id.* at 434 (unjust enrichment claim preempted because it was "based entirely on the same facts which purportedly support the misappropriation of trade secrets"); *see also UD Tech. Corp. v. Phenomenex, Inc.*, Civ. A. No. 05-842-GMS, 2007 WL 28295 at *8 (D. Del. Jan. 4, 2007) (granting motion to dismiss unjust enrichment claim as preempted by Delaware Trade Secrets Act).

Therefore, this Court should enter judgment in favor of Defendants and dismiss Plaintiff's unjust enrichment claim.

### C. Plaintiff's Misappropriation of Trade Secrets Claim is Time Barred.

The Delaware Trade Secrets Act provides that "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." 6 *Del. C.* § 2006. Here, Raza did not file his original Complaint until February 28, 2006. (D.I. 1.) It is clear from the pleadings that Raza either knew or should have known of his alleged claims as early as October 2001, when, by his own admission, Soarian® was launched publicly. By failing to assert his claim on a timely basis, it is now barred and should be dismissed.

Raza admits that Dr. Simon Azariah wrote him a letter on September 20, 2000, and that that letter states that a marketing strategy would "have to be developed so that the final product can be brought to the market to compete with other products in its category." *See* Answer to Counterclaims, ¶ 12 (D.I 18 and 19). Thus, Raza knew that other products were already on the market in this health care category.

Raza also admits that Medical Solutions USA "launched its Soarian hospital management software product in the United States *in October 2001*." Am. Compl., ¶ 17 (D.I. 7) (emphasis added). This is confirmed by contemporaneous press coverage and filings with the Patent and Trademark Office in 2001. *See* Appendix at A-1 to A-19.[4] Raza further admits that information about Soarian® was available to the public, including in "public papers, press releases, patent and patent applications." Am. Compl., ¶ 18 (D.I. 7).

Thus, it is clear from the pleadings that Raza either knew or could have easily discovered the existence of Soarian,® and of his alleged claim, from public documents as early as October 2001. Mere ignorance of an alleged cause of action does not serve to toll the statute of limitations under established Delaware law. *See Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del. 1992) ("a plaintiff's ignorance of injury or loss will not delay the accrual of his cause of action").

Accordingly, the three-year statute of limitations set forth in the Delaware Trade Secrets Act expired in October 2004. Raza's 2006 action in this United States Court is untimely.[5] *See Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 Fed. Appx.

---

[4] The Court may take judicial notice of such publicly available documents in order to determine whether Raza was on inquiry notice of his purported claims. *See Kaempe v. Myers*, 367 F. 3d 958, 965 (D.C. Cir. 2004) (documents filed with the PTO "are public records subject to judicial notice on a motion to dismiss"); *White v. H&R Block, Inc.*, No. 02-CV-8965 (MBM), 2004 WL 1698628, at *6 n.2 (S.D.N.Y. July 28, 2004) (taking judicial notice of numerous articles*); In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 383 (S.D.N.Y. 2003) (taking judicial notice of publicly available news articles), *aff'd, sub nom., Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005).

Moreover, as Paragraph 18 of Raza's Amended Complaint expressly relies upon "public papers, press releases, patent and patent applications," this Court may consider these documents on a motion for judgment on the pleadings. *See In re Burlington Coat Factory Securities Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment").

[5] Notably, Raza had sufficient information to file suit in Pakistan well before October 2004. *See* Exhibit B to Answers and Counterclaims of Defendants Medical Solutions and Health Services (D.I. 10 and 11).

#9544749 v2

994, 999 (Fed. Cir. 2006) (trade secret claim time-barred because plaintiff could have discovered alleged misappropriation from public documents more than three years before filing suit). Defendants are thus entitled to judgment in their favor as a matter of law.

## V.   CONCLUSION

For the reasons set forth herein, this Court should grant Defendants' Motion for Judgment on the Pleadings and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

/s/ Matthew A. Kaplan
M. Duncan Grant (DE No. 2994)
Larry R. Wood, Jr. (DE No. 3262)
Matthew A. Kaplan (DE No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Of Counsel:

Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Kathleen A. Mullen
PEPPER HAMILTON LLP
Suite 200
100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
(717) 255-1155

*Attorneys for Defendants Siemens Medical Solutions USA, Inc. and Siemens Medical Solutions Health Services Corporation*

Dated: April 28, 2008