IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYED IQBAL RAZA, M.D.,

Plaintiff,

v.

SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS MEDICAL SOLUTIONS HEALTH SERVICES CORP., SIEMENS CORPORATION and SIEMENS AG,

Defendants.

C.A. No. 06-132-JJF

**PLAINTIFF'S ANSWERING BRIEF IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Plaintiff*

Dated: May 15, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

NATURE AND STAGE OF THE PROCEEDINGS .......... 1

SUMMARY OF ARGUMENT .......... 2

COUNTER-STATEMENT OF FACTS .......... 3

ARGUMENT

I. STANDARD OF REVIEW .......... 4

II. SIEMENS IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS OF THE TRADE SECRET MISAPPROPRIATION CLAIM .......... 5

III. DR. RAZA CONSENTS TO JUDGMENT ON THE UNJUST ENRICHMENT CLAIM AS A MATTER OF DELAWARE LAW .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994 (Fed. Cir. 2006) ........ 8

*Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d 298 (N.D.N.Y 2007) ........ 9

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430 (D. Del. 2003) ........ 9

*E.I. du Pont de Nemours & Co. v. Monsanto Co.*, 2001 U.S. Dist. LEXIS 8875 (D. Del. Feb. 14, 2001) ........ 9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........ 8

*Indigo Moon Prods., LLC v. Hasbro, Inc.*, 2006 U.S. Dist. LEXIS 84433 (W.D. Ky. Nov. 17, 2006) ........ 7

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ........ 8

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 1991 U.S. Dist. LEXIS 14823 (D. Minn. Apr. 30, 1991) ........ 7

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........ 5

*Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888 (D. Del. 1991) ........ 5

*Taj Mahal Travel v. Delta Airlines*, 164 F.3d 186 (3d Cir. 1998) ........ 5

*Venetec Int'l, Inc. v. Nexus Med., LLC*, 2008 U.S. Dist. LEXIS 24499 (D. Del. Mar. 28, 2008) ........ 5

*White v. H&R Block, Inc.*, 2004 U.S. Dist. LEXIS 14522 (S.D.N.Y. July 28, 2004) ........ 8

**Rules**

Fed. R. Civ. P. 12(c) ........ 4, 5, 6

**Statutes**

6 *Del. C.* § 2006 ........ 5

6 *Del. C.* §§ 2001-2009 ........ 2

**Other Authorities**

5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROC. CIVIL 3D § 1368 (2004 & 2008 Suppl.) .......... 5

**NATURE AND STAGE OF THE PROCEEDINGS**

On February 28, 2006, plaintiff Syed Iqbal Raza filed his Complaint in the present action, asserting claims for trade secret misappropriation and unjust enrichment against multiple Siemens defendants. (D.I. 1) Dr. Raza included an unjust enrichment claim because he could not be certain that the Siemens defendants would ultimately agree that Delaware law governs the misappropriation claim. The preemptive effect of the Uniform Trade Secrets Act is different under the laws of some other states, including California and New York.

Dr. Raza later amended his Complaint to voluntarily dismiss defendant Siemens Corporation based on the representations of defense counsel that the entity was a hollow shell company with no documents, employees or assets. (D.I. 7, 9) Defense counsel committed that the shell company would respond to discovery as though it remained a party.

On April 18, 2006, defendants Siemens Medical Solutions USA, Inc. and Siemens Medical Solutions Health Services Corp. (together, "Siemens") answered the Amended Complaint, and asserted declaratory judgment counterclaims that they did not misappropriate Dr. Raza's trade secrets. (D.I. 10, 11) On July 23, 2007, defendant Siemens AG was dismissed for lack of personal jurisdiction. (D.I. 36)

On February 1, 2008, plaintiff's counsel sent a proposed scheduling order and a copy of the Court's e-discovery default standard to counsel for Siemens. Siemens refused to submit a proposed discovery schedule until Dr. Raza provided further detail of the asserted trade secrets. Dr. Raza provided Siemens with a detailed list of his trade secrets on April 11, 2008. The parties were then unable to agree on a format for a proposed scheduling order. As a result, the parties submitted separate proposed scheduling orders on May 12, 2008. (D.I. 41, 42) Dr. Raza's pro-

posed order conforms to the Court's form Non-Patent Rule 16 Scheduling Order, as revised in February 2008.

