IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE

SYED IQBAL RAZA, M.D.,              :
                                    :
          Plaintiff,                :
                                    :
     v.                             :   C.A. No.  06-132-JJF
                                    :
                                    :
SIEMENS MEDICAL SOLUTIONS USA       :
INC. and SIEMENS MEDICAL SOLUTIONS  :
HEALTH SERVICES CORP.,              :
                                    :
          Defendants.               :

Martin S. Lessner, Esquire; Adam W. Poff, Esquire; Andrew A. Lundgren, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP. Wilmington, DE.

Attorneys for Plaintiff, Syed Iqbal Raza, M.D.

Barak A. Bassman, Esquire and Kathleen A. Mullen, Esquire of PEPPER HAMILTON, LLP, Philadelphia, PA.
Duncan Grant, Esquire; Larry R. Wood, Jr., Esquire and Matthew A. Kaplan, Esquire of PEPPER HAMILTON, LLP, Wilmington, DE.

Attorneys for Defendants Siemens Medical Solutions USA Inc. and Siemens Medical Solutions Health Services Corp.

**MEMORANDUM OPINION**

April 16, 2009
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is a Motion for Judgment on the Pleadings (D.I. 39) filed by Defendants Siemens Medical Solutions USA Inc., ("Medical Solutions") and Siemens Medical Solutions Health Services Corp. ("Health Services") (collectively, "Defendants"). For the reasons discussed, the Motion will be granted.

I.  PROCEDURAL BACKGROUND

On February 28, 2006, Plaintiff, Syed Iqbal Raza, M.D., filed this action alleging claims against Defendants for trade secret misappropriation and unjust enrichment. (D.I. 1.) On April 28, 2008, Defendants filed the instant Motion requesting that the Court dismiss Plaintiff's claims as preempted under 6 Del. C. § 2006 and time barred. (D.I. 38.)

II.  FACTUAL BACKGROUND

Plaintiff is a physician who is the director of the Children's Hospital Islamabad. (D.I. 7 ¶ 1.) He is also a citizen of Pakistan. (Id.)

Defendant, Medical Solutions, is a company organized and existing under Delaware law. Defendant, Health Services, is also a company organized under the laws of Delaware. (D.I. 1 ¶ 3.) Both companies are wholly owned subsidiaries of Siemens AG, a German corporation. (D.I. 1 ¶ 2.)

1

In 1997, Plaintiff set out to develop methods for evaluating and tracking the performance of medical professionals. Plaintiff's goal was to attempt to make the process for managing hospitals and hospital personnel more efficient. (Id. ¶ 11.) He did so "by collecting various types of data from 104 medical professionals through a research study referred to as 'Dr-SIR-104.'" (Id.; D.I. 39 at 2.) He used this research data to develop Dr-SIR, a concept for a hospital management software product.

In September 2000, Plaintiff was invited by officials at the Strengthening of Health Services Academy in Pakistan ("SHAIP") to present his concepts for Dr-SIR. (D.I. 1 ¶ 12.) After his presentation, SHAIP officials asked Plaintiff to provide them with written materials outlining the concepts for Dr-SIR so that the product could be evaluated. (Id.) Plaintiff provided SHAIP with approximately 160 pages containing his concepts. On October 9, 2000, SHAIP's Chief Technical Officer forwarded, with Plaintiff's permission, the concept papers with a letter to the Counselor, Head Economic and Commercial Section of the German Embassy in Islamabad. (Id. ¶ 12.) Shortly thereafter, Plaintiff briefed the Counselor on the Dr-Sir concepts, and the Counselor believed Defendants might be interested in entering into a "partnership with [Plaintiff] to develop a complete software product." (Id. ¶ 13.)