On April 28, 2008, two years and ten days after answering the Amended Complaint, Siemens moved for judgment on the pleadings on two narrow grounds: (1) the applicable statute of limitations and (2) the preemptive effect of the Delaware Uniform Trade Secrets Act, 6 *Del. C.* §§ 2001-2009 (the "Motion"). (D.I. 38)

This is Dr. Raza's opposition in part to the Motion.

## SUMMARY OF ARGUMENT

1. The allegations of the Amended Complaint, which must be accepted as true for purposes of the Motion, make clear that Dr. Raza learned of the existence of the SOARIAN product in April 2003. Because the Complaint was filed within three years of April 2003, judgment on the pleadings is inappropriate.

2. Siemens's argument that Dr. Raza knew or should have known that misappropriation had occurred before 2003 is groundless. Where there is no notice of use from the accused party, nor any expectation of unlawful use, there is no requirement that a plaintiff have exercised "reasonable diligence" to discover misappropriation. Imposing a duty on Dr. Raza to affirmatively monitor Siemens's activities in the 190 countries in which it operates is unreasonable; expecting him to do so after being told by Siemens that it would not use his product makes no sense.

3. Similarly groundless is Siemens's assertion that the simple existence of public documents can give rise to constructive notice for statute of limitations purposes. Indeed, Siemens's principal case supports the opposite conclusion: a trade secret plaintiff is not on con-

structive notice until defendant discloses the infringing product in the plaintiff's domicile. Absent evidence of some actual exposure to the SOARIAN product, which Siemens launched and exclusively marketed in the United States, Dr. Raza, a Pakistani national living in Islamabad, could not be on constructive notice of SOARIAN's existence.

4.	Open factual questions remain concerning the nature, extent, and timing of Siemens's misappropriation. For purposes of Delaware's trade secret statute of limitations, as established by this Court's precedent, plaintiff should be given the benefit of the doubt at the pleading stage as to whether multiple appropriations occurred.

5.	When Dr. Raza filed his Complaint and Amended Complaint asserting an unjust enrichment claim against Siemens in addition to the misappropriation claim, he could not be certain that Siemens would agree that the claims were governed by substantive Delaware law. The trade secrets laws of certain other states, such as California and New York, do not require preemption of unjust enrichment claims at the pleadings stage. Preemption instead occurs when it is determined that actual trade secrets have been asserted. Siemens now asserts that the Delaware Uniform Trade Secrets Act ("DUTSA") governs Dr. Raza's trade secret misappropriation claim and that Delaware state law requires that the unjust enrichment claim be dismissed based on the preemptive effect of the DUTSA. On that basis alone, Dr. Raza will consent to judgment on the unjust enrichment claim as a matter of Delaware law.

## COUNTER-STATEMENT OF FACTS

Most of Siemens's "Concise Statement of Facts" is a litany of inaccurate and self-serving distortions of facts that have no relation to the two grounds for the Motion. When Siemens does

address facts that pertain to the Motion, it conspicuously fails to address in any detail the following three allegations made in the Complaint and Amended Complaint:

> 14. In January 2001, Dr. Raza received from Farrukh Latif of Siemens Pakistan Engineering Company, Ltd., a letter stating that Dr. Raza's papers constituted "a very good effort," that the Pakistani entity was not sufficiently related to the "Hospital Management side" of Siemens to benefit from the software, that Siemens did "intend to recommend to [their] various clients to contact [Dr. Raza] for further details," and that it "appreciate[ed] Dr. Raza's efforts in developing the software [Dr-SIR]."
>
> 17. Unbeknownst to Dr. Raza in Pakistan, Siemens, upon information and belief, launched its SOARIAN hospital management software product in the United States in October 2001, almost one year after receiving, reviewing and retaining Dr. Raza's proprietary Dr.-SIR concept papers.
>
> 18. In April 2003, Dr. Raza met with Zia Chishty, past Executive Officer of Align Technology (a Nasdaq-listed company) and then Chief Executive Officer of TRG, a venture capital firm. During the meeting, Mr. Chishty informed Dr. Raza that Siemens had developed, and was marketing in the United States, a software product that was very similar to Dr.-SIR. Dr. Raza thereafter reviewed Siemens public papers, press releases, patents and patent applications relating to the SOARIAN product and concluded that the product most likely incorporates a number of the proprietary concepts he had disclosed to Siemens in November 2000, including, but not limited to, Dr. Raza's concepts relating to patient-centric management, embedded analytics and work flow technologies.

(D.I. 1, 7) These allegations, which are presumed true for purposes of the Motion, unequivocally demonstrate that Dr. Raza, a Pakistani national living in Islamabad, Pakistan, did not learn of the SOARIAN product's existence in the United States until April 2003, less than three years before this action commenced, in March 2006.

## ARGUMENT

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "judgment on the pleadings . . . is appropri-ate when there are no material issues of fact, which requires the moving party to show that it is

entitled to judgment as a matter of law." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 2008 U.S. Dist. LEXIS 24499, at *8 (D. Del. Mar. 28, 2008) (denying Rule 12(c) motion despite pleading's "anemic presentation"). It is "axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROC. CIVIL 3D § 1368, at 230 (2004 & 2008 Suppl.). *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (reaffirming principle that courts must take deferential view of complaint under Fed. R. Civ. P. 8). "Since Rule 12(c) provides for the summary disposition of a party's claims on the merits before discovery, such motions are disfavored." *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 891 (D. Del. 1991); WRIGHT & MILLER § 1368, at 222-23 (discouraging "hasty or imprudent use of this summary procedure"). The burden of justifying dismissal at such an early stage of the proceeding rests with the movant. *See* WRIGHT & MILLER § 1368, at 222-23.

## II. SIEMENS IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS OF THE TRADE SECRET MISAPPROPRIATION CLAIM.

Under Delaware law, a trade secret misappropriation claim must be brought "within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." 6 *Del. C.* § 2006. As alleged in the amended complaint, Dr. Raza discovered that Siemens had stolen his trade secrets in April 2003 after speaking with a colleague familiar with the United States market for hospital management software. The Court must accept these allegations as true for purposes of the Motion. *Taj Mahal Travel v. Delta Airlines*, 164 F.3d 186, 189 (3d Cir. 1998) ("We must accept as true the allegations in the complaint, and

draw all reasonable factual inferences in [non-movant's] favor."). Less than three years later, in March 2006, Dr. Raza filed this action. Siemens now contends that Dr. Raza gained constructive notice of the similarities between SOARIAN and his trade secrets before April 2003 based on the availability of Siemens's pre-April 2003 press releases and public filings in the United States. The relevant facts do not support Siemens's position to any degree, much less the degree necessary to meet its burden under Rule 12(c).

Dr. Raza alleges in the Amended Complaint that Siemens notified him in 2001 that the company had no interest in his Dr-SIR product:

> In January 2001, Dr. Raza received from Farrukh Latif of Siemens Pakistan Engineering Company, Ltd. a letter stating that Dr. Raza's papers constituted "a very good effort," that the Pakistani entity was not sufficiently related to the "Hospital Management side" of Siemens to benefit from the software, that Siemens did "intend to recommend to [their] various clients to contact [Dr. Raza] for further details," and that it "appreciate[ed] Dr. Raza's efforts in developing the software [Dr-SIR]."

(D.I. 7 ¶ 14) Siemens made clear to Dr. Raza in the January letter that it did not want to pursue a relationship with him or participate in further development of Dr-SIR. Given Siemens's expressed lack of interest in Dr-SIR, Dr. Raza had no reason to think that Siemens would use his trade secrets in Pakistan or elsewhere.