Plaintiff had no confidentiality or non-disclosure agreement with these organizations regarding his Dr-SIR concept. (D.I. 39 at 4.) Plaintiff alleges that in January 2001, he received a letter from Siemens Pakistan Engineering Company, Ltd. indicating that the company was not sufficiently related to Hospital Management so as to benefit from the software, but it would inform some of its clients to contact Plaintiff for details on the software. Plaintiff contends that Defendants did not return the 160 pages of written materials he provided for their review. (D.I. 1 ¶ 15.) After receiving the January 2001 letter, Plaintiff continued to develop his concepts. Plaintiff won first prize for software development at the 2002 National Software Competition sponsored by the National University in Islamabad, and Plaintiff registered Dr-SIR with, among others, the World Health Organization in September 2001 and the United States Foreign Commerce Liaison Office in February 2003.

In October 2001, unbeknownst to Plaintiff, Defendants launched their SOARIAN® hospital management software in the United States. (Id. ¶ 17; D.I. 39 at 8.) In April 2003, Plaintiff met with Zia Chishty, the Chief Executive Officer ("CEO") of Align Technology and then CEO of TRG, a venture capital firm. Mr. Chishty informed Plaintiff that Defendants had developed and were marketing in the United States, a software

3

product that was very similar to Dr-SIR. (D.I. 1 ¶ 18.) Plaintiff then "reviewed Siemens' public papers, press releases, patents and patent applications relating to the SOARIAN® product and concluded that the product most likely incorporates a number of the proprietary concepts he had disclosed to [Defendants] in November 2000." (Id.) Plaintiff then brought this action against Defendants on February 28, 2006, alleging claims based on trade secret misappropriation and unjust enrichment.

### III. Legal Standard

Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Jablonski v. Pan American World Airways, Inc., 836 F.2d 289, 290 (3d Cir. 1988).

A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d, 427, 428 (3d Cir. 1991). When reviewing a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl.

4

Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) (citations omitted). A plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 235 (quoting Twombly, 127 S. Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. at 234.

## IV. DISCUSSION

By the instant Motion, Defendants contend that Plaintiff's Complaint should be dismissed pursuant to 6 Del. C. § 2006, because the Complaint was not filed within the applicable 3 year statute of limitations. Defendants also contend that Plaintiff's claim for unjust enrichment is preempted by the Delaware Uniform Trade Secret Act, 6 Del. C. § 2001, et seq.

In his Answer Brief, Plaintiff agrees that his unjust enrichment claim is preempted by the Delaware Uniform Trade

Secret Act and consents to judgment on his unjust enrichment claim as a matter of Delaware law. (D.I. 44 at 9-10.) Accordingly, the Court will focus its analysis on whether the remaining claims asserted in Plaintiff's complaint are time-barred.

Defendants contend that Plaintiff's Complaint is time barred, because he did not file the Complaint until February 28, 2006, which is four and a half years after Defendants publicly launched the SOARIAN® software. (D.I. 39 at 8.) Pursuant to 6 Del. C. § 2006, Plaintiff was required to bring an action for misappropriation of trade secrets within three years after the misappropriation was discovered, or should have been discovered in the exercise of reasonable diligence. In this regard, Defendants contend that Plaintiff either knew or should have known of his alleged claims as early as October 2001, when SOARIAN® was publicly launched. (Id. at 12.) To support this argument, Defendants point out that there was "substantial press coverage in October 2001 relating to the Soarian® launch." (Id. at 8.) Defendants also contend that Plaintiff should have been placed on notice of his claim when Health Services filed for patent protection on January 24, 2001. (Id.) Therefore, Defendants contend that Plaintiffs' Complaint should have been filed no later than 2004.

6

In response, Plaintiff contends that he discovered that Defendants, "had stolen his trade secrets in April 2003 after speaking with a colleague familiar with the US market for hospital management software." (Id. at 5.) Plaintiff further contends that Defendants told him they had "no interest in his Dr-SIR product." (Id. at 6.) Because Defendants stated they had no interest in the Dr-SIR concept, Plaintiff contends that he had no reason to believe Defendants would implement his concept in the United States. (Id.) Thus, Plaintiff contends that he also had no reason to monitor Defendants' public filings and press releases in the United States. (Id.) Although Defendants stated in their letter that they would recommend his Dr-SIR product to their clients, Plaintiff contends that he had no way of knowing that Defendants would unlawfully use his trade secrets. Without notice of unauthorized use, Plaintiff contends he did not have to exercise "reasonable diligence" to discover the misappropriation. (Id. at 7.) Thus, Plaintiff contends that "press coverage and public filings in the United States regarding the release of SOARIAN® in the United States did not result in any form of disclosure in Pakistan," where he resides. (Id.) Rather, Plaintiff alleges in his Complaint that he first became aware that Defendants had developed and were marketing software similar to SOARIAN® in April 2003 when he met with Zia Chishty.