Siemens also did not tell Dr. Raza in the letter that the Pakistani or German entities would be sending, or had already sent, his trade secrets to the United States or any other of Siemens's operations around the world. As a result, Dr. Raza had no reason to think that Siemens had surreptitiously sent his trade secrets to subsidiaries in the United States for use in the development of hospital management software. Dr. Raza therefore had no reason to monitor, from Pakistan, the press releases and public filings of defendants Siemens Medical Solutions USA, Inc and Siemens Medical Health Services Corp. in the United States.

Finally, Siemens told Dr. Raza in the letter that it would be recommending Dr-SIR to its clients. Dr. Raza had no reason at the time to question Siemens's representation, and thus no reason to believe Siemens was unlawfully using his trade secrets instead of recommending Dr-SIR to its clients.

Where, as here, there is no notice of use from the accused party nor any expectation of unlawful use, there is no requirement that a plaintiff have exercised "reasonable diligence" to discover misappropriation. *See, e.g.*, *Indigo Moon Prods., LLC v. Hasbro, Inc.*, 2006 U.S. Dist. LEXIS 84433, at *10-11 (W.D. Ky. Nov. 17, 2006) ("[I]t would not have been reasonable for [plaintiff] to attempt to discover any misappropriation of their trade secrets by Hasbro at that time because they were not put on any notice [ ] by the Defendants nor could [plaintiff] have reasonably expected that Hasbro would misappropriate its trade secrets after Hasbro decided not to do business with [plaintiff] in the Spring 2001."). Having been told that Siemens would not be using his methods (and, in fact, that it would recommend them to its clients), Dr. Raza had no reason, and hence no obligation, to search out contradictory evidence. *See, e.g., Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 1991 U.S. Dist. LEXIS 14823, at *39-40 (D. Minn. Apr. 30, 1991) (holding that no constructive discovery of misappropriation could arise when defendant misrepresented to plaintiff that it "discarded" plaintiff's trade secret).

Siemens's argument to the contrary defies common sense. Siemens suggests in the Motion, *see* D.I. 39 at 12, that Dr. Raza should have anticipated that Siemens would in fact secretly send his trade secrets to one of its foreign entities for use in the development of hospital management software, and that he should have monitored from Pakistan that unknown entity's press releases and public filings for confirmation that it was unlawfully using his trade secrets. The absurdity of Siemens's position increases when one accounts for the fact that Siemens has

business entities or affiliates in 190 countries. Dr. Raza could not be expected to monitor the business activities of each of these entities in the hopes of detecting misappropriation of his trade secrets – particularly when he was told by Siemens itself that it would not be using Dr-SIR.

Even the principal case cited by Siemens in its papers demonstrates that no constructive notice exists in these circumstances. In *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994 (Fed. Cir. 2006), the Federal Circuit held that, under Delaware law, constructive notice did not arise until defendant disclosed the infringing product in the domicile of the plaintiff:

> [B]ecause [plaintiff's] European patent application for the stent from which Medtronic's trade secret claim arises was published in 1993, and [plaintiff] disclosed that stent in the United States in 1994 through publications and at conferences that both ACS and Medtronic attended, Medtronic had, at a minimum, constructive knowledge of the accused devices by 1994.

*Id.* at 999. There is no basis to conclude that press coverage and public filings in the United States regarding SOARIAN's release in the Unites States resulted in any form of disclosure in Pakistan.

The other cases relied upon by Siemens either do not involve a statute of limitations, *see Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (assessing validity of patent assignment), or analyze limitations statutes in the unrelated and fact-specific investor fraud context, *see White v. H&R Block, Inc.*, 2004 U.S. Dist. LEXIS 14522 (S.D.N.Y. July 28, 2004) (Sarbanes-Oxley Act); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) (securities fraud). These authorities offer little support to Siemens's position.