Accepting as true the allegations of Plaintiff's Complaint and drawing all reasonable inferences in favor of Plaintiff, as the Court must in evaluating a motion under Rule 12(c), the Court concludes that Plaintiff's claim for misappropriation of trade secrets is time-barred.  Under 6 Del. C. § 2006, Plaintiff was required to exercise reasonable diligence to discover his claim. Reasonable diligence has been defined as "[a] fair, proper and due degree of care and acting, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity."[1] Black's Law Dictionary 457 (6th ed. 1991).  Courts have recognized that the public disclosure of products, as well as the publicly noticed filing of patent protection constitutes, at a minimum, constructive knowledge for purposes of discovering a claim based on the misappropriation of trade secrets and commencing the limitations period under the statute.  <u>Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.</u>, 182 Fed. Appx. 994 at *4 (Fed. Cir. 2006).  While the Court understands that Plaintiff resides in Pakistan, Plaintiff has not provided any case law demonstrating that his place of residence excuses

---

[1] More recently, Black's has altered this definition as follows: "A fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." Black's Law Dictionary 489 (8th ed. 2004).  However, the difference in these definitions is not material for purposes of the Court's discussion.

8

the reasonable diligence requirement. In fact, case law from this district suggests the opposite. As the Court explained in <u>Medtronic</u>:

> [W]hen a patent is published containing a trade secret, it destroys the trade secret. <u>Patents serve to "put the world on notice"</u> with respect to what the patentee claims to own; thus, any trade secret in a patent is no longer secret. Once a trade secret is destroyed, the statute of limitations begins to run because the misappropriation of that trade secret is no longer a continuing tort.

<u>Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 2005 WL 388592, * 1, n.4 (D. Del. Feb. 2, 2005) (emphasis added). In this case, Defendants filed for patent protection on July 5, 2001, and their SOARIAN® product was publicly unveiled in October 2001. (D.I. 40 at A1-A6.) Further, the patent application was published on July 25, 2002. Even using this later date, Plaintiff's Complaint filed on February 28, 2006, would be time-barred.

Moreover the Court notes that Plaintiff makes no argument that the statute of limitations should be tolled under the doctrine of fraudulent concealment. In fact, Plaintiff has alleged no facts which could establish fraudulent concealment by Defendants here, as the initial letter sent to Plaintiff indicating that his concept was not going to be utilized was sent by Siemens Pakistan Engineering Company, Ltd, who is not a Defendant in this action.

Relying on Indigo Moon Prods, LLC v. Hasbro, Inc., 2006 WL 3375356, * 4 (W.D. Ky. Nov. 17, 2006), Plaintiff contends that the duty to exercise reasonable diligence is excused where there is "no notice of use from the accused party nor any expectation of unlawful use." (D.I. 44 at 7.) However, this reasoning only extended to a claim that the plaintiff should have discovered the alleged misappropriation when the plaintiff filed for bankruptcy because it knew that the defendant wanted to upgrade its Clue FX game internally. The court in Indigo Moon did not apply this reasoning to the defendant's public launch of the product stating that the plaintiff should have "discovered any misappropriation of its trade secret when Hasbro released the Clue FX Game in October 2003." Id.

Accordingly, in the circumstances of this case, the Court concludes that no reasonable fact-finder could conclude that Plaintiff would have been unable to discover his claims in the exercise of reasonable diligence and file his Complaint based on those claims by July 2005. Because Plaintiff's Complaint was filed more than six months after that date, the Court concludes that Plaintiff's Complaint is time-barred.

## V. CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion To Dismiss.

An appropriate Order will be entered.