Finally, even if the Motion did not fail for the reasons above, judgment on the pleadings should be denied because an open factual question remains over the nature, extent, and timing of Siemens's multiple potential misappropriations. Since the initial SOARIAN product launched, it

is unknown, in the absence of discovery, how many different SOARIAN products were created and when they were launched. Each new product would constitute a new act of misappropriation, not a continuing misappropriation. The particulars surrounding how Siemens has structured its business relationships with, for example, vendors of SOARIAN are similarly undeveloped. As this Court has held, a plaintiff should be given the benefit of the doubt at the pleading stage on whether separate misappropriations have occurred for purposes of the statute of limitations. *See E.I. du Pont de Nemours & Co. v. Monsanto Co.*, 2001 U.S. Dist. LEXIS 8875, at *3 (D. Del. Feb. 14, 2001) (accepting, for purposes of Delaware's trade secret limitations period, plaintiff's representation that "multiple appropriations" occurred and denying motion to dismiss).

## III. DR. RAZA CONSENTS TO JUDGMENT ON THE UNJUST ENRICHMENT CLAIM AS A MATTER OF DELAWARE LAW.

When Dr. Raza filed his Complaint and Amended Complaint asserting an unjust enrichment claim against Siemens, he could not be certain that Siemens would agree that the claims were governed by substantive Delaware law. Because there was the potential for the law of another state to apply and because, in some other jurisdictions, preemption under the Uniform Trade Secrets Act does not take effect until it is determined that the plaintiff has asserted protectable trade secrets (usually at the summary judgment stage), Dr. Raza pleaded an unjust enrichment count alongside his misappropriation claim. *See, e.g.*, *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430 (D. Del. 2003) (refusing to dismiss, under California Uniform Trade Secrets Act, unjust enrichment claim on preemption grounds until it is determined that actual trade secrets have been asserted). *See also Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d 298, 307-309, 313 (N.D.N.Y 2007) (denying motion to dismiss unjust enrichment count pled with trade secret misappropriation claim).

Siemens has now moved for judgment on the unjust enrichment claim based exclusively on Delaware law and has thereby acknowledged that substantive Delaware law governs the misappropriation claim. (*See* D.I. 39, at 11 ("This common law claim [for unjust enrichment] is clearly preempted by the Delaware Trade Secrets Act . . . .")) On that basis alone, Dr. Raza consents to judgment on the unjust enrichment claim as a matter of Delaware law. A form of order dismissing the unjust enrichment claim and confirming that Delaware law governs the trade secret misappropriation claim is attached as Exhibit A.

**CONCLUSION**

For the reasons set forth above, Dr. Raza respectfully submits that Defendants' Motion for Judgment on the Pleadings (D.I. 38) should be denied in part.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Plaintiff*

Dated: May 15, 2008

**CERTIFICATE OF SERVICE**

I, Adam W. Poff, Esquire, hereby certify that on May 15, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Duncan Grant., Esquire
Pepper Hamilton LLP.
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

I further certify that May 15, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Larry R. Wood, Jr., Esquire
Kathleen A. Mullen, Esquire
Pepper Hamilton LLP.
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adam W. Poff

Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Syed Iqbal Raza, M.D.*.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYED IQBAL RAZA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-132-JJF |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS MEDICAL SOLUTIONS HEALTH SERVICES CORP., SIEMENS CORPORATION and SIEMENS AG, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

At Wilmington, this ____ day of _____________, 2008, having reviewed Defendants' Motion for Judgment on the Pleadings (D.I. 38), Defendants' papers in support thereof, and Plaintiff's opposition to the Motion, IT IS HEREBY ORDERED that:

1. Count II of the Amended Complaint (D.I. 7) is preempted by the Delaware Uniform Trade Secrets Act ("DUTSA") and is hereby DISMISSED.

2. Defendants' Motion (D.I. 38) is DENIED in all other respects.

3. The DUTSA governs Count I of the Amended Complaint.

______________________________
UNITED STATES DISTRICT JUDGE